UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                                  Chapter 11

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                                      Case No. 8:24-bk-676-RCT

    Debtor.
_____/

**DEBTOR'S EMERGENCY MOTION FOR**
**APPROVAL OF TRUST DISTRIBUTION PROCEDURES**

THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., as debtor and debtor in possession (the "**Debtor**"), seeks entry of an order approving procedures governing its administration of distributions to beneficiaries of the various special needs trusts it manages. In support of this Motion, the Debtor respectfully states as follows:

PRELIMINARY STATEMENT

The Debtor serves as trustee or co-trustee over various types of special needs trusts. This motion is filed to ensure that beneficiaries who have sufficient Liquid Assets (as defined below) in their accounts can continue to receive the benefit of distributions from their trusts to pay for needed expenses. At the same time, however, certain trusts have been compromised by the transfer of funds to Boston Financial Group, an entity controlled by The Centers' founder, Leo Govoni, which the Debtor described at length in its Case Management Summary (Doc. No. 7). Tragically, after an initial investigation, the Debtor has determined that some of the trusts it administers have minimal remaining Liquid Assets that can be used to fund continued distributions. Through this Motion, the Debtor seeks approval to cease making distributions on account of trusts where there

are insufficient Liquid Assets to fund such distributions, at least until the Debtor is able to recover funds to replenish these affected beneficiaries' trust accounts.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 105(a), 363(b) 1107(a) and 1108 of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

## BACKGROUND

### A. General Background

4. On February 9, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. The Debtor is operating its businesses and managing its affairs as debtor-in-possession. 11 U.S.C. §§ 1107(a) and 1108.

6. The Debtor is a 501(c)(3) non-profit corporation that administers pooled trusts and special needs trusts. For more information about the Debtor's background, please see the Debtor's *Case Management Summary* (Doc. No. 7).

7. The Debtor is the trustee or co-trustee of numerous special needs trusts, including both stand-alone trusts and pooled trusts (the "**Trusts**") for approximately 2,000 beneficiaries who suffer from various levels of disability (the "**Beneficiaries**"). The Debtor's primary service as trustee of the Trusts is to manage the Trusts, maintain records for assets managed by third-party investment managers, respond to request for distributions from Beneficiaries, and make distributions in a manner that still ensures that the beneficiary meets the income and asset

thresholds to qualify for certain public assistance benefits, such as Medicaid, Social Security, or Supplemental Security Income. The Debtor's services help to ensure that Beneficiaries maintain their qualification for these critical public assistance benefits.

8. Each Beneficiary has its own trust account or sub-trust account (a "**Trust Account**") that reflects the specific assets in the respective Beneficiary's Trust, or in the case of a pooled Trust, the specific assets allocated to the Beneficiary's sub-trust account. The Trust investments are managed by different financial advisory companies, not the Debtor itself.

**B. The Debtor's Investment of Trust Assets**

9. Funds received by the Debtor have historically been allocated by either delivering funds to third-party investment managers, or as further described below, certain funds have been allocated to BFG (as defined below).

10. The funds administered by third-party investment managers have been invested in marketable assets and investments that can readily be converted into cash ("**Liquid Assets**") to fund Beneficiaries' requests for distribution.

**C. The Debtor's Existing Trust Distribution Procedure**

11. In the ordinary course of its business, the Debtor will receive requests from Beneficiaries for payment of certain expenses to improve the Beneficiary's quality of life but which are not otherwise provided for by public assistance benefits. For example, a special needs trust can be used to fund expenses for a home, a vehicle, related maintenance, along with a variety of other items like a vacation, a computer, electronic equipment, educational expenses, and ongoing monthly bills such as phone, cable, and internet services. The Debtor fields these requests and evaluates whether payment of these expenses will ensure the Trust's continued compliance with governing law. If the expense can be paid, and the Beneficiary's Trust Account has sufficient

remaining assets to pay the expense, the Debtor will pay the vendor or service provider directly on behalf of the Beneficiary.

12. As the Debtor outlined in its Case Management Summary, the Debtor's leadership discovered that approximately $100,000,000 of funds from beneficiaries and the Center itself was paid to Boston Financial Group ("**BFG**"), a group controlled by The Center's founder Leo Govani. The transfers of these funds have left over a thousand trust accounts either partially or fully compromised. The Debtor filed this case for the purpose of, *inter alia*, pursuing claims against responsible parties with the goal of recovering the transferred funds and other assets, as much as possible, and distributing the recoveries into the Beneficiaries' Trust Accounts.

13. The transfers were effectuated by the transactions most recently documented by an Amended Line of Credit Agreement with BFG as the obligor under the "loan" (the "**BFG Loan**"). Funds from the affected Trusts were used to fund the BFG Loan with each Trust being allocated a portion of the loan as an investment. The detailed trust accounting for some of the affected Trust Accounts may have reflected the Trust's exposure to the BFG Loan as an asset in the Trust Account, designated by the labels "Center Fixed Income IV" or "Pooled Fixed Income V". Based on the Debtor's initial investigation, it has determined that these "investments" regardless of nomenclature effectively have unknown value[1] and are completely illiquid.

14. Additionally, many of the Trust Accounts appear to be compromised by exposure to an account titled Bank 01 (the "**Bank 01 Account**"). The Debtor's investigation of the Bank 01 Account is ongoing, but it appears that the Bank 01 Account does not have sufficient assets to back each affected Trust Account's allocation of the Bank 01 Account, resulting in a shortfall of funds. Each Trust Account's exposure to the Bank 01 Account results in the Trust Account being further

---

[1] The Debtor has made demand on BFG to produce information regarding the underlying investments. To date, the Debtor has not received any responsive documents from BFG.

compromised by a shortfall of funds. The Debtor believes the shortfall in the Bank 01 Account is related to the funding of the BFG Loan.

15. The Debtor has determined that 1,570 of the Trust Accounts are compromised to some extent by the BFG Loan and/or the Bank 01 Account (the "**Compromised Trust Accounts**"). Many of the Compromised Trust Accounts have minimal remaining Liquid Assets for the Debtor to utilize to make ongoing distributions on account of the Beneficiaries of those Trust Accounts. For example, of the 1,570 Compromised Trust Accounts, 896 of those Trust Accounts have less than $500 in Liquid Assets that could be used to fund ongoing distributions.

16. The remaining 470 Trust Accounts have no exposure to the BFG Loan and are completely invested in legitimate financial products (the "**Clean Trust Accounts**"), with their investment accounts being managed by institutional financial advisory firms such as Wells Fargo, Keybank, Fidelity, or Bank of America.

17. Unless and until the Debtor recovers assets through its litigation efforts or other asset recoveries, the Debtor is unable to continue making distributions for the benefit of Beneficiaries of the Compromised Trust Accounts to the extent their Trust Accounts have no Liquid Assets. The only assets Trust Accounts with no Liquid Assets are holding are their allocated share of the BFG Loan or Bank 01 Account.

18. The Debtor will continue, in the ordinary course of business, to make distributions on account of Beneficiaries to the extent that the Trust Accounts have Liquid Assets that can be liquidated to fund those distributions. However, if the Liquid Assets in a Compromised Trust Account are depleted, the Debtor would need to cease making Trust distributions for the benefit of Beneficiaries of a fully Compromised Trust.

**RELIEF REQUESTED**

19. By this Motion, the Debtor seeks entry of an interim order substantially in the form attached hereto as **Exhibit A** and a final order providing, *inter alia*, that:

   a. The Debtor is authorized to make distributions on account of Beneficiaries of Compromised Trust Accounts, to the extent that such Trust Accounts' legitimate investments can be liquidated to fund requests for distributions, but once such legitimate investments are exhausted, the Debtor would be authorized to cease making distributions on account of such Trust Beneficiaries; and

   b. The Debtor is authorized to continue making distributions, in the ordinary course of business, on account of Beneficiaries of Clean Trust Accounts.

**BASIS FOR RELIEF REQUESTED**

20. The Debtor requests Court approval of its decision to cease making distributions on account of Compromised Trust Accounts once the Liquid Assets in such accounts are exhausted. The Debtor understands that this will result in serious financial implications for the affected Beneficiaries. However, the Debtor believes this result is mandated by the Bankruptcy Code and will help ensure the Debtor will be able to continue operating and continue to earn income and pursue recovery of assets to eventually replenish, as much as possible, the affected Beneficiaries' Trust Accounts.

21. First, the Bankruptcy Code would prohibit the Debtor using bankruptcy estate funds to fund payments on account of Beneficiaries of Compromised Trust Accounts once the Trust Accounts' Liquid Assets are depleted. Without any Liquid Assets to fund requests for payment, the Debtor would need to use its cash on hand—bankruptcy estate property—to make payments on account of these Beneficiaries. These payments, however, would amount to repayments of such

Beneficiary's pre-petition claim against the Debtor, which is prohibited under the Bankruptcy Code. *See, e.g.*, *In re Berry Good, LLC*, 400 B.R. 741, 746 (Bankr. D. Ariz. 2008) (discussing general bankruptcy principle that debtor cannot generally make payment on a pre-petition debt outside of chapter 11 plan); *In re CoServ, L.L.C.*, 273 B.R. 487, 493 (Bankr. N.D. Tex. 2002) (same).

22. Second, allowing the Debtor to make go-forward payments from bankruptcy estate funds for Beneficiaries of Compromised Trust Accounts without Liquid Assets would also run afoul of the Bankruptcy Code's equality of distribution principles. In bankruptcy, similarly situated creditors are to be treated equally. *See, e.g.*, *Matter of Saybrook Mfg. Co., Inc.*, 963 F.2d 1490, 1496 (11th Cir. 1992) ("Creditors within a given class are to be treated equally . . . ."). By making early distributions to certain Beneficiaries based solely on their requests for distributions, the Debtor would be favoring creditors based on the timing of their needs or requests for distributions and not based on the goal of equality of distribution.

23. Third, the Debtor must ensure that it can continue to operate through this Chapter 11 case so that it can continue to service the Trusts, earn income that will be used to fund future distributions back to the Compromised Trust Accounts, and pursue the recovery of assets. If the Debtor's own cash dwindles due to ongoing requests for distributions by Beneficiaries of Compromised Trust Accounts without Liquid Assets, the Debtor may quickly become administratively insolvent and be unable to continue operating for the benefit of all creditors.

24. The Debtor is mindful of the pain that Beneficiaries of Compromised Trust Accounts may suffer as a result of this decision, but this is a necessary step in the Debtor's goal of recovering assets and making future payments under a Chapter 11 plan to restore the affected Beneficiaries' Trust Accounts as much as possible. The Debtor will be aggressively pursuing all

7

avenues to sue parties responsible for the diversion of funds and recover assets as quickly as possible for Affected Beneficiaries.

25. One of the Debtor's primary goals in this case will be to quickly recover assets and establish restore, to some minimum level, the Compromised Trust Accounts so that their basic expenses—over and above those provided for by governmental assistance—can be paid consistent with the Debtor's normal practices.

WHEREFORE, the Debtor respectfully requests the entry of interim order, substantially in the form attached hereto as **Exhibit A**, and a final order (i) granting the Motion; (ii) authorizing the Debtor to cease making distributions on account of Compromised Trust Accounts once such Trust Accounts' Liquid Assets are depleted; (iii) continue making distributions in the ordinary course of business on account of Beneficiaries of Compromised Trust Accounts, to the extent that such Trust Accounts have Liquid Assets sufficient to fund requests for distributions; (iii) continue making distributions in the ordinary course of business on account of Beneficiaries of Clean Trust Accounts, and (iv) granting such other and further relief the Court deems just and proper.

DATED: February 9, 2024

*/s/ Scott A. Stichter*
Scott A. Stichter (FBN 0710679)
Matthew B. Hale (FBN 0110600)
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 East Madison Street, Suite 200
Tampa, FL 33602
Telephone: (813) 229-0144
Email: sstichter@srbp.com; mhale@srbp.com
Proposed Counsel for Debtor

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing *Debtor's Emergency Motion for Approval of Trust Distribution Procedures* has been furnished on this 9th day of February, 2024, by the Court's CM/ECF electronic mail system to all parties receiving electronic noticing. Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on all parties required to be served, including to the Local Rule 1007-2 Parties in Interest List, and will file a certificate or affidavit of service.

                                       /s/ *Scott A. Stichter*
                                       Scott A. Stichter

# **EXHIBIT "A"**

**(Proposed Interim Order)**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                          Chapter 11

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                     Case No. 8:24-bk-676

    Debtor.
_____/

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY
MOTION FOR APPROVAL OF TRUST DISTRIBUTION PROCEDURES**

**THIS MATTER** came before the Court on _____, 2024 at _____ a.m./p.m., upon the *Debtor's Emergency Motion for Approval of Trust Distribution Procedures* (Doc. No. ___) (the "**Motion**")[1] filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**"). The Motion seeks entry of interim and final orders (i) granting the Motion; (ii) authorizing the Debtor to cease making distributions on account of Compromised Trust Accounts once such Trust Accounts' Liquid Assets are depleted; (iii) continue making distributions in the ordinary course of business on account of Beneficiaries of Compromised Trust Accounts, to the

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

extent that such Trust Accounts have Liquid Assets to fund requests for distributions; (iii) continue making distributions in the ordinary course of business on account of Beneficiaries of Clean Trust Accounts, and (iv) granting such other and further relief the Court deems just and proper.

The Court finds that (i) it has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested in the Motion.  Accordingly, it is

**ORDERED**:

1. The Motion is **GRANTED**, as set forth herein, on an interim basis.

2. The Debtor is authorized to continue to cease making distributions on account of Compromised Trust Accounts once such Trust Accounts' Liquid Assets are depleted.

3. The Debtor is authorized to continue making distributions in the ordinary course of business on account of Beneficiaries of Compromised Trust Accounts, to the extent that such Trust Accounts have Liquid Assets sufficient to fund requests for distributions.

4. The Debtor is authorized to continue making distributions in the ordinary course of business on account of Beneficiaries of Clean Trust Accounts.

5. The Debtor is authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order in accordance with the Motion.

6. The Court shall conduct a final hearing (the "**Final Hearing**") on the Motion on _____, 2024 at _____ __.m., **Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Courtroom _____, Tampa, FL 33602**.

7. Within forty-eight (48) hours of the entry of this Interim Order, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"), together with copies of this Interim Order, the proposed Final Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for the any official committee (if appointed).  Any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than _____ **at 4:30 p.m. (prevailing Eastern Time)**, which objections shall be served so as to be received on or before such date by: (i) the Debtor, Attn.: William A. Long, Jr., Chief Restructuring Officer, 12425 28th St. N., St. Petersburg, FL 33716; (ii) proposed counsel to the Debtor: Stichter, Riedel, Blain & Postler, P.A., 110 E. Madison Street, Suite 200, Tampa, FL 33602-4718, Attn.:  Scott Stichter, Esq. and Matthew Hale, Esq. (sstichter@srbp.com; mhale@srbp.com); and (iii) the Office of the United States Trustee, 501 East Polk Street, Room 1200, Tampa, FL 33602.

8. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

*Attorney Scott Stichter is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and to file a proof of service within 3 days of entry of the order.*

4873-8195-6004, v. 1