UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                               Chapter 11

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                          Case No. 8:24-bk-676-RCT

            Debtor.
_____/

**DEBTOR'S APPLICATION FOR AUTHORIZATION TO EMPLOY
AND COMPENSATE NPERSPECTIVE ADVISORY SERVICES, LLC AS
RESTRUCTURING ADVISOR AND TO APPOINT WILLIAM A. LONG, JR. AS
CHIEF RESTRUCTURING OFFICER, EFFECTIVE AS OF THE PETITION DATE**

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Suite 555, Tampa, Florida 33602, within fourteen (14) days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.\**

THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., as debtor

and debtor in possession (the "**Debtor**"), respectfully requests the entry of an order authorizing (i)

the employment and interim compensation of Nperspective Advisory Services, LLC

("**Nperspective**") pursuant to 11 U.S.C. § 327(a) to provide restructuring advisor services, (ii)

authorizing the appointment of William A. Long, Jr. as Chief Restructuring Officer ("**CRO**"), (iii) approving interim compensation procedures for Nperspective and Mr. Long, and (iv) approving Nperspective's engagement agreement with the Debtor, attached hereto as **Exhibit A** (the "**Engagement Agreement**"). The Debtor further requests that all relief be granted effective as of the Petition Date (defined below). In support of the application, the Debtor respectfully represents as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction to consider this application pursuant to 28 U.S.C. §§157 and 1334.  The subject matter of this application is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2.      The statutory predicates for the relief requested herein are Sections 105(a), 327(a), 328, 331, 363(b), 507, and 541 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure.

## Background

3.      On February 9, 2024 (the "**Petition Date**"), the Debtor filed its Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code.

4.      The Debtor continues to operate its business and manage its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or examiner, and creditors' committee has not yet been appointed.

6.      The Debtor is a 501(c)(3) non-profit corporation that administers pooled trusts and special needs trusts. For more information about the Debtor's background, please see the Debtor's *Case Management Summary* (Doc. No. 7).

2

## Relief Requested

6.      The Debtor seeks authorization to employ Nperspective as its restructuring advisors and to appoint Mr. Long as CRO, effective as of the Petition Date. The Debtor further seeks approval of interim compensation procedures for Nperspective and Mr. Long and approval of Nperspective's Engagement Agreement. The Debtor requests that all relief be granted effective as of the Petition Date. The Debtor believes that Nperspective and Mr. Long are well qualified to fulfill their roles and otherwise satisfy the requirements for employment under 11 U.S.C. § 327(a).

### A.  Nperspective's Qualifications

7.      Nperspective was founded over 20 years ago and has a wealth of experience providing CFO services, financial and restructuring advisory services, turnaround management services, litigation support, and bankruptcy support services in numerous cases.

8.      Nperspective's team has a broad base of financial and business consulting expertise. Many team members (including Mr. Long) are Certified Public Accounts and several holder Masters of Business Administration degrees. Nperspective operates throughout Florida, with offices in Tampa, Orlando, Boca Raton, and Miami. The firm also has an Atlanta, Georgia office.

9.      As set forth in its Engagement Agreement, Nperspective has made Mr. Long available to serve as CRO for the Debtor and has made additional team members available to the Debtor to provide other financial and restructuring advisory services to the Debtors.

10.      Mr. Long has decades of experience as a senior level financial executive and has served as Chief Financial Officer for several Tampa Bay area companies across different business sectors. Mr. Long has served as CRO in several chapter 11 cases in this district, including *In re The Mary A II, LLC*, Case No. 22-bk-01177-CED; *In re Vartek, LLC*, Case No. 19-bk-08083-

CPM; *In re Florida Pavement Coatings, Inc.*, Case No. 18-bk-06062-CPM; *In re Magic City Doughnut Corp. DBA Krispy Kreme Doughnuts Caseno*, Case No. 12-bk-7126 MGW.

11.     Given Mr. Long's CRO experience and Nperspective's financial and restructuring advisory expertise, Nperspective is well suited to assist the Debtor through the chapter 11 process.

**B.  Scope of Services to be Provided**

12.     As an officer of the Debtor, Mr. Long's duties will include those duties typically performed by an individual holding the senior executive position of the Debtor.

13.     Pursuant to the terms of the Nperspective's Engagement Agreement, Nperspective and Mr. Long's services will include the following:

a.      Assume financial control of the Company as directed by its Board of Directors. Specifically, William (Bill) A. Long, Jr., CPA will be appointed as the Company's Chief Restructuring Officer. Mr. Long will be provided with unfettered access to all of the Company's books, records and financial information for him to assess the solvency of the Company, to be fully briefed by outside counsel for the Company concerning their investigation and other matters associated with the defaulted loan to Boston Finance Group.

b.      Work closely with the Debtor and counsel for the Debtor to implement its chapter 11 bankruptcy filing, with Mr. Long serving as the primary point of contact for the Debtor, the Court, and other interested parties to the extent a corporate representative is necessary.

c.      Assume other responsibilities in connection with the foregoing, with wide latitude with respect to what needs to be done for the Debtor from a financial standpoint in fulfillment of his role and title as "Chief Restructuring Officer."

d.      Assist the Debtor with investigating and reconstructing financial information to be used in connection with the Debtor's chapter 11 bankruptcy case.

e.      Work with the Debtor's accounting staff to assist with the preparation of the initial chapter 11 filing documents required by bankruptcy counsel.

f.   Review all cash receipts and disbursement transactions for potential fraudulent transfer transactions as the term is defined under the bankruptcy code, and actual fraud.

g.   Work with the Debtor's staff to assist with the proper set up of pre and post filing accounts payable and other unsecured and secured creditor balance at the date of filing.

h.   Assist with the preparation of Monthly Operating Reports to the court (MOR) while in bankruptcy for subsequent filing by bankruptcy counsel.

i.   Work with the Debtor and bankruptcy counsel in the development of either a plan of reorganization or a plan of sale for the Debtor.

j.   Provide other services as may be requested by the Debtor or its counsel.

## C. Professional Compensation

14.   The Debtor proposes to compensate Nperspective under the terms of their Engagement Agreement, subject to the terms further set forth in this Application. Nperspective will be compensate on a time basis at its prevailing hourly rates. The primary Nperspective personnel assigned to service the Debtor and their standard hourly rates are as follows:

| Name | Hourly Rate |
| --- | --- |
| Gary Colbert | $450 |
| William A. Long, Jr. | $395 |
| Arthur Jeannet | $325 |
| Glenn Genereux | $225 |

15.   Nperpsective's hourly rates are subject to periodic adjustment based on economic conditions and other factors. In addition, other Nperspective personnel with similar rates to those set forth above may provide services to the Debtor as needed.

16.   Nperspective also seeks approval for reimbursement of reasonable and necessary expenses incurred in connection with its services provided to the Debtor, including but not limited

to: travel expenses, mileage, hotels, meals, copying charges, and other similar incidental expenses of Nperspective's employment.

17.     Prior to the Petition Date, the Debtor paid Nperspective an initial retainer in the amount of $20,000.00 and a supplemental retainer in the amount of $20,000.00 (collectively, the "**Retainer**"). In addition, Nperspective received payments totaling $118,428.08 for prepetition services rendered. The Retainer was applied to remaining balance of prepetition invoices for services rendered, and the balance will be held to reduce Nperspective's application for postpetition fees and costs.

18.     Postpetition, the Debtor proposes to compensate Nperspective on an interim basis in accordance with the following procedures (the "**Interim Billing Procedures**"):

a.     Nperspective shall serve a monthly statement for services on (i) the Debtor by email to Michelle Diebert, President; (ii) counsel for the Debtor by email to Scott Stichter at sstichter@srbp.com; (iii) the Office of the United States Trustee by email to the Trial Attorney assigned to this case, and (iii) counsel for any official committee appointed in this case (collectively, the "**Statement Notice Parties**"). The statement shall not be filed with or delivered to the Court.

b.     The Statement Notice Parties shall have 14 days from the email service of each monthly statement to raise any objection to the fees requested by email to Nperspective at blong@jonahconsulting.biz, with a copy provided to counsel for the Debtor by email to Scott A. Stichter at sstichter@srbp.com. The parties shall work in good faith to resolve any objections to a monthly statement, but in the event the parties are unable to resolve the objection, the objecting party shall file an objection with the Court and set the objection for hearing.

c.     The Debtor is authorized to pay on a monthly basis the portion of the fees and expenses identified in each statement identified in each statement that are not subject to a pending objection by a Statement Notice Party.

d.      Nperspective shall file an interim and/or final fee application in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of the Court. For the sake of clarity, lack of objection by a Statement Notice Party under these Interim Billing Procedures shall not constitute a waiver of any right to object to any filed fee application.

e.      All payments to Nperspective shall be included on the monthly operating reports.

### Basis for Relief Requested

19.     The Debtor believes that the employment of Mr. Long and Nperspective is in the best interest of the Debtor and the estate.  Mr. Long will provide sound, independent financial management and support to the Debtor, which will be crucial during this case.

20.     The Debtor seeks to employ Mr. Long and Nperspective pursuant to Section 327(a) of the Bankruptcy Code, which provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). As debtor-in-possession acting, the Debtor has the rights and powers of a trustee. 11 U.S.C. § 1107(a).

21.     Mr. Long is a Certified Public Accountant, and the Nperspective personnel who will be providing restructuring advisory services to the Debtor are also accountants. As professionals, the Debtor seeks approval of their engagement or retention under Section 327(a). *See In re Blue Stone Real Est., Const. & Dev. Corp.*, 392 B.R. 897, 906 (Bankr. M.D. Fla. 2008); *see also In re McDermott Int'l, Inc.*, 614 B.R. 244, 255 (Bankr. S.D. Tex. 2020) (holding that CRO and financial advisor employment is more appropriately approved under Section 327 rather than Section 363). "The two primary goals of § 327(a) are to ensure the impartiality of the professional

and to provide court oversight in the determination of the reasonableness of the professional's compensation." *McDermott*, 614 B.R. at 255.

22.     To the best of the Debtor's knowledge, neither Mr. Long nor any employees of Nperspective have any connection with creditors of the Debtor, other parties in interest, or their respective attorneys.   Mr. Long, through Nperspective, was selected as the Debtor's Chief Restructuring Officer before the Petition Date. However, the pre-petition employment of Nperspective does not prevent their employment during the bankruptcy case. *See* 11 U.S.C. 1107(b); *McDermott*, 614 B.R. at 254.

23.     Mr. Long and Nperspective do not represent any interest adverse to the Debtor or to the estate with respect to the matters upon which they are to be employed by the Debtor.

24.     Attached to this application as **<u>Exhibit B</u>** and incorporated herein by reference is the declaration of William A. Long, Jr. demonstrating that Mr. Long and Nperspective are disinterested as required by Section 327(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure.

25.     Denying the relief requested herein would deprive the Debtor of the guidance and assistance of a highly qualified CRO and disadvantage the Debtor and all stakeholders. The Debtor needs experienced and knowledgeable professionals to provide assistance during the bankruptcy case. The restructuring support services provided by Nperspective are critical to the success of this bankruptcy case, and the Debtor requests that the Court approve Nperspective's retention as requested and approve the Engagement Agreement in substantially the form attached hereto.

WHEREFORE, the Debtor respectfully requests that this Court enter an order (i) approving this application effective as of the Petition Date; (ii) authorizing the Debtor to employ Mr. Long as Chief Restructuring Officer for the purposes set forth herein; (iii) authorizing the Debtor to

employ Nperspective as restructuring advisors as set forth herein; (iv) authorizing the Debtor to compensate Nperspective as set forth herein; and (v) granting such other and further relief as is just.

DATED: February 9, 2024

/s/ Scott A. Stichter
Scott A. Stichter (FBN 0710679)
Matthew B. Hale (FBN 0110600)
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 East Madison Street, Suite 200
Tampa, FL  33602
Telephone: (813) 229-0144
Email: sstichter@srbp.com; mhale@srbp.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Debtor's Application for Authorization to Employ and Compensate Nperspective Advisory Services, LLC as Restructuring Advisor and to Appoint William A. Long, Jr. as Chief Restructuring Officer, Effective as of the Petition Date* has been furnished on this 9th day of February, 2024, by the Court's CM/ECF electronic mail system to all parties receiving electronic noticing. Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on all parties required to be served, including to the Local Rule 1007-2 Parties in Interest List, and will file a certificate or affidavit of service.

*/s/ Scott A. Stichter*
Scott A. Stichter

# EXHIBIT A



Nperspective Advisory Services, LLC
Project Work Agreement

**The Center For Special Needs Trust Administration, Inc.** (the "Company") agrees to engage Nperspective Advisory Services, LLC ("Np") to perform the following services:

I.     Project Services; Fees

        A.     Np will perform the following services during the course of this engagement, beginning on or about November 10, 2023:

                i.     Assume financial control of the Company as directed by its Board of Directors. Specifically, William (Bill) A. Long, Jr., CPA will be appointed as the Company's Chief Restructuring Officer. Mr. Long will be provided with unfettered access to all of the Company's books, records and financial information for him to assess the solvency of the Company, to be fully briefed by outside counsel for the Company concerning their investigation and other matters associated with the defaulted loan to Boston Finance Group.

                ii.     Mr. Long will make a recommendation to the Company to hire appropriate bankruptcy counsel to evaluate whether the Company should file a Chapter 11 bankruptcy proceeding. Mr. Long will work closely with bankruptcy counsel to implement that process, and Mr. Long will be the primary point of contact for the Company and bankruptcy court to the extent any corporate representative is necessary.

                iii.     Mr. Long will also assume other responsibilities in connection with the foregoing, in his discretion. For the time being, Mr. Long will be given wide latitude with respect to what needs to be done for the Company from a financial standpoint in fulfillment of his role and title as "Chief Restructuring Officer."

                iv.     Assist the Company with investigating and reconstructing financial information to be used in connection with a potential Chapter 11 filing of the Company.

                v.     Work with the Company's accounting staff to assist with the preparation of the initial chapter 11 filing documents required by bankruptcy counsel.

                vi.     Review all cash receipts and disbursement transactions for potential fraudulent transfer transactions as the term is defined under the bankruptcy code, and actual fraud.

                vii.     Work with the Company's staff to assist with the proper set up of pre and post filing accounts payable and other unsecured and secured creditor balance at the date of filing.

                viii.     Assist with the preparation of Monthly Operating Reports to the court (MOR) while in bankruptcy for subsequent filing by bankruptcy counsel.

                ix.     Work with the Company and Counsel in the development of either a plan of reorganization or a plan of sale for the Company.

                x.     Provide other services as may be requested by the Company or its Counsel.

        B.     Np shall designate one principal to primarily perform these services ("Np Associate"). The initial Np Associate for these services is William (Bill) A Long Jr., who shall render the services primarily

Page 1 of 5

at the Company's headquarters, other Company locations, off-site, or remotely, whenever, and wherever feasible. Gary Colbert may also oversee the engagement, providing services if needed.

C.    Np fees for these services will be $395.00 per hour for Mr. Long and $450.00 per hour for Mr. Colbert. Other Np personnel may bill at lesser hourly rates. Travel expenses for hotels and meals will be billed at cost, plus mileage at the prevailing IRS reimbursement rate, which is presently $0.65.5 per mile. Actual travel time is billed at Mr. Long's standard rates. Work schedules and time requirements will be agreed in advance with Company management. The work schedule can be adjusted, as needed, upon agreement by the Company and Np. Np reserves the right to periodically adjust billing rates, but the billing rates will not be adjusted more frequently than once per year, based on the original date of this agreement.

II.    Payment; Deposit

A.    As a firm practice we require a deposit of $20,000.00 prior to services being rendered. If the Company files a Chapter 11 bankruptcy, the deposit must be increased to $40,000.00 prior to filing. If the Company does not file a Chapter 11 bankruptcy, Np will bill against the deposit at standard hourly rates until the deposit is depleted. If the Company files a Chapter 11 bankruptcy, Np will bill against the deposit to make payments that are approved by the Court, but, otherwise, the deposit will remain on account until the end of the business relationship, at which point the deposit can be used as partial or full payment on the final invoice. The deposit may also be used to pay current invoices if the Company files any kind of reorganization under Federal Bankruptcy Law.

B.    Np will submit billings periodically, no more often than weekly and no less often than monthly, for such services. Payment is due upon receipt of invoice.

C.    For expense reimbursements, the Company will pay all amounts owed to Np no later than fourteen (14) calendar days after receipt of invoice.

D.    Amounts not paid within fourteen (14) days of receipt of invoice shall be considered overdue. Np shall be entitled to receive all reasonable costs and expenses incidental to the collection of overdue amounts under this agreement, including attorneys' fees and court costs throughout all negotiations, trials and appeals. The provisions of paragraph D. will be waived if the company files Chapter 11 and all future payments after the filing will be in accordance with the court's Bankruptcy payment requirements to professionals.

III.    Personnel; Relationship of the Parties

A.    The parties agree that Np and the Np Associate will be serving the Company as independent contractors for all purposes and not as employees or partners of, or joint venturers with, the Company. Np and the Np Associate therefore will have control over the order and sequence of project work and the specific hours worked, will not have the opportunity for entrepreneurial profit, and will not be subject to Company withholding of income or employment taxes.

B.    The Company acknowledges that Np's success in performing the services depends on the participation, cooperation, and support of the Company's employees, including without limitation its most senior management.

C.    Np's services will not constitute an audit, review, or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, FICPA or other similar state or national professional bodies.

D.    If at any time during the term of this agreement or during the twelve (12)-month period following termination or expiration of this agreement, the Company directly or indirectly hires or otherwise engages the Np Associate or any other Np employee or contractor (other than through Np), then within thirty (30) days after the start of such hiring/engagement the Company agrees to pay Np a one-time fee equal to thirty-three percent (33%) of the greater of (i) their annual salary, or (ii) their

annualized compensation for the first year of service calculated based upon their first month's service to the Company, in either case regardless of whether such person remains employed/engaged by Company for an entire year. Additionally, such fee shall automatically be adjusted upward one year after such engagement if their actual first year compensation (including bonus, etc.) exceeds the amount pursuant to the prior sentence, and such excess shall be due within thirty (30) days after such one-year anniversary.

E.    Neither party will be liable for any delay or failure to perform under this Agreement (other than with respect to payment obligations) if and to the extent such delay or failure is a result of an act of God, war, earthquake, hurricane, act or threat of terrorism, civil disobedience, court order, labor dispute, or other cause beyond such party's reasonable control.

F.    Np and Mr. Long agree to maintain the confidentiality of the Company's financial information and information they come to possess concerning the Company's operations. The Company acknowledges that, upon the filing of any bankruptcy petition or any legal action(s) related thereto, the Company's financial information and information about its operations will become public.

## IV.   Termination

A.    The term of this engagement commences as of the date set forth above and continues until terminated by either party, with or without reason, by giving at least ten (10) days prior written notice to the other.

B.    Np retains the right to terminate this agreement immediately upon notice (1) if the Company is engaged in or asks the Np Associate to engage in illegal or unethical activity, or to ignore any legal or ethical obligation, or (2) in the event of the death or disability of the primary Np Associate assigned to this engagement.

## V.   Standard Disclaimers, Limitations of Liability and Indemnification

A.    The Company agrees that reports, projections or forecasts may be prepared only at the Company's direction, and will reflect the Company's own judgment. Np makes no representation or warranty as to the accuracy or reliability of reports, projections or forecasts derived from use of the information it provides, and Np will not be liable for any claims of reliance on such reports, projections, forecasts or other information. NP DISCLAIMS ANY AND ALL WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WITH REGARD TO ALL INFORMATION AND SERVICES THAT IT MAY PROVIDE PURSUANT TO THIS AGREEMENT. Np will not be liable for any non-compliance of reports, projections, forecasts or other information with federal, state, or local laws or regulations.

B.    The Company agrees that, with respect to any claims the Company may assert against Np in connection with this agreement or the relationship arising hereunder, Np's total liability will not exceed the amount of the greatest one (1) month of Fees invoiced to the Company in the last 12 months of services invoiced.

C.    As a condition for recovery of any liability, the Company must give Np written notice of the alleged basis for liability within thirty (30) days of discovering the circumstances giving rise thereto, in order that Np will have the opportunity to investigate in a timely manner and, where possible, correct or rectify the alleged basis for liability; provided that the failure of the Company to give such notice will only affect the rights of the Company to the extent that Np is actually prejudiced by such failure. In any event, the Company must assert any claim against Np within six (6) months after discovery of claim or thirty (30) days after the termination or expiration of this agreement, whichever is earlier.

D.    Np will not be liable in any event for incidental, consequential, punitive, or special damages, including without limitation, any interruption of business or loss of business, profit, or goodwill.

ORLDOCS 20060860 2

E.    Neither party will be liable for any delay or failure to perform under this agreement (other than with respect to payment obligations) if and to the extent such delay or failure is a result of an act of God, war, earthquake, hurricane, act or threat of terrorism, epidemic, pandemic, shelter in place or similar government action, civil disobedience, court order, labor dispute, or other cause beyond such party's reasonable control

F.    Company agrees to indemnify, defend and hold Np harmless from and against any claims and liability based upon any of the information or data that Company provides to Np, unless and to the extent that Np's liability is the result of its own gross negligence.

## VI.  Dispute Resolution

A.    This agreement will be governed by and construed in all respects in accordance with the laws of the State of Florida, without giving effect to conflicts-of-laws principles.

B.    In the event of any dispute, disagreement or difference with respect to the interpretation of any term or provision of this agreement not resolvable by the parties hereto and which, in the judgment of either party, materially affects or impairs its ability to perform under this agreement, either party may, upon written notice to the other, demand that such dispute, disagreement or difference be submitted to arbitration. Any action for equitable relief shall not be subject to this Paragraph. The dispute shall thereupon be promptly submitted to arbitration before three arbitrators (unless the parties agree to one arbitrator) designated by the American Arbitration Association and shall be conducted in Hillsborough County, Florida, in accordance with the rules and procedures promulgated by said American Arbitration Association. The arbitrators designated and acting pursuant to this Paragraph shall have no power to depart from or change any of the provisions thereof except as otherwise provided herein. The determination of the arbitrator(s) (or the majority in the event of arbitration before three arbitrators) shall be binding upon both parties. In any case the arbitrator(s) shall be requested to make a determination as to the allocation of costs and expenses.

C.    Subject to Paragraph B above, exclusive venue for any litigation proceeding for equitable relief pertaining to this agreement shall, to the extent permitted by law, be in the state courts located in Hillsborough County, Florida, and each party consents to the jurisdiction of the foregoing courts.

D.    In the event of any litigation, arbitration or other proceeding involving either party in order to enforce or defend any rights under this agreement, the non-prevailing party shall reimburse the prevailing party for all direct, indirect or incidental expenses incurred, including, but not limited to, all attorneys' fees (including paralegal fees), court costs and other expenses incurred throughout all negotiations, proceedings, trials or appeals undertaken in order to enforce the prevailing party's rights hereunder, including without limitation those incurred in connection with determining the reasonableness thereof and/or the right thereto.

E.    <u>WAIVER OF JURY TRIAL</u>:  IN THE EVENT OF ANY LITIGATION BASED ON, ARISING OUT OF, UNDER OR IN CONNECTION WITH, THIS AGREEMENT, AGENT AND ASSOCIATION EACH HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE ALL RIGHT TO A TRIAL BY JURY.

## VII.  Miscellaneous Provisions

A.    All notices required or permitted to be given under this agreement shall be in writing and delivered via prepaid USPS first class certified mail or priority courier for next or second day delivery (e.g. FedEx or UPS).

B.    This agreement contains the entire agreement between Np and the Company, superseding any prior oral or written statements, proposals, understandings or agreements. The terms of this agreement are severable, and they may not be amended except in writing signed by Np and the Company.

C.    Neither the Company nor Np will be deemed to have waived any rights or remedies accruing under this agreement unless such waiver is in writing and signed by the party electing to waive the right or remedy.  No Np Associate is authorized to amend or waive any provision of this agreement.

D.    If any portion of this agreement is found to be unenforceable, the rest of the agreement will be enforceable except to the extent that the severed provision deprives either party of a substantial portion of its bargain. This agreement binds and benefits the successors of Np and the Company.

E.    Each person signing below is authorized to sign on behalf of the party indicated, and in each case such signature is the only one necessary.

F.    The mailing address for payments by the Company is:

> Nperspective Advisory Services, LLC
> 941 W. Morse Blvd, Suite 100
> Winter Park, FL 32789

G.    The ACH/wire transfer payment instructions for payments to Np are:

| | |
|---|---|
| **Bank:** | Fifth Third Bank<br>Cincinnati, OH 35263 |
| **ABA Number:** | 042000314 (if paid by wire)<br>063109935 (if paid via ACH) |
| **Account Name:** | Nperspective Advisory Services, LLC |
| **Account Number:** | 7971845719 |
| **Ref:** | Sender's Name and Transaction Information |

H.    Any provisions of this agreement which expressly or by their nature would reasonably be expected to survive the term of this agreement shall survive, including without limitation the provisions concerning payment of Fees, indemnification, limitation of liability, hiring and dispute resolution.

I.    All pronouns shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the case may require. Every covenant, term and provision of this agreement shall be construed simply according to its fair meaning and not strictly for or against any party hereto. This agreement shall not be construed against either party by virtue of a party being deemed the agreement's drafter.

J.    This agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together will constitute one and the same instrument.

The parties have executed this Project Work Agreement by their duly authorized representatives as of the respective dates indicated below.

**The Center For Special Needs Trust Administration, Inc.**

_Michelle Diebert_
Signature

_Michelle Diebert_
Name

_President_
Title: 1 of 3 Directors

_11/14/2023_

**Nperspective Advisory Services, LLC**

Signature

Gary Colbert
Name

President
Title

Page 5 of 5

ORLDOCS 20060860 2

Date signed

_November 10, 2023_ _____
Date signed

_____
Signature

_Laura Davis_____
Name

_Vice President_____
Title: 2 of 3 Directors

_11/14/2023_____
Date signed

_____
Signature

_Carl Schroeder_____
Name

_Secretary_____
Title: 3 of 3 Directors

_11/14/23_____
Date signed

Page 6 of 5

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                    Chapter 11

THE CENTER FOR SPECIAL NEEDS          Case No.
TRUST ADMINISTRATION, INC.,

      Debtor.
_____/

**DECLARATION OF WILLIAM A. LONG, JR. IN SUPPORT
OF DEBTOR'S APPLICATION FOR AUTHORIZATION TO EMPLOY
AND COMPENSATE NPERSPECTIVE ADVISORY SERVICES, LLC AS
RESTRUCTURING ADVISOR AND TO APPOINT WILLIAM A. LONG, JR. AS
CHIEF RESTRUCTURING OFFICER, EFFECTIVE AS OF THE PETITION DATE**

     I, William A. Long, Jr., who, being duly sworn, submits the following statement in compliance with 11 U.S.C. §§ 327, 328 and 329 and Bankruptcy Rules 2014 and 2016, declares as follows:

     1.     I am William A. Long, Jr.  I am employed by Nperspective Advisory Services, LLC ("**NP**") which is located at 2200 North Westshore Blvd., Suite 200, Tampa, Florida 33602-4813.

     2.     This Declaration is submitted in support of the *Debtor's Application for Authorization to Employ and Compensate Nperspective Advisory Services, LLC as Restructuring Advisor and to Appoint William A. Long, Jr. as Chief Restructuring Officer, Effective as of the Petition Date* (the "**Application**").  This Affidavit is submitted to comply with 11 U.S.C. §§327, 328 and 329, and Bankruptcy Rules 2014 and 2016.  Unless otherwise stated, this Affidavit is based upon facts of which I have personal knowledge.

     3.     In preparing this Declaration, I reviewed the list of creditors of the Debtor.

     4.     Effective November 14, 2023, the Debtor, a 501(c)(3) non-profit corporation, engaged NP to provide restructuring advisory services. The scope of services to be provided by

NP also state that NP would provide me to be appointed as Chief Restructuring Officer ("**CRO**") for the Debtor.

5.      NP is not a creditor of the Debtor. Prior to the Petition Date, the Debtor paid NP an initial retainer in the amount of $20,000 and a supplemental retainer in the amount of $20,000 (collectively, the "**Retainer**"). In addition, NP received payments totaling $118,428.08 for prepetition services rendered. The Retainer was applied to remaining balance of prepetition invoices for services rendered, and the balance will be held to reduce NP's application for postpetition fees and costs. Postpetition, the Debtor's obligation to pay fees and costs will accrue as an administrative priority obligation and will be paid pursuant to one or more orders of this Court. There is no agreement of any nature as to the sharing of any compensation to be paid to NP.

6.      To the best of my knowledge, formed after reasonable inquiry, neither I nor any employee employed by NP holds any interest adverse to the Debtor, the estate, or any other parties in interest.

7.      Neither I nor any employee employed by NP holds a direct or indirect equity interest in the Debtor, or its affiliates, and has no such right to acquire such an interest.

8.      Neither I nor any employee employed by NP now holds, or has ever held, a direct or indirect equity interest (including stock, stock warrants or a partnership interest) in the Debtor, and no such employee now has, nor has ever had, any right to acquire such an interest.

9.      Except as otherwise disclosed below, neither I nor any employee employed by NP is now, or has ever served in the past, as an officer, director or employee of the Debtor. Prepetition, through NP, I provided services to the Debtor under the title "Chief Restructuring Officer," with the understanding that I would be appointed, subject to Court approval, as CRO in any chapter 11

bankruptcy filing by the Debtor. Immediately prior to the filing of the Petition, I was appointed as Chief Restructuring Officer by resolution of the Debtor's board of directors, which appointment is subject to approval by the Court as requested in the application.

10.    Except as discussed above with respect to the services as CRO, neither I nor any employee employed by NP is, or has ever been, in control of the Debtor or is a relative of a director, officer or person in control of the Debtor.

11.    Neither I nor any employee employed by NP is, or has ever been, a general or limited partner of a partnership in which the Debtor is also a general or limited partner.

12.    Neither I nor any employee employed by NP is, or has ever served as, an officer, director or employee of a financial advisor which has been engaged by the Debtor in connection with the offer, sale, or issuance of a security of the Debtor.

13.    Neither I nor any employee employed by NP has ever acted as or represented a financial advisor of the Debtor in connection with the offer, sale, or issuance of a security of the Debtor.

14.    Except as set forth above, to the best of my knowledge, neither I nor any employee employed by NP presently represents any person adverse to the Debtor or the estate, on any matter related to the Debtor or the estate.  I do not believe that any actual conflict of interest exists with respect to services being rendered to the Debtor.

[*Remainder of Page Intentionally Blank*]

4863-4790-3127, v. 1

15.     Based on the foregoing, I am disinterested as defined in 11 U.S.C. § 101(14).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge and belief after diligent inquiry.

Executed on February 9, 2024.

_____
William A. Long, Jr.

4863-4790-3127, v. 1