UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                        Chapter 11

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                   Case No. 8:24-bk-676-RCT

            Debtor.                           *Emergency Relief Requested*

_____/

### DEBTOR'S EMERGENCY APPLICATION FOR AUTHORIZATION TO EMPLOY EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING, AND <u>SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE</u>

THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., as debtor and debtor in possession (the "**Debtor**"), respectfully requests the entry of an order authorizing (i) the employment of Epiq Corporate Restructuring, LLC ("**Epiq**") as claims, noticing and solicitation agent (the "**Claims and Noticing Agent**"). The Debtor further requests that all relief be granted effective as of the Petition Date (defined below). In support of the application, the Debtor respectfully represents as follows:

### <u>Jurisdiction and Venue</u>

1.      This Court has jurisdiction to consider this application pursuant to 28 U.S.C. §§157 and 1334.  The subject matter of this application is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2.      The statutory predicates for the relief requested herein are Sections 105(a) of Title 11 of the United States Code (the "**Bankruptcy Code**") and 28 U.S.C. § 156(c).

## Background

3.      On February 9, 2024 (the "**Petition Date**"), the Debtor filed its Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code.

4.      The Debtor continues to operate its business and manage its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or examiner, and creditors' committee has not yet been appointed.

6.      The Debtor is a 501(c)(3) non-profit corporation that administers pooled trusts and special needs trusts. For more information about the Debtor's background, please see the Debtor's *Case Management Summary* (Doc. No. 7).

## Relief Requested

6.      The Debtor seeks entry of an order, in a form substantially similar to the form attached as **Exhibit A** (the "**Proposed Order**"), appointing Epiq as the Claims and Noticing Agent and authorizing Epiq to assume full responsibility for, among other things, the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtor's case.

7.      The Debtor has not yet filed its bankruptcy schedules, but it anticipates that approximately 1,500 creditors will need to receive notice throughout this Chapter 11 case. Upon considering the number of anticipated claimants, the nature of the claims, and the Debtor's business, the Debtor believes that appointment of a claims and noticing agent is necessary and in the best interests of the Debtor's estate and the Debtor's creditors.

8.      Epiq is eminently experienced in serving as claims and noticing agents in Chapter 11 cases of all sizes, including large Chapter 11 cases. *See, e.g.*, *In re Bird Global, Inc.*, No. 23-

20514 (CLC) (Bankr. S.D. Fla. Dec 20, 2023); *In re MV Realty PBC, LLC*, No. 23-17590 (EPK) (Bankr. S.D. Fla. Sep 22, 2023); *In re Delphi Behavioral Health Group, LLC, et al.,* No. 23-10945 (PDR) (Bankr. S.D. Fla. Feb. 10, 2023); *In re 1 Global Capital LLC, et al.,* No. 18-19121 (RBR) (Bankr. S.D. Fla. Sept. 26, 2018); *In re Robb & Stucky Limited LLLP,* No. 11-02801 (CED) (Bankr. M.D. Fla. Feb. 24, 2011); *In re Pipeline Health System, LLC, et al.,* No. 22-90291 (MI) (Bankr. S.D. Tex. Oct. 3, 2022); *In re Compute North Holdings, Inc., et al.,* No. 22-90273 (MI) (Bankr. S.D. Tex. Sept. 22, 2022); *In re Am. Eagle Del. Holding Co. LLC*, No. 22-10028 (JKS) (Bankr. D. Del. Jan. 18, 2022); *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021).

9.       The Debtor selected Epiq to serve as the Claims and Noticing Agent after obtaining and reviewing engagement proposals from at least two (2) other claims and noticing agents to ensure selection through a competitive process. Based on all engagement proposals obtained and reviewed, Epiq's rates are competitive and reasonable in light of Epiq's quality of services and expertise. The terms of retention, including Epiq's fees, are set forth in Epiq's Services Agreement attached hereto as **Exhibit B** (the "**Engagement Agreement**"); provided, however, that Epiq is seeking approval solely of the terms and provisions as set forth in this Application and as modified by the proposed order attached hereto.

10.      Appointing Epiq as Claims and Noticing Agent will expedite the distribution of notices and the processing of claims. Further, Epiq's appointment will relieve administrative burden from the clerk's office cause by processing what could be an overwhelming number of claims. In support of this Application, the Debtor submits the *Declaration of Kate Mailloux in Support of Debtor's Application for Authorization to Employ Epiq Corporate Restructuring, LLC*

*as Claims, Noticing, and Solicitation Agent Effective as of the Petition Date* (the "**Mailloux Declaration**"), attached as <u>**Exhibit C**</u>.

11.     The relief requested in this application is limited to services to be performed by Epiq as Claims and Noticing Agent pursuant to the clerk's delegation of duties under 28 U.S.C. § 156(c). Any additional work Epiq may perform for the Debtor in the future outside of such scope is not the subject of this application. Any expansion of Epiq's duties to duties outside of the scope of 28 U.S.C. § 156(c) would be the subject of a separate application.

12.     Specifically, as Claims and Noticing Agent, Epiq will perform the following tasks (the "**Claims and Noticing Services**"), including all quality control relating to the foregoing tasks:

   a. Prepare and serve required notices and documents in the case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of the case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims and objections to claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, (vii) any motion to convert, dismiss, appoint a trustee, or appoint and examiner filed by the United States Trustee's Office, and (viii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the case;

   b. Maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, "**Schedules**"), listing the Debtor's known creditors and the amounts owed thereto;

   c. Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "Master Service List" in accordance with Local Rule 2002-1(H); update said lists and make said lists available upon request by a party-in-interest or the Clerk;

   d. Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.   Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.   Assisting the Debtor with the preparation of the Debtor's Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("SOFAs") (as needed);

g.   For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

h.   Process all proofs of claim or proofs of interest received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim or proofs of interest in a secure area;

i.   Maintain the official claims register for each Debtor (the "**Claims Registers**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor, and (vii) any disposition of the claim;

j.   File an updated claims register with the Court, in alphabetical and/or numerical order, upon request and direction of the Clerk of the Court;

k.   Allow public access to claims and the claims register at no charge;

l.   Maintain an electronic platform for purposes of filing proofs of claim;

m.   Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

n.   Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); provided, however, that if any evidence of transfer of claim(s) is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to waive the 21-day notice and objection period required under Bankruptcy Rule 3001(e), then Epiq may process the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

o.   Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of the Claims and Noticing Agent, not less than weekly;

p.  Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

q.  Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

r.  Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

s.  Provide such other related claims and noticing services as the Debtor may require in connection with this Chapter 11 Case;

t.  If a case is converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the case;

u.  Thirty (30) days prior to the close of this Chapter 11 Case, to the extent practicable, request that the Debtor submit to the Court a proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this case;

v.  Within fourteen (14) days of entry of an Order dismissing a case or within thirty (30) days of entry of a Final Decree, (a) forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. If a case has jointly administered entities, one combined register shall be docketed in the lead case containing claims of all cases. The Claims and Noticing Agent shall further box and transport all original claims to the Atlanta Federal Records Center, 4712 Southpark Blvd, Ellenwood, GA 30294 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims; and

w.  Within fourteen (14) days of entry of an Order converting a case, (a)forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. If a case has jointly-administered entities, one combined register shall be docketed in the lead case containing claims of all cases. A Final Claims Register shall also be docketed in each jointly-administered case containing the claims of only that specific case. The Claims and Noticing Agent shall further box and transport all original claims to the Atlanta Federal Records Center, 4712 Southpark Blvd, Ellenwood, GA 30294 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

x.  Assisting with solicitation, balloting, and tabulation of votes in connection with any chapter 11 plan proposed, and in connection with such services, processing requests for documents from any parties in interest;

6

y.  Preparing the certification of votes of any proposed chapter 11 plan submitted in connection with this Chapter 11 Case in accordance with any solicitation order to be issued by the Court and testifying in support of such certification;

z.  Attending related hearings, as may be requested by the Debtor or their counsel;

aa. Managing any distribution pursuant to any confirmed plan prior to the effective date of such plan; and

bb. Providing such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement that may be requested from time to time by the Debtor, the Court, or the Clerk's office

13.    Additionally, to the extent any notice served is required to be given via regular mail, Epiq may, before mailing the notice of commencement or key matrix mailings, run the list of creditors and equity security holders through (i) the National Change of Address software maintained by the United States Postal Service (the "**USPS**") and (ii) standardization and verification software that is CASS (Coding Accuracy Support System) certified by the USPS (clauses (i) and (ii) collectively, the "**USPS Software**") to update any addresses provided by the Debtor based on their books and records and to conform such records to USPS standards. If the USPS Software determines that a mailing address has changed, the Debtor proposes that Epiq shall mail documents to the updated address; *provided, however*, that Epiq shall be under no obligation to mail to the original address. If mail is returned to Epiq as undeliverable with a forwarding address, the Debtor proposes that Epiq shall re-mail the document to the new address and update its mailing database accordingly. If mail is returned to Epiq as undeliverable with no forwarding address, the Debtor proposes that Epiq should be under no further obligation to mail any notices or other pleadings to that address.

14.    In addition to the foregoing, Epiq will assist with, among other things: (a) maintaining and updating the master mailing list of creditors; (b) tracking and administration

of claims; and (c) performing other administrative tasks pertaining to the administration of this Chapter 11 Case, as may be requested by the Debtor or the Clerk's Office.  Epiq will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk of the Court and the Judicial Conference of the United States and as may be entered by the Court's order.

15.     The fees to be charged by Epiq in connection with this Chapter 11 Case are set forth in the Engagement Agreement.  Prior to the Petition Date, the Debtor provided Epiq with a retainer in the amount of $25,000.00.  The Debtor proposes that the cost of Epiq's services be paid from the Debtor's estate as provided by 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A).  The Debtor respectfully submit that Epiq's rates for its services in connection with the notice, claims processing and solicitation services are competitive and comparable to the rates charged by its competitors for similar services. Professional fees exclude costs associated with print, postage/delivery fees, publication and data charges incurred by the estate.

16.     The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtor's estate pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

17.     As part of the overall compensation payable to Epiq under the terms of the Engagement Agreement, the Debtor has agreed, subject to certain exceptions, to indemnify and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents, against any losses incurred by Epiq arising out of, in connection with, or related to (a) any gross negligence or willful misconduct by the Debtor, its employees, agents, or representatives, or misrepresentations made by such persons to third parties in connection with Epiq's acts or omissions in connection with its rendering the Services (as defined in the Engagement Agreement); (b) any breach of the Engagement Agreement by the Debtor; or (c) any erroneous instructions or information provided to Epiq by the Debtor for use in providing services pursuant to the Engagement Agreement.

18.     To the best of Epiq's knowledge, and except as set forth in the Mailloux Declaration, Epiq neither holds nor represents an interest materially adverse to the Debtor's estate nor has a connection to the Debtor, their creditors or related parties with respect to any matter for which Epiq will be employed.  Epiq may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor.

19.     In connection with its retention as Claims and Noticing Agent, Epiq represents in the Mailloux Declaration, among other things, that:

a.  Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

b.  By accepting employment in this Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with the Debtor's case;

c.  In its capacity as Claims and Noticing Agent in this Chapter 11 Case, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

d. It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

20.    To the extent that there is any inconsistency between this Application, the Proposed Order and the Engagement Agreement, the Proposed Order shall govern.

21.    The Debtor has provided copies of this Section 156(c) Application to the Clerk of Court and to the United States Trustee and submit that no further notice is necessary under the circumstances.

WHEREFORE, Debtor respectfully requests entry of an order substantially in the form attached hereto as **Exhibit A** granting (i) the relief requested herein; and (ii) Debtor such other and further relief as the Court deems just and proper.

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially in the form attached as **<u>Exhibit A</u>** (i) approving this application effective as of the Petition Date; (ii) appointing Epiq as Claims and Noticing Agent for the purposes set forth herein; (iii) authorizing the Debtor to employ Epiq as set forth herein; (iv) authorizing the Debtor to compensate Epiq as set forth herein; and (v) granting such other and further relief as is just.

DATED: February 9, 2024

*/s/ Matthew B. Hale*
Scott A. Stichter (FBN 0710679)
Matthew B. Hale (FBN 0110600)
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 East Madison Street, Suite 200
Tampa, FL 33602
Telephone: (813) 229-0144
Email: sstichter@srbp.com; mhale@srbp.com
Attorneys for Debtor

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Debtor's Emergency Application for Authorization to Employ Epiq Corporate Restructuring, LLC as Claims, Noticing, and Solicitation Agent Effective as of the Petition Date* has been furnished on this 9th day of February, 2024, by the Court's CM/ECF electronic mail system to all parties receiving electronic noticing. Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on all parties required to be served, including to the Local Rule 1007-2 Parties in Interest List, and will file a certificate or affidavit of service.

*/s/ Matthew B. Hale*
Matthew B. Hale

4872-9362-5242, v. 4

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                         Case No. 8:24-bk-676-RCT

      Debtor.

_____/

### ORDER GRANTING DEBTOR'S APPLICATION FOR AUTHORIZATION TO EMPLOY EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING, AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE

THIS CASE came before the Court for hearing on February __, 2024 at _____ _.m., upon the application (Doc. No. __) (the "Application") of the THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., as debtor and debtor-in-possession (the "Debtor") for entry of an order authorizing the employment of Epiq Corporate Restructuring, LLC, ("Epiq") as the claims, noticing, and solicitation agent for the Debtor, pursuant to 28 U.S.C. § 156(c),  as more fully set forth in the Application.

The Court has considered the Application, the Mailloux Declaration,[1] and the First Day Declaration, and finds and concludes that the relief requested is in the best interests of the Debtor's estate, its creditors and all other parties in interest. The Court further finds that due and sufficient notice of the Application has been given and that the Court has jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. The Court concludes that consideration of the Application and the relief requested therein is a core proceeding

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

pursuant to 28 U.S.C. § 157(b) and that the Court venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Based on the representations made in the Mailloux Declaration, the Court finds and concludes that Epiq does not hold or represent an interest adverse to the Debtor's estate. Further, the Court finds and concludes that due and proper notice of the Application has been provided and no other or further notice need be provided. The Court, having determined that the legal and factual bases set forth in the Application and stated on the record at the hearing establish just cause for the relief granted herein, concludes that Application is due to be granted as set forth herein. Accordingly, it is

**ORDERED:**

1.      The Application is **APPROVED.**

2.      The Debtor is authorized to employ and retain Epiq as their notice, claims and solicitation agent in accordance with the terms and conditions set forth in the Application and the Engagement Agreement, effective as of the commencement of the Debtor's chapter 11 case.

3.      The terms of the Engagement Agreement are approved as provided herein subject to the terms of this Order.

4.      Pursuant to 28 U.S.C. § 156(c), Rule 2002 of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(B), Epiq is authorized to provide noticing, claims processing and balloting services as set forth in the Application and the Engagement Agreement, including, among others, as requested:

> a.      Prepare and serve required notices and documents in the case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of the case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims and objections to claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure

2

statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, (vii) any motion to convert, dismiss, appoint a trustee, or appoint and examiner filed by the United States Trustee's Office, and (viii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the case;

b.     Maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

c.     Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "Master Service List" in accordance with Local Rule 2002-1(H); update said lists and make said lists available upon request by a party-in-interest or the Clerk;

d.     Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.     Assisting the Debtor with the preparation of the Debtor's Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("SOFAs") (as needed);

g.     For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s)  and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

h.     Process all proofs of claim or proofs of interest received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim or proofs of interest in a secure area;

i.     Maintain the official claims register for each Debtor (the "Claims

3

Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor, and (vii) any disposition of the claim;

j.      File an updated claims register with the Court, in alphabetical and/or numerical order, upon request and direction of the Clerk of the Court;

k.      Allow public access to claims and the claims register at no charge;

l.      Maintain an electronic platform for purposes of filing proofs of claim;

m.      Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

n.      Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); provided, however, that if any evidence of transfer of claim(s) is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to waive the 21-day notice and objection period required under Bankruptcy Rule 3001(e), then Epiq may process  the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

o.      Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of the Claims and Noticing Agent, not less than weekly;

p.      Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

q.      Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary  notations on and/or changes to the claims register;

r.      Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

4

s.      Provide such other related claims and noticing services as the Debtor may require in connection with this chapter 11 case;

t.      If a case is converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the case;

u.      Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submit to the Court a proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this case;

v.      Within fourteen (14) days of entry of an Order dismissing a case or within thirty (30) days of entry of a Final Decree, (a) forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. If a case has jointly- administered entities, one combined register shall be docketed in the lead case containing claims of all cases. The Claims and Noticing Agent shall further box and transport all original claims to the Atlanta Federal Records Center, 4712 Southpark Blvd, Ellenwood, GA 30294 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims; and

w.      Within fourteen (14) days of entry of an Order converting a case, (a) forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. If a case has jointly-administered entities, one combined register shall be docketed in the lead case containing claims of all cases. A Final Claims Register shall also be docketed in each jointly-administered case containing the claims of only that specific case. The Claims and Noticing Agent shall further box and transport all original claims to the Atlanta Federal Records Center, 4712 Southpark Blvd, Ellenwood, GA 30294 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

x.      Assisting with solicitation, balloting, and tabulation of votes in connection with any chapter 11 plan proposed, and in connection with such services, processing requests for documents from any parties in interest;

y.      Preparing the certification of votes of any proposed chapter 11 plan submitted in connection with this chapter 11 case in accordance with any solicitation order to be issued by the Court and testifying in support of such certification;

z.    Attending related hearings, as may be requested by the Debtor or their counsel;

aa.    Managing any distribution pursuant to any confirmed plan prior to the effective date of such plan; and

bb.    Providing such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement that may be requested from time to time by the Debtor, the Court, or the Clerk's office

5.    In addition to the services set forth in the Application and the Engagement Agreement, Epiq is authorized to provide other noticing, claims processing, solicitation and administrative services the Debtor may request from time to time, including, but not limited to: (a) maintaining and updating the master mailing list of creditors; (b) tracking and administration of claims; and (c) performing other administrative tasks pertaining to the administration of the chapter 11 case, as may be requested by the Debtor or the Clerk of this Court (the "Clerk's Office").

6.    Epiq is appointed as agent for the Clerk's Office and, as such, is designated as the authorized repository for all proofs of claims filed in this chapter 11 case and is authorized and directed to maintain official claims registers for the Debtor and to provide the Clerk's Office with a certified duplicate thereof as the Clerk's Office may direct. To the extent any government or non-government claimant files a proof of claim with the Court via CM/ECF or manually with the Clerk of the Court, as opposed to with Epiq, such filings will be deemed timely if filed by the applicable bar date set by the Court.

7.    Epiq shall, on a monthly basis, submit detailed invoices to the Debtor for the services rendered, with a copy to the Office of the United States Trustee and, to the extent applicable, to counsel for any official committee(s) appointed during the course of this chapter 11 case.

8.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq incurred pursuant to the Engagement Agreement shall be an administrative expense of the Debtor's estate.

9.     Without further order of the Court, the Debtor is authorized to compensate Epiq in accordance with the terms and conditions of the Engagement Agreement, upon Epiq's submission to the Debtor of invoices summarizing in reasonable detail the services and expenses for which compensation is sought; provided, however, that Epiq shall provide copies of such invoices to the Office of the United States Trustee and any official committee of creditors appointed in th chapter 11 case.

10.     Epiq shall not cease providing claims processing services during this chapter 11 case for any reason without prior order of this Court authorizing Epiq to do so; provided, however, that Epiq may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtor, the Office of the United States Trustee and any official committee of creditors appointed in this case by facsimile or overnight delivery; provided further, that except as expressly provided herein, the Debtor and Epiq may otherwise terminate or suspend other services as provided under the Engagement Agreement.

11.     After entry of an order terminating Epiq's services, upon the closing of this case, or for any other reason, Epiq shall be responsible for archiving all proofs of claim with the Federal Records Administration, if applicable, or as otherwise directed and shall be compensated by the Debtor for such archiving services.

12.     Epiq shall provide the Clerk of the Court with a Uniform Resource Locator that can direct creditors and parties in interest to the website Epiq will maintain for this chapter 11 case.

13.     The Debtor shall indemnify Epiq under the terms of the Engagement Agreement; *provided, however* that Epiq shall not be entitled to indemnification, contribution or

reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court.

14.     Nothing herein obligates a successor chapter 7 trustee or chapter 11 trustee to employ Epiq.

15.     The Debtor and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

16.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

#   #   #

<u>Submitted by</u>:

*(Attorney is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

4853-4469-8528, v. 2

**EXHIBIT B**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1    For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt.

3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2025.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.



3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7    To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

**4.  Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



## 5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

## 6. Disposition of Data.

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7. Indemnification.

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs



(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

**8. <u>Limitation of Liability</u>**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



**9.  Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**10. Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**11.  General**

11.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



11.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



11.10    Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

        <u>If to Epiq</u>:

                Epiq Corporate Restructuring, LLC
                777 Third Avenue, 12th Floor
                New York, New York 10017
                Attn:  Brad Tuttle

        <u>If to Client</u>:

                The Center for Special Needs Trust Administration
                12425 28th St. N. Suite 301
                St Petersburg, FL 33716
                Attention Bill Long, Chief Restructuring Officer

        <u>With a copy to</u>:

                Matthew B. Hale
                Stichter Riedel Blain & Postler
                110 East Madison Street, Suite 200
                Tampa, FL 33602

11.11    Invoices sent to Client should be delivered to the following address:

                The Center for Special Needs Trust Administration
                12425 28th St. N. Suite 301
                St Petersburg, FL 33716
                Attention Laura Davis CFO

        Email:          laura.davis@centertrust.org

11.12    The "Effective Date" of this Agreement is December 22, 2023.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name:  Brad Tuttle
Title:    Senior Managing Director and GM

**CLIENT**

By:
Name:  William A. Long Jr.

Title:    Chief Restructuring Office

8



# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.



➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## NOTICING

➢ Prepare and serve required notices in these  Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.



➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.



## MISCELLANEOUS

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| IT / Programming | $55.00 – $80.00 |
| Case Managers | $85.00 – $160.00 |
| Consultants/ Directors/Vice Presidents | $160.00 – $185.00 |
| Solicitation Consultant | $190.00 |
| Executive Vice President, Solicitation | $195.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL* |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

---

[1]  Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors



## CALL CENTER RATES

| | |
|---|---|
| Standard Call Center Setup | NO CHARGE |
| Call Center Operator | $55 per hour |
| Voice Recorded Message | $0.34 per minute |

## OTHER SERVICES RATES

| | |
|---|---|
| Custom Software, Workflow and Review Resources | Quoted at time of request |
| Strategic Communication Services | Quoted at time of request |
| Escrow Services | Quoted at time of request /competitive rates |
| Exchange / ATOP Event | Quoted at time of request |
| eDiscovery | Quoted at time of request, bundled pricing available |
| Virtual Data Room -- Confidential On-Line Workspace | Quoted at time of request |
| Disbursements -- Check and/or Form 1099 | Quoted at time of request |
| Disbursements -- Record to Transfer Agent | Quoted at time of request |

# EXHIBIT C

4872-9362-5242, v. 4

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                         Case No. 8:24-bk-00676-RCT

      Debtor.

_____/

**DECLARATION OF KATE MAILLOUX IN SUPPORT
OF DEBTOR'S EMERGENCY APPLICATION FOR AUTHORIZATION TO
EMPLOY EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING,
AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE**

Kate Mailloux, being duly sworn, deposes and states:

1.      I am a Senior Director of Consulting Services of Epiq Corporate Restructuring, LLC ("Epiq"), and I am authorized to make and submit this declaration on behalf of Epiq (the "Declaration"). The statements contained herein are based upon personal knowledge. Epiq submits this Declaration in support of the application (the "Application") of the above-captioned debtor and debtor in possession (collectively, the "Debtor") for entry of an order authorizing the employment and retention of Epiq as the Debtor's claims, noticing, and solicitation agent in the above-captioned Debtor's chapter 11 case (the "Chapter 11 Case") effective as of the Petition Date[1] pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and to approve the Services Agreement, dated December 22, 2023 (the "Engagement Agreement"). The Engagement Agreement is attached to the Application as **Exhibit A**.

2.      Epiq is one of the country's leading chapter 11 administrators with expertise in

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

noticing, claims processing, balloting administration, and distribution. Epiq is well-qualified to provide experienced claims and noticing services in connection with this Chapter 11 Case. Epiq is or was retained as the claims and noticing agent in a number of large chapter 11 cases including, but not limited to, the following: *See, e.g.*, *In re Bird Global, Inc.*, No. 23-20514 (CLC) (Bankr. S.D. Fla. Dec 20, 2023); *In re MV Realty PBC, LLC*, No. 23-17590 (EPK) (Bankr. S.D. Fla. Sep 22, 2023); *In re Delphi Behavioral Health Group, LLC, et al.,* No. 23-10945 (PDR) (Bankr. S.D. Fla. Feb. 10, 2023); *In re 1 Global Capital LLC, et al.,* No. 18-19121 (RBR) (Bankr. S.D. Fla. Sept. 26, 2018); *In re Robb & Stucky Limited LLLP,* No. 11-02801 (CED) (Bankr. M.D. Fla. Feb. 24, 2011); *In re Pipeline Health System, LLC, et al.,* No. 22-90291 (MI) (Bankr. S.D. Tex. Oct. 3, 2022); *In re Compute North Holdings, Inc., et al.,* No. 22-90273 (MI) (Bankr. S.D. Tex. Sept. 22, 2022); *In re Am. Eagle Del. Holding Co. LLC*, No. 22-10028 (JKS) (Bankr. D. Del. Jan. 18, 2022); *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021); *In re RTI Holding Company, LLC,* No. 20- Case 20-12456 (JTD) (Bankr. D. Del. Oct 7, 2020); *In re Town Sports International LLC,* No. 20-12168, (CSS) (Bankr. D. Del. Sept. 16, 2020); *In re RGNGroup Holdings, LLC,* No. 20-11961 (BLS) (Bankr. D. Del. Aug. 19, 2020).

3.       The Debtor selected Epiq to serve as the notice, claims and solicitation agent as set forth in more detail in the Application. To the best of my knowledge, neither Epiq nor any of its professional personnel have any relationship with the Debtor that would impair Epiq's ability to serve as notice, claims and solicitation agent.

4.       Epiq may have or may have had relationships with some of the Debtor's creditors and may provide or may have provided professional services to entities or persons that may be creditors or parties in interest in this Chapter 11 Case. These relationships and the services provided are, however, in matters completely unrelated to this Chapter 11 Case.

2

5.      Epiq has working relationships with certain of the professionals retained by the Debtor and other parties herein, but such relationships are completely unrelated to this Chapter 11 Case. Epiq has represented, and will continue to represent, clients in matters unrelated to this Chapter 11 Case, and has had, and will continue to have, relationships in the ordinary course of its business with certain vendors and professionals in connection with matters unrelated to this Chapter 11 Case.

6.      In addition, Epiq personnel may have relationships with some of the Debtor's creditors; however, such relationships are completely unrelated to this Chapter 11 Case.

7.      Epiq is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), in that Epiq and its professional personnel:

     (a)      are not creditors, equity security holders, or insiders of the Debtor;

     (b)      are not, and were not, within two years before the date of the filing of this Chapter 11 Case, directors, officers, or employees of the Debtor; and

     (c)      do not have an interest materially adverse to the interests of the Debtor's estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

8.      To the extent that Epiq's conflicts check has revealed that certain Potential Parties-in-Interest were current or former clients of Epiq within the past three years, these parties have been identified on a list annexed hereto as **Schedule 1** (the "**Client Match List**").  However, given Epiq's neutral position as claims and noticing agent or administrative advisor for any parties listed on the Client Match List, Epiq does not view such relationships as real or potential conflicts. Further, to the best of my knowledge, any such relationship between Epiq and any parties on the Client Match List is completely unrelated to this Chapter 11 Case.

9.      Epiq has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this Chapter 11 Case. If Epiq's proposed retention is

3

approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtor in this Chapter 11 Case.

10.     Epiq represents, among other things, that:

    (a)     it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as notice, claims and solicitation agent;

    (b)     by accepting employment in this Chapter 11 Case, Epiq waives any right to receive compensation from the United States government;

    (c)     in its capacity as notice, claims and solicitation agent, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

    (d)     Epiq will not employ any past or present employees of the Debtor in connection with its work as notice, claims and solicitation agent.

11.     Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is corporate parent to certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance.  Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

12.     Epiq Systems, Inc. is a wholly owned subsidiary of Document Technologies, LLC ("DTI"), a global legal process outsourcing company, which is an ultimate wholly owned subsidiary of DTI Topco, Inc. ("DTI Topco").  DTI Topco is a privately-held entity with majority ownership held by OMERS Administration Corporation ("OAC"), the administrator of the OMERS pension funds, and managed by OMERS Private Equity Inc. ("OPE", which together with

4

OAC are referred to as "<u>OMERS</u>"), and funds managed by Harvest Partners, LP, ("<u>Harvest</u>") a leading private equity investment firm.

13.        None of Epiq's affiliates, including but not limited to OMERS and Harvest, are currently identified on the Potential Parties in Interest list.  However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

14.        Designees of OMERS and Harvest are members of the Board of Directors of DTI Topco ("<u>Parent Board Designees</u>").  No designees of OMERS or Harvest are members of the Board of Directors of DTI or Epiq, or any other subsidiaries of DTI.  Further, Epiq has the following restrictions in place (collectively, the "<u>Barrier</u>"):  (i) prior to the Debtor commencing the Chapter 11 Case, Epiq did not share the names or any other information identifying the Debtor with DTI, DTI Topco, OMERS, Harvest, or the Parent Board Designees; (ii) Epiq has not and will not furnish any material nonpublic information about the Debtor to DTI, DTI Topco, OMERS, Harvest, or the Parent Board Designees; (iii) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work on Epiq client matters or have access to Epiq client information, client files, or client personnel; (iv) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work in Epiq's offices; (v) other than the Parent Board Designees, Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, including that it does not share any employees, officers or other management with OMERS or Harvest, has separate offices in separate buildings, and has separate IT systems; and (vi) no Epiq executive or employee is a director, officer or employee of OMERS or Harvest (or vice versa other than the Parent Board Designees).

15.    Epiq has searched the names of DTI, DTI Topco, OMERS and Harvest against the Debtor and the Potential Parties in Interest list provided by the Debtor.  Based solely on the foregoing search, Epiq has determined, to the best of its knowledge, that there are no connections. Because of any applicable securities laws and the fact that Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, prior to the Petition Date, Epiq was unable to further investigate with either DTI, DTI Topco, OMERS or Harvest, to the extent necessary, any potential or actual connection between either OMERS or Harvest and the Debtor and the Potential Parties In Interest.

16.    Based on, among other things, the business separation between Epiq, OMERS and Harvest, and in light of the administrative nature of the services proposed to be performed by Epiq for the Debtor, Epiq believes that it does not hold or represent an interest adverse to the Debtor.

17.    To the extent that Epiq discovers any connection with any interested party or enters into any new relationship with any interested party, Epiq will promptly supplement its disclosure to the Court.

18.    Subject to Court approval, the Debtor has agreed to compensate Epiq for professional services rendered pursuant to 28 U.S.C. §156(c) in connection with this Chapter 11 Case according to the terms and conditions of the Engagement Agreement. Payments are to be based upon the submission of a billing statement by Epiq to the Debtor after the end of each calendar month, which includes a detailed listing of services and expenses.

19.    Epiq will comply with all requests of the Clerk of the Court and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed on this 9th day of February, 2024.

Kate Mailloux
Senior Director, Consulting Services
Epiq Corporate Restructuring, LLC

7

**SCHEDULE 1**

**<u>Client Match List</u>**

| Name |
| --- |
| N/A |

8