UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                                     Chapter 11

THE CENTER FOR SPECIAL NEEDS                              Case No. 8:24-bk-676-RCT
TRUST ADMINISTRATION, INC.,

    Debtor.
_____/

### DEBTOR'S MOTION TO REJECT
### AGREEMENT WITH BOSTON ASSET MANAGEMENT, INC.

THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC. (the "**Debtor**"), respectfully requests the authority to reject the Agreement (defined below) with Boston Asset Management, Inc. ("**BAM**"), one of Leo Govoni's entities, for investment management, marketing, and other services. In support of this Motion, the Debtor respectfully represents as follows:

### Jurisdiction and Venue

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicate for the relief sought in this Motion is 11 U.S.C. § 365(a).

### Background

2.    On February 9, 2024 (the "**Petition Date**"), the Debtor filed its Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

3.    The Debtor continues to operate as a debtor-in-possession.

**Relief Requested and Grounds for Relief**

4.    The Debtor and BAM entered into a Support Counsel Agreement dated March 9, 2001 (the "**Agreement**"). Attached hereto as **Exhibit A** is a copy of the Agreement. In summary, the Agreement provides that BAM will serve as an investment manager to the trusts of which the Debtor is trustee, market the trusts, and provide services in connection with the trusts. The compensation payable under the terms of the Agreement are "based on a percentage of the total fee charged by, and payable to, The Center…"

5.    The Agreement provides for a five-year initial term, with automatic renewals thereafter. Thus, arguably, the term of the Agreement runs through 2026.

6.    As set forth in the Case Management Summary (Doc. No. 7) and in other pleadings filed in the case, Leo Govoni, the founder of The Center, directly or through various companies or individuals, appear to have undertaken a multi-year effort to access trust funds under The Center's management. In the 2023 Annual Report filed by BAM, Govoni is listed as the president and sole director of BAM. See, **Exhibit B**.

7.    The Debtor has found another company to provide the services BAM was providing under the Agreement. The Debtor believes the services are not necessary to the Debtor or to the Trusts that the Debtor administers, and therefore the Debtor seeks to reject the Agreement. Additionally, the Debtor seeks rejection to be specifically subject to a full reservation of rights, claims, and defenses of the Debtor under or to the Agreement as well as a full reservation of rights and claims against BAM and any other party related to or affiliated with BAM.

8.    The Debtor now desires to reject the Agreement pursuant to Section 365(a) of the Bankruptcy Code, effective as of the Petition Date. The Debtor, through the exercise of its business judgment, has determined that rejection of the Agreement is in the best interest of the

Debtor's estate.

9. Pursuant to Section 365(a) of the Bankruptcy Code, the Debtor, as debtor in possession, may reject the Agreement, subject to this Court's approval of the rejection. The Court should approve the rejection by the Debtor of the Agreement if the rejection is made in the exercise of the Debtor's sound business judgment, and if such rejection benefits the Debtor's estate. *See e.g., Sharon Steel Corp. v. National Fuel Gas Distr. Corp.,* 872 F.2d 36, 39 (3d Cir. 1989); *In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984); *In re Patterson*, 119 B.R. 59 (Bankr. E.D. Pa. 1990). It is enough if the Debtor determines in its business judgment that a benefit will be realized. *Sharon Steel Corp.,* 872 F.2d at 39 (*citing In re Wheeling-Pittsburgh Steel Corp.,* 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)). The business judgment standard requires that the Court approve the Debtor's business decision unless that judgment is the product of bad faith, whim or caprice. *Lubrizol Enterprises v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986).

10. The Debtor's rejection of the Agreement complies with the provisions of Section 365(a) of the Bankruptcy Code and satisfies the business judgment standard for the reasons set forth above.

11. The Debtor respectfully requests that BAM be required to assert any claim of any nature whatsoever arising under or in connection with the Agreement and the Debtor's rejection of same on or before thirty (30) days following the entry of an order of this Court granting this Motion or be forever barred from enforcing any claim arising under or related to the Agreement or the Debtor's rejection of same against the Debtor or the Debtor's estate.

WHEREFORE, the Debtor respectfully requests entry of an order granting this Motion, authorizing the Debtor to reject the Agreement, and for such other and further relief as may be just and proper.

    /s/ Daniel R. Fogarty
Scott A. Stichter (FBN 0710679)
Daniel R. Fogarty (FBN 0017532)
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 East Madison Street, Suite 200
Tampa, FL  33602
Telephone: (813) 229-0144
Email: sstichter@srbp.com
        dfogarty@srbp.com
Proposed Attorneys for Debtor

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Debtor's Motion to Reject Agreement with Boston Asset Management, Inc.* has been furnished on this 16th day of February, 2024, by the Court's CM/ECF electronic mail system to all parties receiving CM/ECF electronic noticing. Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on all parties required to be served, including to the Local Rule 1007-2 Parties in Interest List, and by U.S. mail to BAM as set forth below, and will file a certificate or affidavit of service:

Boston Asset Management, Inc.
Attn: Jonathan Golden, Registered Agent
12707 49th Street N., Suite 900
Clearwater, FL 33762

Boston Asset Management, Inc.
Attn: Leo Govoni, President, Director
12707 49th Street N., Suite 200
Clearwater, FL 33762

    /s/ Daniel R. Fogarty
Daniel R. Fogarty (FBN 0017532)

4891-7480-4133, v. 1

# AGREEMENT

This Agreement is entered into this 9th day of March 2001, by and between The Center For Special Needs Trust Administration, Inc., a Florida not-for-profit corporation ("The Center"), and Boston Asset Management, Inc., a Florida corporation, d/b/a Boston Asset Management ("BAM"). In and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

WHEREAS, The Center wishes to establish a pooled trust pursuant to 42 U.S.C. §1396p (the "Trust") for the benefit of disabled beneficiaries; and

WHEREAS, The Center wishes to establish other similar trusts for the protection of beneficiaries pursuant to 42 U.S.C. §1396p, and/or as may be otherwise available and/or advisable ("similar instruments"); and

WHEREAS, The Center wishes to serve as trustee of the Trust, and similar instruments, and BAM wishes to provide certain services for the Trust and similar instruments; and

WHEREAS, The Center and BAM both recognize that close cooperation and long-term commitments are crucial because time and effort will be necessary for the successful establishment and development of the Trust and similar instruments; and

WHEREAS, The Center and BAM both wish to cooperate closely and make long-term commitments for the successful establishment and development of the Trust and similar instruments; and

WHEREAS, The Center and BAM hereby pledge and commit to use their best efforts to successfully establish and develop the Trust and similar instruments for the benefit of beneficiaries, disabled or otherwise;

NOW, THEREFORE:

## ARTICLE I
## GENERAL PROVISIONS

1.1     Incorporation of Recitals. The above recitals are true and correct and are incorporated herein as an integral part of this Agreement.

1.2     Acceptance of Duties; Acceptance of Terms. The Center and BAM agree to accept their duties and roles as fully set out below, and further agree to accept all of the provisions and terms of this Agreement.

Exhibit A

## ARTICLE II
## DUTIES OF BAM

BAM shall perform the following duties under this Agreement:

2.1   Serve as investment manager of the assets held in the Trust, and similar instruments, and properly execute all duties and responsibilities necessary to properly invest and manage such assets;

2.2   Market and develop the Trust and similar instruments in all respects, using its best efforts, including the making of presentations to the public as necessary or advisable;

2.3   Install and maintain a state-wide toll-free telephone line;

2.4   Furnish appropriately trained personnel for the purpose of answering questions and providing information regarding the Trust;

2.5   Provide intake and financial counseling services for potential and/or actual beneficiaries of the Trust and similar instruments;

2.6   Consult, communicate and cooperate with The Center in all aspects of the administration, operation, development, and marketing of the Trust and similar instruments; and,

2.7   Prepare, print, or cause to be printed, marketing material regarding the Trust, and similar instruments. All printed material shall be subject to final approval by The Center prior to any printing, release, and/or distribution to professionals and/or the public.

## ARTICLE III
## DUTIES OF THE CENTER

The Center shall perform the following duties under this Agreement:

3.1   Serve as Trustee and properly execute all duties and responsibilities necessary to properly administer and operate the Trust and similar instruments;

3.2   Communicate and cooperate with BAM in BAM's capacity as investment manager of the assets held in the Trust and similar instruments;

3.3   Consult with BAM, its employees, and its agents in all aspects of marketing and development of the Trust and similar instruments as may be necessary from time to time;

3.4   Provide BAM with master copies of the Trust and similar instruments, including updated copies as updates become necessary or advisable;

3.5   Coordinate with and furnish information to potential and actual beneficiaries and/or

their proper representatives that BAM may contact regarding the Trust and similar instruments; and,

3.6   Oversee the activities of BAM as such activities relate to marketing the Trust and to managing the assets held in the Trust and similar instruments.

## ARTICLE IV
## TERM OF AGREEMENT

4.1   <u>Length of Term.</u>   This Agreement shall have a five year initial term from the date first written above.

4.2   <u>Renewal and Notification Period.</u>   This Agreement will automatically renew for additional five year terms, unless either party notifies the other in writing by certified mail six months in advance of expiration of the initial or any subsequent renewal term. Such notification shall clearly express the notifying party's intent not to renew the Agreement. The parties recognize and agree that the six month notification period is necessary to provide for the smooth transition to a subsequent party. This period is to reduce, to the greatest extent possible, the potential of incurring liability for the parties, and to reduce the potential disruption of benefits and delivery of services to Trust beneficiaries.

4.3   <u>Effect of Non-renewal.</u>   Non-renewal of this Agreement shall be effective as a resignation by the non-renewing party.

4.4   <u>Duties Upon Non-renewal.</u>   The parties further agree that, in event of non-renewal by either party, the non-renewing party will cooperate in transferring that party's duties and responsibilities under this Agreement and under the Trust and similar instruments to a successor party. It shall be the responsibility of the party upon whom notice of non-renewal has been served to locate a successor party.

4.5   <u>Cooperation Upon Non-renewal.</u>   The non-renewing party hereby agrees to execute all papers and/or other documents that may be necessary to effectuate transfer of its rights, duties, or responsibilities to a new trustee or co-trustee, whichever may be applicable.

## ARTICLE V
## FEES

The Center and BAM agree that the fee paid to BAM shall be based on a percentage of the total fee charged by, and payable to, The Center in accord with its regularly published schedule of fees for services. All such fees shall be calculated on an annual basis and shall be assessed and disbursed annually, or at such other times as The Center and BAM may hereafter agree.

3

Exhibit A

## ARTICLE VI
## CONSULTATION, MEDIATION AND ARBITRATION

In order to further the interests of the Trust and similar instruments to the greatest extent possible, to ensure the greatest possible benefit to beneficiaries, and to ensure the smooth and efficient operation of the Trust and similar instruments, the parties hereby agree that the provisions of this Article VI shall serve as the sole and exclusive method of resolving claims or disputes between the parties.

6.1  **Consultation.** In the event that any claim or dispute between the parties arises under this Agreement, the party raising the claim or dispute must notify the other party in writing, by certified mail, of the existence of such claim or dispute. The parties shall be required to consult in good faith with each other and attempt to resolve the claim or dispute prior to mediation and arbitration. The parties shall resort to mediation only in the event that the parties cannot resolve the dispute within 30 days of commencing consultation.

6.2  **Mediation.** In the event mediation becomes necessary pursuant to paragraph 6.1 above, the parties shall agree on a single mediator who shall mediate all issues between the parties. If the parties are unable to agree on a mediator, then the parties hereby agree that Charles Castagna, Esq., shall mediate, or such other person as he may designate to serve as mediator. If Charles Castagna is unable or unwilling to serve or to make such a designation, then the parties hereby agree that James E. Thompson, Esq., currently of the Fowler, White law firm in Tampa, Florida, shall mediate, or such person as he may designate to serve as mediator. If James E. Thompson is unable or unwilling to serve or to make such a designation, then the parties agree to approach, in alphabetical order, each person then maintained on the list of certified mediators by the Sixth Judicial Circuit in and for Pinellas County, Florida. The first person so approached who agrees to mediate the case shall serve as mediator. Mediation shall be conducted at Clearwater, Florida, at a place designated by the mediator. If the parties are unable to resolve the dispute through mediation, then, and only then, may the parties resort to exclusive, binding arbitration as provided below for the resolution of the dispute.

6.3  **Arbitration.** Any claim or dispute between the parties that cannot be settled by mutual agreement following consultation and mediation pursuant to paragraphs 6.1 and 6.2 above shall be submitted to arbitration in accordance with the Rules then obtaining of the American Arbitration Association. Arbitration shall be conducted at Clearwater, Florida, at a place designated by the arbitrator(s). The arbitrator(s) shall render a written binding opinion and shall base their award upon written findings of fact.

6.4  **Governing Law.** This Agreement, both for purposes of this Article VI and all other Articles and provisions of this Agreement, shall be governed by and construed exclusively in accordance with the laws of the State of Florida, and the decision of the arbitrator(s) shall be rendered in accord therewith. The costs of the arbitration shall be borne by the parties in such proportion and manner as may be provided in the award.

Exhibit A

    6.5    <u>Enforcement of Award.</u>  Judgment upon any award rendered by the arbitrator(s) may be entered in any court in any state or country or application may be made to such court for a judicial acceptance of the award and an order of enforcement, as the law of the jurisdiction may require or allow.

ARTICLE VII
MISCELLANEOUS PROVISIONS

    7.1    <u>Agreement Constitutes Entire Understanding Between Parties</u>.  This Agreement constitutes the entire understanding between the parties.  No promises, agreements or representations, expressed or implied, have been made, except those contained in this writing, and all corrections and additions hereto shall be in writing, specifically designated as an addition or amendment to this Agreement, and signed by both The Center and BAM.

    7.2    <u>Force Majeure</u>.  Performance of this Agreement by the parties is subject to force majeure and is contingent upon strikes, accidents, acts of God, war, civil unrest, weather conditions, restrictions imposed by any government or government agency, or any delays beyond the control of the parties.

    7.3    <u>Severability</u>.  Any provision of this Agreement which is adjudged invalid or unenforceable under the laws of any place where the Agreement is to be performed, or is sought to be enforced, shall be deemed inoperative without invalidating such provision elsewhere or any of the other provisions of this Agreement.  Provided, however, if omission of such provision reduces the compensation due to a party hereunder by 50% or more, the affected party, at its option, may terminate this Agreement as soon thereafter as it may so choose, subject only to the provisions for notification in paragraph 4.2, and the provisions for cooperation and transferring duties in paragraphs 4.4 and 4.5.

    7.4    <u>Notices</u>.  All notices hereunder shall be in writing and shall be sent by certified mail, return receipt requested.  A notice shall be deemed given on the date sent, as evidenced by the date stamp on the certified mail receipt.  All notices shall be sent to the address of the parties set forth below:

        If to The Center:        The Center For Special Needs Trust Administration, Inc.
                                               622 Bypass Drive, Ste. 200
                                               Clearwater, FL 33764

        If to BAM:                   Leo Govoni
                                               Boston Asset Management
                                               2600 First Avenue, North
                                               St. Petersburg, FL 33713

    The parties shall notify each other of any changes in address by giving notice in writing of

such changes in accordance with this section.

7.5     Non-exclusive License.  In connection with its duties and responsibilities under this Agreement, The Center hereby grants to BAM a non-exclusive license for the use of The Center's name, logo, and any marks it now or hereafter possesses or acquires.  The use of said licensed property is limited to uses by BAM, and any third parties that BAM may designate from time to time, for the sole purpose of operating, developing, and/or marketing of the Trust.

7.6     Agreement Is Binding; Amendments.  This Agreement, and any changes or amendments to it, is binding on the parties and their principals, associates, employees, representatives, agents, consultants, members and representatives of all associated groups, and their respective heirs, executors, successors and assigns.  All amendments and addenda to this Agreement shall be in writing and shall be specifically designated as an amendment or addendum to this Agreement.

7.7     Assignability.  This Agreement cannot be assigned, sold, bartered, traded or otherwise transferred, either in part or in whole, by either party without the prior written consent of the other, which shall not be unreasonably withheld.  Notwithstanding the above, either party may assign its rights, duties, and responsibilities under this Agreement to a successor corporation or entity that is specifically designated by the respective board of directors of each party as being a successor to that party for purposes of this section.

7.8     Gender; Use of Singular or Plural.  Unless the context otherwise requires, words denoting the plural shall include the singular, words denoting the singular shall include the plural, and words denoting any gender shall include all other genders, including neuter.  The word "person" includes an individual, a corporation, a partnership, a trust, and any other entity.

7.9     Waiver.  No failure by either party to enforce their rights in respect of a departure from the terms of this Agreement shall obligate said party to permit any subsequent departure.  No waiver by either party of any of the terms hereof, or of any breach hereof, shall constitute or be deemed to be a waiver of any of such terms, or of any such breach, in any other case, whether prior or subsequent thereto.

7.10    Confidentiality.  The parties agree to treat this Agreement as confidential and undertake not to disclose its contents to any third party for any purpose not related to this Agreement.

7.11    Section Headings.  Section headings are for purposes of convenience only and shall have no bearing on the interpretation of any provision of this Agreement.

WHEREFORE, the parties have hereunto set their hands on the date first written above.

Exhibit A

**THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC.**

_____
By: Brett Walrath
Its: President

**WITNESSES**

_____ John Burns
Printed Name:

_____ Jeremy Dill
Printed Name:

**BOSTON ASSET MANAGEMENT, INC. d/b/a BOSTON ASSET MANAGEMENT**

_____
By:
Its: President

_____ John Burns
Printed Name:

_____ Jeremy Dill
Printed Name:

7

Exhibit A

# 2023 FLORIDA PROFIT CORPORATION ANNUAL REPORT

DOCUMENT# V51051

**Entity Name:** BOSTON ASSET MANAGEMENT, INC.

**FILED**
**Mar 03, 2023**
**Secretary of State**
**4646911677CC**

**Current Principal Place of Business:**

12707 49TH STREET N.
SUITE 800
CLEARWATER, FL 33762

**Current Mailing Address:**

12707 49TH STREET N.
SUITE 800
CLEARWATER, FL 33762 US

**FEI Number:** 59-3132513

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

GOLDEN, JONATHAN
12707 49TH STREET N.
 SUITE 900
CLEARWATER, FL 33762 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                                                                         Date

**Officer/Director Detail :**

| | |
|---|---|
| Title | D, PRESIDENT |
| Name | GOVONI, LEO J |
| Address | 12707 49TH STREET N SUITE 200 |
| City-State-Zip: | CLEARWATER FL 33762 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: LEO J GOVONI                                           D                                           03/03/2023

Electronic Signature of Signing Officer/Director Detail                                                                       Date

Exhibit B