ORDERED.

**Dated: February 16, 2024**

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Case No. 8:24-bk-00676-RCT |
| Debtor. / | |

**ORDER APPROVING DEBTOR'S APPLICATION FOR
AUTHORIZATION TO EMPLOY EPIQ CORPORATE
RESTRUCTURING, LLC AS CLAIMS, NOTICING, AND
SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE**

THIS CASE came before the Court for hearing on February 13, 2024, at 3:30 p.m., upon the application (Doc. No. 20) (the "**Application**") of the The Center for Special Needs Trust Administration, Inc., as debtor and debtor-in-possession (the "**Debtor**"), for entry of an order authorizing the employment of Epiq Corporate Restructuring, LLC, ("**Epiq**") as the claims, noticing, and solicitation agent for the Debtor, pursuant to 28 U.S.C. § 156(c), as more fully set forth in the Application.

The Court has considered the Application, the Mailloux Declaration,[1] and the First Day Declaration, and finds and concludes that the relief requested is in the best interests of the Debtor's estate, its creditors and all other parties in interest. The Court further finds that due and sufficient notice of the Application has been given and that the Court has jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. The Court concludes that consideration of the Application and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b) and that the Court venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Based on the representations made in the Mailloux Declaration, the Court finds and concludes that Epiq does not hold or represent an interest adverse to the Debtor's estate. Further, the Court finds and concludes that due and proper notice of the Application has been provided and no other or further notice need be provided. The Court, having determined that the legal and factual bases set forth in the Application and stated on the record at the hearing establish just cause for the relief granted herein, concludes that Application is due to be granted as set forth herein. Accordingly, it is

**ORDERED:**

1.  The Application is **APPROVED.**

2.  The Debtor is authorized to employ and retain Epiq as their notice, claims and solicitation agent in accordance with the terms and conditions set forth in the Application and the Engagement Agreement, effective as of the commencement of the Debtor's chapter 11 case.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

3. The terms of the Engagement Agreement are approved as provided herein subject to the terms of this Order.

4. Pursuant to 28 U.S.C. § 156(c), Rule 2002 of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(B), Epiq is authorized to provide noticing, claims processing and balloting services as set forth in the Application and the Engagement Agreement, including, among others, as requested:

    a. Prepare and serve required notices and documents in the case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of the case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims and objections to claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, (vii) any motion to convert, dismiss, appoint a trustee, or appoint and examiner filed by the United States Trustee's Office, and (viii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the case;

    b. Maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

    c. Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "Master Service List" in accordance with Local Rule 2002-1(H); update said lists and make said lists available upon request by a party-in-interest or the Clerk;

    d. Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e. Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f. Assisting the Debtor with the preparation of the Debtor's Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("SOFAs") (as needed);

g. For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

h. Process all proofs of claim or proofs of interest received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim or proofs of interest in a secure area;

i. Maintain the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor, and (vii) any disposition of the claim;

j. File an updated claims register with the Court, in alphabetical and/or numerical order, upon request and direction of the Clerk of the Court;

k. Allow public access to claims and the claims register at no charge;

l. Maintain an electronic platform for purposes of filing proofs of claim;

m. Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

n. Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); provided, however, that if any evidence of transfer of claim(s) is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to waive the 21-day notice and objection period required under Bankruptcy

4

       Rule 3001(e), then Epiq may process the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

o. Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of the Claims and Noticing Agent, not less than weekly;

p. Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

q. Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

r. Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

s. Provide such other related claims and noticing services as the Debtor may require in connection with this chapter 11 case;

t. If a case is converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the case;

u. Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submit to the Court a proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this case;

v. Within fourteen (14) days of entry of an Order dismissing a case or within thirty (30) days of entry of a Final Decree, (a) forward to the Clerk an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. If a case has jointly- administered entities, one combined register shall be docketed in the lead case containing claims of all cases. The Claims and Noticing Agent shall further box and transport all original claims to the Atlanta Federal Records Center, 4712 Southpark Blvd, Ellenwood, GA 30294 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims; and

w. Within fourteen (14) days of entry of an Order converting a case, (a) forward to the Clerk an electronic version of all imaged claims; (b)

5

        upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register. If a case has jointly-administered entities, one combined register shall be docketed in the lead case containing claims of all cases. A Final Claims Register shall also be docketed in each jointly-administered case containing the claims of only that specific case. The Claims and Noticing Agent shall further box and transport all original claims to the Atlanta Federal Records Center, 4712 Southpark Blvd, Ellenwood, GA 30294 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

    x.    Assisting with solicitation, balloting, and tabulation of votes in connection with any chapter 11 plan proposed, and in connection with such services, processing requests for documents from any parties in interest;

    y.    Preparing the certification of votes of any proposed chapter 11 plan submitted in connection with this chapter 11 case in accordance with any solicitation order to be issued by the Court and testifying in support of such certification;

    z.    Attending related hearings, as may be requested by the Debtor or their counsel;

    aa.    Managing any distribution pursuant to any confirmed plan prior to the effective date of such plan; and

    bb.    Providing such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement that may be requested from time to time by the Debtor, the Court, or the Clerk's office

5.    In addition to the services set forth in the Application and the Engagement Agreement, Epiq is authorized to provide other noticing, claims processing, solicitation and administrative services the Debtor may request from time to time, including, but not limited to: (a) maintaining and updating the master mailing list of creditors; (b) tracking and administration of claims; and (c) performing other administrative tasks pertaining to the administration of the chapter 11 case, as may be requested by the Debtor or the Clerk of this Court (the "**Clerk's Office**").

6. Epiq is appointed as agent for the Clerk's Office and, as such, is designated as the authorized repository for all proofs of claims filed in this chapter 11 case and is authorized and directed to maintain official claims registers for the Debtor and to provide the Clerk's Office with a certified duplicate thereof as the Clerk's Office may direct. To the extent any government or non-government claimant files a proof of claim with the Court via CM/ECF or manually with the Clerk of the Court, as opposed to with Epiq, such filings will be deemed timely if filed by the applicable bar date set by the Court.

7. Epiq shall, on a monthly basis, submit detailed invoices to the Debtor for the services rendered, with a copy to the Office of the United States Trustee and, to the extent applicable, to counsel for any official committee(s) appointed during the course of this chapter 11 case.

8. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq incurred pursuant to the Engagement Agreement shall be an administrative expense of the Debtor's estate.

9. Without further order of the Court, the Debtor is authorized to compensate Epiq in accordance with the terms and conditions of the Engagement Agreement, upon Epiq's submission to the Debtor of invoices summarizing in reasonable detail the services and expenses for which compensation is sought; provided, however, that Epiq shall provide copies of such invoices to the Office of the United States Trustee and any official committee of creditors appointed in the chapter 11 case.

10. Epiq shall not cease providing claims processing services during this chapter 11 case for any reason without prior order of this Court authorizing Epiq to do so; provided, however, that Epiq may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtor, the Office of the United States Trustee and any official

committee of creditors appointed in this case by facsimile or overnight delivery; provided further, that except as expressly provided herein, the Debtor and Epiq may otherwise terminate or suspend other services as provided under the Engagement Agreement.

11. After entry of an order terminating Epiq's services, upon the closing of this case, or for any other reason, Epiq shall be responsible for archiving all proofs of claim with the Federal Records Administration, if applicable, or as otherwise directed and shall be compensated by the Debtor for such archiving services.

12. Epiq shall provide the Clerk of the Court with a Uniform Resource Locator that can direct creditors and parties in interest to the website Epiq will maintain for this chapter 11 case.

13. The Debtor shall indemnify Epiq under the terms of the Engagement Agreement; *provided, however* that Epiq shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court.

14. Nothing herein obligates a successor chapter 7 trustee or chapter 11 trustee to employ Epiq.

15. The Debtor and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

16. Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

*Attorney Matthew Hale is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and to file a proof of service within 3 days of entry of the order.*