UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                              Chapter 11

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                    Case No. 8:24-bk-676-RCT

      Debtor.

_____/

**RESPONSE TO MOTION TO COMPEL
TURNOVER OF RECORDS FROM AUSTIN COLBY CO.**

AUSTIN COLBY CO. ("Austin Colby), by and through its undersigned counsel, hereby

responds to the Motion to Compel Turnover of Records from Austin Colby Co. (Doc. No. 23) (the

"Motion"), as follows:

**INTRODUCTION**

The saying that "there are two sides to every story" is never more true than in the instant

case. The Center for Special Needs Trust Administration, Inc. (the" Debtor" or "CSNT") filed the

Motion, which contains a slanted and inflammatory revisionist history. The reality is that this

matter of turnover of data was settled by the parties eighteen months ago pursuant to the Settlement

Agreement (defined below). Austin Colby fully performed under the Settlement Agreement.

Indeed, in furtherance of the Settlement Agreement, Austin Colby turned over possession of the

actual physical server (the "Server") to the Debtor. Pursuant to the Settlement Agreement, the

Debtor's request to have E-Hounds review the Server was to make sure that Austin Colby had not

"intentionally taken malicious action to damage the hardware/software and/or destroy or delete

The Center's files maintained on the Server." *See* paragraph 3(i) of the Settlement Agreement. E-

Hounds confirmed that Austin Colby had done nothing of the sort. Although not entirely clear,

the issue apparently is that the Debtor thinks there are more files that should have been on the

Server. The fact that the Debtor did not originally (and apparently still cannot) identify files that

need to be turned over does not mean that Austin Colby or Leo Govoni are intentionally withholding information. It does, however, ease the burden of CSNT's accepting even a modicum of responsibility for its own transgressions. Austin Colby is not aware of any such files that should have been on the Server but will turn them over to the extent they exist and are identified.

## BACKGROUND

1.      Pursuant to an agreement between the parties, for over a decade Austin Colby provided HR and IT services to CSNT in exchange for a monthly fee.

2.      Leo Govoni ("Govoni") resigned from the Debtor as an officer and director over thirteen years ago on May 30, 2009. After this resignation, the Debtor had an independent board of directors and officers who operated the Debtor independently of and without input from Govoni.

3.      Austin Colby would invoice CSNT on a monthly basis for such HR and IT services.

4.      During this more than decade of providing services, CSNT did not ever allege or complain that Austin Colby was not competent in providing IT services or that Austin Colby maintained an unreasonable level of control over certain stored data. Further, CSNT did not lodge any complaints about the HR services it received from Austin Colby.

5.      In late 2021/early 2022, thirteen years after Govoni resigned, there was a change in the management team at CSNT, with Michelle Diebert ascending to the role of President, Laura Davis being appointed to the position of Vice President and Director, and Carl Schroeder being appointed to the position of Secretary and Director.

6.      In March 2022, the new CSNT management team concluded that the relationship with Austin Colby, which had existed harmoniously for years, was now unacceptable and CSNT wanted a total and immediate separation from Austin Colby, without any regard to the consequences of forcing an immediate separation.

7.     Until this time, Austin Colby was unaware that CSNT had any issues with the IT or HR services it was receiving from Austin Colby.

8.     In early March 2022, CSNT informed Austin Colby of its intention to obtain IT services elsewhere.

9.     CSNT hired Thrive Networks, Inc. ("Thrive") to replace Austin Colby and assist with CSNT's intention to have its own IT networks and systems.

10.     During the week of March 7, 2022, a Thrive representative contacted Austin Colby to obtain a comprehensive briefing on Austin Colby's proprietary systems and networking structure.

11.     As this request would have included network intrusion and disclosure of other business operations which Austin Colby serves, not remotely related to CSNT, the request was denied.

12.     However, Austin Colby did offer to provide reasonable assistance to CSNT without additional compensation so long as such assistance was not time intensive, as the transition services to a new IT provider would necessarily be outside the regular and historical course of the business relationship and services rendered by Austin Colby to CSNT.

13.     Additionally, Austin Colby informed CSNT and Thrive that while it would aid with the transition, Austin Colby would not disclose confidential or proprietary information relating to its business and the other companies to whom it provides HR and IT services.

14.     Rather than accept Austin Colby's offer, on Friday, March 11, 2022, CSNT representatives engaged in an unauthorized and completely impermissible digital access of the Austin Colby network and system.

15.     Additionally, Austin Colby offered to provide reasonable assistance to CSNT during its transition to its new IT vendor so long as Austin Colby was compensated for its time as such activities would be outside the regular and historical course of the business relationship.

16.     During the transition period, CSNT was able to extract and back-up any files that CSNT owned from any software that CSNT was currently using.

17.     Despite this ability, CSNT demanded that Austin Colby provide extensive services to transfer files and data to CSNT.

18.     Austin Colby continuously offered to provide such services provided CSNT agreed to reasonably compensate Austin Colby for its services.

19.     Throughout the transition period, CSNT refused to agree to compensate Austin Colby for such services.

20.     Ultimately, as the CSNT imposed deadline of an April 29, 2022 cessation of normal routine services by Austin Colby passed, CSNT through its representative on May 3, 2022 agreed to provide reasonable compensation for Austin Colby's time.

21.     On May 9, 2022, Austin Colby issued Invoice No. 13500 to CSNT for certain transition services provided.

22.     CSNT has refused to remit payment to Austin Colby relating to Invoice No. 13500.

23.     Despite agreeing to remit reasonable compensation for Austin Colby's time, then refusing to remit payment for such time, CSNT continued to demand Austin Colby provide services without compensation.

24.     In addition to refusing to compensate Austin Colby and accessing its network without authorization, representatives of CSNT also repeatedly attempted to transfer domain names that it did not own and improperly accessed stored data and deleted data belonging to other businesses serviced by Austin Colby.

25.     On June 22, 2022, CSNT then preemptively filed a lawsuit (the "Lawsuit") for conversion of various types of data and software.

26.     The Lawsuit involved disputed claims of the Debtor relating to the alleged conversion of certain of its electronically stored files, emails, facsimile number and 1-800 numbers, Microsoft Navision Database and Personnel Files along with a claim that Austin Colby has violated Florida's Deceptive and Unfair Trade Practices Act.

27.     Austin Colby filed counterclaims (the "Counterclaims") relating to the breach of an agreement between the parties for the Debtor to remit payments of invoices to Austin Colby for services provided, unjust enrichment relating to the same and an alleged violation of Florida's Computer Abuse and Data Recovery Act as a result of the fact that representatives of the Debtor hacked into Austin Colby's database.  A true and correct copy of the Counterclaims is attached as Exhibit A and incorporated herein by reference.

28.     On October 25, 2022, the parties attended a Mediation conference and agreed to settle the Lawsuit and Counterclaims and prepared and executed a written Mediated Settlement Agreement and Mutual Release (the "Settlement Agreement").

29.     The Settlement Agreement contained numerous specific provisions that each party was to perform, at the conclusion of which the parties were to submit a joint motion or stipulation to obtain an Order dismissing the Lawsuit and Counterclaims with prejudice, with such Order expressly providing that each party shall bear its own attorney's fees and costs.

### Argument

The Debtor asserts that Austin Colby is improperly withholding electronically stored supporting documents ("NAV Documents") for NAV database files that it admits Austin Colby already provided to the Debtor.

The Settlement Agreement, with respect to data of the Debtor on Austin Colby's Servers, could not be clearer, as it contains a provision that delineates all files of the Debtor that were to be downloaded to hard drives and transferred to the Debtor by Austin Colby.

Specifically, section 3(a) of the Settlement Agreement states:

The Center data remaining on Austin Colby Servers: Austin Colby will download to hard drives the following files: (1) //file03/centers/CSNT; (2) //03/centers/ center-reception; (3) //file04/scans/distributions; (4) file02/acctg/ fts/center; and (5) https://austincolbyco-my.sharepoint.com/person/centers-corporate_admincenter _org/Documents/Centers-Corporate File Share. Upon request of The Center, Austin Colby shall delete any retained electronic and hard copies of the files described herein.

In accordance with the Settlement Agreement, these files and the Server were delivered to the Debtor.

Moreover, pursuant to the Settlement Agreement, the Debtor agreed to pay $12,500 to Austin Colby.

The Debtor, though it had every chance to do so, did not identify the NAV Documents it now seeks as data remaining on Austin Colby Servers that were to be downloaded and transferred to the Debtor.

Instead, the Debtor is now attempting to jettison a fully negotiated, mediated and final Settlement Agreement and insert some alleged understanding it may have had as to what data was on a server it negotiated to review merely to ensure that Austin Colby had taken no malicious actions to damage the hardware/software maintained on such server.

As admitted by the Debtor, its third-party vendor was able to power on the Server and determine that it was operational with no evidence that it had been sabotaged or otherwise damaged.  *See also* email from Sean Cronin to counsel for the Debtor, attached as Exhibit B.

In other words, the provisions of paragraph 3(i) of the Settlement Agreement were completely satisfied, and if the Debtor wanted specific data files from Austin Colby Servers to be

transferred to the Debtor, such data files should have been included within paragraph 3(a) of the Settlement Agreement.

Nevertheless, Austin Colby never objected to turning over any other files that might belong to the Debtor—as long as the Debtor would cover the costs of turning over files that were not covered by the Settlement Agreement.  The Debtor refused to cover these costs. Austin Colby will turn over any files in its possession or control that belong to the Debtor but requests clarity on what exactly the Debtor wants and assurances such data belongs exclusively to the Debtor and not to other businesses serviced by Austin Colby.  Respectfully, it has never been clear what additional information the Debtor seeks and where it might be located.

DATED:  February 26, 2024.

//s/ Edward J. Peterson
Edward J. Peterson (FBN 014612)
Johnson Pope Bokor Ruppel & Burns, LLP
400 N. Ashley Drive, Suite 3100
Tampa, Florida 33602
Telephone: (813) 225-2500
Email: edwardp@jpfirm.com
Attorneys for Austin Colby Co.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished on February 26, 2024, by the Court's CM/ECF electronic noticing system to all parties receiving electronic noticing.

/s/ Edward J. Peterson
Edward J. Peterson

EXHIBIT A

**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT**
**IN AND FOR PINELLAS COUNTY, FLORIDA**
**CIVIL DIVISION**

The Center for Special Needs Trust Administration,
a Florida not for profit corporation,

       Plaintiff/Counterclaim Defendant,

                                           CASE NO.: 22-002986-CI

v.

Austin Colby Co., a Florida corporation,

       Defendant/Counterclaim Plaintiff.

_____/

### DEFENDANT AUSTIN COLBY CO.'S ANSWER, DEFENSES TO COMPLAINT, AND COUNTERCLAIM

    Defendant, Austin Colby Co. ("Austin Colby"), through its undersigned counsel, hereby

file its Answer, Defenses and Counterclaim to the Complaint filed by the Plaintiff, The Center for

Special Needs Trust Administration ("CSNT"), and states as follows as to each allegation:

### CAUSES OF ACTION

1.      Admitted.

### PARTIES

2.      Admitted.

3.      Admitted.

### JURISDICTION AND VENUE

4.      Admitted.

5.      Admitted.

### GENERAL ALLEGATIONS

6.      Without knowledge.

7.      Without knowledge.

8.      Without knowledge.

9.      Without knowledge.

10.     Without knowledge.

11.     Admitted.

12.     Admitted that Austin Colby invoiced CSNT monthly for services; otherwise denied.

13.     Admitted as to the contents of the invoices; otherwise denied.

14.     Admitted that Mr. Floody met with Laura Davis and Michelle Diebert on February 17, 2022; otherwise denied.

15.     Denied.

16.     Without knowledge.

17.     Denied.

18.     Admitted that Mr. Floody received an email from Ms. Davis on March 8, 2022; otherwise denied.

19.     Denied.

20.     Admitted that Mr. Govoni is a founder of CSNT; otherwise denied.

21.     Admitted that Mr. Govoni owns multiple businesses; otherwise denied.

22.     Denied.

23.     Denied.

24.     Admitted that Mr. Floody sent an email on March 9, 2022; otherwise denied.

25.     Admitted that Ms. Diebert sent an email; otherwise denied.

26.     Without knowledge.

27.     Admitted that Mr. Floody attended a Zoom meeting on March 10, 2022; otherwise denied.

28.     Denied.

29.     Admitted that Mr. Govoni spoke with Ms. Diebert via telephone on March 10, 2022; otherwise denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Without knowledge.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Admitted that Plaintiff baselessly contacted local law enforcement who visited the offices of Defendant; otherwise denied.

41.     Denied.

42.     Denied.

43.     Admitted.

44.     Denied.

45.     Denied.

46.     Without knowledge.

47.    Denied.

48.    Denied.

49.    Defendant provided a SQL backup to Plaintiff on April 29, 2022; otherwise denied.

50.    Admitted that counsel for Defendant has made efforts to resolve this matter, otherwise denied.

51.    Admitted that Defendant provided the SQL backup of NAV as requested by Plaintiff; otherwise denied.

52.    Denied.

53.    Denied.

54.    Denied.

55.    Denied.

56.    Denied.

57.    Denied.

58.    Denied.

59.    Without knowledge.

60.    Denied.

61.    Denied.

62.    Admitted that Plaintiff's counsel requested that Defendant execute another LOA; denied that Defendant provided an LOA with incorrect numbers.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Without knowledge.

### COUNT I (Conversion – Electronically Stored Files)

68.    No response required.

69.    Without knowledge.

70.    Denied.

71.    Denied.

### COUNT II (Conversion – Emails)

72.    No response required.

73.    Without knowledge.

74.    Denied.

75.    Denied.

### COUNT III (Conversion – Facsimile Number and 1-800 Numbers)

76.    No response required.

77.    Without knowledge.

78.    Denied.

79.    Denied.

### COUNT IV (Conversion – Microsoft Navision Database)

80.    No response required.

81.    Without knowledge.

82.    Denied.

83.    Denied.

84.    Denied.

85.    Without knowledge.

86.    Without knowledge.

### COUNT V (Conversion – Personnel Files)

87.    No response required.

88.    Without knowledge.

89.    Denied.

90.    Denied.

### COUNT VI (Deceptive Trade Practices)

91.    No response required.

92.    Without knowledge.

93.    Admitted.

94.    Admitted.

95.    Denied.

96.    Without knowledge.

97.    Denied.

98.    Without knowledge.

99.    Denied.

100.    Denied.

101.    Denied.

## <u>DEFENSES</u>

1.    Plaintiff's Complaint, and each and every purported claim for relief asserted against Defendant therein, fails to state a claim upon which relief against Defendant can be granted.

2.    Plaintiff's Complaint, and each and every purported claim for relief asserted therein, is barred because Defendant fully performed any and all contractual, statutory, and other

duties that may have been owed to Plaintiff under applicable law, except for those obligations the performance of which was excused by the conduct or omissions of Plaintiff, including, but not limited to, Plaintiff's breaches and/or failure to perform Plaintiff's obligations to remit payment to Defendant for services demanded by Plaintiff.

3.      Plaintiff's Complaint, and each and every purported claim for relief asserted therein, is barred because Plaintiff is estopped from asserting such claims given Plaintiff's refusal to remit payment to Defendant for services demanded by Plaintiff.

4.      Plaintiff's Complaint, and each and every purported claim for relief asserted therein, is barred by the doctrine of unclean hands as Defendant is demanding that services be provided by Plaintiff without renumeration to Defendant for providing such services and because Plaintiff without authorization unlawfully accessed Defendant's network, destroyed certain digital files maintained by Defendant and misrepresented itself as the owner of certain websites that were the property of the Defendant.

5.      Plaintiff has expressly and by virtue of its own acts, omissions, conduct and statements, waived any and all claims against Defendant.

6.      Plaintiff, prior to filing their Complaint, failed to demand the return of certain of its alleged property, specifically Plaintiff never demanded the return of personnel files prior to filing the Complaint.

7.      Plaintiff consented to Defendant's possession of the allegedly converted property.

### **Reservation of Rights**

Defendant reserves the right to amend their answer presenting defenses based on any matters revealed in discovery or otherwise.

**Relief Requested/Demand for Attorneys' Fees**

WHEREFORE, Defendant respectfully requests that the Court enter judgment in their favor and against Plaintiff, award Defendant their costs and attorneys' fees incurred in defending this action pursuant to the FDUPTA claim brought by Plaintiff, and grant such other relief as is necessary to protect their rights and interests.

## COUNTERCLAIM

Counterclaim Plaintiff Austin Colby Co. ("Austin Colby") hereby asserts the following Counterclaims against Counterclaim Defendant The Center for Special Needs Trust Administration, Inc. ("CSNT") as set forth below:

**Parties, Jurisdiction and Venue**

1.      Counterclaim Plaintiff Austin Colby is a Florida corporation with its principal place of business located in Clearwater, Pinellas County, Florida.

2.      Counterclaim Defendant CSNT is a Florida not for profit corporation with its principal place of business located in Clearwater, Pinellas County, Florida.

3.      This action includes claims for damages in excess of $30,000.00 and injunctive relief.

4.      Venue is proper in this Court because both Austin Colby and CSNT conduct business in, and all events giving rise to Austin Colby's claims occurred in Pinellas County, Florida.

**General Allegations**

5.      Austin Colby operates in the Administrative Management business industry and provides shared services to a portfolio of organizations.

6.      Austin Colby provides services in the areas of human resources management and

payroll administration services ("HR") and information technology ("IT").

7.      CSNT administers Pooled Trusts and Special Needs Trusts, managing trust assets on behalf of individual trust beneficiaries.

8.      Pursuant to an agreement between the parties, for over a decade Austin Colby provided HR and IT services to CSNT in exchange for a monthly fee.

9.      Austin Colby would invoice CSNT on a monthly basis for such HR and IT services.

10.     During this decade of providing services, CSNT did not ever allege or complain that Austin Colby was not competent in providing IT services or that Austin Colby maintained an unreasonable level of control over certain stored data.  Further, CSNT did not lodge any complaints about the HR services it received from Austin Colby.

11.     In late 2021/early 2022, there was a change in the management team at CSNT, with Michelle Diebert ascending to the role of President, Laura Davis being appointed to the position of Vice President and Director, and Carl Schroeder being appointed to the position of Secretary and Director.

12.     In March 2022, the new CSNT management team concluded that the relationship with Austin Colby, which had existed harmoniously for years, was now unacceptable and CSNT wanted a total and immediate separation from Austin Colby, without any regard to the consequences of forcing an immediate separation.

13.     Until this time, Austin Colby was unaware that CSNT had any issues with the IT or HR services it was receiving from Austin Colby.

14.     In early March 2022, CSNT informed Austin Colby of its intention to obtain IT services elsewhere.

15.     CSNT hired Thrive Networks, Inc. ("Thrive") to replace Austin Colby and assist

with CSNT's intention to have its own IT networks and systems.

16.     During the week of March 7, 2022, a Thrive representative contacted Austin Colby to obtain a comprehensive briefing on Austin Colby's proprietary systems and networking structure.

17.     As this request would have included network intrusion and disclosure of other business operations which Austin Colby serves, not remotely related to CSNT, the request was denied.

18.     However, Austin Colby did offer to provide reasonable assistance to CSNT without additional compensation so long as such assistance was not time intensive, as the transition services to a new IT provider would necessarily be outside the regular and historical course of the business relationship and services rendered by Austin Colby to CSNT.

19.     Additionally, Austin Colby informed CSNT and Thrive that while it would aid with the transition, Austin Colby would not disclose confidential or proprietary information relating to its business and the other companies to whom it provides HR and IT services.

20.     Rather than accept Austin Colby's offer, on Friday, March 11, 2022, CSNT representatives engaged in an unauthorized access of the Austin Colby network and system.

21.     At this point, during the early weeks of March 2022, because of the war in Ukraine, Austin Colby received several threat warnings to its systems, from United States governmental agencies, its IT service providers as well as significant news articles on increased security threats. These threat warnings caused Austin Colby to shut down the Virtual Private Network ("VPN") access across the entire Austin Colby system, which included users at CSNT.  All companies that Austin Colby serviced were impacted by the shut-down of the VPN system.  These warnings also resulted in Austin Colby being on high alert for unauthorized access to its systems.

22.     Austin Colby uses the program "Lansweeper" as a tool for IT management. Lansweeper tracks IT assets, maintain IT infrastructure integrity, help desk tickets and more.

23.     Lansweeper was one of the tools used by Austin Colby on Friday, March 11, 2022 to investigate and determine the extent of the breach and damage to the Austin Colby network.

24.     Lansweeper can be used to generate reports of activities involving users and computers upon the Austin Colby network.

25.     Reports generated by Lansweeper relating to the unauthorized access conducted on March 11, 2022 are attached as Exhibits 1 and 2.

26.     Each device on the Austin Colby network has a unique name identification.

27.     Likewise, each user on the Austin Colby network has a unique name identification.

28.     As outlined on Exhibit 1, the Lansweeper report with Callout #1 reveals the name of the computer involved (ACSNT-L001) as well as the user that last logged in on that computer, which Callout #2 indicates was Michelle Diebert, the President of CSNT.  *See* Exhibit 1.

29.     The Lansweeper report, attached as Exhibit 1, in Callout #3 shows the date and time that the computer was last seen on the network, in this case it was March 11, 2022 at 12:00:23 p.m. EST.  *See* Exhibit 1.

30.     This computer is a laptop computer not assigned to Ms. Diebert.

31.     Rather, the computer was previously used by Caitlin Janicki, the former Vice President of CSNT, and had not been in regular use since Ms. Janicki left CSNT in November 2021.

32.     While Ms. Diebert had her own assigned laptop computer, she chose to use Ms. Janicki's computer for the unauthorized activity.

33.     The second Lansweeper report, attached as Exhibit 2, delineates the software

installed on computer ACSNT-L001. *See* Exhibit 2.

34. Callout #4 shows the existence of the "Wireshark" program on this computer. *See* Exhibit 2.

35. The "Wireshark" software program provides network analysis, scans and packet capture. It is used by IT teams for troubleshooting and by hackers to identify potential targets.

36. The program "Wireshark" is not installed on any user's computer within the Austin Colby organization other than a single-use for Austin Colby's IT Administrator.

37. The "Wireshark" program was downloaded to computer ACSNT-L001 without permission and was deployed with the singular objective to perform an unauthorized inventory of the Austin Colby network systems. In the simplest terms, Ms. Diebert hacked into the Austin Colby network and removed proprietary information without permission.

38. In addition to the Lansweeper reports, Austin Colby also identified an email sent from Ms. Diebert to James Babiak (jbabiak@southtech.com), a Thrive network representative.

39. The email sent by Ms. Diebert contained two (2) PDF attachments, which were reports showing the results of an Austin Colby network scan performed by Wireshark.

40. Austin Colby notified CSNT of this unauthorized access and demanded that CSNT provide copies of all data downloaded or otherwise obtained from the Wireshark scan and any other tools conducted on March 11, 2022 in its native format on a portable device and delete and destroy all such information in its possession or the possession of its contractors.

41. Austin Colby also demanded that CSNT preserve the laptop computer ACSNT-L0001 as evidence and provide the specific laptop to Austin Colby so that Austin Colby may conduct a forensic examination which would disclose the specific activity undertaken using that computer.

42.     CSNT has not provided any of the information demanded by Austin Colby nor has it provided the specific laptop relating to its unauthorized access to Austin Colby's network.

43.     Even after the unauthorized access of Austin Colby's network, Austin Colby continued to provide services in the regular and historical course of the business relationship.

44.     Additionally, Austin Colby offered to provide reasonable assistance to CSNT during its transition to its new IT vendor so long as Austin Colby was compensated for its time as such activities would be outside the regular and historical course of the business relationship.

45.     During the transition period, CSNT was able to extract and back-up any files that CSNT owned from any software that CSNT was currently using.

46.     Despite this ability, CSNT demanded that Austin Colby provide extensive services to transfer files and data to CSNT.

47.     Austin Colby continuously offered to provide such services provided CSNT agreed to reasonably compensate Austin Colby for its services.

48.     Throughout the transition period, CSNT refused to agree to compensate Austin Colby for such services.

49.     Ultimately, as the CSNT imposed deadline of an April 29, 2022 cessation of normal routine services by Austin Colby passed, CSNT through its representative on May 3, 2022 agreed to provide reasonable compensation for Austin Colby's time.

50.     On May 9, 2022, Austin Colby issued Invoice No. 13500 to CSNT for certain transition services provided.  A copy of Invoice No. 13500 is attached as Exhibit 3.

51.     CSNT has refused to remit payment to Austin Colby relating to Invoice No. 13500.

52.     Despite agreeing to remit reasonable compensation for Austin Colby's time, then refusing to remit payment for such time, CSNT continues to demand Austin Colby provide services

without compensation.

53.     In addition to refusing to compensate Austin Colby and accessing its network without authorization, representatives of CSNT also repeatedly attempted to transfer domain names that it did not own and improperly accessed stored data and deleted data belonging to other businesses serviced by Austin Colby.

54.     On several occasions, Ms. Diebert on behalf of CSNT attempted to transfer certain domain names owned by Austin Colby to CSNT including filing documents with Network Solutions to do so.

55.     The domain names are centersweb.com, admincenter.org and sntcenter.org and are owned by Austin Colby.

56.     The actions of Ms. Diebert on behalf of CSNT were an attempt to unlawfully convert Austin Colby's intellectual property.

57.     With respect to the deletion of data, Austin Colby maintains a contract with "Flexential," an outside secure data center located in Tampa, Florida (the "Data Center").

58.     Austin Colby has multiple devices at the Data Center that contain data and applications for Austin Colby as well as the various businesses that Austin Colby services, including CSNT until April 29, 2022.

59.     Data and applications for various businesses serviced by Austin Colby are stored at the Data Center on hardware devices known as SANs (Storage Area Network) and more specifically known as a "HPE Nimble."

60.     One master storage location which stored data was known as "File 02" which contained data for CSNT as well as other businesses.

61.     Individuals at CSNT had access to File 02.

62.    On or about April 28, 2022, data belonging to other businesses serviced by Austin Colby was deleted on File 02.

63.    File 02 was accessed, and data was deleted, using a computer once assigned to a former employee of CSNT.

64.    The only two individuals who had access to this computer were Michelle Diebert and Laura Davis, both officers and directors of CSNT.

65.    Austin Colby has retained the undersigned counsel to represent their interests in this action and is required to pay counsel a reasonable attorneys' fee.

### Count One – Breach of Agreement

66.    Austin Colby realleges paragraphs 1 through 65, above.

67.    Austin Colby entered a valid agreement with CSNT wherein CSNT agreed to remit payment to Austin Colby for services provided to CSNT.

68.    CSNT breached the agreement by failing to remit payment for Invoice #13500 which it received from Austin Colby.  *See* Exhibit 3.

69.    Austin Colby has sustained damages as the result of the failure of CSNT to remit the payment it had agreed to.

WHEREFORE, the Counterclaim Plaintiff Austin Colby demands judgment for damages against Counterclaim Defendant CSNT including pre and post-judgment interest, court costs, and such further relief as this Court deems just and proper.

### Count Two – Unjust Enrichment

70.    Austin Colby realleges paragraphs 1 through 65, above.

71.    Austin Colby provided services to CSNT.

72.    CSNT accepted the services provided by Austin Colby for its benefit.

73.     Consequently, it would be inequitable for CSNT to retain the benefit of the services provided by Austin Colby without compensation.

WHEREFORE, the Counterclaim Plaintiff Austin Colby demands judgment against Counterclaim Defendant CSNT including pre and post judgment interest, court costs, and such further relief as this Court deems just and proper.

### Count Three – Account Stated

74.     Austin Colby realleges paragraphs 1 through 65, above.

75.     Before the institution of this action Austin Colby and CSNT had business transactions between them and on May 3, 2022 CSNT agreed to pay Austin Colby for the services.

76.     Austin Colby rendered a statement of the services provided to CSNT on May 9, 2022 labeled Invoice #13500. *See* Exhibit 3.

77.     CSNT owes Austin Colby $5,322.60 that is due with interest since May 10, 2022.

WHEREFORE, the Counterclaim Plaintiff Austin Colby demands judgment against Counterclaim Defendant CSNT including pre and post judgment interest, court costs, and such further relief as this Court deems just and proper.

### Count Four – Violations of the Computer Abuse and Data Recovery Act

78.     Austin Colby realleges paragraphs 1 through 65, above.

79.     Austin Colby is a business within the meaning of Florida's Computer Abuse and Data Recovery Act, section 668.801 *et seq*, Florida Statutes ("CADRA").

80.     CADRA's purpose is to safeguard protected computers used in the operation of a business from "harm" or "loss," broadly defined, respectively, as "any impairment to the integrity, access, or availability of data, programs, systems, or information" and, to include the business's economic damages, lost profits, costs incurred due to a post-breach damage assessment,

consequential damages, as well as the profits earned by a violator.

81.    Austin Colby operates a protected computer network containing confidential and proprietary information that requires authentication and a password for access and use by those with a need for use and authorization.

82.    Austin Colby's protected computer network is used in the State of Florida in connection with providing business services to businesses in Florida as well as businesses with their principal locations in other states.

83.    Representatives of CSNT knowingly and with intent to cause harm or loss to Austin Colby, obtained information from the Austin Colby protected computer network without authorization and, as a result, caused harm or loss to Austin Colby.

84.    Representatives of CSNT knowingly and with intent to cause harm or loss to Austin Colby, caused the transmission of a program, code, or command to the protected computer network of Austin Colby without authorization and, as a result of the transmission, caused harm or loss to Austin Colby.

85.    CSNT's conduct is a violation of the CADRA.

WHEREFORE, the Counterclaim Plaintiff Austin Colby demands judgment against Counterclaim Defendant CSNT as follows:

(a)    Recovering Austin Colby's actual damages, including Austin Colby's lost profits and economic damages;

(b)    Recovering CSNT's profits that are not included in the computation of actual damages;

(c)    Recovering the misappropriated information, program, or code, and all copies thereof, that are subject to the violation of CADRA; and

(d)     Recovering Austin Colby's costs of suit and reasonable attorneys' fees pursuant to

section 668.804(2), Florida Statutes.

Respectfully submitted,

/s/ Sean P. Cronin
Sean P. Cronin
Florida Bar No. 0412023
scronin@sclawyergroup.com
Michael Stanton
Florida Bar No.: 0389463
mstanton@sclawyergroup.com
**STANTON CRONIN LAW GROUP, P.L.**
6944 West Linebaugh Ave., Suite 102
Tampa, Florida 33625
Telephone: (813) 444-0155
Facsimile: (813) 422-7955
*Attorneys for Defendant and Counterclaim*
*Plaintiff Austin Colby Co.*

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing has been served via electronic mail on R. Michael Pierro, Jr., Esq. (mike@flemploymentlaw.com), Calciano Pierro, PLLC, 146 Second Street North, suite 304, St. Petersburg, Florida 33701 on this 30th day of August, 2022.

/s/ Sean P. Cronin
Attorney

18

EXHIBIT 1

3/15/22, 2:52 PM

ACSNTL0001

sweeper

Jim Floody

lenovo

v. 8.0.130 10

Dashboard | Assets | Reports | Software | Scanning | Q | Helpdesk | Knowledgebase | Calendar | Deployment | Configuration | Enterprise | Community

Search...

☑ A helpdesk agent license has expired. Renew your license here.

**Asset options**
- New asset
- Edit asset
- New Location
- Rescan Asset
- Wake on Lan
- Refresh Warranty
- QR Code (JPG)
- QR Code (PDF)
- Create new ticket
- Deploy Package

**Basic actions**
- Ping
- Pathping
- Traceroute
- NBTstat
- HTTP
- HTTPS
- SSH (putty)
- Open CS
- Remote desktop
- Open AdminS
- Computer management
- Services management
- Event viewer
- Shared folders
- Reboot
- Shutdown
- Abort shutdown

**Advanced actions**
- Device tester
- Test connection
- FTP
- HTTP port 8080
- Download more actions at Lansweeper.com

📋 Summary | 🔧 Config | 💾 Software | 📊 Performance | 🖥 Uptime | 📍 Location | 📅 Event log | 📈 Report | 🕐 History | 📄 Docs | 💬 Comments | ⏱ Scan time | ⚠ Errors

**Asset type:** 🖥 Windows
**Last user:** 👤 Michelle.Bryant ①
ACSNTL0001 running Windows 10 Pro (64 bit)
10.30.60.42 - admincenter

**OS:** Windows 10 Pro (64 bit)
**Build:** 10.0.18363.1379
**Version:** 1909
**Domain:** admincenter

**Manufacturer:** Lenovo
**Model:** ThinkPad X380 Yoga
**SKU:** LENOVO_MT_20LH_BU_Think_FM_ThinkPad X380 Yoga
**Processor:** Intel Core i5-8250U CPU @ 1.60GHz
**Memory:** 8 GB
**Motherboard:** LENOVO 20LH001RUS
**Graphics:** Intel(R) UHD Graphics 620 1.0 GB
**Audio:** Conexant SmartAudio HD
Intel(R) Display Audio
**Antivirus:** Malwarebytes Enabled & Up To Date
Windows Defender Disabled & Up To Date
**Network:** Intel(R) Dual Band Wireless-AC 8265 #2
10.30.60.42 - fe80::8c02:d6e0:6fa5:6839
D4:3B:04:7D:FF:4B
**Hardisk:** C: Windows
65.4 GB free of 237.2 GB
**OU:** OU=Computers, OU=Company Structure, DC=admincenter, D
C=org

**Enabled in AD:** ✔ Enabled

📁 Active directory groups
| Name | Type | Description |
|------|------|-------------|
| Domain Computers | Global security group | All workstations and servers joined to the domain |

**Scan status:**
**Scan server:** netwix
**State:** Active
**Asset location:** Creekside .60 Network
**IP location:** Undefined
**Serial:** MP1HQ1BM
**Uptime:** 398 day(s) 0 h 6 m
**First seen:** 02/03/2022 12:22:45
**Last seen:** 03/15/2022 12:00:23 ②
**Last tried:** 03/15/2022 12:14:09
**Purchased:** unknown
**Warranty:** 05/29/2022

📦 Asset groups
[ Default group ]

**Purchase country:** USA
**Name** | **Type**
⚙ Warranty Service | Service
**End date** | Service
05/29/2022  This product is entitled to three years Accidental Damage Protection.

netwix:83/asset.aspx?AssetID=2258

3/15/22, 2:52 PM

**sweeper**

Dashboard   Assets   Reports   Software   Scanning   Helpdesk   Knowledgebase   Calendar   Deployment   Configuration   Enterprise   Community

ACSNT-L0001

Jim Floody   v 8.0.130 10

Search...

⚠ A helpdesk agent license has expired. Renew your license here.

**Asset options**
- New asset
- New Location
- Edit asset
- Rescan Asset
- Wake on Lan
- Refresh Warranty
- QR Code (JPG)
- QR Code (PDF)
- Create new ticket
- Deploy Package

**Basic actions**
- Ping
- Pathping
- Traceroute
- NBTstat
- HTTP
- HTTPS
- SSH (putty)
- Remote desktop
- Open CS
- Open AdminS
- Services management
- Computer management
- Shared folders
- Event viewer
- Reboot
- Shutdown
- Abort shutdown

**Advanced actions**
- Device tester
- Test connection
- FTP
- HTTP port 8080
- Download more actions at Lansweeper.com

04/14/2021  The battery included within this product is entitled to a 1 year CRU/Depot/Carry-in warranty. Please note that this may differ from the warranty of the base product itself.

The processing of Group Policy failed. Windows attempted to retrieve new Group Policy settings for this user or c...

**Recent eventlog entries**
- 03/11/2022 11:55:24 - GroupPolicy
- 03/11/2022 11:52:51 - Perflib
  The required buffer size is greater than the buffer size passed to the Collect function of the "C:\Windows\System...
- 03/11/2022 11:47:52 - Service Control Manager
  The Lenovo\eniageService service terminated unexpectedly. It has done this 1 time(s).
- 03/11/2022 11:45:40 - Office 2016 Licensing Service
- 03/11/2022 11:45:22 - ScreenConnect Client (B09c5fd62907f0b)
  System.Net.Sockets.SocketException (0x00004005) No such host is known at System.Net.Dns.GetAddrInfo(String n...
- 03/11/2022 11:44:52 - ScreenConnect Client (B09c5fd62907f0b)
  System.Net.Sockets.SocketException (0x00004005) No such host is known at System.Net.Dns.GetAddrInfo(String n...
- 03/11/2022 11:44:33 - ScreenConnect Client (B09c5fd62907f0b)

**Event summary of last week**

| Event | Count |
| --- | --- |
| Security-Auditing | 75 |
| ScreenConnect Client (B09c5fd62907f0b) | 11 |
| Group Policy Local Users and Groups | 1 |
| Group Policy Registry | 1 |
| Malwarebytes Endpoint Agent | 1 |
| GroupPolicy | 1 |
| Perflib | 1 |
| NETLOGON | 1 |
| Office 2016 Licensing Service | 1 |
| SceCli | 1 |
| Service Control Manager | 1 |

La Scanned by netwix at 03/15/2022 12:14:09

EXHIBIT 2

3/11/22, 1:33 PM

# sweeper

| Dashboard | Assets | Reports | Software | Scanning | Helpdesk | Knowledgebase | Calendar | Deployment | Configuration | Enterprise | Co... |

**A helpdesk agent license has expired. Renew your license here.**

ACSNT-L0001

Jim Floody   lenovo   v. 8.0.130.10

Search...

**ACSNT-L0001**.admincenter.org - Windows 10 Pro (64 bit)
10.30.60.42 - ADMINCENTER

Summary | Config | Software | Features | License Keys | Antivirus | SQL Server Information | Performance | Uptime | Location | Event log | Report | Docs | Comments | Scan time

**Asset options**
- New Location
- New asset
- Edit asset
- Rescan Asset
- Wake on Lan
- Refresh Warranty
- Create new ticket
- QR Code (PDF)
- QR Code (JPG)
- Deploy Package

**Basic actions**
- Ping
- Pathping
- Traceroute
- NBTstat
- HTTP
- HTTPS
- SSH (putty)
- Remote desktop
- Open C$
- Open Admin$
- Computer management
- Services management
- Event viewer
- Shared folders
- Reboot
- Shutdown
- Abort shutdown

**Advanced actions**
- Device tester
- Test connection
- FTP
- HTTP port 8080
- Download more actions at Lansweeper.com

| Software | Version | Publisher | Install Date |
|---|---|---|---|
| 7-Zip 19.00 (x64) | 19.00 | Igor Pavlov | |
| Adobe Acrobat DC | 21.011.20039 | Adobe Systems Incorporated | 02/03/2022 |
| Adobe AIR | 32.0.0.116 | Adobe Inc. | |
| Adobe Genuine Service | 7.6.0.52 | Adobe Inc. | |
| Adopt)OpenJDK JRE with Hotspot 11.0.3.7 (x64) | 11.0.3.7 | AdoptOpenJDK | 04/24/2019 |
| AdoptOpenJDK JRE with Hotspot 8.0.212.03 (x64) | 8.0.212.03 | AdoptOpenJDK | 04/24/2019 |
| AdoptOpenJDK JRE with Hotspot 8.0.212.03 (x86) | 8.0.212.03 | AdoptOpenJDK | 04/24/2019 |
| Avigilon Control Center Client | 6.14.4.6 | Avigilon | |
| Conexant SmartAudio | 6.0.277.0 | Conexant Systems | |
| Google Chrome | 99.0.4844.51 | Google LLC | 04/24/2019 |
| Intel(R) Management Engine Components | 11.7.0.1052 | Intel Corporation | |
| Intel® PROSet/Wireless Software | 20.70.0.0u | Intel Corporation | |
| Kyocera Product Library | 5.0.3527 | KYOCERA Document Solutions Inc. | |
| Lenovo Pen Settings Service | 7.6.1.57 | Wacom Technology Corp. | |
| Lenovo Vantage Service | 3.11.20.0 | Lenovo Group Ltd. | |
| Malwarebytes Endpoint Agent | 1.2.0.966 | Malwarebytes | |
| Microsoft 365 Apps for enterprise - en-us | 16.0.14326.20784 | Microsoft Corporation | 02/24/2022 |
| Microsoft Command Line Utilities 11 for SQL Server | 11.0.2270.0 | Microsoft Corporation | 02/09/2021 |
| Microsoft Dynamics NAV 2013 | 7.0.33781.0 | Microsoft Corporation | |
| Microsoft Edge | 98.0.1108.62 | Microsoft Corporation | 02/27/2022 |
| Microsoft Edge Update | 1.3.155.77 | Microsoft Corporation | |
| Microsoft Edge WebView2 Runtime | 98.0.1108.62 | Microsoft Corporation | 02/27/2022 |
| Microsoft ODBC Driver 11 for SQL Server | 11.0.2270.0 | Microsoft Corporation | 04/25/2019 |
| Microsoft OneDrive | 22.022.0130.0001 | Microsoft Corporation | |
| Microsoft Report Viewer Redistributable 2008 | 1.0 | Microsoft Corporation | |
| Microsoft ReportViewer 2010 SP1 Redistributable | 10.0.40219 | Microsoft Corporation | 04/26/2019 |
| Microsoft Search in Bing | 2.0.2 | Microsoft Corporation | 01/22/2021 |
| Microsoft Silverlight | 5.1.50918.0 | Microsoft Corporation | 04/24/2019 |
| Microsoft Update Health Tools | 2.700.0.0 | Microsoft Corporation | 11/23/2020 |
| Microsoft Visio - en-us | 16.0.14326.20784 | Microsoft Corporation | |
| Microsoft Visual C++ 2005 Redistributable | 8.0.61001 | Microsoft Corporation | 04/29/2019 |
| Microsoft Visual C++ 2010 x64 Redistributable | 10.0.40219 | Microsoft Corporation | 04/25/2019 |
| Microsoft Visual C++ 2010 x86 Redistributable | 10.0.40219 | Microsoft Corporation | 04/25/2019 |
| Microsoft Visual C++ 2012 Redistributable (x64) | 11.0.61030.0 | Microsoft Corporation | 04/25/2019 |

3/11/22, 1:33 PM

ACSNT-L0001

# sweeper

Dashboard   Assets   Reports   Software   Scanning   Helpdesk   Knowledgebase   Calendar   Deployment   Configuration   Enterprise

Search...   🔍

⚠ A helpdesk agent license has expired. Renew your license here.

🏴 ⭐ 👤 Jim Floody ⚙ ▾

v. 8.0.130.10

| Software | Version | Publisher | Date |
|---|---|---|---|
| Microsoft Visual C++ 2015-2019 Redistributable (x64) | 14.27.29016.0 | Microsoft Corporation | 04/26/2019 |
| Microsoft Visual Studio 2010 Tools for Office Runtime (x64) | 10.0.60724 | Microsoft Corporation | |
| Open XML SDK 2.0 for Microsoft Office | 2.0.5022 | Microsoft Corporation | 10/24/2019 |
| Salesforce for Outlook | 3.4.07.16 | salesforce.com | |
| SAP Crystal Reports 2016 SP4 | 14.2.4.2410 | SAP | |
| ScreenConnect Client (8b9c9f6529b07f0b) | 20.10.957.7556 | ScreenConnect Software | 10/01/2020 |
| Teams Machine-Wide Installer | 1.2.0.34161 | Microsoft Corporation | 01/23/2020 |
| ThinkPad Thunderbolt 3 Dock and USB-C Dock | 1.001.7 | Lenovo Group Limited | 10/10/2020 |
| ThinkPad USB Ethernet Adapter Driver | 10.33.419.2019 | Lenovo | 10/10/2019 |
| ThinkPad USB-C Dock USB Audio | 1.31.38.34 | Conexant Systems | |
| Thunderbolt™ Software | 17.4.80.550 | Intel Corporation | 01/05/2021 |
| Time Matters® | 11.0.10.173 | LexisNexis | |
| Windows Internet Explorer 11 | 11.1198.18362.0 | Microsoft Corporation | 04/26/2019 |
| Wireshark 3.2.6 64-bit | 3.2.6 | The Wireshark developer community, https://www.wireshark.org | |

1

EXHIBIT 3

**Austin Colby Company**
12707 49th St N, Suite 100
Clearwater, FL  33762 US
+1 7274971827
ap@austin-colby.com

# Invoice

 Austin Colby Co.

BILL TO
Center for Special Needs Trust
4912 Creekside Dr.
Clearwater, FL  33760

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|
| 13500 | 05/09/2022 | $5,322.60 | 06/10/2022 | Due 10th | |

| SERVICE | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| Bill Backs | Email forward set-up - Giselle Knight - 8 hours | 8 | 150.00 | 1,200.00 |
| Bill Backs | Equipment Removal from The Centers, Friday, 5/6/22 - 4 hours -  no charge | 4 | 0.00 | 0.00 |
| Bill Backs | Mitel Phones (4) - misplaced, not returned to Austin Colby | 4 | 315.65 | 1,262.60 |
| Bill Backs | Payroll - Final Payroll Reports/Transfer to CSNT - 6 hours | 6 | 75.00 | 450.00 |
| Bill Backs | Porting of BISCOM Fax Lines (cost per line from BISCOM) | 4 | 40.00 | 160.00 |
| Bill Backs | Porting of BISCOM Fax Lines - 2 hours | 2 | 300.00 | 600.00 |
| Bill Backs | Porting of MITEL Telephone numbers - 3.5 hours | 3.50 | 300.00 | 1,050.00 |
| Bill Backs | SQL Server Backup - 2 hours | 2 | 300.00 | 600.00 |

BALANCE DUE

# $5,322.60

EXHIBIT B

---------- Forwarded message ---------
From: **Sean Cronin** <scronin@sclawyergroup.com>
Date: Fri, Dec 2, 2022 at 11:43 AM
Subject: AC v. CSNT - Server Turnover to EHounds
To: R. Michael Pierro <mike@flemploymentlaw.com>

Mike:

Consistent with the agreement between the parties, EHounds has taken the server from Austin Colby.  Attached for your records is a Chain of Custody form along with several photographs taken during the boot up process including a photograph of the logs showing the server was not powered on after 4-29-2022 until yesterday.  Please let me know if you have any issues in opening the attachments.  Thank you.

Sean


--
Sean P. Cronin
Stanton Cronin Law Group, P.L.
6944 West Linebaugh Avenue, Suite 102
Tampa, Florida 33625
Telephone: 813-444-0156
Facsimile: 813-422-7955
www.StantonCroninLawGroup.com

<u>CONFIDENTIALITY STATEMENT</u>

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.