UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

THE CENTER FOR SPECIAL NEEDS                    Case No. 8:24-bk-00676-RCT
TRUST ADMINISTRATION, INC.,

                                                Chapter 11

      Debtor.

_____/

**TRUSTEE'S APPLICATION TO EMPLOY AKERMAN LLP'S
EDISCOVERY SERVICES TEAM EFFECTIVE AS OF APRIL 3, 2024**

---

**NOTICE OF OPPORTUNITY TO
OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602 within fourteen (14) days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

---

      Michael Goldberg, Chapter 11 Trustee (the "**Trustee**"), for the Center for Special Needs Trust Administration, Inc. (the "**Debtor**" or "**Center**"), by and through undersigned counsel, hereby submits this application (this "**Application**") for the entry of an order, pursuant to sections 327 and 330 of the Bankruptcy Code, approving the employment of Akerman LLP's eDiscovery

Services Team (the "**Akerman eDiscovery Services Team**"), for services pertaining to electronically stored information ("**ESI**") of the Debtor's estate effective as of April 3, 2024. In support of the Application, the Trustee submits the Declaration of Elan Hersh, as a representative of Akerman LLP's eDiscovery Services Team (the "**Hersh Declaration**"), a copy of which is attached hereto and incorporated herein as **Exhibit A**.

In support of this Application, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Middle  District of Florida (Tampa Division) (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a) sections 327 and 330 of the Bankruptcy Code (the "**Bankruptcy Code**"), as complemented by Fed. R. Bankr. P. 6004.

## BACKGROUND

4.      On February 9, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (Doc. 1)

5.      On March 8, 2024, the U.S. Trustee filed an Expedited Motion for Order Directing the United States Trustee to Appoint a Chapter 11 Trustee by Agreement of the Debtor (Doc. 88). The Court granted the U.S. Trustee's Motion by Order dated March 11, 2024 (Doc. 93).

6.      On March 21, 2024, the Court entered its Order Approving Appointment of Chapter 11 Trustee, appointing Michael Goldberg as Chapter 11 Trustee (Doc. 109).

75905199;2

7.      On March 22, 2024, the Trustee filed his Application to Employ Steven R. Wirth and the law firm of Akerman LLP as attorney for Chapter 11 Trustee *Nunc Pro Tunc* to March 21, 2024 (Doc. 113) to assist in maximizing the value of the Debtor's estate's assets and protecting the interests of the creditors and trust beneficiaries during the administration of the Debtor's estate through due diligence, investigation, and prosecution efforts regarding any litigation, including, but not limited to, avoidance proceedings or any other matters pertaining to the Debtor and the estate of the Debtor. On April 9, 2024, this Court entered an order approving the Trustee's application to retain Akerman LLP. (Doc 163)

8.      On March 27, 2024, the Trustee filed an Application for Employment of Soneet R. Kapila and KapilaMukamal as Forensic Accountant (the "**Trustee's Forensic Accountant**") for Chapter 11 Trustee *Nunc Pro Tunc* to March 21, 2024 to provide forensic accounting services and to assist the Trustee in performing his duties in the most cost-effective, efficient, and timely manner. (Doc. 124). On April 2, 2024, this Court entered an order approving Trustee's application to employ Soneet R. Kapila and KapilaMukamal  as the Trustee's Forensic Accountant. (Doc. 138).

## **RELIEF REQUESTED**

9.      The Trustee seeks entry of the proposed order attached hereto as **Exhibit B**, authorizing it to retain and pay the Akerman eDiscovery Services Team for its ESI services effective as of April 3, 2024, including but not limited to, preservation, collection, searching, processing, analytics, hosting, review and production of hard copy documents and/or Electronically Stored Information for discovery or other purposes (collectively "**eDiscovery Services**") as described in the Engagement Letter and the Standard Terms and Conditions of Engagement (collectively, the "**Standard Terms and Conditions of Engagement**"), copies of which are attached hereto as **Exhibit C**, pursuant to sections 327, 328 and 330 of the Bankruptcy

Code. Trustee will compensate Akerman's eDiscovery Services Team in accordance with the price list provided in Addendum A of the Standard Terms and Conditions of Engagement.

10.    The Trustee seeks to employ the Akerman eDiscovery Services Team to provide eDiscovery Services to assist Trustee in preserving, processing, and maintaining a significant volume of ESI in order to investigate and potentially prosecute any matters on behalf of the Debtor and the estate, including but not limited to avoidance actions. The Trustee further submits that his decision to employ the Akerman eDiscovery Team is a critical component of carrying out his duties pursuant to the Bankruptcy Code and Local Rules to preserve and retain ESI relevant to pending or reasonably anticipated litigation, is a reasonable exercise of his sound business judgment, and is in the best interests of the Debtor's estate.

11.    The Trustee cannot maintain the Debtor estate's ESI through his own storage and data rooms, because the volume of ESI is simply too large to feasibly and timely manage, process, or search without specialized and professional ESI services.

7.    The Trustee believes the Akerman eDiscovery Services Team is eminently qualified to provide eDiscovery Services with its requisite experience in high profile, high volume disputes and investigations through cost effective means by utilizing innovative tools, including advanced data processing software, predictive coding, and artificial intelligence.

8.    The Trustee submits that the Standard Terms and Conditions of Employment of the Akerman eDiscovery Team in connection with the eDiscovery Services are reasonable, necessary, and in the best interests of the Debtor's estate.

9.    The Trustee and the Akerman eDiscovery Services Team will comply with all applicable local rules and applicable rules of the Bankruptcy Code, and Bankruptcy Rules of Procedure regarding compensation of professionals.

75905199;2

## **BASIS FOR THE RELIEF REQUESTED**

10.    Section 327 of the Bankruptcy Code provides, in relevant part the following:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. 327(a).

11.    Pursuant to section 330, the Court may authorize "reasonable compensation for actual, necessary services" by the professional, as well as "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). The Trustee has agreed to pay Akerman's eDiscovery Services Team discounted hourly rates and service fees as listed in Addendum A of the Standard Terms and Conditions of Engagement attached to this application as **Exhibit C**, all being subject to approval by the Bankruptcy Court by notice as provided in the Bankruptcy Code. Akerman's eDiscovery Services Team has agreed to provide several ESI services free of charge where other ESI service providers typically charge unit fees for services such as data analytics charges; user fees for access to the online document repository; imaging, endorsements, and optical character recognition.

12.    Akerman's eDiscovery Services Team's compensation under the Standard Terms and Conditions of Engagement is consistent with and typical of compensation agreements entered into by other eDiscovery management providers in connection with the rendering of similar services under similar circumstances.

13.    Akerman's eDiscovery Services Team does not hold or represent an interest adverse to these estate, and is disinterested as that term is defined by 11 U.S.C. § 101(14). *See* Hersh Declaration, **Exhibit A**.

75905199;2

14.    The Trustee seeks to preserve and protect the interests of the creditors and maximize the value of the Debtor's estate. Accordingly, in an exercise of his business judgment, the Trustee respectfully requests authority to employ and compensate Akerman's eDiscovery Services Team  pursuant to and in accordance with the Standard Terms and Conditions of Engagement, subject to the provisions of 11 U.S.C. §§ 327 and 330(a)(1), and appropriate Court approval.  All of the reporting and analysis of the ESI prepared by Akerman shall be privileged and confidential and constitute property of the bankruptcy estate.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests entry of an order substantially in the form attached hereto as **Exhibit B**, (i) granting and approving this Application effective as of April 3, 2024 (ii) approving the employment and compensation of Akerman's eDiscovery Services Team in accordance with the Standard Terms and Conditions of Engagement, and (iii) granting the Trustee such other and further relief as this Court deems just.

 Dated: April 23, 2024

**AKERMAN LLP**

By: */s/ Steven R. Wirth*
Steven R. Wirth
Florida Bar No.: 170380
Email: steven.wirth@akerman.com
Raye C Elliott
Florida Bar No.:  18732
Email:  raye.elliott@akerman.com
401 East Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone: (813) 223-7333
Facsimile: (813) 223-2837

*Counsel for Chapter 11 Trustee,*
*Michael Goldberg*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on April 23, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case as listed in the attached service list.  Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on all parties required to be served, including the Local Rule 1007-2 Parties in Interest List, and will file a certificate or affidavit of service.

   _/s/ Steven R. Wirth_
Attorney

**<u>SERVICE LIST</u>**

**8:24-bk-00676-RCT Notice will be electronically mailed to:**

Mark C Anderson on behalf of Creditor James Victor Flynn Special Needs Trust
mark@andersonlex.com

Mark C Anderson on behalf of Creditor Kienan Freeman Special Needs Trust
mark@andersonlex.com

Mark C Anderson on behalf of Creditor Lee Guardianship Services, Inc.
mark@andersonlex.com

Mark C Anderson on behalf of Creditor Michael Szalka, Legal Guardian of James Victor Flynn
mark@andersonlex.com

Mark C Anderson on behalf of Creditor Rebekah Bowman
mark@andersonlex.com

James B. Angell on behalf of Attorney James Angell
jangell@hsfh.com

James B. Angell on behalf of Creditor c/o James Angell Beneficiary 19-11391
jangell@hsfh.com

James B. Angell on behalf of Creditor c/o James Angell Beneficiary 21-12042
jangell@hsfh.com

Lauren A Baio on behalf of Creditor Louise Pino
lauren.baio@arlaw.com, catherine.lockley@arlaw.com;jessica.eck@arlaw.com

Noel R Boeke on behalf of Interested Party Pierreisna Archille
noel.boeke@hklaw.com, wendysue.henry@hklaw.com;hapi@hklaw.com

Noel R Boeke on behalf of Interested Party Arne Timothy Solheim
noel.boeke@hklaw.com, wendysue.henry@hklaw.com;hapi@hklaw.com

Catherine Choe on behalf of Trustee Michael Goldberg
catherine.choe@akerman.com

Teresa Marie Dorr on behalf of U.S. Trustee United States Trustee - TPA
teresa.dorr@usdoj.gov, lizette.montanez@usdoj.gov

Raye Curry Elliott on behalf of Trustee Michael Goldberg
raye.elliott@akerman.com, jennifer.meehan@akerman.com;ava.hill@akerman.com

75905199;2

Epiq Corporate Restructuring, LLC (SJG)
sgarabato@epiqsystems.com, rjacobs@ecf.epiqsystems.com

Daniel E Etlinger on behalf of Creditor Committee Unsecured Creditors' Committee
detlinger@underwoodmurray.com,
dstrand@underwoodmurray.com;detlinger@ecf.courtdrive.com

Lara Roeske Fernandez on behalf of Creditor Boston Finance Group, LLC
lfernandez@trenam.com,
mmosbach@trenam.com;mwoods@trenam.com;lfernandez@ecf.courtdrive.com;mwoods@ecf.c
ourtdrive.com;mmosbach@ecf.courtdrive.com

Lara Roeske Fernandez on behalf of Creditor Leo J. Govoni
lfernandez@trenam.com,
mmosbach@trenam.com;mwoods@trenam.com;lfernandez@ecf.courtdrive.com;mwoods@ecf.c
ourtdrive.com;mmosbach@ecf.courtdrive.com

Daniel R Fogarty on behalf of Debtor The Center for Special Needs Trust Administration, Inc.
dfogarty.ecf@srbp.com, srbpecf@srbp.com

Inger M. Garcia on behalf of Creditor Christopher Gonsalves
attorney@ingergarcia.com

Michael I Goldberg on behalf of Trustee Michael Goldberg
michael.goldberg@akerman.com, charlene.cerda@akerman.com

Yusuf Haidermota on behalf of Creditor Randy Jones
yhaidermota@shumaker.com, dfernandez@shumaker.com

Matthew B Hale on behalf of Debtor The Center for Special Needs Trust Administration, Inc.
mhale.ecf@srbp.com, mhale@srbp.com;srbpecf@srbp.com

Donald R Kirk on behalf of Creditor American Momentum Bank
dkirk@carltonfields.com, kathompson@carltonfields.com

Jerry M Markowitz on behalf of Interested Party Shawn Norville as Guardian for Israel Norville
jmarkowitz@mrthlaw.com,
ycandia@mrthlaw.com;rrubio@mrthlaw.com;rhartog@mrthlaw.com;mrthbkc@gmail.com;mark
owitzjr73991@notify.bestcase.com;jmarkowitz@ecf.courtdrive.com

Curtis Miner on behalf of Creditor Beneficiary 22-12211
curt@colson.com

Curtis Miner on behalf of Creditor Beneficiary 22-12212
curt@colson.com

75905199;2

Patrick Mosley on behalf of Debtor The Center for Special Needs Trust Administration, Inc.
patrick.mosley@hwhlaw.com, tricia.elam@hwhlaw.com

Megan Wilson Murray on behalf of Creditor Committee Unsecured Creditors' Committee
mmurray@underwoodmurray.com,
dstrand@underwoodmurray.com;mmurray@ecf.courtdrive.com

Michael A Nardella on behalf of Creditor Carol Mulholland
mnardella@nardellalaw.com,
klynch@nardellalaw.com;kcooper@nardellalaw.com;psmith@nardellalaw.com;msayne@nardellalaw.com

Richard A. Perry on behalf of Creditor The Javier Persales Irrevocable Trust
richard@rapocala.com,
rapocala@yahoo.com,staff@rapocala.com,karen@rapocala.com;perry.richardb129413@notify.bestcase.com

Edward J. Peterson, III on behalf of Creditor Austin Colby Co.
edwardp@jpfirm.com,
andrenaw@jpfirm.com;JillC@jpfirm.com;melanief@jpfirm.com;AngelinaL@jpfirm.com

Edward J. Peterson, III on behalf of Interested Party Boston Asset Management, Inc.
edwardp@jpfirm.com,
andrenaw@jpfirm.com;JillC@jpfirm.com;melanief@jpfirm.com;AngelinaL@jpfirm.com

Kelly K Roberts on behalf of Creditor Beneficiary 04-0091
Kelly@kellyrobertslaw.com, robertskr88423@notify.bestcase.com

Marcos Rosales on behalf of Creditor American Momentum Bank
mrosales@beckredden.com

Sherri B Simpson on behalf of Creditor Marie R. Dore, Guardian of Gaellen Fabre
sbs@simpsonlawfl.com

Scott A. Stichter on behalf of Debtor The Center for Special Needs Trust Administration, Inc.
sstichter.ecf@srbp.com, srbpecf@srbp.com

Charles M Tatelbaum on behalf of Creditor Max Francois as Guardian for Aiden Francois
cmt@trippscott.com, hbb@trippscott.com;eservice@trippscott.com

Charles M Tatelbaum on behalf of Creditor GARY SABATINO
cmt@trippscott.com, hbb@trippscott.com;eservice@trippscott.com

Scott A Underwood on behalf of Creditor Committee Unsecured Creditors' Committee
sunderwood@underwoodmurray.com,
dstrand@underwoodmurray.com;sunderwood@ecf.courtdrive.com

75905199;2

United States Trustee - TPA
USTPRegion21.TP.ECF@USDOJ.GOV

Jay B Verona on behalf of Creditor Randy Jones
jverona@shumaker.com, mhartz@shumaker.com

Mark M Wall on behalf of Debtor The Center for Special Needs Trust Administration, Inc.
mwall@hwhlaw.com, zenetria.williams@hwhlaw.com

Steven R Wirth on behalf of Trustee Michael Goldberg
steven.wirth@akerman.com,
john.dicks@akerman.com,caren.collier@akerman.com;jennifer.meehan@akerman.com

Byron Wright, III on behalf of Creditor Jimmie Crim, Jr.
twright@brunerwright.com,
melanie@brunerwright.com;laura@brunerwright.com;skelley@brunerwright.com

John R Yant on behalf of Creditor The Theresa Alessandra Russo Foundation
ryant@carltonfields.com, dlester@carltonfields.com;kathompson@carltonfields.com

75905199;2

# Exhibit A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

THE CENTER FOR SPECIAL NEEDS          Case No. 8:24-bk-00676-RCT
TRUST ADMINISTRATION, INC.,

      Debtor.                                      Chapter 11

_____/

## DECLARATION OF ELAN S. HERSH, ESQ.

I Elan Hersh, Esq., hereby declare under penalty of perjury that the following is true, accurate, and correct to the best of my knowledge, information and belief:

1.      I am an attorney admitted to practice in the State of Florida and the United States District Court for the Middle District of Florida.

2.      I submit this Declaration in support of the *Trustee's Application to Employ Akerman's LLP's eDiscovery Services Team Effective as of April 3, 2024* (the "Application"), seeking entry of an order authorizing the Trustee to employ Akerman LLP's eDiscovery Services Team to provide services regarding electronically stored information ("ESI"), more fully described in the Application.

3.      I am a Partner of Akerman LLP, located at 201 East Las Olas Boulevard, Suite 1800, Fort Lauderdale, FL 33301.

4.      Akerman LLP has been employed as counsel to the Chapter 11 Trustee in the above-captioned case.

5.      I am the Director of Akerman LLP's eDiscovery Services Team, located at 201 East Las Olas Boulevard, Suite 1800, Fort Lauderdale, FL 33301.

6.    I am authorized to make this Declaration on behalf of Akerman LLP in accordance with Bankruptcy Rule 2014 and Local Rule 6005-1.

7.    To the best of my knowledge, neither I nor Akerman LLP represent or hold any interest adverse to the Chapter 11 Trustee or to the Debtor's estate, and we are disinterested persons within the meaning of 11 U.S.C. § 101(14) as required by 11 U.S.C. § 327(a).

8.    I have reviewed the Application and to the best of my knowledge, information, and belief, the facts set forth therein are true, accurate, and correct.

By:    _____
       (Signature)

       Elan S. Hersh
       _____
       (Print Name)

Dated: April 22, 2024

2

75905200;1

# Exhibit B

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re

THE CENTER FOR SPECIAL NEEDS          Case No. 8:24-bk-00676-RCT
TRUST ADMINISTRATION, INC.,

                                         Chapter 11

          Debtor.

_____/

**ORDER GRANTING TRUSTEE'S APPLICATION
TO EMPLOY AKERMAN LLP'S EDISCOVERY
SERVICES TEAM EFFECTIVE AS OF APRIL 3, 2024**

THIS MATTER came before the Court for hearing on _____, 2024, at

____:____ a.m./p.m. on the Trustee's Application for Employment of Akerman LLP's eDiscovery

Services Team [Doc. ____] (the "**Application**"). [1]  The Court, finding that Akerman's eDiscovery

Services Team is disinterested as required by 11 U.S.C. § 327, and their employment is necessary

and would be in the best interests of the estate, finds good cause for the relief.  Accordingly, it is

ORDERED as follows:

1.       The Application is approved.

2.       The Trustee is authorized to employ Akerman's eDiscovery Services Team under

the Standard Terms and Conditions of Engagement attached as **Exhibit C** to the Motion in this

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as ascribed in the Application.

case effective as of April 3, 2024.

3.     Irrespective of the foregoing, Akerman's eDiscovery Services Team shall file applications for reimbursement of costs and expenses in compliance with the Bankruptcy Rules, Local Rules, and Bankruptcy Court and United States Trustee Guidelines.

*Attorney Steven Wirth is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and to file a proof of service within 3 days of entry of the order.*

# Exhibit C



Elan Hersh

Akerman LLP
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL  33301

T: 954 463 2700
F: 954 463 2224

April 3, 2024

**VIA E-MAIL (michael.goldberg@akerman.com)**

Michael I. Goldberg, Chapter 11 Trustee
The Center for Special Needs Trust Administration, Inc.
201 E. Las Olas Blvd, Suite 1800
Ft. Lauderdale, Florida 33301

      **Re:    ESI Services -  The Center for Special Needs Trust Administration, Inc.**

Dear Michael:

      We are pleased that you have engaged Akerman LLP ("Akerman" or the "Firm") to represent you in your capacity as Chapter 11 Trustee of The Center for Special Needs Trust Administration, Inc. ("Client").  This letter provides the terms and scope of the engagement.  A copy of our standard terms and conditions of engagement is enclosed for your review and is incorporated by reference and made a part of this engagement letter.  In the event of any inconsistencies between this engagement letter and those of the standard terms and conditions of engagement, the provisions of the engagement letter will control.  If there are questions concerning this engagement letter, including our standard terms and conditions of engagement, please give us a call.

      **Scope of Engagement.**  Your office has engaged us to provide ESI services in connection with The Center for Special Needs Trust Administration Chapter 11 bankruptcy proceedings. We have agreed that this engagement is limited to performing ESI services related to this matter only. We may agree to limit or expand the scope of this representation from time to time, provided such change is reflected in a written confirmation (including by email) between Client and our Firm. Although Akerman will use its best efforts to strive to represent Client effectively, Akerman cannot guarantee success and payment of Akerman's bills is not contingent upon the outcome of the matter or the result obtained.

      **Staffing**.  Primary responsibility for this engagement will initially be assumed by Partner and Director of eDiscovery, Elan Hersh.  Other attorneys, project managers and legal assistants may also be assigned to this matter.  Staffing will depend primarily on the judgment of Akerman as to the experience and expertise required to properly discharge its professional responsibilities.

Michael I. Goldberg, Chapter 11 Trustee
April 3, 2024
Page 2
_____

**Fees**.  The principal basis for computing our fees will be the amount of time spent on the matter by various lawyers and legal assistants multiplied by their individual hourly billing rates as well as certain eDiscovery and litigation support fees set forth in Addendum A. The time required to perform services is recorded and hourly rates are applied to the recorded time in the billing process. Current rates for eDiscovery lawyers and professionals range from $285.00 to $715.00 per hour depending upon their skill and experience level. Elan Hersh's current hourly rate is $695.00 per hour but will be discounted by 20% for the duration of this matter. Please note that hourly rates of Akerman professionals are typically adjusted annually and may be adjusted at other times during each year.

**Retainer**.  It is normal practice for Akerman to require a retainer when undertaking new representation. In this instance, Akerman agrees to waive that requirement, but reserves the future right to require a retainer depending upon the scope of services anticipated.

**Choice of Law.**  The relationship between you as Client and the Firm, including the validity, construction, and enforceability of this engagement letter, shall be governed in all respects by the law and professional conduct rules of Florida, without regard to conflicts of laws principles.

**Consent to Future Conflicts**.  As you know, Akerman is a large law firm and represents many other companies and individuals in many other matters.  Thus, during the time we are representing Client, we may also represent other present or future clients in disputes or transactions adverse to Client that are unrelated to this representation.

Akerman understands and agrees that this is not an exclusive agreement and Client is free to retain other counsel of Client's choosing.  Also, Akerman recognizes that Akerman shall be disqualified from representing any other client with interests materially and directly adverse to Client in any matter substantially related to Akerman's representation of Client.

Based on the foregoing, Client agrees that Akerman's representation of Client in this matter will not disqualify Akerman from in the future opposing it in litigation, transactions, or other legal matters that are unrelated to the subject matter of this representation, and Client consents to waive any conflict of interest with respect to those representations.  Client agrees that Akerman's representing it in this matter will not prevent Akerman from representing clients adverse to Client in other matters and that Client consents in advance to Akerman undertaking such adverse representations.  Akerman agrees, however, not to use any proprietary or other confidential information of a nonpublic nature concerning Client acquired by Akerman as a result of our representation of Client to its disadvantage in any litigation or other matter in which we are opposed to Client.

If you have any questions regarding the foregoing waiver, or if you believe a modification or clarification is appropriate in connection with our representation of Client, please do not hesitate to contact us or other counsel for advice.

75697987;2

Michael I. Goldberg, Chapter 11 Trustee
April 3, 2024
Page 3
_____

**Akerman eDiscovery Services.**  This matter will require ESI services, including but not limited to the following: preservation, collection, searching, processing, analytics, hosting, review and production of hard copy documents and/or Electronically Stored Information ("ESI") for discovery or other purposes (collectively "eDiscovery Services" or "ESI Services"). Fees for Akerman's eDiscovery Services team are listed in addendum A to this agreement.  Our fees, like those of third-party providers, may include a premium above the amount of Akerman's costs to perform the eDiscovery Services and a data management fee to cover administrative expenses. Technology fees and hourly rates are typically adjusted annually and may be adjusted at other times during the year.  Notwithstanding the provisions in any outside counsel guidelines, your signature below signifies your agreement to employ Akerman's eDiscovery Services team in this matter.

Fees for eDiscovery services will appear as a line item on Client's monthly legal services invoice and can be provided to Client on a separate itemized invoice upon request.  The itemized invoice provides a detailed description and accounting of services rendered in two separate sections: (1) the "eDiscovery Services" section outlines expenses related to technology fees, overflow litigation support, and fees from strategic partners for services such as computer forensics; and (2) the "Professional Services" section lists fees from project managers and other professionals.  Fees from strategic partners such as forensic data services may be billed one month in arrears.  At the conclusion of the engagement or when data hosting services are no longer needed, Client must contact Akerman to deactivate the database.  Data hosting and user charges are billed on a monthly basis and cannot be prorated.  Hosting fees will continue to accrue until the discovery database is deactivated.

We appreciate your confidence in Akerman and look forward to working with you. This engagement letter may be signed in counterparts.  Facsimile or imaged signature pages executed by the Firm and/or Client shall be effective as original signatures.

Please indicate your agreement with the foregoing by signing below and returning this signature page to us (or by sending us an e-mail that you agree to this engagement letter), so that we may commence work.  By signing below or confirming via email, you agree that you have read and fully understand the foregoing and the Standard Terms and Conditions of this engagement, including the Consent to Representation of Law Firms advanced waiver on the last page of the Standard Terms and Conditions.  Please call or email me if you have any questions.

Sincerely,

Elan Hersh
Partner and Director of eDiscovery Services

75697987;2

Michael I. Goldberg, Chapter 11 Trustee
April 3, 2024
Page 4
_____

AGREED AND ACCEPTED:


By:_____
Name:_Michael I. Goldberg_____
Date:_____

# AKERMAN LLP
## STANDARD TERMS AND CONDITIONS OF ENGAGEMENT

The following standard terms and conditions of engagement are incorporated in and made a part of the engagement letter for each matter for which Akerman LLP ("Akerman" or "Firm") is engaged to represent "Client," as defined in the engagement letter. In the event of any inconsistencies between the terms of the engagement letter and those of these standard terms and conditions of engagement, the terms of the engagement letter will control.

**Additional Terms and Conditions Regarding Scope of Engagement.** The scope of Akerman's engagement is set forth in the attached engagement letter, including these standard terms and conditions of engagement, and is limited to such description. Any changes or additions to the scope of Akerman's engagement, which we would be pleased to consider, must be agreed to and memorialized in writing prior to such change or addition taking effect. An attorney-client relationship between Akerman and the Client exists during the times when Akerman is actually performing work for the Client on a particular matter. This engagement letter creates a structure for establishing future engagements and attorney-client relationships on an as-requested basis by the Client and subject to written confirmation of acceptance by Akerman. It does not create an attorney-client relationship absent an actual request by Client for representation in a particular matter and Akerman's written acceptance of representation in a particular matter. Akerman reserves the right to decline representation in a particular matter. Unless the description of the scope of Akerman's engagement in the engagement letter states otherwise, Akerman's engagement does not include responsibility for (1) review of Client's insurance policies to determine the possibility of coverage for either the matter Akerman is handling or our fees and costs; (2) notification to Client's insurance carriers about the matter; (3) advice to Client about Client's disclosure obligations concerning the matter under state or federal securities or tax laws; (4) advice about tax issues that relate to the matter; or (5) other specialized areas of law unrelated to the specific representation which the Firm has undertaken. (Akerman has very capable attorneys in these areas who would be happy to discuss the terms under which they would undertake such representation). Akerman will not provide business, investment, or accounting advice regarding the matter and we will consider that you have independently obtained such advice or do not consider it necessary or relevant to the representation which we have undertaken. Legal services provided are solely for the benefit of Client unless Akerman and Client otherwise expressly agree in writing. In addition, Client may not assign its claims handled by Akerman without the express prior written agreement of Akerman.

**Exclusion of Owners, Subsidiaries, Officers, Directors, Employees and Other Affiliates.** Akerman's client for purposes of the Firm's representation is the Client as identified in the engagement letter for the matter, and not, unless expressly named in the engagement letter, any "Affiliates" of Client. Unless otherwise agreed in writing by Client and Akerman, Client agrees that Akerman's representation of Client in this matter does not give rise to a lawyer-client relationship between Akerman and any Affiliates of Client. Accordingly, unless otherwise agreed in writing by Client and Akerman, the Firm's representation of Client in this matter will not give rise to a conflict of interest in the event the Firm represents other clients adverse to a Client Affiliate in other matters. "Affiliates" of Client that are excluded from the meaning of Client include, but are not limited to (1) shareholders or constituent partners, members, or other equity stakeholders, (2) parent, sister, brother and subsidiary companies, (3) joint ventures, limited partnerships, general partnerships, limited liability companies, or other unincorporated entities in which Client may have an ownership interest, (4) officers, (5) directors, (6) employees, or (7) any other party related by family relationship, management position or capacity, contractual, cross-ownership or otherwise**.** ***Should you feel it necessary and appropriate to change the identified client or to include any of the foregoing within the definition of "Client" for a particular matter, please do not hesitate to discuss the matter with us before signing the engagement letter.*** The Firm's objective in this policy is to avoid situations where (1) true clients or parties in interest being represented by Akerman find themselves being sued or in an adverse position to another client of Akerman because our records did not properly identify the client, or (2) after undertaking our representation of you (or another client), and investing considerable time and dollars on your behalf, Akerman is forced to withdraw from a representation because of a conflict which could have been identified earlier with accurate client identification at the inception of our attorney-client relationship.

**Information/Client Responsibilities.** Akerman will seek to keep Client informed of the status of matters. However, Client should feel free to contact us at any time with questions and comments.

Client agrees to provide Akerman with all information that Akerman believes is necessary or appropriate to fulfill our professional responsibilities, and cooperate with us in matters such as fact investigation, preparation of pleadings, discovery responses, and required court or decisional-body appearances. Client's responsibilities include the following: abiding by the engagement letter, paying bills on time, and keeping Akerman advised of Client's address, telephone number and whereabouts. Client further agrees that without Akerman's express prior written consent, Client will not use Akerman's name or the fact of its engagement in any form of advertising or solicitation of business.

**Fees and Reimbursable Costs, along with applicable sales or other taxes, will be calculated and assessed for the representation of Client as follows:**

*Fees.* Akerman will bill Client on a monthly basis unless otherwise specified in the engagement letter for a specific matter. Each bill will provide a detailed description and accounting of services rendered during the immediately preceding month. The "services rendered" will be broken down into two separate components: (1) legal services provided by our attorneys, paralegals and other professionals, and (2) reimbursable costs and expenses incurred by Akerman in connection with its representation of Client. With respect to legal services, Client will be billed on an hourly basis (unless otherwise specified in the engagement letter) at rates which will vary with the nature of the matter, as well as with the experience and skill of the attorney, paralegal or professional rendering the services. Please note that our regular hourly rates are typically adjusted annually and may be adjusted at other times during each year.

The time charges recorded by attorneys are not absolutes to which Akerman adheres without analysis of the time that has been spent. They serve as "benchmarks" which ordinarily are followed. Each month, before bills are submitted, a review is performed to assess the nature of the services performed for the client. In charging for our services, Akerman will consider all the factors outlined in the applicable ethical rules. These include the time and labor required, the novelty and difficulty of the legal issues, the skill required to properly perform the services, the experience, reputation, and ability of those performing the services, any time limitations imposed, the circumstances, the amount involved and the results obtained. In the event that a court or other decisional body (such as an arbitrator) awards attorney's fees in excess of our actual billings, or such is agreed in any settlement or related transaction, it is agreed that, in addition to the amount Client is obligated to pay, Akerman will be entitled

to recover the amount of such excess from the opposing party. Additionally, Akerman retains the right to recover its fees from any recovery resulting from its services.

Under certain circumstances, the Client may be entitled to recover its attorney's fees and costs from an adverse party. Because fees and costs awards are totally unpredictable, the Client expressly agrees that it is the Client's obligation under this Agreement to pay all attorney's fees and costs due Akerman, without giving any effect to the recovery of any costs and attorney's fees from any adverse party. In the event Client has paid costs and attorney's fees which are subsequently recovered from an adverse party, those amounts will be used first to pay all costs and fees due Akerman hereunder, with the balance then being paid to the Client. The amount of the court award of costs and attorney's fees, if any, does not set or limit the attorney's fees due Akerman in any way. The collection of fees from the adverse party is an additional Akerman service, and the Client is expected to pay Akerman a further fee on the same basis as set forth in the Agreement for performing such service. In regard to any amounts which may be recovered for the Client, whether through litigation or otherwise, those amounts will be paid to the trust account of Akerman and will be used to pay all costs and attorney's fees due Akerman hereunder, with the balance then being paid to the Client.

Additionally, if in response to Client's request or by requirement of lawful process Akerman testifies; gathers and/or produces documents; responds to document hold or production requests; or responds to any other requests in connection with possible, threatened or actual proceedings commenced by third parties that relate to Akerman's representation of Client, Client agrees to pay Akerman its reasonable fees and costs incurred.

Although Akerman will use its best efforts to represent Client effectively, Akerman cannot guarantee success and payment of our bills is not contingent upon the outcome of the matter or the results obtained. Please let Akerman know if there are ever any questions concerning our billing or the basis of our charges.

*Reimbursable Costs and Expenses.* The second component of "services rendered" shown on the bill will be a summary of costs and expenses by category which includes, but is not limited to, expenses such as filing fees, court reporter fees, witness fees, deposition transcripts, court costs, expert charges, audit response letters, long distance telephone, postage, photocopy/scan/print charges, facsimile charges, secretarial and word processing overtime, video conferencing, overnight or special delivery services, research services (such as Westlaw and

75697987;2

LEXIS), travel, lodging, meals, and costs related to the collection and imaging of records. Such expenses will be itemized on Akerman's statements. Certain cost bills may be forwarded to Client for payment directly to the vendor. Due to delays in Akerman's receipt of bills for costs and expenses from third party vendors, Akerman's billing of Client may be delayed. In addition, if substantial costs are to be advanced in connection with the matter, it is Akerman's practice to obtain a retainer to cover such costs or to have them billed directly to Client for payment. Billing for certain cost items may include a surcharge. Others are billed at the amounts actually charged to Akerman.

**Employment of Additional Professionals.** If Akerman deems it necessary to employ additional professionals with specialized skills and, after consultation with the Client, the Client deems it appropriate to do so, additional professionals may be employed by Akerman. In such event, where appropriate and subject to Client approval, Akerman will employ such professionals in the name of the Client. Notwithstanding the form of employment of the professional and regardless of whether the professional's invoice is addressed to Akerman or to the Client, Client is obligated to pay the fees of the professional in full, upon the rendering of a statement. Akerman reserves the right to request and obtain an additional retainer to defray the fees and expenses of professionals employed in connection with Client's matter. All fees and expenses of professionals shall be subject to the security provisions, interest provisions and other applicable provisions of this engagement letter.

**Advice about Possible Outcomes.** From time to time, either at the outset or during the course of our representation, we may express opinions or beliefs concerning the matter or various courses of action and the results that might be anticipated. Any such statement made by any lawyer of the Firm is an expression of opinion only, based on information available to us at the time, and should not be construed as a promise or guarantee.

**Right to Separate Counsel.** Client acknowledges having had the opportunity to seek the advice of separate counsel with respect to this engagement letter.

**Electronic Communications.** The use of electronic communications ("EC") (such as email) can be an efficient means of communication, and Akerman often uses it to communicate with clients. Some clients also use instant messaging as a means of communication. However, these electronic communications can be delayed or blocked (such as by anti-spam software) or otherwise not transmitted. Client must not assume that an email or

instant message sent to Akerman was actually opened and read unless Client receives a non-automated reply message indicating that Akerman has read Client's message. Akerman may send documents or other information that is covered by the attorney-client or work product privileges using external EC. Client understands that EC is not an absolutely secure method of communication. Client's execution of the engagement letter will serve to acknowledge and accept the risk and authorize Akerman to use EC means to communicate with Client or others necessary to effectively represent the Client. If there are certain documents with respect to which the Client wishes to maintain absolute confidentiality, the Client must advise Akerman in writing not to send them via EC, and Akerman will comply with Client's request.

**Trust account.** Under applicable law, interest on attorneys' trust accounts for clients may be payable to a state fund for legal services to the indigent, unless clients specifically elect separate trust accounts. If Client desires Client's deposit to be placed in a trust account with interest payable to Client, please so advise. Client will reimburse Akerman for the costs of such account, and Akerman will provide Client with an Advance Deposit Form where Akerman will need Client's taxpayer identification number on the signed W-9 Form. Akerman's trust accounts are held in approved financial institutions, and bear interest at the bank's rates for this type of account. The bank, however, is subject to change at Akerman's discretion.

**Payment; Security for Payment.** Unless otherwise specifically agreed in the engagement letter, Akerman expects payment from Client upon receipt of the bill. Prompt and full payment for Akerman's services is vital to Akerman's ability to efficiently provide legal services to all clients. By executing the engagement letter, Client agrees to pay Akerman's invoice upon receipt of the bill, unless otherwise specified in the letter. A failure to question or object to any charges within thirty (30) days after receipt of a statement will constitute Client's agreement to the statement as presented. Akerman reserves the right, in appropriate cases, to request security, including a retainer deposit, for fees and expenses. Security for fees and expenses and the determination of what will constitute acceptable collateral or who will personally guaranty payment, will be made by Akerman after consultation with the Client. In addition, applicable law may provide attorneys with liens upon materials coming into their possession to secure the payment of their fees. This retaining lien, as well as appropriate charging liens, may be asserted by Akerman in appropriate circumstances. In the event of any proceedings to enforce the provisions of this engagement letter, or otherwise

between Akerman and the Client, the prevailing party shall be entitled to recover its reasonable attorneys' fees and court expenses from the other party.

**Interest on Overdue Accounts.** Client understands and agrees that if payment is not made within thirty (30) days of the bill date, an interest charge may be added to the outstanding balance in accordance with the laws of the state that governs this agreement. Akerman also reserves the right to discontinue services if Akerman's bills are not paid in a timely manner, and to seek payment for all past services rendered.

**Term of Engagement.** The effective date of Akerman's agreement to provide services is the date on which we first performed services. The date at the beginning of the engagement letter is for reference only. Either Akerman or Client may terminate the engagement at any time for any reason by written notice, subject, on Akerman's part, to applicable rules of professional conduct. If Client so requests, Akerman will suggest possible successor counsel. If permission for withdrawal is required by a court, we will promptly apply for such permission, in accordance with local court rules, and Client agrees to engage successor counsel to represent Client.

**Termination.** Absent express notice of termination, Akerman's representation of Client will conclude with respect to any particular matter for which Akerman has been engaged upon completion of Akerman's work on such matter. The Firm's attorney-client relationship for such matter will terminate at such time. Such termination or withdrawal will not relieve Client of its obligation to pay for services rendered through the termination or withdrawal date, including work in progress and incomplete at the time of termination or withdrawal, and for all expenses incurred on behalf of Client through the termination or withdrawal date.

**Post-Engagement Matters.** Client has engaged Akerman to provide legal services in connection with a specific matter as described in the engagement letter. After completion of the matter, changes may occur in the applicable laws or regulations that could have an impact on the Client's future rights and liabilities. Unless Client engages Akerman to provide additional advice on issues arising from the matter, Akerman has no continuing obligation to advise Client with respect to future developments.

**Firm Marketing.** Akerman reserves the right to publish the name of Client in legal directories, as well as in Akerman's brochures, web site, deal lists and other marketing materials, which may describe the types of services Akerman provides and the transactions and litigations that Akerman has handled. Akerman also may provide the name, address and telephone number of Client to prospective clients for use as a reference for Akerman. Any such disclosures are subject in all cases to Akerman's obligation to maintain the confidences of Akerman's clients. Client should advise us in writing if it desires that Akerman not publish any information about it in any legal directory, brochure, web site or other marketing materials, and/or that Akerman not provide Client's name, address or telephone number to prospective clients.

**Internal Review.** In the course of our representation of Client, it may be necessary for Akerman lawyers to analyze or address their professional duties or responsibilities or those of Akerman, and to consult with Akerman's General Counsel or other lawyers in doing so. To the extent Akerman is addressing its duties, obligations or responsibilities to Client in those consultations, it is possible that a conflict of interest might be deemed to exist as between Akerman and Client. As a condition of this engagement, Client consents to such consultations occurring and waives any conflict of interest that might be deemed to arise out of any such consultations and any resulting communications. Client further agrees that these consultations and any resulting communications are protected from disclosure to Client and others by Akerman's attorney-client privilege. Of course, nothing in the foregoing shall diminish or otherwise affect Akerman's obligation to keep Client informed of material developments in Akerman's representation of Client, including any conclusions arising out of such consultations to the extent that they affect Client's interests.

**Responses to Audit Letters.** If Client engages an accountant to audit Client's financial statements, it is likely the accountant will request, during the audit, that Akerman provide a written description of all pending or threatened claims for lawsuits to which Akerman has given substantive attention on Client's behalf. This request is typically a standardized letter provided by the accountant which Client is requested to send to Akerman. Akerman will typically charge Client for providing the response to the audit letter. Client agrees to pay such costs related to the response to the audit letter.

**Conclusion of Representation and Disposition of Client Files.** Akerman is not obligated to keep files/records related to a matter after that matter is finished unless required to do so by operation of law. Upon conclusion of Client's representation, subject to the payment provisions of applicable rules of professional conduct, Akerman will return to Client the Client's original papers, hard

copy/electronic documents and/or other property that Client provided to the Firm during the engagement. Client agrees to accept the return of such documents and/or property. If Client so requests, Akerman will also provide to Client, at Client's expense, copies or originals of Client's file. Akerman and Client agree that lawyer work product (for example, drafts, notes, internal memoranda, work files, etc.) are the property of Akerman. Akerman reserves the right to make, at Client's expense, copies of all other documents generated or received by Akerman in the course of Akerman's representation of Client. All such documents retained by Akerman, including client files (including any original documents and/or property that we attempted unsuccessfully to return to you) and Akerman files, will be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, Akerman reserves the right to destroy or otherwise dispose of any documents or other materials retained by us thirty (30) days after providing notice of intention to destroy them (unless Client requests those materials within thirty (30) days of notification) or after ten years from the date the matter is completed.

**No Legal Services Respecting Corporate Transparency Act.** Beginning on January 1, 2024, the Corporate Transparency Act (CTA) requires many entities formed or registered in the United States to report information to the U.S. Department of Treasury's Financial Crimes Enforcement Network (FinCEN). For each reporting company, this includes detailed information about the company, its beneficial owners, and for newly formed entities, individuals involved in the formation of the company. Any changes to much of this information must be reported to FinCEN within a very short (30-day) time frame, and there may be both civil and criminal penalties for failing to comply with the CTA. Compliance with the CTA is the responsibility of the reporting companies, and our engagement does not include legal advice relating to any potential CTA reporting obligations, beneficial ownership analysis, or other assistance relating to the CTA absent a further express written agreement. For the avoidance of doubt, even if our engagement includes assistance in connection with (i) forming, registering, licensing, or otherwise qualifying a new legal entity, or (ii) a transaction that may trigger a reporting obligation, we will not be advising in connection with the CTA or any other similar state or local reporting obligations absent an express written agreement to the contrary that sets forth the specific parameters of our assistance. In no event shall we have any obligation to notify you or monitor for changes that may require updates or amendments to your CTA reports even if we become aware of them.

**Consent to Representation of Law Firms**. Akerman represents other law firms in various matters. During the time we are representing Client, we may represent other law firms in matters unrelated to this matter, including the representation of other law firms that represent present or future parties in disputes or transactions adverse to Client. When Akerman represents other law firms in matters unrelated to Client's matter(s), we do not believe that such representations create a material limitation on Akerman's representation of the Client. (A material limitation arises if there is a significant risk that a lawyer's ability to consider, recommend, or carry out an appropriate course of action for a client will be materially limited as a result of the other responsibilities or interests of the lawyer or of other lawyers in the lawyer's firm).

When Akerman represents other law firms in matters unrelated to Client's matter(s), we do not believe that such a significant risk exists in such situations. In addition, we do not believe that the exercise of Akerman's independent judgment as counsel to each party generally will be affected by our representation of Client in its matter(s) and our representation of law firms in unrelated matters.

Client acknowledges that we have disclosed the potential material limitation conflict of interest identified herein, and specifically consents to Akerman's representation of Client and our representation of law firms in unrelated matters including law firms that represent present or future parties in disputes or transactions adverse to Client. Client waives any conflict of interest with respect to those representations.

**Modification in Writing Only; Severability.** No change to the engagement letter shall be effective unless and until confirmed in writing and signed by the Firm and Client making express reference to the engagement letter. The engagement letter, including these terms and conditions of engagement, embodies the whole agreement of the parties. There are no promises, terms, conditions or obligations other than those contained herein, and the engagement letter shall supersede all previous communications, representations, or other agreements, either oral or written, between the Firm and Client for the engagement. If any provision of the engagement letter is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire engagement letter will be severable and remain in effect.

# ADDENDUM A
# Akerman eDiscovery Services Price List

| eDiscovery Services | | |
|---|---|---|
| **Service** | **Description** | **RelativityOne** |
| Data Processing | Per gigabyte fee for data ingestion, extraction and indexing in preparation for review. | Included |
| Data Promotion | Per gigabyte fee for promoting data from the ECA database to the review database. | Included |
| User Fee for Online Doc Repository | Per user monthly access fee to document review tool. | Included |
| Imaging, Endorsements & OCR | Per page fee for image generation, Bates-stamping, confidentiality designations, and making production documents searchable. | Included |
| Data Management | Hosting of client data and attorney coding in RelativityOne. Includes data analytics (e.g. concept searching, clustering, email threading), user access, and data management (staging, media management, post processing data promotion and QC). | 0-1 TB: $12.00 /GB/Mo.<br>1-5 TB: $11.00/GB/Mo.<br>5-8 TB: $10.00/GB/Mo.<br>8+ TB: $9.00/GB/Mo. |

| Professional Services[1] | | |
|---|---|---|
| **Service** | **Description** | **Fee** |
| Project Management | Project Management & litigation support from experienced eDiscovery professionals. | $285 - $375/HR |
| ESI Attorneys and Professionals | Strategic counsel, consulting and oversight from attorneys and other professionals specializing in eDiscovery and information governance. | $385 - $715/HR |
| Contract Document Review Attorneys | Document review conducted by contract attorneys under the supervision of Akerman ESI Attorneys. | Available upon request |
| Forensic Data Collection and Analysis | Forensic collection and analysis of various data sources including but not limited to webmail, cloud storage, collaboration apps, mobile devices, hard drives, external devices, and servers. | $285 - $450/HR |
| Expert Testimony | Forensic Testimony Services including deposition and trial testimony and authoring expert reports and affidavits. | Available upon request |
| Travel Expense | Travel related expenses such as hotel, mileage, transportation, and meals billed at cost. | As Incurred |

---

[1] Some services performed by strategic partners. High end hourly rates for Project Management and ESI Attorneys/Professionals will be discounted by 15% for duration of matter.

A-1

| Miscellaneous Litigation Support Services | | | |
|---|---|---|---|
| **Service** | **Description** | **Unit** | **Fee** |
| Everchron Case Management | Cloud-hosted case management platform for collaboration, chronology development, analysis of key facts, witnesses and documents, transcript review and trial preparation. | Per Matter | $1500/month (includes 50 GBs, unlimited users) |
| Everchron Data Hosting | Hosting of case materials above 50 GBs | Per GB | $10/GB/Month |
| Bibliographic Coding | Apply objective or subjective coding values within a document review platform, or in an independent format for import into a review platform. | Per field | Available upon request. |
| Foreign Language Machine Translation | Machine translation of standard foreign language materials. | Per file | $0.20/file |
| Web Capture | Image capture of website pages for historical preservation. | Various | Available upon request |
| Social Media Collection | Social media captures, including metadata for open accounts. | Various | Available upon request |
| External Media | Removable media for transfer of large data volumes | Unit | $75+ |
| Logical Document Determination (LDD) and Ancillary Services | Splitting large combined documents into individual documents.  May also include TIF creation, bates capture, file renaming, and other services | Various | Available upon request |
| Scanning and Printing | Various | Various | Available upon request |

*For line items priced by the gigabyte, there is a 1 gigabyte minimum in calculating fees*

*Tech and hourly rates adjusted annually and may be adjusted at other times during the year.*

A-2