**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                      Case No. 8-24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                 Chapter 11

      Debtor.
_____/

## CHAPTER 11 TRUSTEE'S MOTION TO ENFORCE AUTOMATIC STAY

Michael Goldberg, the Chapter 11 Trustee ("Chapter 11 Trustee"), by and through undersigned counsel, pursuant to 11 U.S.C. §§ 105(a) and 362, respectfully requests that the Court enter an order to enforce the automatic stay as to the Class Actions (defined below)[1] and, in support, would show the Court as follows:

### Background

1.      On February 9, 2024, The Center for Special Needs Trust Administration, Inc. (the ("Center" or the "Debtor") filed a voluntary chapter 11 petition (Doc. 1).

2.      On March 8, 2024, the U.S. Trustee filed an Expedited Motion for Order Directing the United States Trustee to Appoint a Chapter 11 Trustee by Agreement of the Debtor (Doc. 88). The Court granted the U.S. Trustee's Motion by Order dated March 11, 2024 (Doc. 93).

3.      On March 21, 2024, the Court entered its Order Approving Appointment of Chapter 11 Trustee, appointing Michael Goldberg as Chapter 11 Trustee (Doc. 109).

---

[1] Contemporaneously herewith, the Chapter 11 Trustee will be filing a copy of this motion with the District Court in the Class Actions.

76051501

4.      The Debtor is a 501(c)(3) non-profit Florida corporation that administers pooled trusts and special needs trusts. For more information about the Debtor's background, please see the Debtor's Case Management Summary (Doc. 7).

5.      The Debtor is the trustee or co-trustee of numerous special needs trusts, including both stand-alone trusts and pooled trusts (collectively "<u>SNT</u>") for approximately 2,000 beneficiaries who suffer from various levels of disability (the "<u>Beneficiaries</u>"). The Debtor's primary service as trustee of the SNTs is to manage the SNTs, maintain records for assets managed by third-party investment managers, respond to request for distributions from Beneficiaries, and make distributions in a manner that still ensures that the applicable beneficiary meets the income and asset thresholds to qualify for certain public assistance benefits, such as Medicaid, Social Security, or Supplemental Security Income. The Debtor's services help to ensure that Beneficiaries maintain their qualification for these critical public assistance benefits.

6.      Each Beneficiary has its own trust account or sub-trust account (a "<u>SNT Account</u>") that reflects the specific assets in the respective Beneficiary's SNT, or in the case of a pooled SNT, the specific assets allocated to the Beneficiary's sub-trust account (collectively "<u>SNT Funds</u>").

7.      As the Debtor outlined in its Case Management Summary, the Debtor's leadership discovered that the Debtor loaned approximately $100,000,000 to a third-party Boston Financial Group ("<u>BFG</u>"), a group controlled by the Center's founder Leo Govoni ("<u>Govoni</u>"), which loan remains outstanding in an amount of not less than **$142,283,314** inclusive of interest (and at the default rate since September 13, 2023) (the "<u>Loan</u>") (*see* Doc. 66). The Loan to BFG is evidenced by multiple revolving line of credit agreements between BFG and the Debtor, a security agreement, promissory notes by BFG made in favor of the Debtor for $100 million, and a personal guaranty executed by Govoni (collectively, the "<u>Loan Documents</u>").

76051501

8.      The Loan Documents were executed by Govoni on behalf of BFG and Todd Belisle on behalf of the Debtor. Further, the Loan is exclusively between the Debtor and BFG, there is no direct contractual relationship involving the Beneficiaries in regard to the Loan.  Indeed, the money utilized to fund the Loan appears to have been misappropriated *by the Debtor* from the Beneficiaries in order *for the Debtor* to fund the Loan to BFG.  The Debtor served as the trustee to the special needs trusts creating a fiduciary duty owed by the Debtor to the Beneficiaries. Thus, any direct claims by the Beneficiaries for recovery of the Loan proceeds are direct claims *against the Debtor* and should be handled through the claims administration process in this bankruptcy case.

9.      The Loan matured on January 1, 2017. The Debtor made several formal demands to BFG but the balance and accrued interest remain outstanding. BFG defaulted on the Loan and breached the terms of the Loan. *See* Case Management Summary (Doc. 7).

10.     The Debtor filed this voluntary petition for Chapter 11 for the purpose of, *inter alia*, pursuing claims against responsible parties with the goal of recovering the transferred funds and other assets, and distributing these funds for the benefit of the Debtor's creditors and the Beneficiaries.

11.     On April 25, 2024, the Chapter 11 Trustee filed an adversary proceeding against BFG and Govoni for breach of the Loan Documents, for turnover of property of the estate and for an accounting, seeking the recovery of the outstanding amount due under the Loan of not less than **$142,283,314** (the "Adversary Proceeding").[2]  *See* Adv. Proc. No. 8:24-ap-00139-RCT; Doc. 1.

---

[2] While the Chapter 11 Trustee is only pursuing claims against BFG and Govoni for breach of the Loan Documents at this time, the Chapter 11 Trustee believes that BFG and Govoni may have acted tortiously and specifically reserves the right, upon completion of his investigation and discovery, to assert any additional claims for relief against BFG and Govoni, including, but not limited to, fraud and breach of fiduciary duty, and to add additional defendants which he may identify, including, but not limited to, other entities owned and/or controlled by Govoni via substantive consolidation, adverse domination, veil piercing, alter ego, or any other theory as allowed by law or equity.  In addition to the outstanding amount due under the Loan, the Chapter 11 Trustee reserves the right to seek the recovery of any additional losses incurred by the Debtor because, as he understands, tens of millions of dollars of additional funds earned from administering the SNTs may be missing from the estate.

3

12.     Since the commencement of this Chapter 11 case, the Beneficiaries have filed two class action complaints (collectively, the "Class Actions") in the United States District Court for the Middle District of Florida against BFG and various third parties, alleging several counts which, at bottom, seek nothing more than the return of the proceeds of the Loan *due to the Debtor* from BFG and Govoni.

13.     The first class action[3] was filed on February 19, 2024 by Beneficiary Clark Chamberlin, a disabled minor child, by and through his parents and co-guardians Todd Chamberlin and Kelli Chamberlin, and on behalf of all other similarly situated Beneficiaries (collectively, the "Chamberlin Class Action Plaintiffs or CCAP"), against defendants BFG; Boston Asset Management, Inc. ("BAM"); Govoni; John W. Staunton, Esq. ("Staunton"); Jonathan Golden ("Golden"); Prospect Funding Holdings, LLC ("Prospect Funding"); Prospect Funding Partners, LLC ("Prospect Partners"); Prospect Funding Holdings (NY) III, LLC ("Prospect III"); and American Momentum Bank ("AMB") (collectively, the "Chamberlin Class Action Defendants or CCAD"), alleging 12 different counts, described in further detail below (collectively the "Chamberlin Class Action Claims").

14.     The second class action complaint[4] was filed on April 9, 2024 by T.L., a disabled adult by and through Shawnta Orris, his guardian ad litem, individually and on behalf of all others similarly situated (collectively, the "Orris Class Action Plaintiffs" or "OCAP"), against defendants Govoni, Staunton, Todd Belisle ("Belise"), Richard Shonter ("Shonter"), Caitlin Janicki ("Janicki"), Tracey Gregory ("Gregory"), Michelle Diebert ("Diebert"), Laura Davis ("Davis"), Carl Schroeder

---

[3] *Chamberlin v. Boston Finance Group, LLC*, No. 8:24-cv-00438-SDM-AEM (M.D. Fla. Feb. 19, 2024).

[4] *Orris v. Govoni*, No. 8:24-cv-00874-CEH-AEP (M.D. Fla. Apr. 9, 2024).

("Schroeder"), and BFG (collectively, the "Orris Class Action Defendants" or "OCAD"), alleging 4 different counts (collectively the "Orris Class Action Claims).

15.    The Class Actions were filed independently of the Trustee's administration of the bankruptcy estate. All of the Chamberlin Class Action Claims and the Orris Class Action Claims are based on the same harm/misconduct caused by BFG's breach and default of the $100 million Loan *by the Debtor* to BFG.  The Class Actions also seek the recovery of the same funds *owed to the Debtor* under the Loan Documents, *i.e.*, the $100 million in principal amount loaned *by the Debtor* to BFG.

16.    Each alleged harm in the Class Actions derive from and is a continuation of the initial harm—the Debtor's direct loss due to the breach of the Loan Documents.

17.    Each count in the Class Actions is interconnected to the same alleged harm and thus all of the subsequent harm and injury caused by the breach of the Loan Documents are legal claims that belong to the bankruptcy estate which the Chapter 11 Trustee has the exclusive standing to pursue.

18.    Moreover, the Debtor's current and former directors and officers (collectively, the "D&Os") owed a fiduciary duty to the Debtor, and thus any breach of fiduciary duty claim against the D&Os, including any insurance policies and the subsequent insurance proceeds providing coverage for said breach, belong to the bankruptcy estate.[5]  *See, e.g., In re SemCrude*, 796 F.3d 310, 312–13, 322 (3d Cir. 2015) (claims of breach of fiduciary duty, negligent misrepresentation, and fraud are property of bankruptcy estate because the individual shareholders could not demonstrate any loss *in addition* to the loss sustained by the corporation); *In re Sacred Heart Hospital of*

---

[5] The Chapter 11 Trustee is aware of three insurance policies that may provide coverage in connection with claims by the Debtor against the D&Os: (1) a $1 million D&O policy with an additional $500,000 side A coverage; (2) a $2 million E&O policy; and (3) $1 million commercial crime policy.  Prior to the Petition Date, the Debtor submitted notices of claim in connection with the D&O and E&O policies.

76051501

*Norristown,* 182 B.R. 413, 419-20 (Bankr. E.D. Pa. 1995) (holding that "[p]roceeds available for the [d]ebtor's liability exposure are not segregated from the [p]roceeds available to the directors and officers. Thus, the [d]ebtor is indeed an insured and has a sufficient interest in the [p]roceeds as a whole to bring them into the estate."); *In re Eastwind Grp., Inc.*, 303 B.R. 743, 747-48 (Bankr. E.D. Pa. 2004) (holding that the trustee has an interest in the D&O policy proceeds because the covered claims under the D&O policy directly relate to the management of the debtor and can potentially benefit the estate and "enjoining shareholders from prosecuting class action against directors and officers on basis that it might diminish asset of estate: proceeds of D & O policy." (citing *In re marchFIRST, Inc.,* 288 B.R. 526, 532 (N.D. Ill. 2002)).

### The Chamberlin Complaint

**Count I: Conversion Against BFG, Govoni, Staunton, and Golden**

19.     The CCAPs allege BFG, Govoni, Staunton and Golden wrongfully exercised dominion over the SNT Funds of the CCAPs by using the SNT Funds to fund the Loan without authorization. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty.

**Count II: Breach Of Fiduciary Duty Against Govoni, Staunton, and BAM**

20.     The CCAPs allege that Govoni, Staunton, and BAM breached their fiduciary duties of care, loyalty, and prudence owed to the CCAPs by causing the transfer of SNT Funds that were not a reasonable investment, authorized,  or ever repaid to the SNTs. The transfer of SNT Funds underlying the breach of fiduciary duty are specifically, the funds loaned to BFG. CCAPs argue that the breach of fiduciary duties facilitated the loss of the loaned funds, directly tying the damages sought to the funds underlying the original money loaned *by the Debtor* to BFG.  In addition, Govoni,

76051501

Golden, Staunton, and BFG owed a fiduciary duty to the Debtor, and thus any breach of fiduciary duty claim against them for the return of the Loan proceeds is property of the estate.

**Count III: Breach Of Fiduciary Duty Against American Momentum Bank**

21.     The CCAPs again allege that American Momentum Bank breached its fiduciary duties of care, loyalty, and prudence owed to the CCAPs by allowing the SNT Funds to be misappropriately siphoned and transferred to BFG's American Momentum Bank accounts to fund the Loan without conducting reasonable due diligence. CCAPs argue that the breach of fiduciary duties facilitated the loss of the loaned funds, directly tying the damages sought to the funds underlying the original money loaned *by the Debtor* to BFG. In addition, American Momentum Bank had no contractual relationship with the Beneficiaries, only with the Debtor, and thus any breach of fiduciary duty claim against the bank for the return of the Loan proceeds is property of the bankruptcy estate.

**Count IV: Aiding And Abetting Breach Of Fiduciary Duty Against Govoni, Golden, Staunton, and BFG**

22.     The CCAPs allege Govoni, Golden, Staunton, and BFG breached their fiduciary duties, by knowingly and substantially participating and/or providing substantial assistance in the Debtor breaching its fiduciary duties owed to the CCAPs when SNT Funds were transferred to fund the Loan. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty. In addition, Govoni, Golden, Staunton, and BFG owed a fiduciary duty to the Debtor, and thus any breach of fiduciary duty claim against them for the return of the Loan proceeds is property of the estate.

76051501

**Count V: Aiding And Abetting Breach Of Fiduciary Duty Against American Momentum Bank**

23.    The CCAPs allege American Momentum Bank knowingly and substantially participated and/or provided substantial assistance in the Debtor breaching its fiduciary duties owed to the CCAPs when SNT Funds were transferred to fund the Loan. Through these allegations the CCAPs are attempting to recover the same money that funded the Loan. The CCAPs also allege that American Momentum Bank breached its fiduciary duties of loyalty, care, and prudence by commingling SNT Funds with funds in the Debtor's operating accounts. Specifically, the CCAPs allege that the funds that were used to fund the Loan were commingled with the Debtor's operating accounts. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty.  In addition, American Momentum Bank had no contractual relationship with the Beneficiaries, only with the Debtor, and thus any breach of fiduciary duty claim against the bank for the return of the Loan proceeds is property of the estate.

**Count VI: Negligence Against Govoni, Golden, and Staunton**

24.    The CCAPs allege Govoni, Golden, and Staunton, in their capacity as founders, agents, service providers, and substantial contributors of and to the Debtor owed the CCAPs the duty to take reasonable steps to avoid harm to the CCAP's SNT Funds and otherwise knew or should have known that transferring the SNT Funds to fund the Loan would have resulted in the subsequent breach and default of the Loan. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty.  In addition, Govoni, Golden, Staunton, and BFG owed a duty of care to the Debtor, and

76051501

thus any such negligence claim against them for the return of the Loan proceeds is property of the estate.

**Count VII: Negligence Against American Momentum Bank**

25.    The CCAPs allege American Momentum Bank had a fiduciary duty to know and conduct reasonable due diligence to ensure that the SNT Funds held in American Momentum Bank's accounts were not inappropriately being used or to benefit persons not otherwise entitled to the benefit. CCAPs allege American Momentum Bank should have known that the SNT Funds were depleted for the improper use of funding the Loan. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty.  In addition, American Momentum Bank had no contractual relationship with the Beneficiaries, only with the Debtor, and thus any negligence claim against the bank for the return of the Loan proceeds is property of the bankruptcy estate.

**Count VIII: Violation Of Uniform Fraudulent Transfer Act, Fla. Stat, § 726.105 Against BFG and Prospect Funding**

26.    The CCAPs allege BFG and Prospect Funding engaged in improper transfers with the intent to hinder, delay, or defraud the CCAPs.  This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty.

**Count IX: Unjust Enrichment Against BFG**

27.    The CCAPs allege BFG was unjustly enriched with SNT Funds when the Debtor transferred the SNT Funds to BFG which BFG subsequently defaulted on, leaving the CCAPs with

76051501

no benefit of similar return. The CCAPs allege that BFG was gratuitously conferred a benefit at the expense of the CCAPs. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty.

**Count X Unjust Enrichment Against Prospect Funding and Prospect Finance**

28.     CCAPs allege Prospect Funding and Prospect Finance were unjustly enriched with SNT Funds when the Debtor transferred the SNT Funds to BFG which BFG subsequently defaulted on, leaving the CCAPs with no benefit of similar return. The CCAPs allege that Prospect Funding and Prospect Finance were gratuitously conferred a benefit at the expense of the CCAPs. The claim for unjust enrichment seeks an equitable remedy for the return of the same money that funded the Loan *by the Debtor* to BFG. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty.

**Count XI: Declaratory Relief - Alter Ego Against BFG, Prospect Funding, Prospect Finance, Prospect III, Govoni, Golden, and Staunton**

29.     The CCAPs seek declaratory relief that BFG is the alter ego or and/or mere instrumentality of its controllers Govoni, Golden, and Staunton. The CCAPs also seek declaratory relief that Prospect Funding, Prospect Finance, and Prospect III are alter egos and/or mere instrumentalities of each other and of their majority owner BFG. The CCAPs allege that these defendants were hiding behind corporate veils to shield themselves from the liability of misappropriating the money to fund the Loan. The CCAPs are seeking an alter ego remedy stemming

from the improper transfer of funds *by the Debtor* to BFG through the Loan, which is property of the bankruptcy estate. *See In re Icarus Holding, LLC*, 391 F. 3d 315 (11th Cir. 2004) (holding an alter ego claim is property of the estate under section 541 if (a) it is "a general claim that is common to all creditors," and (2) state law allows the corporate entity to bring an alter ego claim against its principal); *In re Xenerga, Inc.*, 449 Br. 594, 599-600 (Bankr. M.D. Fla. 2011) (holding bankruptcy trustee has exclusive authority to pursue alter ego claims under Florida law); *In re Sigma-Tech Sales, Inc.*, 2016 WL 4224090 (Bankr. S.D. Fla. July 31, 2016) (same); *In re Haisfield*, Case No. 3:13-ap-00065-PMG (Bankr. M.D. Fla. Oct. 12, 2016) (same); *In re Ortega T.*, 562 B.R. 538 (Bankr. S.D. Fla. 2016 (same); *Moffatt & Nicol, Inc. v. B.E.A. Int'l Corp.*, 48 So.3d 896, 901 (Fla. 3d DCA 2010 (holding that "like a bankruptcy trustee, an assignee for the benefit of creditors has the exclusive authority to pursue fraudulent transfers and other 'choses in action' for the benefit of all creditors."); *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987) (finding alter ego, veil piercing and successor liability claims property of the bankruptcy estate).

## The Orris Complaint

**COUNT I: Breach Of Fiduciary Duty Against Defendants Govani, Staunton, Belisle, Shonter, Janicki, Gregory, Diebert, Davis and Schroeder**

30.     The OCAPs allege Govoni, Staunton, Belisle, Shonter, Janick, Gregory, Diebert, Davis and Schroeder, in their capacity as officers and directors of the Debtor owed the CCAPs fiduciary duties of care, loyalty, and prudence to take reasonable steps to avoid harm to the OCAP's SNT Funds and otherwise knew or should have known that transferring the SNT Funds to fund the Loan would result in the subsequent breach and default of the Loan. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to

11

BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty. In addition, Govoni, Staunton, Belisle, Shonter, Janick, Gregory, Diebert, Davis and Schroeder as D&Os owed a fiduciary duty to the Debtor, and thus any such breach of fiduciary duty claim against them for the return of the Loan proceeds is property of the estate.

**COUNT II: Negligence Against Defendants Govani, Staunton, Belisle, Shonter, Janicki, Gregory, Diebert, Davis and Schroeder.**

31.     The OCAPs allege Govani, Staunton, Belisle, Shonter, Janicki, Gregory, Diebert, Davis and Schroeder acting in the course and scope of their roles as directors or officers of the Debtor owed the OCAPs the duty to take reasonable steps to avoid harm to the CCAP's SNT Funds and otherwise knew or should have known that transferring the SNT Funds to fund the Loan would have resulted in the subsequent breach and default of the Loan. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty.  In addition, Govoni, Staunton, Belisle, Shonter, Janick, Gregory, Diebert, Davis and Schroeder as D&Os owed a duty of care to the Debtor, and thus any negligence claim against them for the return of the Loan proceeds is property of the estate.

**COUNT III: Conversion Against Defendant BFG**

32.     The OCAPs allege BFG wrongfully exercised dominion over the SNT Funds of the OCAPs by using the SNT Funds to fund the Loan without authorization. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty.

76051501

**COUNT IV: Unjust Enrichment Against Defendant BFG**

33.     The OCAPs allege BFG was unjustly enriched with SNT Funds when the Debtor transferred the SNT Funds to BFG which BFG subsequently defaulted on leaving the OCAPs with no benefit of similar return. The OCAPs allege that BFG was gratuitously conferred a benefit at the expense of the OCAPs. This claim is not a direct claim, but rather seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan.

## Relief Requested

34.     By this Motion, the Chapter 11 Trustee seeks entry of an order substantially in the form attached as **Exhibit A** providing for the enforcement of the automatic stay as to the Class Actions, because the alleged claims asserted therein are property of the bankruptcy estate and belong exclusively to the Chapter 11 Trustee.

## Basis for Relief Requested

35.     Section 362 of the Bankruptcy Code imposes an automatic stay on all collection actions, enforcement of judgments, and litigation pursuits against the Debtor once a bankruptcy petition is filed. The stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay in bankruptcy serves as a way to centralize all claims against the debtor and provide a systematic, equitable distribution of the debtor's assets. *See Matter of Patel*, 642 B.R. 187, 196 (Bankr. N.D. Ga. 2022) ("The automatic stay is considered one of the fundamental debtor protections provided by the bankruptcy laws, and one of its primary purposes is to provide the debtor "breathing room" upon filing a bankruptcy petition"); *In re Howard*, 391 B.R. 511, 520 (Bankr. N.D. Ga. 2008) ("[the automatic stay] performs the important function of protect[ing] creditors by

avoiding the piece-meal or distressed liquidation of the debtor's assets and a race to the courthouse, thus furthering administration of assets in an orderly fashion to achieve an equitable distribution within the framework of the Bankruptcy Code.").

36.    Section 541 provides that "[p]roperty of the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case" wherever located and by whomever held." "This includes legal causes of action the debtor had against others at the commencement of the bankruptcy case." *Icarus Holding*, 391 F.3d at 1319.

37.    The "bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted had it not been thrown into bankruptcy." *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir. 2003). Causes of action that belong to the bankruptcy estate must be pursued by the Chapter 11 Trustee. *Mennen v. Onkyo Corp.*, 248 F. App'x 112, 113 (11th Cir. 2007) ("[i]f a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim.").

38.    While the Beneficiaries are creditors of the bankruptcy estate, a creditor is only allowed to bring a direct claim against a third party where it has been harmed directly. If the creditor's harm is derived from an injury to the debtor, then the cause of action belongs to the bankruptcy estate. *Mennen v. Onkyo Corp.*, 248 F. App'x 112, 113 (11th Cir. 2007) ("If a cause of action alleges only indirect harm to a creditor (*i.e.*, an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate.").

39.    Here, while the Beneficiaries may have direct claims against the Debtor for improperly funding the Loan to BFG with money the Debtor held in trust for the Beneficiaries, the Beneficiaries do not have the rights to *directly* pursue claims arising out of the breach of the Loan

Documents because the Beneficiaries did not suffer any direct harm. The direct harm was caused *to the Debtor* through BFG and Govani's breach of the Loan Documents. Thus, the rights to pursue direct claims arising out of the breach of the Loan, including the return of the funds transferred to BFG and possibly others pursuant to the Loan Documents, are property of the bankruptcy estate.

40.     The Beneficiaries have been indirectly harmed because their harm is derived from harm to the Debtor caused by BFG and Govoni's breach of the Loan Documents. Stated differently, the Beneficiaries' harm is dependent and flows from the breached Loan.

41.     The Chapter Trustee has been working around the clock to maximize the value of the bankruptcy estate, including through his investigation of avenues to recover funds for the benefit of the Debtor's creditors and the Beneficiaries. He is also administering the trusts and communicating daily with Beneficiaries and other parties in interest. Failing to enforce the automatic stay against the Class Actions will only further deplete the estate's resources and thus, the ultimate distributions to Debtor's creditors and the Beneficiaries.

42.     Enforcing the stay also will ensure that a primary objective of chapter 11 is accomplished; *i.e.*, assuring equality of distribution among similarly situated creditors. The automatic stay is integral to chapter 11 as it prevents one creditor from seizing assets before others have an opportunity to do so. By putting all creditors on a level playing field, the stay replaces the chaotic "race to the courthouse" that would otherwise ensue in the absence of bankruptcy with an organized distribution scheme. *See In re Meier*, No. 14-AP-237, 2014 WL 5426763, at *2 (Bankr. N.D. Ill. Oct. 21, 2014) (explaining that the automatic stay "protects creditors by ending the race to the courthouse and the piecemeal liquidation of the debtor's estate in favor of the fair and equal treatment of creditors."); *In re Medical Ambulance Co., Inc.*, 166 B.R. 918, 924 (Bankr. N.D. Cal. 1994) (explaining that, "By preventing a race to the courthouse, bankruptcy results in either a

reorganization or an orderly liquidation of the debtor which will benefit all creditors.").  Here, the Chapter 11 Trustee is uniquely skilled and situated to recover any funds misappropriated by the Debtor and others, and to distribute those funds to the Debtor's creditors and the Beneficiaries, fairly and equitably though the bankruptcy claims administration process.

43.    Finally, in the unlikely event that the Court determines the automatic stay is inapplicable to any of the Class Action claims, the Court should extend the stay to these non-debtor defendants under section 105(a) of the Bankruptcy Code[6], as the Class Action claims are duplicative and seek recovery of the same amount sought to be recovered by the Chapter 11 Trustee in the Adversary Proceeding (*i.e.*, the proceeds of the Loan due from BFG and Govoni to the Debtor), and will also interfere with the Chapter 11 Trustee's contemplated claims against the same third parties. *See Fox v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 848 F.Supp.2d 469, 478-85 (S.D.N.Y. 2012) (extending the automatic stay via section 105 injunction to bar a creditor's actions against a third party which duplicated the trustee's fraudulent transfer claims against the same party, ruling that those claims were property of the estate); *see also Marshall v. Picard (In re Bernard L. Madoff Inv. Secs.)*, 740 F.3d 81, 84, 96 (2d Cir. 2014) (finding individual investor complaints impermissibly attempted to "plead around" the bankruptcy court's injunction barring all claims "derivative" of those asserted by the trustee and, although they sought damages that were not recoverable in an avoidance action, their complaints were nothing more than an attempt to recover fraudulent withdrawals from the company); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d

---

[6] Section 105(a) authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Section 105(a) is intended "to assure the bankruptcy courts['] power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 (16th ed.).  Further, 28 U.S.C. § 1334 gives the bankruptcy court "exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of [its] case, and of property of the estate." "The broad jurisdictional grant in section 1334(e) is implemented in part by section 105, which gives the court the power to 'issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [title 11].'" 2 Collier on Bankruptcy ¶ 105.02[2] (16th ed.).

994, 999-1002 (4th Cir. 1986) (determining that where suit against a third-party defendant sought "possession or control over property of the debtor," a stay may be warranted for the third-party defendant); *In re Adelphia Communications Corp.*, 302 B.R. 439 (Bankr. S.D.N.Y. 2003) (extending the automatic stay under Section 105 to non-debtors to avoid interference with debtor's reorganization process or when actions might lead to duplicate efforts that harm the bankruptcy estate); *In re United Health Care Org.,* 210 B.R. 228, 232 (S.D.N.Y. 1997) (granting extension of automatic stay under Section 105 where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment against the debtor").

44.     In circumstances similar to this case, courts in this District have stayed proceedings to avoid piecemeal litigation where all claims and counter-claims are comprised of common questions of law and fact, to conserve judicial resources, and when there is a risk of inconsistent judgments against the parties.  *See Peterson v. Avantair, Inc.*, No. 8:13-cv-1683-T-33EAJ, 2013 WL 4506414, at *2 (M.D. Fla. Aug. 23, 2013); *SCI Northbay Commerce Fund 4, LLC v. SCI Real Estate Invs.*, No. 8:11-cv-31-T-24TGW, 2011 WL 1133898, at *1 (M.D. Fla. Mar. 28, 2011).[7] Thus, this Court may properly exercise its authority under section 105(a) to enjoin the Class Actions because those lawsuits are duplicative and seek recovery of the same amount sought to be recovered by the Chapter 11 Trustee in the Adversary Proceeding, and a failure to enjoin them would detrimentally affect the bankruptcy estate and adversely impact the Chapter 11 Trustee's ability to formulate a chapter 11 plan to distribute funds fairly and equitably to the Debtor's

---

[7] Notably, "[a] district court's inherent power to stay proceedings is not mitigated or obviated by § 362(a)." *Kreisler v. Goldberg*, 478 F.3d 209, 215 (4th Cir. 2007).

76051501

creditors and the Beneficiaries. *See, e.g., Willis v. Celotex Corp.*, 978 F.2d 146, 149 (4th Cir. 1992).

## Reservation of Rights

45.     The Chapter 11 Trustee reserves the right upon completion of his investigation and discovery to assert any additional claims for relief against the Class Action Defendants or to add additional defendants which he may identify as may be warranted under the circumstances and as allowed by law or equity.[8] In addition, nothing set forth herein is intended, nor shall be deemed, to modify, limit, release, reduce, or waive any of the Chapter 11 Trustee's rights, claims, remedies, or privileges at law, in equity, or pursuant to agreement, all of which are specifically preserved.

## Good Faith Certification

46.     Counsel for the Chapter 11 Trustee conferred with counsel for the Chamberlain Class Action Plaintiffs who indicated that they opposed the relief requested in this motion, subject to conferring again with the Chapter 11 Trustee prior to any hearing held on this motion.  In addition, counsel for the Chapter 11 Trustee attempted to confer with counsel for the Orris Class Action Plaintiffs, but was unable to do so prior to filing this motion.

---

[8] *See* note 2 *supra*.

**Conclusion**

WHEREFORE, the Chapter 11 Trustee requests this Court enter an order substantially in the form attached hereto as **Exhibit A** enforcing the automatic stay against the Class Actions to allow the Chapter 11 Trustee to efficiently and effectively manage, settle, or prosecute the Chapter 11 Trustee's rights, claims and interests arising from the breach of the Loan Documents and providing for such other and further relief as to the Court deems just.

Respectfully submitted,

AKERMAN LLP

By: */s/ Steven R. Wirth*
    Steven R. Wirth
    Florida Bar No.: 170380
    Email: steven.wirth@akerman.com
    Raye C Elliott
    Florida Bar No.:  18732
    Email:  raye.elliott@akermanl.com
    401 East Jackson Street, Suite 1700
    Tampa, Florida 33602
    Telephone: (813) 223-7333
    Facsimile: (813) 223-2837

    *Counsel for Chapter 11 Trustee, Michael Goldberg*

76051501

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2024, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record. Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on all parties required to be served, including (i) the Class Action Plaintiffs and Class Action Defendants and (ii) the Local Rule 1007-2 Parties in Interest List.

| | |
|---|---|
| Alan L. Rosca<br>Rosca Scarlato LLC<br>2000 Auburn Drive, Suite 200<br>Beachwood, OH 44122<br>*Attorneys for Orris Class Action Plaintiffs* | Brian O. Marty<br>Shindler Anderson Goplerud & Weese P.C.<br>5015 Grand Ridge Drive, Suite 100<br>West Des Moines, IA 50265<br>*Attorneys for Orris Class Action Plaintiffs* |
| J. Barton Goplerud<br>Shindler Anderson Goplerud & Weese P.C.<br>5015 Grand Ridge Drive, Suite 100<br>West Des Moines, IA 50265<br>*Attorneys for Orris Class Action Plaintiffs* | Paul J. Scarlato<br>Rosca Scarlato LLC<br>161 Washington Street, Suite 1025<br>Conshohocken, PA 19428<br>*Attorneys for Orris Class Action Plaintiffs* |
| Jonathan M. Stein<br>SteinLaw Florida, PLLC<br>1825 NW Corporate Blvd., Suite 110<br>Boca Raton, FL 33431<br>*Attorneys for Orris Class Action Plaintiffs* | Jonathan M. Streisfeld<br>Kopelowitz Ostrow, PA<br>One West Las Olas Blvd., Ste. 500<br>Ft Lauderdale, FL 33301<br>*Attorneys for Chamberlain Class Action Plaintiffs* |
| Andrew Smith<br>Leeder Law<br>8551 W. Sunrise Blvd.<br>Suite 202<br>Plantation, FL 33322<br>*Attorneys for Chamberlain Class Action Plaintiffs* | Caroline Herter<br>Ko Lawyers<br>1 West Las Olas Blvd<br>Suite 500<br>Fort Lauderdale, FL 33301<br>*Attorneys for Chamberlain Class Action Plaintiffs* |

76051501

David Lawrence Ferguson
Kopelowitz Ostrow Ferguson Weiselberg
Gilbert
One West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
*Attorneys for Chamberlain Class Action
Plaintiffs*

Jeff M. Ostrow
Kopelowitz Ostrow, PA
One West Las Olas Blvd., Ste. 500
Ft Lauderdale, FL 33301
*Attorneys for Chamberlain Class Action
Plaintiffs*

Thomas H. Leeder
Leeder Law
8551 West Sunrise Blvd., Suite 202
Plantation, FL 33322
*Attorneys for Chamberlain Class Action
Plaintiffs*

Eric S. Koenig
Trenam, Kemker, Scharf, Barkin, Frye,
O'Neill & Mullis,
Suite 2700
101 E Kennedy Blvd
Tampa, FL 33602
*Attorneys for Defendants Boston Finance
Group, LLC, Boston Asset Management Inc.,
Prospect Funding Holdings, LLC,
Prospect Funding Holdings (NY) III, LLC,
Prospect Funding Partners, LLC,
Leo J. Govoni, John W. Staunton, Jonathan
Golden, Boston Holding Company, LLC, and
Fiduciary Tax & Accounting Services, LLC*

William Albert McBride
Trenam, Kemker, Scharf, Barkin, Frye,
O'Neill & Mullis,
Suite 2700
101 E Kennedy Blvd
Tampa, FL 33602
*Attorneys for Defendants Boston Finance
Group, LLC, Boston Asset Management Inc.,
Prospect Funding Holdings, LLC,
Prospect Funding Holdings (NY) III, LLC,
Prospect Funding Partners, LLC,
Leo J. Govoni, John W. Staunton, Jonathan
Golden, Boston Holding Company, LLC, and
Fiduciary Tax & Accounting Services, LLC*

Marcos Rosales
Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, TX 77010
*Attorneys for Defendant American Momentum
Bank*

76051501

Bennett J Ostdiek
Beck Redden LLP
1221 McKinney Street
Suite 4500
Houston, TX 77010
*Attorneys for Defendant American Momentum Bank*

Cassie Maneen
Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, TX 77010
*Attorneys for Defendant American Momentum Bank*

Charles W. Throckmorton
Carlton Fields
2 MiamiCentral
700 N.W. 1st Avenue
Suite 1200
Miami, FL 33136
*Attorneys for Defendant American Momentum Bank*

Donald R. Kirk
Carlton Fields, PA
4221 W Boy Scout Blvd, Ste. 1000
Tampa, FL 33607
*Attorneys for Defendant American Momentum Bank*

Daniel Andrew Nicholas
Cole, Scott & Kissane, P.A.
500 N Westshore Blvd
Suite 700
Tampa, FL 33609
*Attorneys for Defendant John W. Staunton*

*/s/Steven R. Wirth*
Steven R. Wirth

76051501

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                           Case No. 8-24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                    Chapter 11

      Debtor.
_____/

**ORDER APPROVING CHAPTER 11 TRUSTEE'S**
**MOTION TO ENFORCE AUTOMATIC STAY**

This case is before the Court upon the Chapter 11 Trustee's Motion to Enforce the

Automatic Stay as to the Class Actions pursuant to 11 U.S.C. §§ 105(a) and 362 (Doc. __) (the

"Motion")[1]. After proper notice to interested parties pursuant to Local Bankruptcy Rule 2002-4;

and this Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334, having found that this is a core proceeding pursuant to

28 U.S.C. § 157(b)(2), having found that venue of this proceeding and the Motion in this District

is proper pursuant to 28 U.S.C. §§ 1408 and 1409, having found that the Chapter 11 Trustee's

notice of the Motion was adequate and appropriate under the circumstances, and having

reviewed the Motion and determined that the legal and factual bases set forth in the Motion

---

[1] Unless otherwise noted, capitalized terms from the Motion are incorporated by reference herein.

establish just cause for the relief granted herein and that the relief sought in the Motion is in the best interests of the Debtor, the bankruptcy estate, its creditors, the Beneficiaries, and other parties in interest, upon review of the record before the Court and having heard argument of counsel at the hearing held on _____ ___, 2024 at __:__ a.m./p.m., good and sufficient cause exists to grant the relief requested.  It is hereby

**ORDERED**:

1.  The Motion is **GRANTED**.

2.  Objections, if any, to the relief requested in this Motion that have not been withdrawn, waived, or settled are hereby overruled.

3.  The automatic stay imposed by 11 U.S.C. § 362(a) is enforced and all parties to the Class Actions are prohibited and enjoined from continuing litigation in the Class Actions.

4.  To the extent necessary, the automatic stay is extended to the defendants in the Class Actions pursuant to 11 U.S.C. § 105(a).

5.  The Chapter 11 Trustee is authorized and empowered to take all actions he deems necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

6.  The Chapter 11 Trustee shall promptly file a copy of this Order in each Class Action with the United States District Court for the Middle District of Florida, notifying the Court of the enforcement of the automatic stay as it relates to the Class Actions.

7.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Steven R. Wirth, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.