**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.

        Debtor.

Case No. 8:24-bk-00676-RCT

Chapter 11

_____/

**AMERICAN MOMENTUM BANK'S LIMITED OBJECTION TO CHAPTER 11**
**TRUSTEE'S MOTION TO ENFORCE AUTOMATIC STAY**
(Responds to Docket #195)

American Momentum Bank ("American Momentum" or "AMB"), by and through undersigned counsel, files this *Limited Objection* (the "Objection") to the Chapter 11 Trustee's Motion to Enforce Automatic Stay (Dkt. 195, and hereafter the "Motion").

**SUMMARY**

American Momentum Bank respectfully submits that it is uniquely postured among defendants and, thus, requests that its pending motion to dismiss in the *Chamberlin* class action be allowed to proceed to resolution. That resolution will not in any way prejudice the Chapter 11 Trustee or otherwise affect the administration of the Debtor's estate. American Momentum does not otherwise object to the Motion.

**BACKGROUND**

***The Chapter 11 Filing and Appointment of the Chapter 11 Trustee***

1. On February 9, 2024, The Center for Special Needs Trust Administration, Inc. (the "Center" or the "Debtor") filed a voluntary chapter 11 petition. Dkt. 1.

2. That same day, the Debtor filed its Case Management Summary. Dkt. 7. In the Case Management Summary, the Debtor described its business as "provid[ing] comprehensive trust services for beneficiaries and their representatives related to the formation and

administration of Special Needs Trusts." *Id.* at 1.  The Debtor also articulated its reasons for filing chapter 11.  Specifically, the Debtor explained that its "leadership recently discovered that between 2009 and 2020 approximately $100 million of funds under The Center's control was paid out as a loan under a purported line of credit agreement" to Boston Finance Group ("BFG"), a company controlled by The Center's founder, Leo Govoni ("Govoni").  *Id.* at 2-3.

3.      Accordingly, the Debtor stated that its "most significant assets consist of litigation claims and claims for repayment of the note payable from BFG." *Id.* at 11.  The Debtor also asserted "significant claims against Leo Giovani [sic], BFG, and other affiliated entities, based on breach of contract, breach of fiduciary duty, and other claims." *Id.*

4.      On March 8, 2024, the U.S. Trustee filed an Expedited Motion for Order Directing the United States Trustee to Appoint a Chapter 11 Trustee by Agreement of the Debtor.  Dkt. 88.  The Court granted the U.S. Trustee's Motion by Order dated March 11, 2024. Dkt. 93.

5.      On March 21, 2024, the Court entered its Order Approving Appointment of Chapter 11 Trustee, appointing Michael Goldberg as Chapter 11 Trustee.  Dkt. 109.

### The Chamberlin Class Action

6.      On February 19, 2024, beneficiary Clark Chamberlin, by and through his parents and co-guardians Todd Chamberlin and Kelli Chamberlin, filed a putative class action on behalf of all other similarly situated beneficiaries.[1]  The *Chamberlin* lawsuit asserted claims against BFG, Govoni, and various other individuals and entities that the *Chamberlin* plaintiffs described as "mere instrumentalities of their controllers." *Chamb.* Dkt. 1 at 5-6.[2]  The Original Class

---

[1] *Chamberlin et al. v. Boston Finance Group, LLC et al.*, No: 8:24-cv-00438-SDM-AEM; pending in the United States District Court for the Middle District of Florida, Tampa Division (referred to hereafter as the "*Chamberlin* Litigation").

[2] "*Chamb.* Dkt." refers to documents filed in the *Chamberlin* litigation.

Action Complaint alleged a "decade long predatory scheme . . . to misappropriate over $100,000,000.00 of special needs trust assets." *Id.* at 2.

7.     Only one Defendant in *Chamberlin* was not alleged to be a "mere instrumentality" of Govoni or his associates—American Momentum Bank.   *See id.* at 6.

8.     AMB filed its motion to dismiss the Original Class Action Complaint on March 14, 2024. *Chamb.* Dkt. 15.  In its original motion to dismiss, AMB explained that it did not owe the *Chamberlin* plaintiffs, who are *not* AMB customers, any duty, fiduciary or otherwise. *See generally id.*  American Momentum also explained that, as a matter of Florida law, it did not have any duty to investigate transactions made by parties authorized to access the accounts at issue. *See id.* at 7 (citing *Insight Sec., Inc. v. Deutsche Bank Tr. Co. Americas*, 2022 WL 2313980, at *4 (11th Cir. June 28, 2022) ("Both the Florida Supreme Court and this Court have held that [depository institutions] generally have no duty to investigate transactions made by authorized agents of the account holder.") (internal quotations omitted)).

9.     On April 4, 2024, rather than responding to American Momentum's original motion to dismiss, the *Chamberlin* plaintiffs filed their Amended Class Action Complaint. *Chamb.* Dkt. 33.

10.     On April 17, 2024, AMB filed its motion to dismiss the Amended Class Action Complaint.  *Chamb.* Dkt. 39.  AMB explained in its second motion to dismiss that while the *Chamberlin* plaintiffs' amended complaint went to great lengths in an attempt both to manufacture a fiduciary relationship between the plaintiffs and AMB and to suggest that AMB *must have* had actual knowledge of the alleged misappropriations at issue, the plaintiffs' allegations remained implausible on their face and legally inadequate to state a claim. *See generally id.*

11.     The *Chamberlin* plaintiffs' response was, under the local rules applicable in the district court, due on Wednesday, May 8, 2024.  *See* M.D. Fla. L.R. 3.01(c) (specifying that the time to respond to a Rule 12 motion to dismiss is 21 days after the filing of the motion).  Upon the Chapter 11 Trustee's filing of the Motion, the *Chamberlin* plaintiffs requested an extension of time to respond to AMB's second motion to dismiss.  *See Chamb.* Dkt. 52.  On the same day that the *Chamberlin* plaintiffs' response was originally due, the district court granted additional time.  Specifically, the court ordered that the *Chamberlin* plaintiffs must respond to AMB's motion to dismiss no later than July 1, 2024, but only "[i]f the bankruptcy judge's order declines to stay the plaintiffs' claims against American Momentum Bank." *Chamb.* Dkt. 54.

### The Orris Class Action

12.     On April 9, 2024, Shawnta Orris, as Guardian Ad Litem on behalf of T.L., a Disabled Adult, and on behalf of all others similarly situated (hereafter "Orris"), filed her Class Action Complaint.[3]  Orris filed an amended class action complaint on April 25, 2024.

13.     The *Orris* litigation focuses its allegations on the current and former directors and officers of the Debtor.  *Orris* Dkt. 5 at 2.[4]  Leo Govoni, John Staunton, and Boston Finance Group are named as defendants in both the *Chamberlin* and *Orris* class actions.  Compare *Chamb.* Dkt. 33 with *Orris* Dkt. 5 (both naming Govoni, Staunton, and BFG as defendants).

14.     American Momentum Bank is *not* a named defendant in the *Orris* litigation. *See* Orris Dkt. 5.

---

[3] *Orris et al. v. Govoni et al.*, No: 8:24-cv-00874-CEH-AEP; pending in the United States District Court for the Middle District of Florida, Tampa Division (referred to hereafter as the "*Orris* Litigation").
[4] "*Orris* Dkt." refers to documents filed in the *Orris* litigation.

### *The Trustee's Adversary Proceeding*

15.    On April 25, 2024, the Chapter 11 Trustee filed an adversary proceeding against BFG and Govoni for breach of loan documents, for turnover of property of the estate, and for an accounting, seeking the recovery of outstanding amounts due of not less than $142,283,314.[5]

16.    In the Adversary Proceeding, the Chapter 11 Trustee only asserted "claims against BFG and Govoni for breach of the Loan Documents *at this time*."  Adv. Dkt. 1 at 12-13 n.1 (emphasis added).[6]   The Chapter 11 Trustee also indicated that he "believes that BFG and Govoni may have acted tortiously and specifically reserves the right, upon completion of his investigation and discovery, to assert any additional claims for relief against the BFG [sic] and Govoni, including, but not limited to, fraud and breach of fiduciary duty."  *Id.*  Moreover, the Chapter 11 Trustee also indicated that he was reserving his right to assert additional claims against "other entities owned and/or controlled by Govoni via substantive consolidation, adverse domination, veil piercing, alter ego, or any other theory as allowed by law or equity."  *Id.*

17.    On April 29, the Chapter 11 Trustee filed this Motion requesting an order prohibiting the continued litigation in the *Chamberlin* and *Orris* actions.  Dkt. 195.

### ARGUMENT

18.    American Momentum agrees that the overwhelming majority of the relief sought in the Chapter 11 Trustee's Motion is reasonable, warranted, and should be granted.  American Momentum, however, requests that a single issue in the *Chamberlin* action be allowed to proceed to resolution – AMB's second motion to dismiss.

---

[5] *Goldberg v. Boston Finance Group, LLC* et al.; Case No. 8:24-ap-00139-RCT; pending in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (referred to hereafter as the "Adversary Proceeding").

[6] "Adv. Dkt." refers to documents filed in the Adversary Proceeding.

19.     While AMB is loathe to request special treatment, its circumstances are genuinely unique and different from every other defendant in either the *Chamberlin* or *Orris* actions in at least three ways.  First, neither the Debtor nor the Chapter 11 Trustee has alleged wrongdoing on the part of AMB.  Second, AMB has demonstrated that the only claims currently asserted against it cannot withstand scrutiny and should be dismissed.  Third, allowing the motion to dismiss to be resolved will not prejudice the Chapter 11 Trustee, the Debtor, or the bankruptcy estate in any way.  Rather, the prompt and efficient dismissal of unmeritorious claims will ultimately serve the interests of efficiency and fairness.

## I.     NEITHER THE DEBTOR NOR CHAPTER 11 TRUSTEE ALLEGES WRONGDOING BY AMB.

20.     American Momentum stands alone among the defendants in the *Chamberlin* litigation, the *Orris* litigation, and the Adversary Proceeding in that neither the Debtor nor the Chapter 11 Trustee has alleged wrongdoing on its part.

21.     Obviously, BFG and Govoni are named defendants in all three of the currently pending litigations.  *See* Adv. Dkt. 1, *Chamb.* Dkt. 33, *Orris* Dkt. 5.

22.     Other Govoni-affiliated individuals and entities have been named as defendants in the *Chamberlin* litigation.  *See generally Chamb.* Dkt. 33 at 5-8 (listing defendants), 22-25 (describing a "web of corporate entities controlled by Govoni" and other defendants that "were paid handsomely for their purported services").  And the Chapter 11 Trustee has expressly reserved the right to pursue claims against "other entities owned and/or controlled by Govoni via substantive consolidation, adverse domination, veil piercing, alter ego, or any other theory as allowed by law or equity."  Adv. Dkt. 1 at 12-13 n.1.

23.     The three pending litigations also take aim at the Center's directors and officers. This is most obvious in the *Orris* litigation, which expressly "seeks to hold the current and former directors . . . and officers . . . accountable for their breach of duties, failure of oversight,

failure to implement adequate checks and balances and processes and controls." *See Orris* Dkt. 5 at 2. Similarly, the *Chamberlin* plaintiffs lamented that "The Center now blames everyone but itself and its current directors for the massive, unmitigated misappropriation of SNT assets." *Chamb.* Dkt. 33 at 22. And in his Motion, the Chapter 11 Trustee has acknowledged that "the money utilized to fund the Loan appears to have been misappropriated *by the Debtor* from the Beneficiaries in order *for the Debtor* to fund the Loan to BFG." Dkt. 195 at 3. Indeed, one of the compelling reasons to grant the Chapter 11 Trustee's requested relief is to preserve the estate's rights under "three insurance policies that may provide coverage in connection with claims by the Debtor against the D&Os." *See id.* at 5 n.5.

24.     While there is unanimity or near-unanimity with respect to the merit of claims against BFG, Govoni, Govoni-owned or controlled entities, and the directors and officers of the debtor, no such unanimity exists with respect to American Momentum Bank. The *Orris* complaint makes no mention of AMB. *See Orris* Dkt. 5.

25.     And while the Debtor and the Chapter 11 Trustee have both asserted and made reference to claims against BFG, Govoni, and other related entities, neither the Debtor nor the Chapter 11 Trustee has alleged wrongdoing on the part of AMB. For example, the Debtor's Chapter 11 Case Management Summary did not list among its assets any claims against AMB. *See* Dkt. 7.

26.     In fact, shortly after filing its Chapter 11 petition, the Debtor actually sought permission to keep the AMB "trust bank accounts in place to avoid disruption in its core service of making trust distributions for the benefit [of] the beneficiaries." Dkt. 18 at 2. If the Debtor's pre-petition investigation gave rise to any suggestion that AMB was complicit or otherwise at fault for the missing funds, the Debtor *never* would have sought to maintain accounts at AMB.

27.     Likewise, the Chapter 11 Trustee has not asserted any allegations against AMB. The closest the Chapter 11 Trustee has come to alleging wrongdoing on the part of AMB was to state that the *Chamberlin* plaintiffs are improperly asserting claims against AMB that are "property of the bankruptcy estate" because "American Momentum Bank had no contractual relationship with the Beneficiaries, only with the Debtor." Dkt. 195 at 7-9.

28.     Rather, the Chapter 11 Trustee's investigation has confirmed and corroborated, at least to this point, precisely why AMB cannot be liable and is unlikely to be the target of claims by the Chapter 11 Trustee:

> Indeed, the money utilized to fund the Loan appears to have been misappropriated *by the Debtor* from the Beneficiaries in order *for the Debtor* to fund the Loan to BFG.

Dkt. 195 at 3 (emphasis in original).   The Trustee's investigation has confirmed that the transactions that form the basis of the Debtor's bankruptcy, the *Chamberlin* litigation, and the *Orris* litigation were effectuated "*by the Debtor.*"

*29.*     It is a hallmark of Florida banking law that depository institutions have no duty to investigate transactions made by authorized agents: "Both the Florida Supreme Court and this Court 'have held that [depository institutions] generally have no duty to investigate transactions made by authorized agents of the account holder.'"  *Insight Sec., Inc. v. Deutsche Bank Tr. Co. Americas*, No. 21-12817, 2022 WL 2313980, at *4 (11th Cir. June 28, 2022) (citation omitted).

30.     The Chapter 11 Trustee's determination that the Center authorized the loan to BFG makes it highly *unlikely* that the Chapter 11 Trustee could, in good faith, pursue claims against American Momentum.

31.     To be sure, the Chapter 11 Trustee is duty-bound to investigate potential claims, and AMB recognizes and acknowledges that the Trustee must follow where the investigation leads.  But where the Chapter 11 Trustee has identified the various claims he may assert against

the directors and officers and the Govoni-owned and controlled entities, the Trustee has not articulated any potential claims against American Momentum.  More importantly, the Trustee has identified facts that make such a claim *unlikely*, at least based on the facts as they are currently understood.

## II.   THE *CHAMBERLIN* PLAINTIFFS' CLAIMS AGAINST AMB SHOULD BE DISMISSED.

32.   While this is not the forum to argue the merits of AMB's motion to dismiss in full, a brief summary is important context for the Court's decision on this Motion.  Thus, American Momentum provides a high-level overview of both the *Chamberlin* plaintiffs' allegations against it and the legal arguments raised in its motion to dismiss.  American Momentum, for ease of reference, also attaches a copy of its pending motion to dismiss as Exhibit A to this Objection.

33.   The *Chamberlin* plaintiffs assert claims against American Momentum for (1) negligence, (2) breach of fiduciary duty, and (3) aiding and abetting breach of fiduciary duty. *Chamb.* Dkt. 33 at 65-70, 74-80, and 83-86.

34.   At their core, the *Chamberlin* plaintiffs' allegations against AMB suggest that AMB had the opportunity, the right, and the legal duty to interrupt the Debtor's loan to BFG.  In fact, American Momentum had *none* of the three.

35.   The starting point has to be the Debtor's actual business practices, which the Debtor has previously set forth in some detail.

36.   The Center "is the trustee … of numerous special needs trusts … for over 2,000 beneficiaries who suffer from various levels of disability." Dkt. 18 at 3; *see also* Dkt. 28 at 9, 16-18 (attesting to the truth and correctness of the Trust Cash Management Motion, Dkt. 18). "[T]rust assets are managed by different financial advisory partners, which maintain investment accounts for the various trusts." Dkt. 18 at 3.  When the Center "makes a payment for the benefit

of a Trust Beneficiary, cash is distributed from the applicable Trust Investment Account, deposited into the designated Trust Bank Account, and then ultimately paid out from the Trust Bank Account for the benefit of the Trust Beneficiary." *Id.* at 4. AMB is the depository institution for eight of the Center's Trust Bank Accounts. *Id.*

37.    Critically, "[t]he funds that flow into and out of the trust bank accounts … typically only remain in the account for a few days." *Id.* at 2. The Center "then makes distributions for the benefit of trust beneficiaries from the trust bank accounts." *Id.* In other words, the AMB accounts were a sort of clearinghouse for transactions relating to the more than $200,000,000 managed by the Center. *See* Dkt. 7 at 2. AMB was the bank, *not* the trustee, *not* the custodian of investment accounts, and *not* the investment manager.

38.    Nevertheless, the *Chamberlin* plaintiffs allege that AMB "knew BFG received $100,000,000.00 of SNT assets, yet did nothing to question or stop the misappropriating transfers." *Chamb.* Dkt. 33 at 26. Stated differently, the *Chamberlin* plaintiffs argue that AMB should have—and had a *legal duty* to—second-guess the decisions of the *actual* trustee, the *actual* investment account custodian, and the *actual* investment managers.

39.    Very simply, the *Chamberlin* plaintiffs' theory as to American Momentum would radically alter the law of banking. *See Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 549 (Fla. 2d DCA 2003) ("We would radically alter the law of banking if we required banks to review credit card accounts and checking accounts to make certain that their customers were spending their money wisely.").

40.    The *Chamberlin* plaintiffs' claims against AMB are also improper because they were *not* American Momentum customers. To be sure, the *Chamberlin* plaintiffs make a conclusory allegation that "[b]ecause American Momentum Bank provides safekeeping, cash

management, and custodian services to Beneficiaries' SNTs, the SNTs *and Beneficiaries* are customers of American Momentum Bank." *Chamb.* Dkt. 33 at 37 (emphasis added)). But this assertion is legally incorrect. A party that provides services to a trust works for the trustee, not for the beneficiary. *See First Union Nat. Bank v. Turney*, 824 So. 2d 172, 185-86 (Fla. 1st DCA 2001) ("An attorney retained to represent a trust represents the trustee, not the beneficiaries…. [T]he trustee is the client." (citation omitted)). As a matter of law, the *Chamberlin* plaintiffs were *not* customers of AMB by virtue of the Center's banking relationship with AMB.

41.      "Florida, like other jurisdictions, recognizes that as a general matter, 'a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.'" *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) (citation omitted).  In fact, a bank does not owe a fiduciary duty even to its *actual* customers. *See Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 Fed. Appx. 820, 823 (11th Cir. 2015). Accordingly, federal district courts in Florida agree that "banks do not owe a fiduciary duty to non-customers with whom they share no relationship." *Acciard v. Whitney*, 2010 WL 6813952, at *8 (M.D. Fla. Sept. 17, 2010).

42.      Moreover, even to its actual customer (The Center), AMB did not have a duty to investigate transactions by authorized users.  "Depository institutions generally have no duty to investigate transactions made by authorized agents of the account holder."  *Insight Sec., Inc.*, 2022 WL 2313980, at *4 (cleaned up).  Rather, "a bank … has the right to assume that individuals who have the legal authority to handle [an] entity's accounts do not misuse the entity's funds."  *O'Halloran v. First Union Nat. Bank of Florida*, 350 F.3d 1197, 1205 (11th Cir. 2003).  Indeed, "a refusal on the part of the bank to permit a withdrawal by a duly authorized representative of a corporate accountholder would no doubt breach the bank's deposit agreement with that accountholder."  *Id.*; *see also Freeman*, 865 So. 2d at 549 ("When one establishes a

bank account, the bank is obligated to deposit legal transfers into the account and to honor checks and other usual debits against the account.").

43.    As a matter of Florida law, American Momentum, whose customer was The Center, did not owe *any* duties to the *Chamberlin* plaintiffs.

44.    The *Chamberlin* plaintiffs' final attempt to manufacture liability where none exists is to assert a claim for aiding and abetting breach of fiduciary duty. *Chamb.* Dkt. 33 at 74-80. But, "[a] cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish … knowledge of the breach by the alleged aider and abettor." *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017).

45.    In support of their aiding and abetting claim, the *Chamberlin* plaintiffs claimed that "multiple red flags gave [AMB] actual knowledge that the Center and BAM were in breach of their fiduciary duties of care, loyalty, prudence, and good faith owed to the SNTs and Plaintiffs." *Chamb.* Dkt. 33 at 77.

46.    But, as a matter of law, "[a]lleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014). Actual knowledge is a high bar—a bank has actual knowledge when, for example, its employees allegedly actively assisted in the misappropriation or actively misled the plaintiff. *See, e.g., Chang*, 845 F.3d at 1096-97 ("Chang's allegations support the inference that Gordon paid Padgett-Perdomo for her ongoing assistance in and cover up of his fraudulent scheme"); *Metrocity Holdings, LLC v. Bank of Am., N.A.*, 2023 WL 6064516, at *9-10 (S.D. Fla. Sept. 18, 2023) (holding that allegations "that [a bank employee] actually knew that the true average balances were significantly lower than what she was representing in her letters [to the plaintiff] and that she knew most of the money that had

been deposited into the Trust Account had actually been withdrawn" were sufficient to establish actual knowledge). Thus, although the *Chamberlin* plaintiffs make a conclusory assertion that AMB had actual knowledge of alleged breaches of fiduciary duty, Plaintiffs have not made a *plausible* allegation of actual knowledge that passes muster under *Twombly* and *Iqbal*.

47.    In sum, the *Chamberlin* plaintiffs' claims against AMB run headlong into longstanding Florida banking and fiduciary law. For the reasons set forth in AMB's motion to dismiss, the *Chamberlin* plaintiffs' claims against AMB should be, and likely are to be, dismissed as soon as they are reached by the district court.

## III.    ALLOWING AMB'S DISMISSAL WILL NOT PREJUDICE THE ESTATE, THE TRUSTEE, OR THE CREDITORS.

48.    As a matter of law and a matter of fairness, American Momentum Bank deserves to be dismissed from the *Chamberlin* litigation. Moreover, it is not clear or even likely that the Chapter 11 Trustee will ever assert claims against American Momentum for doing nothing more than its customer, The Center, directed it to do.

49.    Nevertheless, American Momentum recognizes that the primary objective for the Chapter 11 Trustee's requested relief here is to prevent one creditor from seizing assets to the detriment of other creditors and to preserve an equal and fair treatment of all creditors. American Momentum's request that its motion to dismiss proceed to resolution does no harm and actually furthers these interests.

50.    As previously stated, American Momentum recognizes and acknowledges that the Chapter 11 Trustee's investigation is ongoing. AMB further recognizes and acknowledges that the Chapter 11 Trustee will be duty-bound to maximize the value of the bankruptcy estate and to recover funds for the benefit of the Debtor's creditors and the Beneficiaries. Dismissal of the

*Chamberlin* plaintiffs' claims (claims of *non*-customers) will in no way preclude the Chapter 11 Trustee from pursuing whatever claims his investigation uncovers.

51.     Additionally, proceeding on this limited issue will require *nothing* of the Chapter 11 Trustee, the *Orris* litigants (whether plaintiffs or defendants), the *Chamberlin* defendants, or any of the Beneficiaries other than the *Chamberlin* plaintiffs – a sole beneficiary.

52.     The burden on that sole beneficiary is remarkably modest.  After all, the district court extended the time to respond to AMB's motion to dismiss at 2:55 p.m. on the day the response was due.  *See Chamb.* Dkt. 54.  It stands to reason that the *Chamberlin* plaintiffs had substantially completed their response to the motion to dismiss and were making final filing preparations.  The burden on the *Chamberlin* plaintiffs has been further lightened by the district court's decision to delay the response deadline (assuming this Court allows it) to July 1, 2024.

53.     The bulk of the remaining work will fall on two parties: American Momentum and the district court.  American Momentum will need to analyze the *Chamberlin* plaintiffs' response and may seek leave to file a reply of no more than seven pages under the district court's local rules.  And obviously, the district court would then be tasked with deciding the motion to dismiss.  As a practical matter, some court (perhaps this one) will have to decide AMB's motion dismiss eventually.  Fortunately, the issues are not novel, and numerous Florida state court and Eleventh Circuit decisions have paved the way.

54.     It should also be noted that the issues the district court would have to grapple with are issues that are unique to American Momentum, a depository institution.  AMB's motion to dismiss is based on the body of law applicable to depository institutions, and AMB is the only depository institution named in the *Chamberlin* litigation, the *Orris* litigation, or the Adversary

Proceeding.  Thus, there is no risk of inconsistent findings and no need for other plaintiffs *or* defendants to stake out positions that may affect their rights at a later date.

55.    While the Court's primary concern will and should be maximizing and preserving the bankruptcy estate for the benefit of all creditors, American Momentum respectfully submits that fairness (admittedly, *to AMB*) counsels in favor of allowing its motion to dismiss to be resolved by the district court.  After all, there are material financial and reputational implications that could (and in AMB's estimation likely *would*) be brought to their conclusion.  By contrast, there is no *unfairness* that would be visited on any party, no undue burden on any party, and no burden at all on the Chapter 11 Trustee, the Debtor, or the bankruptcy estate.

## CONCLUSION

For the reasons stated herein, American Momentum Bank respectfully requests that the Court issue an order expressly permitting the district court in *Chamberlin* to proceed with resolution of American Momentum Bank's pending motion to dismiss.  In all other respects, American Momentum does not object to the Chapter 11 Trustee's Motion to Enforce Stay.

Dated: May 10, 2024                    Respectfully submitted,

**BECK REDDEN LLP**

By:    */s/ Marcos Rosales*
      Marcos Rosales
      TX Bar No. 24074979
      (Special Admission)
      mrosales@beckredden.com
      1221 McKinney, Suite 4500
      Houston, TX  77010-2010
      Tel: (713) 951-3700
      *(Admitted Pro Hac Vice)*

**LEAD COUNSEL FOR CREDITOR
AMERICAN MOMENTUM BANK**

**COUNSEL FOR CREDITOR AMERICAN MOMENTUM BANK:**

BECK REDDEN LLP
Cassandra R. Maneen
TX Bar No. 24120989
(Special Admission)
cmaneen@beckredden.com
1221 McKinney Street, Suite 4500
Houston, TX 77010
Telephone:    (713) 951-3700
Facsimile:    (713) 951-3720
*(Admitted Pro Hac Vice)*

CARLTON FIELDS, PA
Donald R. Kirk
FL Bar No. 105767
dkirk@carltonfields.com
4221 W Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
Telephone:    (813) 229-4334
Facsimile:    (813) 229-4133

Charles W. Throckmorton
FL Bar No. 101203
cthrockmorton@carltonfields.com
700 NW 1st Avenue, Suite 1200
Miami, FL 33136
Telephone:    (305) 530-0050
Facsimile:    (305) 530-0055

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 10, 2024, I electronically filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system thereby serving all registered users in this case.

/s/  *Marcos Rosales*
Marcos Rosales

2573464