## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,

    Debtor.

_____/

Case No. 8:24-bk-00676-RCT

Chapter 11

## CHAMBERLIN CLASS PLAINTIFFS' OBJECTION IN RESPONSE TO CHAPTER 11 TRUSTEE'S MOTION TO ENFORCE AUTOMATIC STAY

Respondents, Clark Chamberlin by and through Todd Chamberlin and Kelli Chamberlin ("Class Plaintiffs"), individually and for the putative Class of special needs trust ("SNT") beneficiary and/or grantor-victims of the hundred-million-dollar theft of SNT assets ("Class Members"), hereby respond in opposition to the Chapter 11 Trustee's Motion to Enforce Automatic Stay (Doc. 195) ("Stay Motion").

Now admitting to the Debtor's initial theft of $100,000,000 from SNTs under its administration, the Stay Motion asks the Court to use the Bankruptcy Code as a shield for the thieving Debtor and a sword against the disabled SNT beneficiaries who are victims of its crimes. That request flies in the face of binding Supreme Court precedent, statutory and common property law, the Bankruptcy Code's plain language, and the Code's underlying policy to provide a fresh start to honest but unfortunate debtors. Because the stolen SNT funds at issue and claims to recover them are not and have *never* been property of the Debtor or its estate, the Court should deny the Stay Motion and allow Class Plaintiffs' case to proceed.

## Background

1.     Class Plaintiffs, like those similarly situated that they seek to represent through their class action, are grantors and/or special needs beneficiaries ("Beneficiaries") of SNTs[1] administered by the Debtor, who placed their trust in the Debtor and its founders, officers, directors, and agents to administer the SNTs loyally, prudently, and in good faith in line with its fiduciary duties as trustee of the SNTs.

2.     On February 9, 2024, the Debtor, The Center for Special Needs Trust Administration, Inc. ("Center"), filed this bankruptcy proceeding and revealed, for the first time and almost two years after its then-current board of directors claimed to have learned about the predatory scheme, that over a decade-plus period, $100,000,000 had been misappropriated from Class Plaintiffs' and Class members' SNTs that the Debtor administered as trustee. *See* Chapter 11 Case Management Summary (Doc. 7) at 2–5.  The Debtor reported that over 1,500 of the SNTs it administers are missing all or a part of their assets due to this misappropriation. *Id.* at 4.

3.     As set forth in the Debtor's first-day pleadings, the hundred-million dollars stolen from Beneficiaries' SNTs were used to fund a purported loan ("purported Loan") from the Debtor to Boston Finance Group, LLC ("BFG"), an entity owned and controlled by the Center's co-founders Leo J. Govoni ("Govoni") and John Staunton ("Staunton"), and their confidante Jonathan Golden ("Golden"). *Id.* at 4–5.

4.     The purported Loan instruments are a sham and merely put paper to the (now

---

[1] An SNT is a specialized irrevocable trust established for disabled beneficiaries under federal law, *see* 42 U.S.C. § 1396p, and typically funded from settlements or recoveries from catastrophic personal injury cases.  In many cases, SNTs are court-ordered trusts to protect the funds recovered attendant to settlements and judgments.  In general, an SNT's purpose is to allow beneficiaries to receive payments from lawsuit settlements or recoveries through distributions from the SNT while continuing to qualify for and receive means-tested public assistance benefits like Medicaid.

admitted) criminal transaction in stolen SNT property consist of (a) a $2,500,000 loan agreement, negative pledge, promissory note, and security agreement dated June 1, 2009, with BFG as borrower and the Debtor as lender; (b) an amended and restated promissory note and amended loan agreement for $15,000,000 dated December 1, 2009, with BFG as borrower and the Debtor as lender; (c) an amended and restated promissory note and corresponding amended and restated revolving line of credit for $30,000,000 dated March 15, 2010, with BFG as borrower and the Debtor as lender; (d) an amended and restated promissory note and corresponding amended and restated revolving line of credit for $50,000,000 dated March 15, 2011, with BFG as borrower and the Debtor as lender; (e) an amended (as to interest terms only) and restated promissory note for $50,000,000 dated September 1, 2011, with BFG as borrower and the Debtor as lender; and (e) an amended and restated promissory note[2] and corresponding amended and restated revolving line of credit for $100,000,000 dated January 1, 2012, with BFG as borrower and the Debtor "*as Trustee*" (a label used for the first time in the purported Loan instruments) as lender.[3]

5.      In immediate response to the Debtor's revelation of the predatory scheme, Class Plaintiffs and their counsel began investigating *non-debtor* individuals and entities that played a role in the misappropriation of SNT assets and resulting injuries to Beneficiaries, and filed their Class Action Complaint against these non-debtor Defendants on February 19, 2024. *See Chamberlin v. Boston Finance Group, LLC, et al.*, No. 8:24-cv-00438-SDM-AEP (M.D. Fla. Feb. 19, 2024), ECF No. 1 (the "Class Action"). On April 4, 2024, Class Plaintiffs filed their Amended

---

[2] The promissory note from BFG dated June 1, 2009, and the amended and restated promissory notes from BFG dated December 1, 2009, March 15, 2010, March 15, 2011, September 1, 2011, and January 1, 2012, collectively referred to as the "BFG Note."

[3] In addition to concealing the hundred-million-dollar theft of SNT assets from Class Plaintiffs and the Class, the Center hid the transaction from the IRS. Its tax filings through 2022, which are publicly available, *never* reported the purported Loan as an asset of the Debtor.

Class Action Complaint adding additional non-debtor Defendants and allegations. *See id.* at ECF No. 33.

6.    In the Class Action, Class Plaintiffs assert the following tort claims ("Class Claims") against *non-Debtor* Defendants for their breaches of duties owed to Class Plaintiffs and the Class and the resulting injuries and damages to their SNTs, *see id.* at ¶¶ 190–408:

 a.  **Count I: Conversion** against Defendants BFG, Govoni, Staunton, and Golden;

 b.  **Count II: Breach of Fiduciary Duty** against Defendants Govoni, Staunton, Golden, and Boston Asset Management, Inc. ("BAM") (the entity under Govoni, Staunton, and Golden's control that provided investment management services to SNTs, charging the SNTs for those services),;

 c.  **Count III: Breach of Fiduciary Duty** against Defendant Fiduciary Tax & Accounting Services, Inc. ("FTAS") (the entity under Govoni, Staunton, and Golden's control that provided accounting services to SNTs, charging the SNTs for those services)[4];

 d.  **Count IV: Breach of Fiduciary Duty** against Defendant American Momentum Bank (the bank custodian of Class Plaintiffs' and the Class's SNT assets, as well as the Debtor's operating accounts and BFG's account);

 e.  **Count V: Aiding and Abetting Breach of Fiduciary Duty** against Govoni, Golden, Staunton, and BFG;

 f.  **Count VI: Aiding and Abetting Breach of Fiduciary Duty** against American Momentum Bank;

 g.  **Count VII: Negligence** against Govoni, Staunton, and Golden;

 h.  **Count VIII: Negligence** against American Momentum Bank;

 i.  **Count IX: Negligence** against FTAS;[5]

---

[4] The Stay Motion does not discuss Count III of the Amended Class Action Complaint or allege that this claim implicates the automatic stay.

[5] The Stay Motion does not discuss Count IX of the Amended Class Action Complaint or allege that this claim implicates the automatic stay.

j.  **Count X: Violation of the Uniform Fraudulent Transfer Act, Fla. Stat. § 726.105**, against BFG and Prospect Funding Holdings, LLC ("Prospect Funding") (the entity under Govoni, Staunton, and Golden's control that was a subsequent transferee of stolen SNT funds);

k.  **Count XI: Unjust Enrichment** against BFG;

l.  **Count XII: Unjust Enrichment** against Prospect Funding and Prospect Finance Partners, LLC ("Prospect Finance") (another entity under Govoni, Staunton, and Golden's control that was a subsequent transferee of stolen SNT funds); and

m.  **Count XIII: Declaratory Relief – Alter Ego** against Defendants BFG, Boston Holding Company, LLC, Prospect Funding, Prospect Finance, Prospect Funding Holdings (NY) III, LLC, Govoni, Golden, and Staunton.

7.      On April 26, 2024, the Chapter 11 Trustee filed the Stay Motion arguing the Class Action violates the 11 U.S.C. § 362(a) automatic bankruptcy stay.  The Stay Motion claims unabashedly that the Class Claims violate the automatic stay because "the money utilized to fund the Loan appears to have been misappropriated *by the Debtor* from the Beneficiaries in order *for the Debtor* to fund the Loan to BFG."  Mot. at ¶ 8 (emphasis in original).

8.      Yet, despite now acknowledging the purported Loan to BFG was funded with money the Debtor *stole* from SNTs held in trust for the Beneficiaries, the Stay Motion takes the untenable position that the stolen money can only be recovered by the thieving Debtor under the fraudulent purported Loan instruments with BFG—as if stealing the money eliminated its trust character or Beneficiaries' equitable interest therein.   And despite recognizing that the *Beneficiaries and their SNTs from which the Loan money was embezzled* are the direct victims of the hundred-million-dollar theft, the Stay Motion argues absurdly that only the Debtor was harmed by BFG's conduct related to the stolen funds—as if a lack of profit from its criminal transaction is a legitimate injury.

9.      Specifically, the Chapter 11 Trustee argues the Class Action violates the automatic stay because each Class Claim "is not a direct claim, but rather seeks recovery of the same *misappropriated* money that funded the purported Loan by the Debtor to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the purported Loan and Govoni's breach of the guaranty." *See* Mot. at 6–11 (emphasis added).

10.     In reality, as the Debtor could not have funded the purported Loan and BFG Note but for its theft from the SNTs, the party injured was never the Debtor, which itself did not lose a penny out of pocket and in fact continued to earn money from SNT administration fees the Debtor charged each SNT (going so far as to charge administration fees on monies stolen from Beneficiaries), but rather the SNTs and their Beneficiaries, who are the direct victims of the criminal scheme.  Even if the Debtor suffered any legitimate injury from BFG's and Govoni's failure to repay the stolen trust assets to their original thief (an entirely untenable position), it would be derivative of the harm suffered by the *Beneficiaries* when their SNT property was stolen to fund the illegal transaction in the first place.

11.     Despite the Debtor's admittedly soiled hands, the Chapter 11 Trustee contends the automatic stay allows the Debtor, and only the Debtor, to recover the stolen SNT funds into the bankruptcy estate and distribute them "to the *Debtor's creditors* and the Beneficiaries."  Mot. at ¶ 44 (emphasis added).  In other words, the Stay Motion asks the Court to bar Class Plaintiffs from seeking redress for their and the Class's direct injuries so that only the estate can recover the money stolen from SNTs, which *never* belonged to the Debtor, and use that money to pay the Debtor's general body of creditors, including *non-Beneficiary* claimants.  The Bankruptcy Code does not sanction such inequity and neither should this Court.

## Relief Requested

12.     Class Plaintiffs request the Court find the Class Action, asserting direct claims for Class Plaintiffs' and the Class's distinct and independent injuries, does not implicate the automatic stay, deny the Stay Motion in full, and allow the Class Action to proceed.

13.     In the alternative, should the Court determine the automatic stay applies to one or more of the Class Claims, Class Plaintiffs request that the Court grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d).

## Basis for Relief

The bankruptcy process is designed to provide a fresh start to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991).  The Debtor here is neither "honest" nor "unfortunate."  Fully aware of the duty of candor owed to the Court, the recently appointed, independent Chapter 11 Trustee acknowledges in the Stay Motion that the Debtor stole $100,000,000 from SNTs it administered in trust for the benefit of disabled Beneficiaries, some of the most vulnerable members of our society, in a decade-plus predatory scheme beginning nearly 14 years before the Debtor initiated these proceedings.  *See* Mot. at ¶ 8.

Class Plaintiffs believe the Debtor initiated a debtor-in-possession Chapter 11 proceeding to attempt to cleanse the Debtor's and non-Debtors' criminal conduct under the guise of reorganization at the expense of the innocent Beneficiaries.  This leaves the Chapter 11 Trustee, an experienced bankruptcy jurist, in an untenable position, to effectively ask the Court to endorse the Debtor's embezzlement by finding the Class Action's direct claims for Beneficiary-victims of the Debtor's crimes violate the automatic stay for attempting to recover their misappropriated SNT assets from non-bankrupt wrongdoers.  Understanding it is the Chapter 11 Trustee's role to marshal assets for creditors, the law does not permit use of the automatic stay to unjustly stop the Class

Action while the Chapter 11 Trustee pursues claims, for example in the adversary proceeding recently initiated against BFG and Govoni, to marshal the money the Debtor *stole*, which was *never* its property, to its bankruptcy estate for distribution among its general body of creditors. *Id.* at ¶ 42.

Because the stolen SNT funds and their proceeds were never the Debtor's property, claims to recover that property do not belong to the bankruptcy estate. Thus, the Class Action alleging direct claims for Class Plaintiffs' and Class members' distinct, primary injuries, does not violate or even implicate the automatic stay. The Bankruptcy Code is not a tool for a thieving debtor to use others' property to repay its creditors, and the Court should not use its inherent powers to allow the Debtor to do so here. The Court should deny the Stay Motion in full and allow the Class Action to proceed. Alternatively, if the Court determines that 11 U.S.C. § 362 applies, it should grant Class Plaintiffs' relief from stay to seek redress for their injuries through the Class Action. By this opposition, Class Plaintiffs do not seek to prevent the Chapter 11 Trustee from pursuing the estate's viable claims, but the Stay Motion is wrong to claim that the Class Action cannot proceed in tandem.

### A. The Stolen SNT Funds and their Proceeds are Not and Were Never Property of the Debtor or its Estate.

"If property is not property of the estate, then the automatic stay does not protect it." *Singer Furniture Acquisition Corp. v. SSMC, Inc. N.V.*, 254 B.R. 46, 56 (M.D. Fla. 2000). The Bankruptcy Code makes clear: "Property of the estate does not include . . . any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(1). Accordingly, "[b]ecause the debtor does not own an equitable interest in property *he holds in trust for another*, that interest is not 'property of the estate.'" *Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) (emphasis added). *See also U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) (citing 11 U.S.C.

8

§ 541(b)) ("Congress plainly excluded [from the 'bankruptcy estate'] property of others held by the debtor in trust at the time of the filing of the petition."); *C.H. Robinson Co. v. Tr. Co. Bank*, 952 F.2d 1311, 1315 (11th Cir. 1992) ("Trust assets are actually exempt from the bankruptcy estate."); *PACA Tr. Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc.*, 913 F.3d 268, 276 (2d Cir. 2019) ("To the extent the disputed assets represent PACA Trust assets, they are held outside the bankruptcy estate[.]"); *In re FirstPay, Inc.*, 773 F.3d 583, 590 (4th Cir. 2014) (quotations and alterations omitted) ("The debtor does not own an equitable interest in property he holds in trust for another, and therefore any such trust property is not the debtor's for purposes of § 547(b)); *In re Foster*, 275 F.3d 924, 926 (10th Cir. 2001) ("Property subject to a trust is not property of the bankruptcy estate."); *In re Omegas Grp., Inc.*, 16 F.3d 1443, 1449 (6th Cir. 1994) ("A debtor that served prior to bankruptcy as trustee of an express trust generally has no right to the assets kept in trust, and the trustee in bankruptcy must fork them over to the beneficiary."); *In re SOL, LLC*, 419 B.R. 498, 505 (Bankr. S.D. Fla. 2009) ("Property that a debtor holds in escrow or trust is not property of the estate under 11 U.S.C. § 541."); *In re Super Spud, Inc.*, 77 B.R. 930, 931 (Bankr. M.D. Fla. 1987) ("[T]he property held by the bankrupt in trust properly belongs to plaintiff, a trust beneficiary, and never became part of the bankruptcy estate.").

Faced with this established principle, the Stay Motion takes the untenable position that because the Debtor *stole* $100,000,000 from Beneficiaries' SNTs and used the *stolen* trust money to fund the purported Loan to BFG in exchange for the BFG Note, that conduct transformed the stolen assets from SNT property to the Debtor's because documents papering the illegal transaction are between only the co-conspiring Debtor and BFG (or in the case of his guaranty, Govoni).[6] Not

---

[6] The Stay Motion also omits that the most recent purported Loan instruments, dated January 1, 2012, and increasing the loan amount from $50,000,000 to $100,000,000, which Govoni personally guaranteed, were executed between BFG and the Center *as Trustee*.

so. It should go without saying that "a thief has no title in the property that he steals." *In re Newpower*, 233 F.3d 922, 929 (6th Cir. 2000) (citing Restatement (Second) of Torts § 229 cmt. d (1965)); *see also Scholes v. Lehmann*, 56 F.3d 750, 759 (7th Cir. 1995) ("A theft cannot pass good title"); *In re Elite Auto Dealer, Inc.*, No. 20-12221-MKN, 2020 WL 6598256, at *7 (Bankr. D. Nev. July 8, 2020) ("It is axiomatic that a party cannot obtain an enforceable legal right in property obtained illegally."); *In re Bake-Line Grp., LLC*, 359 B.R. 566, 570 (Bankr. D. Del. 2007) ("[A] party cannot obtain an ownership interest in property through theft or conversion."); *Matter of Sielaff*, 164 B.R. 560, 567 n.7 (Bankr. W.D. Mich. 1994) ("[A] thief, who could have bald possession of property, without any corresponding right to possession, likely would be unable to use § 541 to claim that the stolen property constitutes property of the estate because he lacks a legal or equitable interest."). Hence, the money the Debtor stole from the SNTs never became the Debtor's property.

That the Debtor used the misappropriated SNT assets to fund the purported Loan in exchange for the BFG Note does not convert the stolen funds from trust property to the Debtor's property as the Stay Motion contends. That is because "[e]quity will follow the property constituting the trust even if the same has been converted into other species of property." *Sewell v. Sewell Properties*, 30 So. 2d 361, 362 (Fla. 1947).[7] *See also First State Tr. & Sav. Bank of Springfield v. Therrell*, 138 So. 733, 739 (Fla. 1932) ("When property in its original state and form has once been impressed with the character of a trust, no subsequent change of such state and form can divest it of its trust character . . . and the beneficiary of the trust may pursue and reclaim it in whatever form he may find it."); Fla. Stat. § 736.1018 (2023) ("Any person who received a

---

[7] "The extent and validity of the debtor's interest in property is a question of state law." *In re Scanlon*, 239 F.3d 1195, 1197 (11th Cir. 2001). Because Class Plaintiffs' SNT agreement is governed by Florida law, Florida law applies. Fla. Stat. § 736.0107 (2003).

distribution or was paid improperly from a trust shall return the assets or funds received . . . . If the person does not have the assets or funds, the value of the assets or funds . . . shall be returned."); 55A Fla. Jur 2d Trusts § 60 ("a trust will follow misapplied property through various changes in its state and form").

Accordingly, the Debtor had and has no right to keep the stolen SNT funds or their proceeds via the BFG Note, which retained their trust character following the Debtor's initial conversion and remain trust property still. *See Sewell*, 30 So. 2d at 362. As the Debtor would have no right to retain proceeds of the stolen SNT assets, claims to recover those proceeds are not property of its estate. *See In re Scott Wetzel Servs., Inc.*, 243 B.R. 802, 805 (Bankr. M.D. Fla. 1999) ("[B]ecause the Debtor would not have the right to keep the funds," proceeds "are not protected by the automatic stay").

The purported Loan proceeds in the hands of BFG and its subsequent-transferee affiliates remain SNT property as well. That is because "when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person *takes the property subject to the trust*, unless he has purchased the property for value and without notice of the fiduciary's breach of duty." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250–51 (2000) (emphasis added); *see also Kent v. Kent*, 431 So. 2d 279, 280–81 (Fla. 5th DCA 1983) "[A] purchaser [of misappropriated trust property] with knowledge of the facts giving rise to the breach of trust takes the property impressed with the trust."); *Connelly v. Fla. Nat. Bank of Jacksonville*, 120 So. 2d 647, 650 (Fla. 2d DCA 1960) ("[O]ne who takes or purchases trust property with knowledge of the trust . . . is himself chargeable with the trust. . . . This is upon the principle that the title of the cestui que trust has not been affected by the transfer.").

Given that Govoni controlled the Debtor, BFG, FTAS (the SNTs' accountant), and BAM

11

(the investment manager with transfer authority over SNT accounts (*see* Doc. 22)) when the purported Loan instruments and series of amendments were executed and the attendant theft of SNT assets took place, there can be no dispute that BFG and its subsequent-transferee affiliates knew the Debtor was breaching its fiduciary duties to Beneficiaries through the self-dealing and misappropriating purported Loan transactions. that knowledge, BFG and its subsequent-transferee affiliate Defendants took the SNT funds subject to the trusts—meaning those funds are not property of the Debtor's bankruptcy estate. *See Begier*, 496 U.S. at 59.

Indeed, even if the SNT money misappropriated to fund the purported Loan was not held in express trust by the Debtor, Florida law imposes a constructive trust in Class Plaintiffs' and Class members' favor over the purported Loan instruments and BFG Note funded with the embezzled SNT property as well as the stolen SNT funds possessed by BFG (and its subsequent-transferee affiliates). A constructive trust is "impressed on property where the property was financed with money directly traceable to embezzled funds and where there was no consideration for the receipt of those funds." *Citibank Int'l v. Mercogliano*, 574 So. 2d 1190, 1192 (Fla. 2d DCA 1991) (citing *In Re Mart*, 106 B.R. 309 (Bankr. S.D. Fla. 1989)); *see also In re Gherman*, 103 B.R. 326, 332 (Bankr. S.D. Fla. 1989). "When a constructive trust is created, the beneficiary . . . 'is entitled to have his original interest restored, and to be reestablished in his title.'" *Am. Nat. Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1541 (11th Cir. 1983) (quoting *Johnson v. Johnson*, 349 So.2d 698, 699 (Fla. 4th DCA 1977)); 55A Fla. Jur 2d Trusts § 60 ("The wrongful conversion of trust property into another form gives rise to a constructive trust in the property's product or proceeds.").

That is the precise situation here: as the Chapter 11 Trustee acknowledges, "the money utilized to fund the Loan appears to have been misappropriated by the Debtor from the

Beneficiaries in order for the Debtor to fund the Loan to BFG." Mot. at ¶ 8. This admission makes clear that because the Debtor used the embezzled SNT funds to finance the purported Loan in exchange for the BFG Note, the converted SNT assets are directly traceable to those instruments. *See In re Mazon*, 387 B.R. 641, 645–46 (M.D. Fla. 2008) (affirming bankruptcy court's finding that converted trust assets were traceable to condominium purchased by debtor based on debtor's admission "that he used converted funds to buy the Condominium"); *see also In re Supermarkets of Cheltenham*, No. 97-35661DWS, 1998 WL 386381, at *5 (E.D. Pa. July 7, 1998) (tracing is established by showing that when debtor filed petition for bankruptcy, "it had within its possession property to which the[] [misappropriated] trust funds could be traced").

So, because the purported Loan instruments were funded with SNT funds the Debtor embezzled without paying consideration to the SNTs, Class Plaintiffs and Class members are entitled to be reestablished in their titles to the stolen funds and the proceeds thereof through a constructive trust over the purported Loan instruments, including the BFG Note and receivables from BFG and Govoni. *See Am. Nat. Bank of Jacksonville*, 710 F.2d at 1541; *Citibank Int'l*, 574 So. 2d at 1192. Such property held in constructive trust is not part of the Debtor's bankruptcy estate. *Begier*, 496 U.S. at 59; *In re Gen. Coffee Corp.*, 828 F.2d 699, 707 (11th Cir. 1987); *In re Felton's Foodway, Inc.*, 49 B.R. 106, 108 (Bankr. M.D. Fla. 1985). Accordingly, to the extent the purported Loan instruments and BFG Note are enforceable (which is doubtful), they are trust assets and the Beneficiaries, not the Chapter 11 Trustee, are the only parties entitled to enforce them.

Moreover, "a constructive trust exists from the moment the fraudulent transaction giving rise to it takes place." *In re Gen. Coffee Corp.*, 828 F.2d at 702 (collecting cases under Florida law). So even were they not express trust property, the stolen SNT funds and their proceeds would have been held in constructive trust for the Beneficiaries' benefit from the moment they were

misappropriated from SNT accounts to fund the purported Loan in exchange for the sham BFG Note. The subsequent transfers to BFG in connection with the purported Loan do not impact the Beneficiaries' equitable interest in the money used to fund the transaction or its proceeds. *Doing v. Riley*, 176 F.2d 449, 458 (5th Cir. 1949) (citing Restatement of the Law of Restitution, § 160 comment g) (quotations omitted) ("Where property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off.").

**B. The Class Claims to Recover the Stolen SNT Funds are Not Property of the Debtor or its Estate Either.**

Because the misappropriated SNT funds were never the Debtor's property, claims arising from BFG's failure to repay that money belong to Class Plaintiffs and the Class, not the bankruptcy estate. *See Matter of Maple Mortg., Inc.*, 81 F.3d 592, 595 (5th Cir. 1996) (debtor had no interest in property held in trust for another and thus, could not bring claims to recover trust funds for the estate); *In re Valerino Constr., Inc.*, 250 B.R. 39, 44–45 (Bankr. W.D.N.Y. 2000) (because funds held by debtor in trust were not "property of the debtor," claims arising from transfer of those funds belonged to trust beneficiaries, not estate).

This Bankruptcy Code codifies this uncontroversial premise by limiting the Chapter 11 Trustee's turnover and avoidance powers to claims involving "property of the debtor" or "property of the estate." *See* 11 U.S.C. § 542(b) (trustee's power to compel turnover of "a debt that is property of the estate"); § 543(b) (trustee's power to compel from custodian delivery of "any property of the debtor held by or transferred to such custodian"); § 544(a) (trustee's power to "avoid any transfer of property of the debtor"); § 545 (trustee's power to avoid "the fixing of a statutory lien on property of the debtor"); § 547(b) (trustee's power to avoid "any transfer of an interest of the debtor in property"); § 548(a)(1) (trustee's power to "avoid any transfer . . . of an

14

interest of the debtor in property"). *See also Begier*, 496 U.S. at 65 ("[I]f the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated.").

As follows, the Chapter 11 Trustee cannot use the turnover and avoidance powers conferred under the Bankruptcy Code to bring claims for non-Debtor, non-estate SNT property. *See id.* (property held by the debtor in trust is not "property of the debtor" subject to 11 U.S.C. § 547(b) avoidance provision); *In re Chase & Sanborn Corp.,* 813 F.2d 1177, 1182 (11th Cir. 1987) ("[W]e conclude that the funds were not the property of the debtor, and thus that the transfer is not avoidable" under 11 U.S.C. § 548); *In re Bake-Line Grp*, 359 B.R. at 577 ("[T]he Debtor's transfer of $139,208.24 to Defendant was not a transfer of 'an interest of the debtor in property' as required by § 547(b) because the Debtor only held that money in a constructive trust, which [the Chapter 7 trustee] may not avoid under § 544(a)."); *In re Olympia Holding Corp*., 221 B.R. 995, 999 (Bankr. M.D. Fla. 1998) ("The defendant [in §542(a) proceeding] is only required to turn over actual 'property of the estate' and something to which the debtor has never been entitled cannot be considered 'property of the estate.'"); *In re Safe-T-Brake of S. Fla., Inc*., 162 B.R. 359, 364 (Bankr. S.D. Fla. 1993) ("[T]he trustee cannot avoid the transfer as the trustee cannot establish that there has been a transfer 'of an interest of the debtor in property' [when] the property transferred is the property of the third party, not of the debtor."); *see also In re Gen. Coffee Corp.*, 828 F.2d at 706–07 (trustee cannot use 11 U.S.C. §544(a) strong arm powers to bring avoidance claims for property held by the debtor in trust into bankruptcy estate).

## C. Claims to Recover the Stolen SNT Funds are Not Subject to the Automatic Stay for the Additional Reason that the Chapter 11 Trustee has No Standing to Bring Them.

Only claims the Chapter 11 Trustee has standing to bring can be subject to the automatic bankruptcy stay. *In re Icarus Holding, LLC*, 391 F.3d 1315, 1319 (11th Cir. 2004). "When a third

party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party.  He has no interest in the suit." *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994); *see also In re Meridian Asset Mgmt., Inc*., 296 B.R. 243, 257 (Bankr. N.D. Fla. 2003) ("For a trustee to have standing to pursue a claim against a third party there must be allegations that the third party injured the bankrupt debtor in some manner that is distinct from the injuries suffered by the debtor estate's creditors.").  Conversely, "when creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so."  *In re Waterford Wedgwood USA, Inc*., 529 B.R. 599, 603 (Bankr. S.D.N.Y. 2015) (citing *Hirsch v. Arthur Andersen & Co*., 72 F.3d 1085, 1093 (2d Cir. 1995)); *see also E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 985 (11th Cir. 1990) (because debtor's misappropriation of its customers' funds injured customers, not debtor, claims against third party who assisted misappropriation belonged to customers and bankruptcy trustee lacked standing to bring them).

To argue only the Chapter 11 Trustee has standing to recover the stolen SNT funds from BFG, the Stay Motion audaciously downplays the injuries that Class Plaintiffs and the Class have suffered due to the *theft of $100,000,000 from their SNTs*, taking the incredible position that "the Beneficiaries did not suffer any direct harm" and have only "been indirectly harmed because their harm is derived from harm to the Debtor caused by BFG and Govoni's breach of the Loan Documents."  Mot. at ¶¶ 39–40.  This mischaracterization ignores the reality that the Beneficiaries were *directly* harmed when the Debtor *first* misappropriated $100,000,000 from their SNTs to fund the criminal purported Loan instruments, and when BFG and its affiliated Class Defendants received, retained, and used those funds knowing they were stolen SNT property.

The only possible harms to the Debtor, which did not loan its own property and thus

16

suffered no out-of-pocket loss, *see* Mot. at ¶ 8, are (i) the Debtor's less-than-expected profit from the criminal purported Loan conspiracy, and/or (ii) the Debtor's liability to the Beneficiaries resulting from its theft of their SNT assets.  Inability to profit from an illegal transaction is of course not a compensable injury giving rise to Article III or bankruptcy standing.  *See O'Halloran v. First Union Nat. Bank of Fla*., 350 F.3d 1197, 1203 & n.4 (11th Cir. 2003) (debtor "cannot be said to have suffered injury from the scheme it perpetrated" so estate lacks standing to bring claims arising from scheme); *Feltman v. Prudential Bache Sec*., 122 B.R. 466, 474 (S.D. Fla. 1990) ("Everything [non-debtor defendant] stole from the debtor corporations, the debtors had stolen from the creditors. Thus, any alleged injury to the debtors is as illusory as was their corporate identity.").  And the Debtor's resulting liability to the Beneficiaries of course derives from injuries the Beneficiaries suffered directly due to the $100,000,000 misappropriation from their SNTs.

The Eleventh Circuit affirmed this concept in *E.F. Hutton & Co. v. Hadley*, 901 F.2d at 985–87.  In that case, customers of the debtor, GIC, provided funds to the debtor pre-petition for the debtor to purchase securities from Hutton in the customers' names. *Id.* at 981.  Similar to here, the debtor misappropriated those customers' funds by diverting them to purchase securities in the debtor's own name and cover the debtor's debt with Hutton, which led the debtor's bankruptcy trustee to sue Hutton in connection with the conversion of customer funds. *Id.*  Noting that the scheme underlying the subject claims "in part [was] because of GIC's misappropriation of the funds of its customers," the Eleventh Circuit made clear: "[T]hese causes of action and any potential recovery belong to the GIC customer creditors and not to the bankrupt GIC, represented by the bankruptcy trustee." *Id.* at 985, 987.  Accordingly, "there [was] simply no basis for standing" in the bankruptcy trustee. *Id.* at 987.

Indeed, this case is analogous to *In re Cannon*, 277 F.3d 838, 855 (6th Cir. 2002)*,* which,

like here, involved a debtor that served as trustee of an express trust. Identical to the Debtor here, prior to filing bankruptcy the *In re Cannon* debtor misappropriated trust property and subsequently transferred it to a *non*-bona-fide purchaser. *Id.* Because the misappropriation of trust property "harm[ed] the beneficiaries of the express trust," not the debtor, the bankruptcy trustee lacked standing to bring claims against the subsequent transferee arising from the transaction. *Id.* The same is true here.

In sum, the Class Claims "relat[ing] solely to the funds taken by [tortfeasors] from specific [Beneficiaries] . . . clearly run in favor of the defrauded [Beneficiaries] and allege no causes of action that are unique to the estate." *See In re Meridian Asset Mgmt.*, 296 B.R. at 257. "There is no reason to require the [Debtor], who ha[s] no real interest in pursuing the litigation, and who allegedly participated in or had knowledge of the fraud, to raise the claim and deny [Beneficiaries], the real victims, the right to seek recovery for their losses." *Walco Invs., Inc. v. Thenen*, 947 F. Supp. 491, 503 (S.D. Fla. 1996). The Chapter 11 Trustee "cannot circumvent the standing requirement simply by imputing this injury to the [D]ebtor" to "prevent [Beneficiaries] from asserting individual actions on their own behalf." *Hirsch*, 178 B.R. 40, 44 (D. Conn. 1994), *aff'd*, 72 F.3d 1085.

**D. The Class Claims to Recover the Stolen SNT Funds are Class Plaintiffs' and Class Members' Direct Claims.**

Each cause of action Class Plaintiffs allege is a direct claim belonging solely to Class Plaintiffs and the Class. The Chapter 11 Trustee argues in conclusory fashion that all Class Claims are not Beneficiaries' direct claims because each "seeks recovery of the same misappropriated money that funded the Loan *by the Debtor* to BFG, and derives from the same harm incurred by the Debtor in connection with BFG's default of the Loan and Govoni's breach of the guaranty." *See* Mot. at 6–11 (emphasis in original). As discussed *supra*, the Class Claims do indeed "seek

recovery of the same misappropriated money that funded the Loan by the Debtor to BFG"—money misappropriated from *Beneficiaries' SNTs*, which is not and has never been property of the Debtor or its estate.  *See In re Gen. Coffee Corp.*, 828 F.2d at 702.

Moreover, the injuries giving rise to the Class Claims were suffered uniquely and directly by Beneficiaries of the depleted SNTs due to the Class Defendants' torts, not by the Debtor that funded the fraudulent purported Loan with money that was never its to lend.  *See In re Newpower*, 233 F.3d at 929.  Thus, each Class Claim is a "*non-derivative claim* aris[ing] from the wrongdoer's breach of a separate legal obligation owed to the [Beneficiaries] that result[ed] in an injury particularized as to the [Beneficiaries]."  *In re Soundview Elite Ltd*., 565 B.R. 534, 544 (Bankr. S.D.N.Y. 2017) (emphasis added) (quotations and alterations omitted).

Additionally and importantly, the Class Claims are asserted only against *non-debtor* Defendants.  *See generally* Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33.  Section 362's automatic stay "protects only the debtor, property of the debtor or property of the estate. It does not protect non-debtor parties or their property."  *Seiko Epson Corp. v. Nu-Kote Int'l, Inc*., 190 F.3d 1360, 1364 (Fed. Cir. 1999); *see also In re Boginsky*, 658 B.R. 209, 211 (Bankr. S.D. Fla. 2024) ("It is routinely held that the automatic stay does not protect those who may be liable with the debtor, such as co-defendants or guarantors of the debtor's obligations.").  Class Plaintiffs are entitled to bring each Class Claim against the non-debtor Class Defendants, as "it has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person . . . beneficiaries may then maintain an action" against the third person to recover for their injuries.  *Harris Tr. & Sav. Bank*, 530 U.S. at 250; *see also* Restatement (Second) of Trusts § 294.

***Count I*** alleges conversion against Class Defendants BFG, Govoni, Staunton and Golden,

arising from these Class Defendants' SNT-directed conduct in converting SNT assets to their own use, which caused direct injuries to Class Plaintiffs and the Class by the losses to their SNTs resulting from such conversion. *See* Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33 at ¶¶ 190–202. These "[Class] Defendants' conduct . . . caused [Beneficiaries] monetary damage, and the right to recover for that injury belongs, not to [the Debtor] or its bankrupt estate, but to [Beneficiaries]." *See Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988).

*Count II* alleges breach of fiduciary duty against Class Defendants Govoni, Staunton, Golden, and BAM, arising from these Class Defendants' breaches of their fiduciary duties owed directly to Class Plaintiffs and the Class, by transferring funds from SNT accounts to fund the purported Loan instruments and causing direct injuries to Class Plaintiffs and the Class via the losses to their SNTs resulting from such conduct. *See id.* at ¶¶ 203–18. Class Plaintiffs are not seeking "redress for their loss as creditors of the Debtor[], . . . but rather their individualized losses allegedly caused by the wrongful conduct of [Class Defendants] in mismanaging their [SNT assets]." *In re Soundview Elite Ltd.*, 565 B.R. 534, 553 (Bankr. S.D.N.Y. 2017).

Along with Chapter 11 Trustee's incorrect and conclusory contention that this is not Class Plaintiffs' or the Class's direct claim because it involves money the Debtor misappropriated to fund the purported Loan instruments, the Stay Motion contends, "Govoni, Golden, Staunton, and BFG[8] owed a fiduciary duty to the Debtor, and thus any breach of fiduciary duty claim against them . . . is property of the estate." Mot. at ¶ 20. The Stay Motion does not explain how any of these Class Defendants (which were not directors, officers, or employees of the Debtor when the misappropriating purported Loan transactions took place) owe fiduciary duties to the Debtor to

---

[8] BFG is not named as a Defendant in Count II of the Amended Class Action Complaint.

begin with, but, in any event, this Class Claim alleges breaches of fiduciary duties owed *directly* and *independently* from these Class Defendants to Class Plaintiffs and the Class. *See* Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33 at ¶¶ 207, 211, 213 ("These Defendants breached their duties of care, loyalty, and prudence, owed to Plaintiffs and Class Members by causing the transfer of over $100,000,000 from SNT accounts"); Fla. Stat. § 736.0807 (emphasis added) ("In performing a delegated function, an agent *owes a duty to the trust* to exercise reasonable care to comply with the terms of the delegation."); Fla. Stat. § 825.101(12) (one "who has been entrusted with or has assumed responsibility for the use or management of [a] . . . disabled adult's funds, assets, or property" holds a "position of trust and confidence" vis-à-vis the disabled adult).   It is thus Class Plaintiffs' direct claim.   *In re Soundview Elite*, 565 B.R. at 544.

**Count III** alleges breach of fiduciary duty against Class Defendant FTAS, arising from its breach of fiduciary duties owed directly to Class Plaintiffs and the Class, by failing to account for the $100,000,000 in funds misappropriated from their SNTs, which caused direct injuries to Class Plaintiffs and the Class by the losses to their SNTs resulting from such conduct. *See* Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33 at ¶¶ 219–33.  The Stay Motion does not discuss this Class Claim, and, as alleged, FTAS directly invoiced each of the SNTs. *See id.*, ECF No. 33 at ¶¶ 231, 338.

**Count IV** alleges breach of fiduciary duty against Class Defendant American Momentum Bank, arising from its breach of fiduciary duties owed directly to Class Plaintiffs and the Class by failing to conduct even minimal due diligence or review with respect to the SNTs in its custody and facilitating the misappropriating transfers of $100,000,000 from its SNT customers, which caused direct injuries to Class Plaintiffs and the Class via the resulting losses to their SNTs. *See*

*See id.*, ECF No. 33 at ¶¶ 234–56.

Along with its incorrect and conclusory contention that this is not Class Plaintiffs' or the Class's direct claim because it allegedly seeks damages for money the Debtor misappropriated to fund the purported Loan instruments, the Stay Motion contends that because "American Momentum Bank had no contractual relationship with the Beneficiaries, only with the Debtor," this claim is property of the bankruptcy estate.  *See* Mot. at ¶ 21.  Not so.  For one, pursuant to federal banking regulations "customer" means "a person that opens a new account" with a bank. 31 C.F.R. § 103.121(a)(3)(1)(A).  A trust is a "person."  31 CFR § 1010.100(mm).  "Account" includes "a relationship established to provide a safety deposit box or other safekeeping services, or cash management, custodian, and trust services."  31 C.F.R. § 103.121(a)(1)(i).  Therefore, the SNTs are "customers" of American Momentum Bank notwithstanding the Debtor's separate contractual agreement with the same entity.

Moreover, because American Momentum Bank acted as an agent to the SNTs' fiduciary (the Debtor) and as a custodian of SNT assets, it owed distinct fiduciary duties to the SNTs and their Beneficiaries outside its relationship with the Debtor.  *See* Fla. Stat. §§ 660.36; 825.101(12). This Class Claim, arising from American Momentum Bank's "breach of a separate legal obligation owed to the [Beneficiaries] that results in an injury particularized as to the [Beneficiaries]," is therefore a direct claim.  *In re Soundview Elite Ltd*., 565 B.R. at 544. Notably, American Momentum Bank has also opposed the Stay Motion.  (Doc. 210).

***Count V*** alleges aiding and abetting breach of fiduciary duty against Class Defendants Govoni, Staunton, Golden, and BFG, arising from their substantial assistance in the Debtor's, BAM's, and FTAS's breaches of fiduciary duty that caused and perpetuated the theft of $100,000,000 from Class Plaintiffs' and the Class's SNTs and the resulting direct injuries to those

SNTs' Beneficiaries.  *See* Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33 at ¶¶ 257–78.

Along with its incorrect and conclusory contention that this is not Class Plaintiffs' or the Class's direct claim because it involves money the Debtor misappropriated to fund the purported Loan instruments, the Stay Motion contends, "Govoni, Golden, Staunton, and BFG[9] owed a fiduciary duty to the Debtor, and thus any breach of fiduciary duty claim against them . . . is property of the estate." Mot. at ¶ 22.  The Stay Motion does not explain why any of these Class Defendants (which were not directors, officers, or employees of the Debtor when the misappropriating purported Loan transactions took place) owed a fiduciary duty to the Debtor to begin with, but in any event, this Class Claim correctly alleges these Class Defendants aided and abetted breaches of fiduciary duties owed *directly* and *independently* to Class Plaintiffs and the Class, which breaches caused their *direct* and *independent* injuries.  *See* Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33 at ¶¶ 257–78.

That this Class Claim involves, in part, these Class Defendants' aiding the Debtor's breach of fiduciary duties owed to Beneficiaries does not make it derivative of the Debtor's claims.  *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 586 (5th Cir. 2008) ("[T]o the extent that the aiding and abetting fraud claim effectively seeks to hold [non-debtor defendant] liable for giving assistance to [debtor] in publishing false reserve estimates that the bondholders relied on to their detriment, this claim too alleges a direct injury to the bondholders."); *In re Xenerga, Inc.*, 449 B.R. 594, 600 (Bankr. M.D. Fla. 2011) (claim against third parties for assisting debtor's breaches of fiduciary duties is direct claim that does not rely on debtor's "independent liability").

---

[9] BFG is not named as a Class Defendant in Count II of the Amended Class Action Complaint.

***Count VI*** alleges aiding and abetting breach of fiduciary duty against Class Defendant American Momentum Bank, arising from its substantial assistance in the Debtor's breaches of fiduciary duties owed to Beneficiaries that caused the theft of $100,000,000 from Class Plaintiffs' and the Class's SNTs and the resulting direct injuries to the SNTs' Beneficiaries. *See* Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33 at ¶¶ 279–301. That this claim involves American Momentum Bank's aiding and abetting the Debtor's breach of fiduciary duties owed to Beneficiaries does not make it derivative of the Debtor's claims. *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 586; *In re Xenerga, Inc.*, 449 B.R. 594, 600. Again, American Momentum Bank opposes the Motion. (Doc. 210).

***Count VII*** alleges negligence against Class Defendants Govoni, Staunton, Golden, arising from these Class Defendants' breaches of duties owed directly to Class Plaintiffs and Class Members and the direct and distinct injuries Class Plaintiffs and Class Members suffered from the consequential and devastating loss of over $100,000,000 from their SNTs, making it a direct claim. *See In re Soundview Elite*, 565 B.R. at 544; Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33 at ¶¶ 302–14 (emphasis added) ("These Defendants' duties of care *owed to Plaintiffs and Class Members* required them to ensure that SNT account funds were not being used or invested in transactions that constitute self-dealing or put the SNT property at risk[,] . . . account for SNT account funds with the level of diligence required to accurately inform Beneficiaries[,] . . . [and] notify Beneficiaries promptly upon discovering any fraud, conversion, or other harmful transaction related to Beneficiaries' SNTs.").

***Count VIII*** alleges negligence against Class Defendant American Momentum Bank, arising from its breaches of duties owed directly to Class Plaintiffs and Class Members and the direct and distinct injuries Class Plaintiffs and Class Members suffered from the consequential and

devastating loss of over $100,000,000 from their SNTs, making it a direct claim. *See In re Soundview Elite*, 565 B.R. at 544; Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33 at ¶¶ 315–29 (emphasis added) ("American Momentum Bank *owed Plaintiffs and Class Members the duty* to identify and understand the risks associated with SNT accounts in its custody[,] . . . . take reasonable steps to safeguard SNT funds in its custody[,] . . . [and] ensure that SNT accounts were not being used for improper purposes or to benefit persons or entities that were not entitled to such benefit."). Again, American Momentum Bank opposes the Motion. (Doc. 210).

*Count IX* alleges negligence against Class Defendant FTAS, arising from its breaches of duties owed directly to Class Plaintiffs and the Class by failing to account for the $100,000,000 in funds misappropriated from their SNTs, which caused direct injuries to Class Plaintiffs and the Class in the losses to their SNTs resulting from such conduct. *See id.* at ¶¶ 330–44 ("FTAS offered its accounting services to Plaintiffs and Class Members in connection with their SNTs and thus, assumed the duty to take reasonable steps to avoid harm to Plaintiffs and Class Members in that undertaking."). The Stay Motion does not discuss this Class Claim.

*Count X* alleges violations of the Uniform Fraudulent Transfer Act ("UFTA"), Fla. Stat. § 726.105, against Class Defendants BFG and Prospect Funding, arising from the fraudulent transfers of stolen SNT assets from BFG to Prospect Funding while BFG was indebted to the Beneficiaries for its misappropriating use of those funds, which transfer caused *direct* and *independent* injuries to the Class by hindering their ability to recover those assets. *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33, at ¶¶ 345–64 (alleging BFG fraudulently transferred at least $14,000,000 million in converted SNT funds to Prospect Funding within days of BFG receiving the stolen funds).

This Class Claim does not implicate the automatic stay for the additional reason that it arises from a "transfer that is not avoidable under section 544 and that is not avoidable under section 549"[10] of the Bankruptcy Code. *See* 11 U.S.C. § 362(b)(24). "Section 544(a), the 'strong-arm' provision of the Bankruptcy Code, . . . grants a trustee the rights of an essentially ideal lienholder against property in which the debtor does not possess complete title." *In re Gen. Coffee Corp.*, 828 F.2d at 704. The Chapter 11 Trustee cannot, however, use § 544(a) to defeat Class Plaintiffs' and Class members' rights as Beneficiaries by bringing non-debtor trust property into the bankruptcy estate. *Id.* at 704–07.

Additionally, there is legitimate concern the statute of limitations would foreclose the Chapter 11 Trustee's ability to bring this Class Claim in the bankruptcy proceedings, while no such barrier is present in the Class Action. *See* Fla. Stat. § 726.110 (2023) (claim under UFTA "is extinguished unless action is brought . . . Under § 726.105(1)(a), within 4 years after the transfer was made . . . or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant"). As the Stay Motion admits, the Debtor initially misappropriated the SNT money used to fund the purported Loan instruments and thus, undoubtedly could have discovered the subject transfer within one year of its occurrence, whereas the Beneficiaries only learned of the fraudulent transfer upon the Debtor's bankruptcy filing (shockingly almost two years after the Debtor claims its board learned of the purported loan in April 2022).

Thus, because the transfer giving rise to Count X "is not avoidable under section 544 . . .

---

[10] Section 549 allows a trustee to "avoid a transfer of property of the estate [] that occurs after commencement of the case." 11 U.S.C. §549(a). Because the transfer giving rise to Count X of the Amended Class Action Complaint occurred prior to the Debtor filing bankruptcy, § 549 does not apply.

[or] under section 549," the Debtor's bankruptcy filing "does not operate as a stay" of the Class Action's UFTA claim for this additional reason.  11 U.S.C. § 362(b)(24).

***Count XI*** alleges unjust enrichment against Class Defendant BFG, arising from the inequitable benefit BFG obtained directly from Class Plaintiffs and Class Members at their specific expense by receiving and using the funds stolen directly from Class Plaintiffs' and Class Members' SNTs, which would be inequitable for BFG to retain.  *See Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33, at ¶¶ 365–74.  The Stay Motion argues this Class Claim belongs to the bankruptcy estate but fails explain how BFG's enrichment came at the Debtor's expense when the Debtor funded the purported Loan with money it initially misappropriated from the Beneficiaries' SNTs.  Mot. at ¶ 27.  Because the Debtor did not obtain title to the SNT funds misappropriated to fund the purported Loan, it could not have conferred any direct benefit to BFG by transferring the stolen SNT funds to bring this claim into the bankruptcy estate.  *See In re Newpower*, 233 F.3d at 929; *see also In re Wiand*, No. 8:05CV1856 T27MSS, 2007 WL 963162, at *14–15 (M.D. Fla. Jan. 12, 2007) (doctrine of *in pari delicto* bars receiver from asserting unjust enrichment claim when receivership entities took part in wrongdoing).

***Count XII*** alleges unjust enrichment against Class Defendants Prospect Funding and Prospect Finance, arising from the inequitable benefit these Class Defendants obtained directly from Class Plaintiffs and Class Members at their specific expense, by receiving and using the funds stolen directly from Class Plaintiffs' and Class Members' SNTs, which would be inequitable for Prospect Funding and Prospect Finance to retain.  *See* Am. Class Action Compl., *Chamberlin v. Boston Finance Group et. al.*, No. 8:24-cv-00438 (M.D. Fla.), ECF No. 33 at ¶¶ 375–84.  Because the Debtor did not obtain title to the SNT funds it misappropriated to fund the purported Loan, it could not have conferred any direct benefit to these Class Defendants in connection with their

receipt or use of the stolen assets.  *See In re Newpower*, 233 F.3d at 929; *In re Wiand*, 2007 WL 963162, at \*14–15.

Finally, **Count XIII** seeks declaratory relief deeming Class Defendants BFG, Boston Holding Company, LLC, Prospect Funding, Prospect Finance, Prospect Funding Holdings (NY) III, LLC, Govoni, Golden, and Staunton each other's alter egos, arising from these Class Defendants' abuses of the corporate form to defraud *Beneficiaries* specifically, by concealing and profiting from the $100,000,000 misappropriation of SNT assets.  *See id.* at ¶¶ 385–408.  The Debtor argues this is not Class Plaintiffs' direct claim because the remedy sought "stem[s] from the improper transfer of funds *by the Debtor* to BFG through the Loan, which is property of the bankruptcy estate."  *See* Mot. at ¶ 29.  But as explained *supra*, the misappropriated SNT assets used to fund the purported Loan were never the Debtor's property and do not constitute property of its bankruptcy estate now.  *See Begier*, 496 U.S. at 59; *In re Gen. Coffee Corp.*, 828 F.2d at 702.

Importantly, *not one* Class Claim arises from conduct directed at the Debtor or resulting injuries to the Debtor's *general body of creditors*.  Instead, each of the foregoing Class Claims "relate solely to the funds taken by [tortfeasors] from specific customers"—the SNTs and their Beneficiaries—and thus, "clearly run in favor of the defrauded [Beneficiaries] and allege no causes of action that are unique to the estate."  *In re Meridian Asset Mgmt.*, 296 B.R. at 257.  The automatic stay is therefore inapplicable.

### E. The Bankruptcy Code Does Not Protect a Non-Existent Right to Distribute Non-Estate Property Among the Debtor's Creditors.

The Stay Motion additionally argues, "Enforcing the stay will also ensure that a primary objective of chapter 11 is accomplished," *i.e.*, for the Chapter 11 Trustee "to recover any funds misappropriated by the Debtor and others, and to distribute those funds *to the Debtor's creditors* and the Beneficiaries."  Mot. at ¶ 42.  In other words, the Chapter 11 Trustee asks the Court to

enforce the stay against non-estate claims so it can use non-Debtor property to pay the general body of the estate's creditors. The Bankruptcy Code embodies no such objective and staying the Class Action would only serve to support the defrauding Debtor's use of the bankruptcy process to cover its tracks and prevent relief to the actual fraud victims.[11]

As explained *supra*, property held by the Debtor in trust and the proceeds thereof, regardless of form, is not property of the Debtor's bankruptcy estate. *See Begier*, 496 U.S. at 59; *In re Gen. Coffee Corp.*, 828 F.2d at 702. "These limitations on the scope of the bankruptcy estate . . . prevent unsecured creditors from sharing in funds that the debtor could not have retained for its own use." *In re Montreal, Maine & Atl. Ry., Ltd.*, 888 F.3d 1, 10 (1st Cir. 2018). "By the same token, such limitations are consistent with the Supreme Court's admonition that the law 'does not authorize a trustee to distribute other people's property among a bankrupt's creditors.'" *Id.* (quoting *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135–36 (1962)); *see also In re Bake-Line Grp.*, 359 B.R. at 570 ("Since the Debtor had no legal or equitable interest in those funds [it misappropriated], they could not be estate property available for distribution to the estate's creditors.").

The Chapter 11 Trustee's position that the stay protects some right to distribute non-Debtor property to the estate's general creditors is entirely incompatible with the Bankruptcy Code's defined limitations. Indeed, "[t]o use the [Debtor] as a means of distributing monies recovered

---

[11] The Debtor's creditors allegedly include Class Defendants American Momentum Bank, BAM, BFG, and Govoni, as well as Austin Colby Co., another entity owned and controlled by Govoni— meaning that if the misappropriated SNT property is recovered to the estate, it could be distributed to *persons and entities responsible for the theft.* The Debtor allegedly has a number of non-Class Defendant creditors as well, including its bank, the Internal Revenue Service, the Debtor's chief restructuring officer, and the Debtor's pre-petition bankruptcy and other attorneys. Beneficiaries' SNT property that the Debtor misappropriated should not and cannot be used to satisfy the Debtor's personal debts to these creditors.

from [Class] Defendants would be to perpetuate the [Debtor's] role as a vehicle for the principal's fraud, possibly preventing the [Beneficiary] victims of the fraud from fully recovering their losses." *Feltman*, 122 B.R. at 474–75.  "Under these circumstances, the individual [Beneficiary] creditors rather than the Trustee should seek recovery from third parties." *Id.* at 475.

**F. The Court Should Not Use its § 105(a) Powers to Extend the Stay to the Non-Estate Class Claims against Non-Bankrupt Defendants.**

The Stay Motion ends with the Chapter 11 Trustee's fallback request for the Court to extend the automatic stay to the Class Action under 11 U.S.C. § 105(a) even if it determines § 362(a) does not apply.  *See* Mot. at ¶¶ 43, 44.  "Although the automatic stay generally does not protect non-debtors, the Court retains the power to enjoin actions against non-debtors in certain circumstances under 11 U.S.C. § 105(a)." *In re Boginsky*, 658 B.R. at 211.  Staying an action against non-debtors pursuant to § 105(a) "is an extraordinary remedy and should only be used if it is essential to assist and aid the rehabilitation process of a debtor." *In re Goldberg*, 221 B.R. 907, 909 (Bankr. M.D. Fla. 1998); *see also In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369, 379 (Bankr. E.D. Pa. 2009) (citations and quotations omitted) ("[T]he entry of an injunction restraining one set of nondebtors from proceeding against another set of nondebtors is appropriate only in unusual circumstances and should not be granted lightly.").

The Stay Motion's request under § 105(a) suffers a threshold procedural defect in that it is brought by motion rather than adversary proceeding.  *See* Fed. R. Bankr. P. 7001(7); *In re Boginsky*, 658 B.R. at 213 (citing Fed. R. Bankr. P. 7001(7)) ("If the debtor wishes this Court to exercise its power under section 105(a) to stay Respondents' proceedings supplementary, the debtor must file an adversary proceeding seeking injunctive relief."); *In re Goldberg*, 221 B.R. 907, 909 (Bankr. M.D. Fla. 1998) (declining to extend stay to action against non-debtor under § 105(a) because "the procedure to obtain injunctive relief is by commencing an adversary proceeding and not by filing

a motion."); *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993) ("[E]xtensions of the automatic stay, [are] in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate."); *In re Irwin*, 457 B.R. 413, 423 (Bankr. E.D. Pa. 2011) ("[T]he extension of the stay by injunction would require the initiation of an adversary proceeding.").  The Chapter 11 Trustee's § 105(a) request should be denied for this reason alone.

The Stay Motion's request under § 105(a) also fails on its merits.  For one, "[s]ection 105(a) may be utilized only in a manner consistent with the provisions of the Bankruptcy Code," and "'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law.'"  *In re Rosenberg*, 471 B.R. 307, 314 (Bankr. S.D. Fla. 2012) (quoting *Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir.1985)); *see also U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986).  Yet, that is what the Stay Motion asks the Court to do here—extend the automatic stay under §105(a) so the Chapter 11 Trustee can pursue causes of action to recover SNT funds that never belonged to the Debtor, in contravention of the Bankruptcy Code's limits on the scope of estate property and the Beneficiaries' substantive rights to recover their stolen SNT assets.  Bankruptcy courts' equitable powers under § 105(a) do not stretch so far.

None of the cases the Stay Motion cites for this point support using § 105(a) to extend the bankruptcy stay to *non-debtor claims* for *non-estate property* that would not be available to pay the estate's general body of creditors and which the bankruptcy trustee has no standing to bring. *See In re Madoff*, 848 F. Supp. 2d 469, 482–83 (S.D.N.Y. 2012) (extending stay to claims for injuries "suffered by all [debtor] customers" that were "duplicative of the [state court] action that the Trustee had the right to bring"); *Marshall v. Picard (In re Bernard L. Madoff Inv. Secs.)*, 740 F.3d 81, 84, 96 (2d Cir. 2014) (affirming use of §105(a) to extend stay to claims "predicated upon

secondary harms flowing from [the debtor] . . . rather than upon a particularized injury traceable to the [state court action] defendants' conduct"); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir. 1986) (affirming use of §105(a) to extend stay to non-bankruptcy claims that "affect the property of the debtor to the detriment of the debtor's creditors as a whole"); *In re Adelphia Commc'ns Corp.*, 302 B.R. 439, 450 (Bankr. S.D.N.Y. 2003) (extending stay under § 105(a) to state court actions seeking recission of debtors' insurance policies, "to avoid the destruction of the property of [the debtors], and to protect them from an impairment of their ability to reorganize"); *In re United Health Care Org.*, 210 B.R. 228, 234 (S.D.N.Y. 1997) (extending stay under § 105(a) to state court action that would "foreclose[e] a source of funding necessary to a Chapter 11 liquidation" and have "a direct and unavoidable adverse effect on the bankrupt estate").

As the Stay Motion's argument goes, the Court should enjoin the Class Action under § 105(a) to prevent "interfer[ence] with the Chapter 11 Trustee's contemplated claims against the same third parties," and "to avoid piecemeal litigation." *Id.* Neither such objective would be furthered by the Court's extending the automatic stay to the Class Action under § 105(a), making such extension unwarranted. For one, that the Class Action seeks recovery of the stolen SNT funds the Chapter 11 Trustee now claims for the bankruptcy estate does not mean it poses a threat to these bankruptcy proceedings. The misappropriated SNT funds at issue and claims thereto are not estate property and cannot be distributed to the Debtor's general creditor body, so allowing the Class Action to proceed will have no effect on the Debtor's reorganization. *See Pearlman*, 371 U.S. at 135–36.

The Stay Motion's contention that extending the bankruptcy stay under § 105(a) is warranted to "avoid piecemeal litigation" likewise misses the mark. *See* Mot. at ¶ 44. For one, it fails to recognize that Beneficiaries' claims against the Debtor are non-dischargeable. As the

32

Chapter 11 Trustee represents to the Court, the Debtor misappropriated SNT assets to make the purported Loan, thus confirming the Debtor's "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"—*i.e.*, the Debtor's misappropriation of SNT assets over which it served as trustee-fiduciary. *See* 11 U.S.C. § 523(a)(4); *Miller v. J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 602 (5th Cir.1998) (section 523(a)(4) is "intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property").

Accordingly, because Beneficiaries' claims against the Debtor will not be discharged unless they are satisfied in full under the Debtor's Chapter 11 plan, piecemeal litigation to recover the balance of those claims upon this action's end is all but a foregone conclusion—especially if Class Plaintiffs are barred from seeking compensation from jointly liable, non-debtor parties in the meantime should the Stay Motion be granted. *See In re Horton*, 595 B.R. 1, 2 (Bankr. D.D.C. 2019) (finding a "lack of any purpose under the provisions of the Bankruptcy Code to keep the automatic stay in place" when "it is apparent that eventually this case will come to an end with Wilmington Savings' right to pursue a foreclosure action unaffected by the bankruptcy case"). Indeed, allowing the Class Action to proceed simultaneously with these proceedings and claims the estate actually has a right to pursue, if any, may in fact alleviate the need for piecemeal litigation and benefit the Debtor's restructuring process (or ultimate liquidation), should Class Plaintiffs succeed in securing collateral compensation from joint tortfeasors for the Beneficiaries' injuries.

While Class Plaintiffs are sympathetic to the Chapter 11 Trustee's difficult task of ameliorating the destruction left behind the Debtor's decade-plus scheme, it cannot do so by usurping Beneficiaries' rights to their SNT property. To the extent the estate does have any claims untied to the misappropriated SNT assets, Class Plaintiffs would fully support the Chapter 11

Trustee's efforts to pursue them.  But to be sure, Beneficiaries "are not barred from pursuing their individual claims against [Class Defendants] even though the Debtor[] may also have claims against the same third part[ies]."  *In re Soundview Elite*, 565 B.R. at 553–54.

### G. If the Court Concludes the Automatic Stay Applies, it Should Grant Class Plaintiffs Relief from Stay to Seek Redress for their Injuries in the Class Action.

Even if the 11 U.S.C. § 362(a) automatic stay applied to the Class Claims, which Class Plaintiffs do not concede, § 362(d)(2) would support granting Class Plaintiffs relief from stay to prosecute the Class Action.  Section 362(d)(2) provides, "the court shall grant relief from the stay . . . with respect to a stay of an act against property under subsection (a) of this section, if . . . (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."  This provision warrants relief from stay here.

Regarding the first prong of the § 362(d)(2) analysis, the Debtor does not have equity in the Class Claims to recover stolen SNT property because, as discussed *supra*, "a party cannot obtain an ownership interest in property through theft or conversion."  *In re Bake-Line Grp.*, 359 B.R. at 570; *see also In re Newpower*, 233 F.3d at 935 ("the debtor did not obtain equitable title to these proceeds" of property it embezzled).  Instead, when trust assets are misappropriated, as were Beneficiaries' SNT assets here, "[e]quity will follow the property constituting the trust even if the same has been converted into other species of property."  *Sewell*, 30 So. 2d at 362.  Thus, the Class Claims and the assets involved are still subject to the Beneficiaries' trusts and the Debtor has no equity therein.  *In re FirstPay, Inc.*, 773 F.3d at 590.

Nor do the Class Claims involve property necessary to the Debtor's effective reorganization.  Because the stolen SNT funds, their converted form (the purported Loan instruments and BFG Note), and their proceeds remain the Beneficiaries' SNT property despite the Debtor's initial misappropriation and subsequent transfers of said funds to BFG, *Harris Tr. & Sav.*

*Bank*, 530 U.S. at 250–51, the assets are not property of the Debtor or the bankruptcy estate.  *In re Foster*, 275 F.3d 924, 926 (10th Cir. 2001) ("Property subject to a trust is not property of the bankruptcy estate.").  And because the damages sought through the Class Claims are Class Plaintiffs' and Class members' SNT property, not property of the estate, they could not be distributed among Debtor's creditors even if recovered by the Chapter 11 Trustee in bankruptcy.  *Pearlman*, 371 U.S. at 135–36.  As follows, the SNT property Class Plaintiffs seek to recover through the Class Claims is not necessary or even relevant to the Debtor's reorganization prospects because that money would not be distributed under any plan in this proceeding regardless.  To hold otherwise upon a premise that the embezzled funds the Class Action seeks to recover can be property of the estate would "permit a result clearly prohibited by the Bankruptcy Code."  *See In re Newpower*, 233 F.3d at 936 (citing 11 U.S.C. § 541(d)).

There is also no reasonable prospect of the Debtor reorganizing and continuing in business.  At the March 28, 2024, status conference, the Chapter 11 Trustee indicated a new trust company will be contracted to administer the SNTs because, as past experience shows, the Debtor simply cannot be trusted.  Logically, once a new trust company takes over the SNTs' administration the Debtor will not be able to charge those SNTs management fees to continue operating.  And given its rotten history, it is inconceivable that any new beneficiaries will entrust their SNTs to the Debtor.  Accordingly, the Debtor's chances of restructuring are nil.

Therefore, § 362(d)(2)'s second prong is met: the Class Claims involve property that is irrelevant, let alone necessary, to the Debtor's effective reorganization.  Even if the 11 U.S.C. § 362(a) automatic stay applied to the Class Action (it does not), § 362(d)(2)'s exception would warrant granting Class Plaintiffs relief from stay to pursue their Class Claims in the separate case.

## Conclusion

WHEREFORE, based on the foregoing, Class Plaintiffs respectfully request that the Court deny the Stay Motion in full.  In the alternative, should the Court determine the automatic stay applies, Class Plaintiffs request relief from stay pursuant to 11 U.S.C. § 362(d).

Dated: June 5, 2024

Respectfully submitted.

By: *s/ Caroline Herter*
David L. Ferguson FBN 981737
Jonathan M. Streisfeld FBN 117447
Caroline Herter FBN 1035444
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ferguson@kolawyers.com
streisfeld@kolawyers.com
herter@kolawyers.com

Thomas H. Leeder FBN: 746401
**LEEDER LAW**
8551 West Sunrise Blvd. | Ste. 202
Plantation, FL 33322
Telephone: (954) 734-2382
pleadings@leederlaw.com

*Attorneys for Class Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 5, 2024, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record.  Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on all parties required to be served, including (i) the Chapter 11 Trustee, (ii) the Chamberlin Class Action Defendants, and (iii) the Local Rule 1007-2 Parties in Interest List.

By: *   /s/ Caroline Herter*
CAROLINE HERTER