**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | Case No. 8:24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS | Chapter 11 |
| TRUST ADMINISTRATION, INC. | |
|        Debtor. | |
| _____/ | |

**AMERICAN MOMENTUM BANK'S**
**PRECAUTIONARY MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

American Momentum Bank ("AMB"), pursuant to 11 U.S.C. §§ 362(d) and 105(a), Federal Rules of Bankruptcy Procedure 4001 and 9014, and Local Rule of Bankruptcy Procedure 4001-1, files this precautionary motion for relief from the automatic stay to confirm it may continue prosecution of its pending motion to dismiss in the class action case styled *Chamberlin v. Boston Finance Group, LLC,* Case No. 8:24-cv-00438-SDM-AEM (M.D. Fla. Feb. 19, 2024) (the "Class Action") *solely* through a ruling on the motion to dismiss.[1] The basis for the relief is myriad. Neither the Ch. 11 Trustee nor the Debtor are parties to the Class Action. The claims subject of the motion to dismiss are not property of the Debtor's bankruptcy estate. Finally, AMB will agree that any decision by the District Court on the motion to dismiss will not be binding on the Ch. 11 Trustee nor the bankruptcy estate. In sum, the bankruptcy estate will not be prejudiced by allowing AMB's motion to dismiss to be heard.

**Background**

1.      On February 9, 2024, The Center for Special Needs Trust Administration, Inc. (the "Center" or the "Debtor") filed a voluntary Chapter 11 Petition [Dkt. 1]. That same day, the Debtor

---

[1] AMB does not seek to allow the claims to proceed more generally. AMB acknowledges that efficiency counsels in favor of having all defendants actively participating in discovery and other case-preparation activities that may follow after a resolution of the motion to dismiss. These matters can be taken up at a later date.

136384262.1

filed its Case Management Summary, articulated its reasons for filing chapter 11. *See* Dkt. 7. Specifically, the Debtor explained that its "leadership recently discovered that between 2009 and 2020 approximately $100 million of funds under The Center's control was paid out as a loan under a purported line of credit agreement" to Boston Finance Group ("BFG"), a company controlled by The Center's founder, Leo Govoni ("Govoni"). *Id.* at 2. The Debtor stated that its "most significant assets consist of litigation claims and claims for repayment of the note payable from BFG." *Id.* at 11. The Debtor also asserted "significant claims against Leo Giovani [sic], BFG, and other affiliated entities, based on breach of contract, breach of fiduciary duty, and other claims." *Id.* No claims against AMB are discussed.

2. The Ch. 11 Trustee recently filed an adversary proceeding against Govoni (8:24-ap-00139-RCT). He did not name AMB as a defendant.

### *The Class Action*

3. On February 19, 2024, beneficiary Clark Chamberlin, by and through his parents and co-guardians Todd Chamberlin and Kelli Chamberlin, filed the putative Class Action on behalf of all other similarly situated beneficiaries (the "Class"). The Class Action lawsuit asserted claims against BFG, Govoni, and various other individuals and entities that the plaintiffs described as "mere instrumentalities of their controllers." *Chamb*. Dkt. 1 (the "Original Class Action Complaint") at 5-6.[2] The Original Class Action Complaint alleged a "decade long predatory scheme . . . to misappropriate over $100,000,000.00 of special needs trust assets." *Id.* at 2.

4. Only one Defendant in the Class Action was not alleged to be a "mere instrumentality" of Govoni or his associates—AMB. *See id.* at 6.

---

[2] "*Chamb*. Dkt." refers to documents filed in the *Chamberlin* Class Action litigation.

5. AMB filed its motion to dismiss the Original Class Action Complaint on March 14, 2024. *Chamb*. Dkt. 15. In its original motion to dismiss, AMB explained that it did not owe the plaintiffs, who are *not* AMB customers, any duty, fiduciary or otherwise. *See generally id.*

6. On April 4, 2024, the Class plaintiffs filed their Amended Class Action Complaint. *Chamb*. Dkt. 33, attached hereto as Ex. A. The counts against AMB are:

   a. Count IV – Breach of Fiduciary Duty against AMB

   b. Count VI – Aiding and Abetting Breach of Fiduciary Duty against AMB

   c. Count VIII – Negligence against AMB

7. On April 17, 2024, AMB filed its motion to dismiss the Amended Class Action Complaint. *Chamb*. Dkt. 39, attached hereto as Ex. B. AMB explained in its second motion to dismiss that AMB did not owe the plaintiffs any duty and that the allegations that AMB *must have* had actual knowledge of the alleged misappropriations at issue are implausible on their face and legally inadequate to state a claim. *See generally id.*

8. The Class plaintiffs requested an extension of time to respond to AMB's second motion to dismiss. *See Chamb*. Dkt. 52. The district court ordered that the plaintiffs must respond to AMB's motion to dismiss no later than July 1, 2024, but only "[i]f the bankruptcy judge's order declines to stay the plaintiffs' claims against American Momentum Bank." *Chamb*. Dkt. 54.

## ARGUMENT

9. AMB requests that a single issue in the Class Action be allowed to proceed to resolution – AMB's second motion to dismiss. The request has no impact on the estate's assets or the Debtor directly.

10. Many reasons support the requested relief. First, the Class Action claims against AMB are predominately based on claims that AMB owed a duty to the Class members – they are not based on duties owed to the Center. Consequently, as framed, those claims are not assets of

the Debtor estate as they are direct claims that are not derivative of the debtor's rights. Second, the Class claims as pled cannot withstand scrutiny and should be dismissed. Third, neither the Debtor nor the Chapter 11 Trustee has alleged wrongdoing on the part of AMB. Fourth, AMB will stipulate that any decision as to the motion to dismiss will not be binding on the Chapter 11 Trustee, the Debtor, or the bankruptcy estate in any way.

### *THE CLASS CLAIMS ARE NOT ASSETS OF THE ESTATE.*

11. The Class plaintiffs assert claims against AMB for (1) negligence, (2) breach of fiduciary duty, and (3) aiding and abetting breach of fiduciary duty. *Chamb.* Dkt. 33 at 65-70, 74-80, and 83-86.

12. At their core, the plaintiffs allege that AMB owed a legal duty to the Class, not the Center. And as framed, the Class claims for negligence, breach of fiduciary duty, and aiding and abetting against AMB are claims that do not belong to the Center. Rather, such claims belong to the Class members and are not assets of the bankruptcy estate. The bankruptcy stay is not implicated.

### *THE CLASS CLAIMS HAVE NO MERIT.*

13. The Class claims against AMB lack legal merit and should be dismissed. Some explanation of the Center's organization makes this clear. The Center "is the trustee … of numerous special needs trusts … for over 2,000 beneficiaries who suffer from various levels of disability." Dkt. 18 at 3. "[T]rust assets are managed by different financial advisory partners, which maintain investment accounts for the various trusts." Dkt. 18 at 3. When the Center "makes a payment for the benefit of a Trust Beneficiary, cash is distributed from the applicable Trust Investment Account, deposited into the designated Trust Bank Account, and then ultimately paid out from the Trust Bank Account for the benefit of the Trust Beneficiary." *Id.* at 4. AMB is the depository institution for eight of the Center's Trust Bank Accounts. *Id.*

4

136384262.1

14. Critically, "[t]he funds that flow into and out of the trust bank accounts … typically only remain in the account for a few days." *Id.* at 2. The Center "then makes distributions for the benefit of trust beneficiaries from the trust bank accounts." *Id.* In other words, the AMB accounts were nothing more than a clearinghouse for transactions relating to the more than $200,000,000 managed by the Center. *See* Dkt. 7 at 2. AMB was the bank, *not* the trustee, *not* the custodian of investment accounts, and *not* the investment manager.

15. Nevertheless, the Class plaintiffs allege that AMB "knew BFG received $100,000,000.00 of SNT assets, yet did nothing to question or stop the misappropriating transfers." *Chamb.* Dkt. 33 at 26. Stated differently, the plaintiffs argue that AMB should have—and had a *legal duty* to—second-guess the decisions of the *actual* trustee, the *actual* investment account custodian, and the *actual* investment managers.

16. The Class plaintiffs' theory seeks to radically alter banking law. *See Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 549 (Fla. 2d DCA 2003) ("We would radically alter the law of banking if we required banks to review credit card accounts and checking accounts to make certain that their customers were spending their money wisely.").

17. The plaintiffs' claims against AMB are also improper because they were *not* AMB customers. To be sure, the plaintiffs make a conclusory allegation that "[b]ecause American Momentum Bank provides safekeeping, cash management, and custodian services to Beneficiaries' SNTs, the SNTs *and Beneficiaries* are customers of American Momentum Bank." *Chamb.* Dkt. 33 at 37 (emphasis added). This assertion is legally incorrect. A party that provides services to a trust works for the trustee, not for the beneficiary. *See First Union Nat. Bank v. Turney*, 824 So. 2d 172, 185-86 (Fla. 1st DCA 2001) ("An attorney retained to represent a trust represents the trustee, not the beneficiaries…. [T]he trustee is the client." (citation omitted).

5

18. "Florida, like other jurisdictions, recognizes that as a general matter, 'a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.'" *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) (citation omitted). In fact, a bank does not owe a fiduciary duty even to its *actual* customers. *See Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x. 820, 823 (11th Cir. 2015). Accordingly, federal district courts in Florida agree that "banks do not owe a fiduciary duty to non-customers with whom they share no relationship." *Acciard v. Whitney*, 2010 WL 6813952, at *8 (M.D. Fla. Sept. 17, 2010).

19. As a matter of Florida law, AMB did not owe *any* duties to the Class plaintiffs.

20. The Class's claim for aiding and abetting breach of fiduciary duty is likewise flawed. *Chamb.* Dkt. 33 at 74-80. "[A] cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish … knowledge of the breach by the alleged aider and abettor." *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017).

21. In support of their aiding and abetting claim, the plaintiffs claimed that "multiple red flags gave [AMB] actual knowledge that the Center and BAM were in breach of their fiduciary duties of care, loyalty, prudence, and good faith owed to the SNTs and Plaintiffs." *Chamb.* Dkt. 33 at 77.

22. But, as a matter of law, "[a]lleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014). Actual knowledge is a high bar—a bank has actual knowledge when, for example, its employees actively assisted in the misappropriation or actively misled the plaintiff. *See, e.g., Chang*, 845 F.3d at 1096-97 ("Chang's allegations support the inference that Gordon paid Padgett-Perdomo for her ongoing assistance in and cover up of his fraudulent scheme"); *Metrocity Holdings, LLC v. Bank of Am., N.A.*, 2023 WL 6064516, at *9-10

(S.D. Fla. Sept. 18, 2023). Thus, although the Class plaintiffs make a conclusory assertion that AMB had actual knowledge of alleged breaches of fiduciary duty, Plaintiffs have not made a *plausible* allegation of actual knowledge that passes muster under *Twombly* and *Iqbal*.

23. The Class claims against AMB run headlong into longstanding Florida banking and fiduciary law. For the reasons set forth in AMB's motion to dismiss, the Class's claims as pled against AMB should be, and likely are to be, dismissed as soon as they are reached by the district court.

24. Finally, irrespective of how remote the Class claims are to the Ch. 11 Trustee's assets, AMB will agree that any decision by the District Court as to the Motion to Dismiss will not have any binding effect on the Ch. 11 Trustee or the bankruptcy estate. The risk to the estate is nonexistent particularly since the Class Action is still at the pleading stage.

***NEITHER THE DEBTOR NOR CHAPTER 11 TRUSTEE ALLEGES WRONGDOING BY AMB.***

25. While the Debtor and the Chapter 11 Trustee have both asserted and made reference to claims against BFG, Govoni, and other related entities, neither the Debtor nor the Chapter 11 Trustee have alleged wrongdoing on the part of AMB. For example, the Debtor's Chapter 11 Case Management Summary did not list any claims against AMB among its assets. *See* Dkt. 7.

26. In fact, shortly after filing its Chapter 11 petition, the Debtor sought permission to keep the AMB "trust bank accounts in place to avoid disruption in its core service of making trust distributions for the benefit [of] the beneficiaries." Dkt. 18 at 2. If the Debtor's pre-petition investigation gave rise to any suggestion that AMB was complicit or otherwise at fault for the missing funds, the Debtor *never* would have sought to maintain accounts at AMB.

27. To this very day, the Center bankruptcy estate's operating account remains at AMB.

28. The Chapter 11 Trustee's investigation has confirmed and corroborated, at least to this point, precisely why AMB is unlikely to be the target of claims by the Chapter 11 Trustee:

> Indeed, the money utilized to fund the Loan appears to have been misappropriated *by the Debtor* from the Beneficiaries in order *for the Debtor* to fund the Loan to BFG.

Dkt. 195 at 3 (emphasis in original). The Trustee's investigation has confirmed that the transactions that form the basis of the Debtor's bankruptcy and the Class Action were effectuated "*by the Debtor*."

***ALLOWING AMB'S DISMISSAL WILL NOT PREJUDICE THE ESTATE, THE TRUSTEE, OR THE CREDITORS.***

29. AMB recognizes that Chapter 11 Trustee's investigation is ongoing. AMB further acknowledges that the Chapter 11 Trustee is duty-bound to maximize the value of the bankruptcy estate and to recover funds for the benefit of the Debtor's creditors and the Beneficiaries. Dismissal of the Class Action claims (claims of *non*-customers) will in no way preclude the Chapter 11 Trustee from pursuing whatever claims his investigation uncovers. Indeed, dismissal preserves estate assets as AMB holds contractual indemnity rights secured by the Debtor's cash in its operating account at AMB. Protracted litigation of the Class Action, mired in prolonged discovery with the Defendants who may actually be at fault, increases AMB's indemnity claims against the estate.

30. Finally, proceeding on this limited issue will only affect the Class as sole beneficiary to the Class Action, and will require *nothing* of the Chapter 11 Trustee, the other *Chamberlin* defendants, or any of the non-Class beneficiaries.

31. The burden on that sole beneficiary should be remarkably modest - the district court extended the time to respond to AMB's motion to dismiss only on the day the response was due, and it stands to reason that the Class plaintiffs had substantially completed their response to the motion to dismiss and were making final filing preparations at that time. . *See Chamb*. Dkt. 54.

32.  AMB has sought the Chapter 11 Trustee's consent to this Motion and did not get it.

**Relief Requested**

AMB seeks an order confirming that the automatic stay does not prohibit AMB from prosecuting its pending motion to dismiss in the Class Action or, in the alternative, granting limited relief from the automatic stay for the reasons set forth above.

Section 362 (a) provides that the filing of a bankruptcy petition operates as a stay of certain acts against "the Debtor" or "property of the estate." None of the enumerated acts under section 362(a) are implicated here as the Class claims against AMB are not assets of the bankruptcy estate and AMB's prosecution of its motion to dismiss is not an act against the Debtor nor its estate.

Alternatively, section 362(d) provides, in relevant part, that a party with an interest in property of the debtor's estate may request relief from the automatic stay for cause, including lack of adequate protection:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

The Bankruptcy Code does not define "cause." The determination of whether sufficient cause exists to grant relief from the automatic stay is made on a case-by-case basis. *In re Paxson Elec. Co.*, 242 B.R. 67, 70 (Bankr. M.D. Fla. 1999). In making that determination, the Bankruptcy Court has discretion to decide whether to lift the automatic stay. *Barclays-American/Bus. Credit, Inc., v. Radio WBHP, Inc.* (*In re Dixie Broad, Inc.*), 871 F.2d 1023, 1027 (11th Cir. 1989). For the reasons set forth above, "cause" exists to the requested relief given the tenuous connections

9

between the Class Action claims against AMB and the estate and the safeguards AMB will provide relative to the lack of any binding impact on the Ch. 11 Trustee, the estate, and the Debtor.

WHEREFORE, AMB respectfully requests entry of an order substantially in the form attached hereto as **Exhibit C** confirming that the automatic stay does not preclude AMB's prosecution solely as to its pending motion to dismiss through a ruling in the Class Action case or, alternatively, stay relief to achieve same, and granting such other relief the Court deems appropriate.

Dated:  July 11, 2024

/s/  Donald R. Kirk
Donald R. Kirk (FBN 0105767)
E-mail: dkirk@carltonfields.com
Carlton Fields, P.A.
P.O. Box 3239
Tampa, FL  33601-3239
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
*Attorney for American Momentum Bank*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on July 11, 2024 via electronic mail through the Court's CM/ECF System upon all parties represented by counsel or which have consented to service through the Court's CM/ECF System, and via U.S. Mail, postage prepaid, on parties listed on the attached matrix, unless previously served via the Court's CM/ECF System.

/s/  Donald R. Kirk
Donald R. Kirk (FBN 0105767)

136384262.1