EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CLARK CHAMBERLIN, by and through TODD and KELLI CHAMBERLIN, *on behalf of themselves and all others similarly situated,*<br><br>    Plaintiffs,<br><br>v.<br><br>BOSTON FINANCE GROUP, LLC, et al.<br><br>    Defendants. | Case No. 24-cv-00438 |

## DEFENDANT AMERICAN MOMENTUM BANK'S RULE 12(B)(6) MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant American Momentum Bank ("AMB") respectfully moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' claims against AMB for failure to state a claim. In support of its motion and pursuant to M.D. Fla. L.R. 3.01(a), AMB submits the following legal memorandum.

### INTRODUCTION AND BACKGROUND

AMB is a bank. Plaintiffs do not have any direct relationship with AMB, much less a fiduciary one. Rather, Plaintiffs allege that they are grantors and/or beneficiaries of certain "special needs trusts" ("SNTs"), of which the Center for Special Needs Trust Administration (the "Center") "serves as the trustee." Dkt. 33 at ¶¶ 39, 47-48. In turn, the Center "maintains … SNT bank accounts" at AMB. *Id.* at ¶¶ 118-19.

Plaintiffs allege that certain individuals and entities associated with the Center, in a series of transactions dating back to 2009, misappropriated $100 million from SNT

accounts that the Center maintained at AMB. *See id.* at ¶¶ 61-117. Naturally, Plaintiffs sued those parties, asserting claims such as conversion, breach of fiduciary duty, and unjust enrichment. *See id.* at pp. 57-101. Perhaps predictably, but nevertheless misguidedly, Plaintiffs also sued AMB, asserting claims for negligence, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. *Id.* at pp. 65, 74, 83.

AMB moved to dismiss Plaintiffs' claims. *See* Dkt. 15. Instead of responding, Plaintiffs amended, asserting many new allegations against AMB. *See* Dkt. 33. In the Amended Complaint, Plaintiffs go to great lengths to manufacture a fiduciary relationship between themselves and AMB and to suggest that AMB had actual knowledge of the alleged misappropriations. But the facts are unchanged; Plaintiffs' allegations against AMB are implausible and, ultimately, inadequate to state a claim.

AMB is only a bank. Parties other than AMB served as the trustee, investment manager, and custodian of investment accounts for the SNTs, all as confirmed by the Center itself. Plaintiffs' claims hang on the mistaken belief that a bank has the obligation to second-guess the relationships between the trustee, investment managers, and investment advisors. This is not the law in Florida. This is not the law *anywhere*.

Rather, under Florida law, Plaintiffs were not customers of AMB, and absent exceptional circumstances not present here, banks do not owe non-customers a duty of care, let alone a fiduciary duty—even when the non-customers are beneficiaries of trust accounts. Further, banks have no duty to investigate transactions made by authorized individuals on an account. Finally, allegations that a bank disregarded "red flags" do not establish the actual knowledge necessary for aiding and abetting liability.

Accordingly, Plaintiffs have failed to plausibly allege any viable cause of action against AMB. The Eleventh Circuit and Florida district courts regularly dismiss claims against banks in similar situations, and this Court should do likewise.

## LEGAL STANDARD

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

"When evaluating a motion to dismiss, the first step is to 'eliminate any allegations in the complaint that are merely legal conclusions.'" *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). "The second step is to assume the veracity of well-pleaded factual allegations and 'then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 934-35 (citation omitted). "[W]hen determining whether the complaint crosses 'the line between possibility and plausibility of entitlement to relief,' 'courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.'" *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (citations omitted).

3

## ARGUMENT

### I.   Plaintiffs' entire story, as it relates to AMB, is implausible.

The foundation of Plaintiffs' claims against AMB is their illusion that $100,000,000 in SNT funds were simply sitting in deposit accounts at AMB, constituting "a substantial percentage of *all assets* on deposit at [AMB]" during the bank's infancy. Dkt 33 at ¶ 153. Plaintiffs imply that with high balances came heightened responsibility on AMB's part, along with a "substantial profit." *Id.* at ¶ 152. Plaintiffs' suggestion is disingenuous, and intentionally so. In its bankruptcy filings, of which the Court can take judicial notice, the Center described its operations in considerable detail, and it tells a very different story. Moreover, unlike Plaintiffs' *allegations*, the Center's description of its operations was attested to under penalty of perjury by the Center's Chief Restructuring Officer as "true and correct, to the best of [his] knowledge and belief after diligent inquiry." Bkr. Dkt. 28 at 22.[1]

---

[1] As used herein, "Bkr. Dkt." shall mean documents filed by the Center in Case 8:24-bk-00676-RCT, *In re The Center for Special Needs Trust Administration*; in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division. The Court can properly consider publicly filed documents when ruling on AMB's motion to dismiss. *See K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1048 (11th Cir. 2019) ("[I]n ruling on a motion to dismiss courts may supplement the allegations in a complaint with facts contained in judicially noticed materials."); *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53-54 (11th Cir. 2006) (district court properly took "judicial notice" of a complaint from another case when granting motion to dismiss because the complaint was "a public document"). The Court can also consider the Center's bankruptcy filings under the incorporation-by-reference doctrine, because Plaintiffs referenced the documents in their complaint. *See* Dkt. 33 at ¶ 3 (referencing "bankruptcy filings"); *id.* at ¶ 170 (referencing Bkr. Dkt. 18); *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023) ("Under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed. Evidence is 'undisputed' in this context if its authenticity is unchallenged." (citations omitted)).

The Center "is the trustee … of numerous special needs trusts … for over 2,000 beneficiaries who suffer from various levels of disability." Bkr. Dkt. 18 at ¶ 7; *see also* Bkr. Dkt. 28 at ¶¶ 27-28, 52-57 (attesting to the truth and correctness of the Trust Cash Management Motion, Bkr. Dkt. 18). "[T]rust assets are managed by different financial advisory partners, which maintain investment accounts for the various trusts." Bkr. Dkt. 18 at ¶ 7. When the Center "makes a payment for the benefit of a Trust Beneficiary, cash is distributed from the applicable Trust Investment Account, deposited into the designated Trust Bank Account, and then ultimately paid out from the Trust Bank Account for the benefit of the Trust Beneficiary." *Id.* at ¶ 10. AMB is the depository institution for eight of the Center's Trust Bank Accounts. *Id.* at ¶ 8.

Critically for purposes of evaluating Plaintiffs' allegations, "[t]he funds that flow into and out of the trust bank accounts … typically only remain in the account for a few days." *Id.* at p. 2. The Center "then makes distributions for the benefit of trust beneficiaries from the trust bank accounts." *Id.* In other words, the AMB accounts were a sort of clearinghouse for transactions relating to the more than $200,000,000 managed by the Center. *See* Bkr. Dkt. 7 at p. 2. AMB was the bank, *not* the trustee, *not* the custodian of investment accounts, and *not* the investment manager.

Plaintiffs, of course, tell only half the story. But even that half renders their claims implausible. As Plaintiffs acknowledge, the AMB "bank accounts … receive funds from various investment accounts holding the pooled SNT investments." Dkt 33 at ¶ 118. In acknowledging that AMB received funds "*from* various investment accounts," Plaintiffs tacitly concede that AMB never *held* those investment accounts.

5

Plaintiffs do not allege, nor could they, that AMB was the custodian of any investment accounts or the investment manager. It is therefore implausible that the transitory "Trust Bank Accounts" held tens or hundreds of millions of dollars as Plaintiffs suggest. It also stands to reason that the investment managers and the corporate trustee earned the "substantial profit" to which Plaintiffs allude.

AMB's *actual* role renders the whole of Plaintiffs' theory implausible. Plaintiffs claim that AMB should have second-guessed the decisions of the *actual* trustee, the *actual* investment account custodian, and the *actual* investment managers. Plaintiffs' theory would radically alter the law of banking. *See Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 549 (Fla. 2d DCA 2003) ("We would radically alter the law of banking if we required banks to review credit card accounts and checking accounts to make certain that their customers were spending their money wisely.")

Moreover, when the Center filed for bankruptcy, it sought permission to keep the AMB "trust bank accounts in place to avoid disruption in its core service of making trust distributions for the benefit [of] the beneficiaries." Bkr. Dkt. 18 at p. 2. At that point, the Center had already "embarked on an internal investigation to ascertain all facts and circumstances surrounding the transfer of approximately $100 million from The Center." Bkr. Dkt. 7 at p. 2. After that investigation, the Center had no concern entrusting the continued administration of the Trust Bank Accounts to AMB.[2]

---

[2] Plaintiffs originally feigned indignation at the Center's request to maintain accounts at AMB. *See* Dkt. 1 at ¶¶ 111-13. Of course, the Court may, at this stage, "infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Doe*, 29 F.4th at 686 (citation omitted).

More recently, another complaint filed in this district involving the alleged misappropriation of SNT funds administered by the Center names many of the defendants in this case but raises no claims against AMB. *See* Case 8:24-cv-00874, Dkt. 2. Plaintiffs' allegations, and the implications they raise, are simply implausible.

## II.  The Court should dismiss Plaintiffs' negligence claim against AMB.

Plaintiffs assert a negligence claim against AMB. *See* Dkt. 33 at pp. 83-86. "Under Florida law, to maintain an action for negligence, a plaintiff must establish that the defendant owed a duty." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) (cleaned up). Plaintiffs do not plausibly allege that AMB owed a duty to Plaintiffs. Plaintiffs' allegation of a duty fails for at least three reasons.

### A.  AMB did not owe a duty because Plaintiffs were non-customers.

Plaintiffs cannot bring a negligence claim against AMB because Plaintiffs do not plausibly allege either that they were customers of AMB or that AMB had actual knowledge of the alleged misappropriation of Plaintiffs' funds.

First, Plaintiffs were not customers of AMB. *See* Dkt. 33 at ¶¶ 118-19 ("the Center maintains … SNT bank accounts" at AMB); *id.* at ¶ 142 (alleging that Plaintiffs' "SNTs were [AMB's] customers," not Plaintiffs themselves). To be sure, Plaintiffs make a conclusory allegation that "[b]ecause [AMB] provides safekeeping, cash management, and custodian services to Beneficiaries' SNTs, the SNTs *and Beneficiaries* are customers of [AMB]." Dkt. 33 at ¶ 145 (emphasis added)). But this assertion is legally incorrect. A party that provides services to a trust works for the *trustee*, not for the beneficiary. *See First Union Nat. Bank v. Turney*, 824 So. 2d 172, 185-86 (Fla. 1st

DCA 2001) ("An attorney retained to represent a trust represents the trustee, not the beneficiaries…. [T]he trustee is the client." (citation omitted)). As a matter of law, Plaintiffs were *not* customers of AMB.

Second, because Plaintiffs were not customers of AMB, they cannot maintain a negligence claim against AMB. "Florida, like other jurisdictions, recognizes that as a general matter, 'a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.'" *Chang*, 845 F.3d at 1094 (citation omitted). There is just one narrow exception to this rule: "a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has *actual knowledge of its customer's misappropriation*." *Id.* at 1094-95 (emphasis added). A bank only "owe[s] a duty to a noncustomer under these limited circumstances." *B-Smith Enterprises, LP v. Bank of Am., N.A.*, 2023 WL 2034419, at *3 (11th Cir. Feb. 16, 2023).

Plaintiffs have not plausibly alleged that AMB had *actual knowledge* of any alleged misappropriation. Plaintiffs' mantra is that "numerous red flags … clearly evidenced that SNT account funds were being mishandled and misappropriated by the SNTs' fiduciary" and that "[g]iven the numerous red flags …, the sole reasonable inference is that BFG's misappropriation was intended and made known to [AMB]." Dkt. 33 at ¶¶ 320-21. But "[a]lleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014). Because Plaintiffs have not

plausibly alleged that AMB had actual knowledge of the alleged misappropriation, but only that AMB disregarded "red flags," AMB did not owe Plaintiffs any duty.

The Eleventh Circuit's recent decision in *B-Smith Enterprises* is illustrative. There, the plaintiff deposited funds in a trust account that its former lawyer maintained at Bank of America, and the plaintiff sued the bank after the lawyer misappropriated those funds. 2023 WL 2034419, at *1. The district court dismissed the plaintiff's negligence claim, and the court of appeals affirmed. *Id.* The court explained that "Plaintiff's conclusory allegations that the complained-of transfers were 'nonroutine' and inconsistent with supposed 'generally accepted banking practices' … fail to support a reasonable inference that [the bank] had actual knowledge of wrongdoing." *Id.* at *2. "Like the allegations involved in *Lamm*, Plaintiff's allegations assert 'at most' only that [the bank] 'should have known' about [the lawyer's] misappropriation of funds." *Id.* Because the plaintiff "failed to allege facts from which we can infer reasonably that [the bank] actually knew about [the lawyer's] misappropriation of funds," "Plaintiff cannot demonstrate that [the bank] owed Plaintiff (a noncustomer) a duty of care." *Id.* at *3.

Here too, Plaintiffs' allegations suggest, at most, that AMB *should have known* about the alleged misappropriation based on purported "red flags." Indeed, Plaintiffs admit as much in their complaint, asserting at one point that "[AMB] knew *or should have known*, by virtue of the numerous red flags," about the alleged misappropriation. *Id.* at ¶ 323 (emphasis added). Accordingly, Plaintiffs have not plausibly alleged actual knowledge.

9

Cases in which courts have determined that a plaintiff plausibly alleged that a bank had actual knowledge of misappropriation confirm that actual knowledge is an extremely high bar. For example, in *Chang*, the Eleventh Circuit concluded that the plaintiff plausibly alleged actual knowledge because a bank employee allegedly "knew about *and assisted in* Gordon's scheme to steal the escrow money." 845 F.3d at 1096 (emphasis added). "More specifically, Chang alleged that Padgett-Perdomo labeled OPT Title's account as an escrow account even though OPT Title had failed to comply with the Bank's procedures for opening escrow accounts, falsely represented the balance in the OPT Escrow Account in the Seven-digit Letter, and secretly received $100,000 from Gordon paid to an entity she controlled." *Id.* at 1096-97. These detailed allegations of misconduct by a bank employee were sufficient to "support an inference that Padgett-Perdomo knew that Gordon was misappropriating money." *Id.* at 1097. Similarly, in *Metrocity Holdings, LLC v. Bank of Am., N.A.*, allegations "that [a bank employee] actually knew that the true average balances were significantly lower than what she was representing in her letters [to the plaintiff] and that she knew most of the money that had been deposited into the Trust Account had actually been withdrawn" were sufficient to establish actual knowledge. 2023 WL 6064516, at *10 (S.D. Fla. Sept. 18, 2023).

Here, by contrast, there is no specific allegation that AMB or any employee was actively assisting in the misappropriation of Plaintiffs' funds or actively misleading Plaintiffs in any way. Plaintiffs only allege that AMB "failed to inquire further into the use and status of SNT assets." Dkt. 33 at ¶ 324. Allegations that AMB merely "failed

10

to inquire" into red flags are a far cry from the allegations that the courts held established actual knowledge in *Chang* and *MetroCity Holdings*.

Courts regularly dismiss negligence claims brought against banks by noncustomers where, as here, the noncustomers have not plausibly alleged that the bank had actual knowledge that their funds were being misappropriated. *See, e.g.*, *B-Smith Enterprises*, 2023 WL 2034419, at 3.[3] This Court should do the same.

**B.    AMB had no duty to investigate transactions by authorized users.**

Because Plaintiffs were non-customers, AMB owed them no duty. Moreover, even to its actual customer, AMB did not have a duty to investigate transactions by authorized users. "Depository institutions generally have no duty to investigate transactions made by authorized agents of the account holder." *Insight Sec., Inc. v. Deutsche Bank Tr. Co. Americas*, 2022 WL 2313980, at *4 (11th Cir. June 28, 2022) (cleaned up). Rather, "a bank … has the right to assume that individuals who have the legal authority to handle [an] entity's accounts do not misuse the entity's funds." *O'Halloran v. First Union Nat. Bank of Florida*, 350 F.3d 1197, 1205 (11th Cir. 2003). Indeed, "a refusal on the part of the bank to permit a withdrawal by a duly authorized representative of a corporate accountholder would no doubt breach the bank's deposit agreement with that accountholder." *Id.*; *see also Freeman*, 865 So. 2d at 549 ("When

---

[3] *See also, e.g.*, *Rusty115 Corp. v. Bank of Am., N.A.*, 2023 WL 6064518, at *11-12 (S.D. Fla. Sept. 18, 2023); *London Town Plc Ltd. v. Wells Fargo Bank, N.A.*, 2021 WL 8894456, at *4-5 (S.D. Fla. Jan. 28, 2021); *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1324 (M.D. Fla. 2015), *aff'd sub nom. Wiand v. Wells Fargo Bank, N.A., Inc.*, 677 Fed. Appx. 573 (11th Cir. 2017).

one establishes a bank account, the bank is obligated to deposit legal transfers into the account and to honor checks and other usual debits against the account.").

Here, Plaintiffs' negligence claim is based on AMB's alleged failure "to inquire further into the use and status of SNT assets" and "to take reasonable steps to prevent the further dissipation of SNT assets." Dkt. 33 at ¶¶ 324-25. However, Plaintiffs do not allege that SNT assets were transferred from AMB by someone who lacked authority. *See id.* at ¶¶ 211, 214 (alleging that Defendants Govoni, Staunton, Golden, and Boston Asset Management were "the fiduciaries entrusted to handle and invest SNT assets" and "caus[ed] the transfer of over $100,000,000 from SNT accounts to one or more BFG accounts"). Accordingly, AMB had no duty to investigate the transactions that Plaintiffs are complaining of or to prevent the transfers from occurring. *See O'Halloran*, 350 F.3d at 1206 ("If indeed Payne had complete and legal authorization from Greater Ministries, as alleged by the complaint, First Union is not responsible for Payne's diverting the funds to his own purposes").

### C. Plaintiffs' attempt to rely on federal banking regulations fails.

Plaintiffs also suggest that AMB "owed Plaintiffs … a fiduciary duty to 'know its customer' and conduct reasonable due diligence with regard to the opening and use of accounts in its custody." Dkt. 33 at ¶ 319. Plaintiffs appear to be invoking the federal Bank Secrecy Act ("BSA"), which "requires banks to implement 'KYC/CIP (Know Your Customer and Customer Identification Program) policies and procedures to prevent fraudulent and otherwise criminal activity." *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *6 (N.D. Cal. Aug. 1, 2019). But courts

12

throughout the country have unanimously held that the BSA "does not create a private cause of action permitting third parties to sue for violations of the statute." *Pupke v. McCabe*, 2014 WL 12955762, at *6 (S.D. Fla. Jan. 30, 2014) (cleaned up); *see also Venture Gen. Agency*, 2019 WL 3503109, at *7 (same) (collecting cases). Rather, "[t]o the extent federal banking statutes such as the Bank Secrecy Act impose duties on banks, those duties extend to the United States, not a bank's customers." *Wiand*, 86 F. Supp. 3d at 1322. Accordingly, Plaintiffs argument that AMB owed them a duty to "know its customer" fails as a matter of law, as does Plaintiffs' entire negligence claim.

## III.     Plaintiffs' breach of fiduciary duty claim against AMB should be dismissed.

Plaintiffs also assert a breach of fiduciary duty claim against AMB. Dkt. 33 at pp. 65-70. The "existence of a fiduciary duty" is a required element of a breach of fiduciary claim. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). "A fiduciary relationship may be either express or implied." *Maxwell v. First United Bank*, 782 So. 2d 931, 933 (Fla. 4th DCA 2001). "Express fiduciary relationships are created by contract … or can be created by legal proceedings …. A fiduciary relationship which is implied in law … may be found when 'confidence is reposed by one party and a trust accepted by the other.'" *Id.* at 933-34 (citation omitted). Plaintiffs' do not plausibly allege either an express or implied fiduciary relationship between themselves and AMB.

### A.      No express fiduciary relationship existed between Plaintiffs and AMB.

No express fiduciary relationship is plausibly alleged to have existed between Plaintiffs and AMB. After all, as discussed above, Plaintiffs were not customers of AMB, and absent unusual circumstances not present here, banks do not owe even a

13

general duty of care to non-customers. *See Chang*, 845 F.3d at 1094-95. Moreover, a bank does not owe a fiduciary duty even to its *actual* customers. *See Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 Fed. Appx. 820, 823 (11th Cir. 2015). Accordingly, federal district courts in Florida agree that "banks do not owe a fiduciary duty to non-customers with whom they share no relationship." *Acciard v. Whitney*, 2010 WL 6813952, at *8 (M.D. Fla. Sept. 17, 2010).[4] Plaintiffs go to great lengths to manufacture some sort of express fiduciary relationship, but their attempts all fail.

### 1. The SNT Accounts' status as trust accounts did not impose fiduciary duties on AMB.

First, Plaintiffs allege that AMB "knew that … the accounts the Center opened at [AMB] were SNT accounts" and that "the SNT account assets were held in trust for Beneficiaries." Dkt. 33 at ¶¶ 122-23. Plaintiffs further allege that "[t]he trust funds deposited into the SNT accounts … constitute special deposits." *Id.* at ¶ 124. Plaintiffs then make the conclusory assertion that "the special deposits into SNT accounts gave rise to a trustee-beneficiary relationship between [AMB] and SNT Beneficiaries." *Id.* at ¶ 125; *see also, e.g., id.* at ¶ 241.[5]

---

[4] *See also, e.g., Rusty115 Corp.*, 2023 WL 6064518, at *6; *Pupke*, 2014 WL 12955762, at *6-7; *2002 Irrevocable Tr. For Hvizdak v. Shenzhen Dev. Bank, Co., Ltd.*, 2010 WL 11512368, at *5 (M.D. Fla. Mar. 26, 2010), *aff'd sub nom. 2002 Irrevocable Tr. For Hvizdak v. Huntington Nat. Bank*, 428 Fed. Appx. 924 (11th Cir. 2011); *In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 261-62 (Bankr. N.D. Fla. 2003).

[5] Plaintiffs also allege at one point that AMB "was expressly appointed as a 'custodial trustee' in certain SNT agreements among [AMB], the Center, SNT grantors, and SNT Beneficiaries." Dkt. 33 at ¶ 133. The Court should disregard this allegation because Plaintiffs do not allege that AMB was appointed a "custodial trustee" for any SNT accounts involving a named plaintiff. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.").

However, the Florida Supreme Court has expressly declined to hold "that the mere withdrawal of funds from a trust account ordinarily requires the bank … to question the authority of the depositor-Trustee to do so." *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968). "The custom and usage in the banking trade in this respect is so well established, and the burden that any other rule would cast upon the banking institutions is so great, that it might be said that this practice Prima facie constitutes the exercise of ordinary care." *Id.* Thus, "banks have no duty to monitor fiduciary accounts to safeguard funds from misappropriation." *Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1343 (S.D. Fla. 2014).

*In re Meridian Asset Management* is almost directly on point. After a financial services company ("Meridian") embezzled its investors' money, the investors' assignee brought a fiduciary duty claim against the bank, on the theory that "[a]s custodian of the Meridian customer accounts, [the bank] owed fiduciary duties to each Meridian customer to safeguard the assets in their retirement, pension, and investment accounts." 296 B.R. at 258. The plaintiff reasoned that "[b]ecause most of the five accounts had the language 'trust,' or 'fbo,' or 'retirement account,' the Bank was put on notice that the accounts and instruments were fiduciary accounts." *Id.* at 260.

The court rejected this argument. The court explained that "the Supreme Court of Florida has held that deposits made by those serving as fiduciaries such as trustees, executors, administrators, and agents are characterized as general deposits, and general deposits are merely arms-length transactions in which the bank owes no fiduciary responsibilities." *Id.* at 261 (citing *Martin v. Meyerheim*, 133 So. 636, 639 (Fla.

15

1931)). Moreover, *Home Federal Savings and Loan Association* made it clear that "a specially styled bank account" does not "impart[] a duty of inquiry and monitoring by a bank." *Id.* (citing 216 So. 2d at 446). Accordingly, the bank "was under no requirement to analyze, investigate, or look behind Meridian's banking transactions in a custodial capacity for the benefit of Meridian's investors…. [T]he Bank had no confidential or fiduciary relationship with the investors." *Id.* at 262-63.[6]

In short, contrary to Plaintiffs' theory, Florida law is clear that a depository bank does not owe a fiduciary duty to the beneficiaries of trust accounts that happen to be maintained at the bank, even if the bank knows that the account is a trust account.

### 2. Federal "manuals" do not impose a fiduciary duty on AMB.

Plaintiffs' complaint also contains an extended discussion of two federal guidance documents: the "BSA/AML Manual" and the Trust Examination Manual. *See* Dkt. 33 at pp. 37-44. Plaintiffs claim that "both the BSA/AML Manual and the Trust Examination Manual affirm [AMB's] ongoing duty to review SNT accounts and monitor SNT account transactions." *Id.* at ¶ 159; *see also id.* at ¶ 244 ("[AMB] owed Plaintiffs and Class Members a fiduciary duty to 'know its customer.'"). However, neither of these "manuals" imposes any duty on AMB that is relevant to this case.

As an initial matter, "agency manuals … lack the force of law." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). For this reason alone, the Court should reject

---

[6] *Pupke v. McCabe* is also illustrative. *See* 2014 WL 12955762, at *6-7 (applying *Home Federal Savings and Loan Association* and *In re Meridian* and concluding that "TD Bank has no obligation to investigate or analyze Euro, City Title, or McCabe's banking transactions for the benefit of Plaintiffs, nor did the Bank owe a duty to Plaintiffs arising out of the accounts, *despite the fact that City Title was a fiduciary for Euro or that the [sic] one of the checks was made payable to City Title's escrow account*" (emphasis added)).

16

Plaintiffs' attempt to impose fiduciary duties on AMB based on the BSA/AML Manual and the Trust Examination Manual. These non-binding guidance documents have no power to create a fiduciary relationship between AMB and Plaintiffs.

But even if they did have legal force, neither document provides support for Plaintiffs' claim that AMB owed them a fiduciary duty. The BSA/AML Manual "provides guidance on identifying and controlling risks associated with money laundering and terrorist financing," with the portion of the manual cited in Plaintiffs' Amended Complaint discussing the "money laundering risk" that "may arise from trust and asset management activities." BSA/AML Manual at 1, 282.[7] *But this case has nothing to do with money laundering or terrorist financing.* Accordingly, the BSA/AML Manual has no application to this case—nothing in the manual purports to create a fiduciary relationship between depository banks and the beneficiaries of trust accounts maintained at those banks. Indeed, the BSA/AML manual makes it clear that "the bank is not required to search the trust, escrow, or similar accounts to verify the identities of beneficiaries, but instead is only required to verify the identity of the named accountholder (the trust)." *Id.* at 281.[8]

The Trust Examination Manual is also irrelevant. This manual is directed to "[t]rust departments of FDIC-supervised institutions." Trust Examination Manual,

---

[7] *Available at* https://bsaaml.ffiec.gov/docs/manual/BSA_AML_Man_2014_v2_CDDBO.pdf.

[8] Moreover, as discussed above, the BSA "does not create a private cause of action permitting third parties to sue for violations of the statute." *Pupke*, 2014 WL 12955762, at *6 (cleaned up). Accordingly, even if the BSA/AML Manual were (1) legally binding and (2) applied to this case (neither of which is true), Plaintiffs still could not bring a fiduciary duty claim against AMB based on the BSA.

Section 1 – Management, at 3.[9] The Trust Examination Manual thus applies when the *bank* is the trustee. *See Bd. of Governors of Fed. Reserve Sys. v. Inv. Co. Inst.*, 450 U.S. 46, 55 (1981) (describing function of bank trust departments). However, in this case the *Center* is the trustee, not AMB. *See* Dkt. 33 at ¶ 70. Indeed, Plaintiffs do not (and could not truthfully) allege that AMB even has a trust department.[10] The Trust Examination Manual simply does not apply either to AMB or to this case.

### 3. Florida statutes do not create a fiduciary relationship between AMB and Plaintiffs.

Plaintiffs also cite various Florida statutes in their attempt to impose a fiduciary duty on AMB. However, Plaintiffs do not raise a claim under any of these statutes. Accordingly, the Court should disregard them. Whether AMB happens to meet a definition of "fiduciary" contained in some inapplicable statute does not affect whether AMB and Plaintiffs have a fiduciary relationship for purposes of Plaintiffs' common law breach of fiduciary duty claim.

But even if the Court were to consider these statutes, none of them imposes a fiduciary duty on AMB. First, Plaintiffs suggest that § 658.12(8), Florida Statutes creates a fiduciary relationship any time a party has "custody" over "property." *See* Dkt. 33 at ¶ 162. This argument proves too much. A bank generally does not owe a

---

[9] *Available at* https://www.fdic.gov/regulations/examinations/trustmanual/section-01/section-01.pdf.

[10] This, of course, explains why AMB reported to the FDIC that it had no fiduciary accounts. *See* Dkt. 33 at ¶ 172. The document that Plaintiffs are referencing in their complaint accurately states that AMB does not have any "fiduciary powers" or carry out any "fiduciary or related activity." *See* https://cdr.ffiec.gov/Public/ViewFacsimileDirect.aspx?ds=call&idType=fdiccert&id=58309&date=12312023, at 53. AMB simply does not provide trust services.

18

fiduciary duty to its customers, even though it has custody over their funds. *See Arbitrajes Financieros*, 605 Fed. Appx. at 823. Section 658.12(8) does not change this rule. Rather, under the statute, a "custodian" qualifies as a "[f]iduciary" only if the custodian is a "personal representative" who holds a "position of trust." § 658.12(8), Fla. Stat.; *see also United States v. Dawson*, 64 F.4th 1227, 1237 (11th Cir. 2023) ("*Noscitur a sociis* counsels that a word is given more precise content by the neighboring words with which it is associated." (cleaned up)). Section 658.12(8) does not purport to transform every bank that holds another's property into a fiduciary.[11]

Plaintiffs next cite § 825.101(12), Florida Statutes, which applies to "disabled adult[s]," and argue that "to the extent that individual or pooled SNT Beneficiaries were or are adults, [AMB] owed additional implied fiduciary duties to those Beneficiaries" because AMB was "entrusted with" the management of their funds. Dkt. 33 at ¶ 163. But because Plaintiffs do not allege that any named plaintiffs are disabled adults, Plaintiffs cannot rely on this statute to save their fiduciary duty claim. *See Prado*, 221 F.3d at 1280. Regardless, Section 825.101 would not apply here because it was *the Center*, not AMB, that was entrusted with managing SNT funds—AMB is just the bank where certain accounts were maintained. *See id.* at ¶¶ 47, 70, 118-19.[12]

---

[11] Additionally, even under Plaintiffs' reading of the statute, AMB would only owe a fiduciary duty to *the SNTs*, not to Plaintiffs themselves. *See* Dkt. 33 at ¶ 162.

[12] Further, Section 825.101 specifically distinguishes between a party who "has been entrusted with or has assumed responsibility for the use or management of the … disabled adult's funds" and a party who "[h]as a legal or fiduciary relationship with the … disabled adult." § 825.101(12)(c), (e), Fla. Stat. Accordingly, even if AMB had been entrusted with managing SNT funds for purposes of Section 825.101, AMB still would not be a fiduciary under the statute.

Finally, Plaintiffs cite §§ 660.36 and 736.0807, Florida Statutes, for the proposition that AMB "acted as the Center's agent and thus, assumed fiduciary duties with regards to SNT assets in its custody and the Plaintiffs and Class Members who owned them." Dkt. 33 at ¶¶ 166-68; *see also id.* at ¶ 242 (same). But Section 660.36 only applies when a "trust company or trust department acting in a fiduciary capacity … employ[s] any other trust company or trust department as an agent." § 660.36, Fla. Stat. Because AMB is not a trust company[13] and, as discussed above, Plaintiffs do not (and cannot truthfully) allege that AMB has a trust department, Section 660.36 is irrelevant. Moreover, Section 736.0807 provides only that "an agent owes a duty *to the trust* to exercise reasonable care to comply with the terms of the delegation." § 736.0807(2), Fla. Stat. (emphasis added). Section 736.0807 therefore cannot create any duties owed *to Plaintiffs*, who of course are not "the trust." Additionally, there is no allegation that AMB failed to comply with the terms of any delegation—rather, Plaintiffs allege that AMB followed the instructions of the principals, *see id.* at ¶¶ 211, 214, exactly as an agent is supposed to do. For all these reasons, Plaintiffs' agency theory fails, along with Plaintiffs' other statutory theories.

## B.     Plaintiffs and AMB did not have an implied fiduciary relationship.

Plaintiffs also do not plausibly allege that an implied fiduciary relationship existed between themselves and AMB. Plaintiffs claim to have "reposed trust in [AMB] to exercise its superior expertise in serving as custodian of SNT accounts" and

---

[13] *See* § 658.12(22), Fla. Stat. ("'Trust company' means any business organization, *other than a bank* …." (emphasis added)).

that AMB "accepted this delegation of trust and authority from Plaintiffs and Class Members by undertaking to provide custodial, administrative, and ministerial services to their SNTs." Dkt. 33 at ¶¶ 237, 239. But these allegations are exactly the sort of "formulaic recitation" wholly lacking in "further factual enhancement" that *Twombly* and *Iqbal* deem insufficient. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Accordingly, the Court should disregard them.

In particular, Plaintiffs allege no facts showing that AMB *accepted* any trust that Plaintiffs supposedly reposed in AMB. Plaintiffs' assertion that AMB accepted their trust appears to assume that accepting custody of trust accounts automatically creates a fiduciary relationship between a bank and the beneficiaries of the trust. However, as explained above, that assumption is false. Accordingly, Plaintiffs' argument that an implied fiduciary relationship existed between themselves and AMB fails. *See Arbitrajes Financieros*, 605 Fed. Appx. at 824 (no fiduciary relationship existed because although "appellants allege that they placed their trust in [the bank], they point to no facts that show [the bank], in turn, accepted appellants' confidence and trust").

The recent *Rusty115 Corp.* decision confirms that Plaintiffs and AMB do not have a fiduciary relationship. There, the plaintiffs loaned millions of dollars to an entity called "Wright Bros.," which deposited the money into an account at Bank of America before misappropriating the funds as part of a Ponzi scheme. 2023 WL 6064518, at *1. After the Ponzi scheme victims sued the bank for constructive fraud (which requires a fiduciary relationship), the court explained that "[u]nder Florida law, banks ordinarily do not owe a fiduciary duty to their own customers, and so it

follows that a bank would also not owe a fiduciary duty to a third-party who chooses to deposit money into a customer's account." *Id.* at \*6. Further, "[w]hile the Complaint alleges a plausible fiduciary relationship between Plaintiffs and Wright Bros., it does not adequately allege how that relationship extends to [the bank] so as to impose upon it a fiduciary duty owed to Plaintiffs." *Id.* After all, "a fiduciary relationship requires the acceptance of trust by the fiduciary and here, there are no facts alleged to show that [the bank] accepted that responsibility." *Id.*

Here too, Plaintiffs were not customers of AMB, and AMB never accepted any trust that Plaintiffs supposedly reposed in AMB. This Court should reject Plaintiffs' breach of fiduciary duty claim for the exact same reasons as the court in *Rusty115 Corp.*

## IV. The Court should dismiss Plaintiffs' aiding and abetting claim against AMB.

Finally, Plaintiffs raise an aiding and abetting breach of fiduciary duty claim against AMB. Dkt. 33 at pp. 74-80. "A cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish … knowledge of the breach by the alleged aider and abettor." *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017). Plaintiffs do not plausibly allege that AMB had actual knowledge of any breach of a fiduciary duty owed to Plaintiffs.

According to Plaintiffs, "multiple red flags gave [AMB] actual knowledge that the Center and BAM were in breach of their fiduciary duties of care, loyalty, prudence, and good faith owed to the SNTs and Plaintiffs." Dkt. 33 at ¶ 293. Plaintiffs insist that based on these "red flags, and likely numerous others that will be revealed in discovery, [AMB] had actual knowledge that the funds in the SNT accounts in its custody were

being misappropriated and the Center and BAM were in breach of their fiduciary duties to owed to Plaintiffs and Class Members." *Id.* at ¶ 295.

However, as discussed in the negligence section, "[a]lleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm*, 749 F.3d at 950. Actual knowledge is a high bar—a bank has actual knowledge when, for example, its employees allegedly actively assisted in the misappropriation or actively misled the plaintiff. *See, e.g.*, *Chang*, 845 F.3d at 1096-97; *Metrocity Holdings*, 2023 WL 6064516, at *9-10. Thus, although Plaintiffs make a conclusory assertion that AMB had actual knowledge of alleged breaches of fiduciary duty, Plaintiffs have not *plausibly* alleged actual knowledge.

Again, *B-Smith Enterprises* is illustrative. As previously discussed, in that case the plaintiff sued Bank of America after his lawyer misappropriated funds deposited in a trust account maintained by the lawyer. 2023 WL 2034419, at *1. The Eleventh Circuit affirmed the dismissal of the plaintiff's aiding and abetting breach of fiduciary duty claim "for about the same reason" as its negligence claim—"Plaintiff's conclusory allegations that the complained-of transfers were 'nonroutine' and inconsistent with supposed 'generally accepted banking practices' … fail to support a reasonable inference that [the bank] had actual knowledge of wrongdoing." *Id.* at *2-3. "Plaintiff's allegations assert 'at most' only that [the bank] 'should have known' about [the lawyer's] … breach of fiduciary duty." *Id.* (quoting *Lamm*, 749 F.3d at 950). Here too, Plaintiffs allegations suggest, at most, only that AMB *should have known* about alleged breaches of fiduciary duty.

In an attempt to get around the rule that mere awareness of "red flags" does not constitute actual knowledge of a breach of fiduciary duty, Plaintiffs make the conclusory allegation that "[t]hese numerous red flags … were not mere indications of the Center's and BAM's breaches of their fiduciary duties owed to Plaintiffs and Class Members; rather, each fact constitutes a breach of fiduciary duty in and of itself." Dkt. 33 at ¶ 294. This allegation is nothing more than an unsubstantiated legal conclusion that the Court should disregard. *See Newbauer*, 26 F.4th at 934. None of the "red flags" that AMB was allegedly aware of rises to the level of a per se breach of fiduciary duty.

Specifically, Plaintiffs allege that AMB was aware that the Center was commingling SNT funds with its own; that transactions between related entities occurred; and that SNT accounts experienced overdrafts and a lack of returns. *See* Dkt. 33 at ¶ 293. But knowledge of such circumstances is not actual knowledge of a breach of fiduciary duty—at most, it is knowledge that a breach of fiduciary duty might be occurring. *See, e.g.*, *B-Smith Enterprises*, 2023 WL 2034419, at *2 ("That Sherman transferred funds from the Trust Account into the firm's Operating Account and into his Personal Account – by itself – demonstrates no *per se* wrongdoing.").[14]

---

[14] *See also Lamm*, 749 F.3d at 950 ("[T]he specific facts alleged—that State Street accepted worthless securities, some of which were not signed by the obligor, not payable to Mr. Lamm, or in default—at most show that State Street 'should have known' of Taurus' fraud and breach of fiduciary duty."); *Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 993 (11th Cir. 2014) (allegations of knowledge of the "opening of various accounts" and "numerous transfers amongst the accounts within short time periods" "fall short of raising a plausible inference that Wells Fargo actually knew that Theodule was engaging in fraudulent activity"); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1248 (M.D. Fla. 2013) ("Commingling of funds, even where the bank knows that the customer holds the funds in a fiduciary or trust capacity, is not necessarily prohibited and is insufficient to allege knowledge of an underlying fraud. Transfers to d/b/a accounts, even if fraudulently created, also do not confer knowledge of an underlying fraud." (citation omitted)).

The Eleventh Circuit frequently affirms the dismissal of aiding and abetting claims against banks when the plaintiff has not plausibly alleged that the bank had actual knowledge that the plaintiff's funds were being misappropriated. *See id.*; *see also, e.g.*, *Lamm*, 749 F.3d at 950; *Perlman*, 559 Fed. Appx. at 993-94; *Arbitrajes Financieros*, 605 Fed. Appx. at 824-25; *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 906-07 (11th Cir. 2012). This Court should likewise dismiss Plaintiff's aiding and abetting breach of fiduciary duty claim against AMB.

## CONCLUSION

All Plaintiffs have plausibly alleged is that AMB did exactly what it was supposed to do: deposit legal transfers into accounts and honor checks and other usual debits against accounts. Plaintiffs' claims against those who allegedly misappropriated funds will go forward. But Plaintiffs' claims against AMB rest on formulaic recitations of legal standards and misstatements of Florida and federal law. Plaintiffs have failed to plead any claim against AMB upon which relief can be granted, and their Amended Class Action Complaint should be dismissed as to AMB.

Dated: April 17, 2024

Respectfully submitted,

**BECK REDDEN LLP**

By: _/s/ Marcos Rosales_
     Marcos Rosales
     TX Bar No. 24074979
     (Special Admission)
     mrosales@beckredden.com
     1221 McKinney, Suite 4500
     Houston, TX 77010-2010
     Tel: (713) 951-3700

**LEAD COUNSEL FOR
DEFENDANT AMERICAN
MOMENTUM BANK**

**COUNSEL FOR DEFENDANT
AMERICAN MOMENTUM BANK:**

BECK REDDEN LLP
Cassandra R. Maneen
TX Bar No. 24120989
(Special Admission)
cmaneen@beckredden.com
Bennett J. Ostdiek
TX Bar No. 24122056
(Special Admission)
bostdiek@beckredden.com
1221 McKinney Street, Suite 4500
Houston, TX 77010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

CARLTON FIELDS, PA
Donald R. Kirk
FL Bar No. 105767
dkirk@carltonfields.com
4221 W Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
Telephone: (813) 229-4334
Facsimile: (813) 229-4133

Charles W. Throckmorton
FL Bar No. 101203
cthrockmorton@carltonfields.com
700 NW 1st Avenue, Suite 1200
Miami, FL 33136
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 16, 2024, I conferred with counsel for Plaintiffs via e-mail regarding the relief requested in this motion. Plaintiffs are opposed to the relief requested herein.

*/s/ Marcos Rosales*
MARCOS ROSALES

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to the provisions of Federal Rule of Civil Procedure 5, a true and correct copy of the foregoing document has been served on all counsel of record on April 17, 2024 via CM/ECF.

*/s/ Marcos Rosales*
MARCOS ROSALES