**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,

    Debtor.
_____/

Case No. 8:24-bk-00676-RCT

Chapter 11

**CLASS PLAINTIFFS' RESPONSE TO (I) CHAPTER 11 TRUSTEE'S REPLY IN SUPPORT OF MOTION TO ENFORCE AUTOMATIC STAY (DOC. 290), AND (II) OFFICIAL COMMITTEE OF UNSECURED CREDITOR'S MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE AUTOMATIC STAY (DOC. 297)**

Class Plaintiffs[1] establish further herein that the Class Claims are not estate property and thus, do not violate the automatic stay. The Chapter 11 Trustee still fails to prove the Class Claims, for breaches of non-debtors' duties to Class Plaintiffs and Class Plaintiffs' resulting injuries, belong to the estate. Fundamentally, the Debtor has no equitable interest in the Class Claims arising from direct harm to non-estate property, making the automatic stay inapplicable. Neither the Chapter 11 Trustee nor the Unsecured Creditors' Committee ("UCC") has shown otherwise.

Amounts recovered on the Class Action's non-estate claims must go only to the Beneficiaries that were injured, not the Debtor's other creditors. The Class Action will accomplish that by vindicating Beneficiaries' interests through claims against non-debtors jointly responsible for their SNT losses. Class Plaintiffs' litigation against non-debtors is permitted.

I. **The Class Claims do not implicate estate property or the automatic stay.**

The Class Action alleges 13 causes of action against 11 non-debtor Class Defendants for damages to Beneficiaries' SNTs. Ignoring crucial facts, the Chapter 11 Trustee and the UCC rely on inapplicable caselaw, unsupported assumptions, and irrelevant post-hoc rationalizations to generalize inaccurately that all Class Claims "attempt to recover the loan proceeds" and thus violate the stay. Reply at 7, 11; UCC Mem at ¶7. The Class Claims irrefutably involve no equitable interest of the Debtor and are thus excluded from its estate and 11 U.S.C. § 362's reach.

A. **The Class Claims will vindicate Class Plaintiffs' direct injuries.**

The Class Claims are direct claims for Class Plaintiffs' distinct injuries and as such, excluded from the Debtor's estate. *See Matter of Buccaneer Res.*, 912 F.3d 291, 293 (5th Cir. 2019). Derivative claims involve "harm to the creditor [that] comes about only because of harm to the debtor," whereas "direct injury claims that belong to a particular creditor or group of creditors

---

[1] Class Plaintiffs incorporate the capitalized terms in their Response to the Stay Motion (Doc. 252) ("Response").

1

. . . [are] not dependent on injury to the estate." *Id.* at 293–94 (citation omitted). "Viewed another way, there is no reason why the estate should recover for a third party's tortious conduct that did not injure the bankrupt company." *Id.* Here, no Class Claim depends on injury to the Debtor or its estate; all seek damages for direct harm to Beneficiaries' SNTs. *See* Resp. at 19–28.

The unelaborated contention that Class Plaintiffs "did not suffer any particularized harm, because *all* of the trust beneficiaries, and the Debtor's creditors, suffered when the Debtor lost the commingled money in its control," Reply at 8–9, ignores that the Class Claims have nothing to do with the *Debtor*'s losses. Indeed, because trust property is excluded from the estate, *Begier v. IRS*, 496 U.S. 53, 59 (1990), the SNT assets would not be available to pay the Debtor's non-Beneficiary creditors even if the misappropriation never happened. *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135–36 (1962) ("The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors."). So, harm to SNTs giving rise to the Class Claims could not have derivatively injured the Debtor's entire creditor body.

*In re Seven Seas Petroleum* and *Matter of Buccaneer Resources*, on which the Chapter 11 Trustee relies, only support Class Plaintiffs. In *In re Seven Seas Petroleum*, claims against non-debtors that aided and abetted the debtor's fraud against the plaintiffs were deemed direct, non-estate claims because the court "fail[ed] to see what direct injury [the debtor] might have suffered on account of the specific wrongdoing" at issue. 522 F.3d 575, 586–87 (5th Cir. 2008). And in *Matter of Buccaneer Resources*, claims alleging a non-debtor defendant caused the debtor to improperly terminate the plaintiff's employment were deemed direct, non-estate claims because they "did not depend on [the debtor] suffering any injury." 912 F.3d at 295. Likewise here, the Class Claims do not depend on injury to the Debtor that participated in the wrongdoing; they rely on direct harm to SNT property in which the Debtor has no equitable interest.

*In re Lothian Oil, Inc.* and *In re Madoff* are factually inapposite because they involved claims flowing from injuries to the debtor, which harmed all investor-creditors equally and were thus deemed derivative. *See In re Lothian Oil, Inc.*, 531 F. App'x 428, 440–41 (5th Cir. 2013) (claims arising from transfers of *the debtor's* property and breaches of duties owed to the debtor); *In re Madoff*, 848 F. Supp. 2d 469, 481 (S.D.N.Y. 2012) (claims for injuries "suffered by every BLMIS customer, whether a SIPA payee or not, in the same way and for the same reason").

**B. Commingling of SNT Funds is irrelevant to the Class Claims.**

The Chapter 11 Trustee argues it will be difficult to trace SNT funds the Debtor commingled so everything should be deemed estate property. Reply at 9–10. But tracing comes into play on a constructive trust claim, which the Class Action does not allege. *See Arduin v. McGeorge*, 595 So. 2d 203, 204 (Fla. 4th DCA 1992) ("Where money is the asset upon which it is proposed that a constructive trust be imposed, it is necessary that a specific amount be identified . . . by tracing it"). The Class Claims are not to recover the specific funds taken from SNTs or impose a constructive trust over commingled money, so traceability is irrelevant to the stay's applicability.[2]

Unlike the Class Claims for damages against non-debtors, the Chapter 11 Trustee's cases all required tracing funds commingled with the *debtor's*, to determine whether *commingled funds* are estate property. *See Matter of Felton's Foodway*, 49 B.R. 106, 109 (Bankr. M.D. Fla. 1985); *In re Cath. Diocese of Wilmington*, 432 B.R. 135, 161 (Bankr. D. Del. 2010); *In re Goldberg*, 158 B.R. 188, 194 (Bankr. E.D. Cal. 1993). Thus, they are irrelevant to the Class Claims at issue.

**C. The Declaration of Trust does not nullify Beneficiaries' interest in SNT property.**

"[B]ecause the debtor does not own an equitable interest in property he holds in trust for

---

[2] Even were tracing material to the Stay Motion, the misappropriated SNT assets *can* be traced—to the purported Loan instruments. *In re Mazon*, 387 B.R. 641, 646 (M.D. Fla. 2008) (tracing established by showing funds "were used in connection with the [property]," based on debtor's admission it "used converted funds to buy the [property]").

3

another, that interest is not property of the estate." Resp. at 8–9 (quoting *Begier*, 496 U.S. at 59). Rather than refuting this legal principle, the Chapter 11 Trustee now incorrectly claims the "Beneficiaries Have No Claim on Trust Assets" heading[3] in the Reformed Declaration of Trust ("Pooled Trust")[4] means "the Debtor is the only one who has an interest in these [SNT] funds (because the beneficiaries do not)." Reply at 5 and Ex. A. Yet the Pooled Trust's plain language confirms Beneficiaries' interest in their own trusts: it explicitly states the Pooled Trust is established "*for the sole benefit of the Beneficiaries* hereunder." *Id*. at § 1.1 (emphasis added); *see also id*. at § 8.1 ("[T]he Trustee shall not exercise any power in a manner that is inconsistent with a Beneficiary's right to the beneficial enjoyment of Trust property").

The Chapter 11 Trustee's cases do not support his argument either. *E.F. Hutton & Co. v. Hadley* does not hinge on the debtor's lack of possession of the subject property. 901 F.2d 979, 986–87 (11th Cir. 1990). Rather, because the bankruptcy trustee was "asserting claims of a specific group of [debtor] GIC customer creditors . . . these causes of action and any potential recovery belong to the GIC customer creditors and not to the bankrupt GIC." *Id.* In other words, like here, the trustee lacked standing to sue for a specific group of creditors' injuries. *In re Tri-State Financial* is equally unhelpful. It involved investors' sweeping release of the debtor for all liability "arising out of or related to claims that [it] breached any implied agreement or breached any duty." 526 B.R. 311, 331 (Bankr. D. Neb. 2015). There is no such broad release in the exhibited Pooled Trust.

**D. The Chapter 11 Trustee lacks standing to bring the Class Claims on SNTs' behalf.**

The Chapter 11 Trustee's argument that Florida trust law allows the Debtor to sue *on behalf*

---

[3] "Section headings are for purposes of convenience only and shall have no bearing on the interpretation of any provision of this Declaration of Trust." See Reply Ex. A at § 9.7.
[4] Notably, assets were misappropriated from both pooled and individual SNTs, the latter of which the Chapter 11 Trustee disregards. Reply at 2. In fact, Class Plaintiff Clark Chamberlin's SNT is an *individual* trust. *See* Am. Compl., No. 8:24-cv-438 (M.D. Fla. Apr. 18, 2024), ECF No. 46 ("CAC"), at ¶ 176.

4

*of SNTs* does not give it standing to bring the Class Claims or mean the automatic stay applies. Even if pre-petition, the Debtor may have had a legal right to sue on SNTs' behalf, in bankruptcy that right is excluded from its estate. 11 U.S.C. § 541(b)(1) ("Property of the estate does not include . . . any power that the debtor may exercise solely for the benefit of an entity other than the debtor").

Indeed, this exact situation occurred in *In re Cannon*, cited in Class Plaintiffs' Response and ignored by the Chapter 11 Trustee. Like Debtor here, pre-petition the debtor Cannon served as trustee and misappropriated trust property under his care, transferring it to co-conspirators. 277 F.3d 838, 853–54 (6th Cir. 2002). The Sixth Circuit correctly recognized that "Cannon, *had he not filed for bankruptcy*, could have brought [beneficiaries' claims against non-debtors]," but found "the presence of the express trust in this case complicates matters." *Id.* (emphasis added). Because "any action brought by the trustee against Defendants . . . would recover misappropriated trust property for Cannon's clients, the beneficiaries of the express trust who lost their money upon the collapse of his schemes," the Bankruptcy Code's exclusion of trust property from the estate precluded the trustee's standing to bring those claims. *Id*. Applying *In re Cannon*, as this Court should, the Chapter 11 Trustee's standing to sue on SNTs' behalf is eliminated.

**E. The Class Claims do not impact the estate's property or administration.**

The Chapter 11 Trustee unconvincingly and without explanation argues the Class Action will lead to unspecified costs, confusion, or potential prejudice to the estate's administration. Reply at 10. The UCC, without legal support, similarly argues the Class Action violates the automatic stay because the Debtor participated with Class Defendants in the tortious conduct, inaccurately complaining the Class Claims are "indirectly" against the Debtor. UCC Mem. at ¶¶ 10, 16.

In fact, the Class Action focuses on non-debtors' joint liability for harm to SNTs. Fundamentally, the stay does not apply to the Class Claims against those who participated in the

5

Debtor's wrongdoing, even if the claims identify the Debtor's bad acts too, making it wholly proper for the Class Action to allege facts about the Debtor's conduct. *See, e.g. Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2083–84 (2024) (opioid victims' tort claims against individuals that owned and controlled debtor Purdue "neither belong to Purdue nor are they asserted against Purdue or its estate," despite that "Purdue's conduct is a legally relevant factor"); *In re Xenerga, Inc.*, 449 B.R. 594, 600–01 (Bankr. M.D. Fla. 2011) (stay inapplicable to claims alleging non-debtors "are liable in their capacity as individuals for conspiring with [debtors]"); *Williford v. Armstrong World Indus.*, 715 F.2d 124, 126 (4th Cir. 1983) (refusing to read § 362 as a "broad remedial provision[] designed to stop random prosecution of claims involving interests of the debtor and place them in the bankruptcy court," and holding claims against non-debtor joint tortfeasors not subject to stay).

II. **The Class Action gives Beneficiaries a meaningful voice and avenue to recover for their direct injuries, without harming the Debtor's estate.**

Finally, the Chapter 11 Trustee without specificity alleges the Class Action may harm other creditors and Beneficiaries, wrongly framing the Class Claims as nefariously trying to "recover the loan proceeds." Reply at 11. He mischaracterizes the tortious acts by non-debtors alleged in each Class Claim and the nature of the damages sought.[5] Almost all SNTs were funded with proceeds of Beneficiaries' catastrophic personal injury claims who are dependent on the SNT assets for their care. Clark Chamberlin's medical malpractice experience is illustrative. He suffered a catastrophic brain injury at birth, disabling him for the rest of his life. CAC ¶¶ 173–75. A lawsuit recovered money from multiple tortfeasors, with the Debtor hired to serve as SNT trustee and fiduciary. *Id.* at ¶¶ 176–77. Class Defendants caused or failed to prevent the $100,000,000 misappropriation of SNT property in their custody and control, leaving Beneficiaries, including

---

[5] The Chapter 11 Trustee incorrectly claims "[i]n Count X, [Class Plaintiffs] want to claw back the loan as a fraudulent transfer." Reply at 11. Count X alleges *non-debtor* BFG fraudulently transferred money to *non-debtor* Prospect Funding Holdings, LLC, to defraud Class Plaintiffs as "BFG's creditors." *See* CAC ¶¶ 349, 350.

6

Clark, without the crucial money recovered from the tortfeasors sued for their personal injuries. Upon the Debtor's devastating disclosure of the SNTs' extensive losses, under Class Defendants' watch and by their torts, the Class Action was filed. Class Plaintiffs are not trying to "jump in front of other creditors who played by the rules," Reply at 11; they simply want to hold *non-debtors* who directly harmed Beneficiaries accountable, as bankruptcy law permits. No stay relief need be sought for the Class Action to be prosecuted.

The interests Class Plaintiffs seek to vindicate in the Class Action are not represented in this bankruptcy case. The Chapter 11 Trustee's duty is to marshal *the Debtor's assets* to its estate; he does not represent injured Beneficiaries for their direct claims and, indeed, has interests adverse to them to the extent he intends to distribute SNT property to non-Beneficiary creditors. Likewise, there is an inherent conflict to the extent the UCC represents competing interests and seeks to distribute damages recovered via the Class Claims in this bankruptcy to non-Beneficiary creditors (which may include Class Defendants) that were not injured by the harm to Beneficiaries' SNTs.

The Chapter 11 Trustee's unsupported contention the Class Action "must be stopped" because class counsel could recover contingent attorneys' fees and costs ignores the very real concern that damages recovered (via settlement with or judgment against non-debtors) for harm to SNTs would be used to pay the Debtor's administrative expenses and non-Beneficiary creditors. Class Plaintiffs retained experienced class action counsel to pursue relief against *non-debtors* for their disabled son Clark and other similarly situated Beneficiaries after the Debtor's shocking and untimely revelation that their SNT property was gone. Class Defendants preyed on the most vulnerable in our society, who cannot readily afford to pay hourly attorneys' fees to recover their losses. Federal Rule of Civil Procedure 23(h) obligates the court overseeing the Class Action to ensure that any attorneys' fee award is fair and reasonable, through a specific and thorough process

requiring notice and an opportunity to object for all class members.[6]

The Chapter 11 Trustee claims he wants to "marshal[] assets and distribut[e] them fairly, to creditors and beneficiaries alike." Reply at 10.[7] But distributing non-estate, trust property to the Debtor's non-Beneficiary creditors is not fair, equitable, or permitted by the Bankruptcy Code. Indeed, to use the bankruptcy process "as a means of distributing monies recovered from [Class] Defendants would be to perpetuate the [Debtor's] role as a vehicle for . . . fraud, possibly preventing the victims of the fraud from fully recovering their losses." *Feltman v. Prudential Bache Sec.*, 122 B.R. 466, 475 (S.D. Fla. 1990). "Under these circumstances, the individual creditors rather than the Trustee should seek recovery from third parties." *Id.*

### III.    UCC's Request for Judicial Settlement Conference

The UCC's requested judicial settlement conference may prove useful. UCC Mem. ¶ 28. However, at this time Class Plaintiffs' counsel have not been appointed to represent the putative class with authority to agree to any settlement binding class members. A motion to appoint interim class counsel under Federal Rule of Civil Procedure 23(g) is filed, but the Stay Motion leaves it pending. *See* Mot. to Appoint Co-Lead Counsel, No. 8:24-cv-438 (M.D. Fla. April 19, 2024), ECF No. 47 at 20 (requesting authority to "initiate and coordinate settlement discussions" and "coordinate efforts with the Chapter 11 Trustee"). Denying the Stay Motion so the Class Action can proceed would permit the district court, within its discretion, to grant that motion.

### IV.    Conclusion

Based on the foregoing, Class Plaintiffs respectfully request the Stay Motion be denied.

---

[6] The UCC hypothesizes issues it claims may pose difficulties in certifying the Class Action. UCC Mem. at ¶¶ 21–22. Class certification elements are irrelevant to whether the Class Claims violate the automatic stay.

[7] The Chapter 11 Trustee argues he is "well on his way to holding the borrower and guarantor responsible for the loan." *Id.* at 11. BFG and Govoni were recently *enjoined* from transferring assets and, thus, cannot pay the estate anything at this time. *See* Temp. Inj., *OAG v. Dir. Benefits Found.*, No. 24-2321-CI (Pinellas Cir. Ct. May 9, 2024).

Dated: July 17, 2024.                              Respectfully submitted.

By: *s/ Caroline Herter*
David L. Ferguson FBN 981737
Jonathan M. Streisfeld FBN 117447
Caroline Herter FBN 1035444
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ferguson@kolawyers.com
streisfeld@kolawyers.com
herter@kolawyers.com

Thomas H. Leeder FBN: 746401
**LEEDER LAW**
8551 West Sunrise Blvd. | Ste. 202
Plantation, FL 33322
Telephone: (954) 734-2382
pleadings@leederlaw.com

David S. Jennis FBN 775940
Michael Stavros FBN 1033851
**JENNIS MORSE**
606 E. Madison Street
Tampa, FL 33602
Telephone: (813) 229-2800
djennis@jennislaw.com
mstavros@jennislaw.com

*Attorneys for Class Plaintiffs*
*and the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2024, I filed a true and correct copy of the foregoing using the Court's CM/ECF system, which will serve copies on all counsel of record. Additionally, Epiq Corporate Restructuring, LLC will cause the foregoing document to be served on all parties required to be served, including (i) the Chapter 11 Trustee, (ii) the Chamberlin Class Action Defendants, and (iii) the Local Rule 1007-2 Parties in Interest List.

By:     */s/ Caroline Herter*
                    CAROLINE HERTER