UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

                              CASE NO.: 8:24-bk-00676-RCT

IN RE:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,

                    Debtor.
_____

                              ADV. PRO.:8:24-ap-00139-RCT

MICHAEL GOLDBERG, as Chapter 11
Trustee of the estate of Debtor,
The Center for Special Needs
Trust Administration, Inc.,

                    Plaintiff,
vs.

BOSTON FINANCE GROUP, LLC,
LEO J. GOVONI,

                    Defendants.
_____

JULY 23, 2024

TRANSCRIPT OF PROCEEDINGS

BEFORE HONORABLE ROBERTA A. COLTON
UNITED STATES BANKRUPTCY JUDGE

SAM M. GIBBONS UNITED STATES COURTHOUSE
801 NORTH FLORIDA AVENUE
TAMPA, FLORIDA

Proceedings recorded by electronic sound recording
Transcript provided by ACCREDITED COURT REPORTERS
acreporters@embarqmail.com
(407) 443-9289

A P P E A R A N C E S:

STEVEN R. WIRTH, ESQUIRE
Akerman Senterfitt
401 East Jackson Street
Suite 1700
Tampa, Florida
      Appearing on behalf of Chapter 11 Trustee

SCOTT A. UNDERWOOD, ESQUIRE
MEGAN WILSON MURRAY, ESQUIRE
Underwood Murray P.A.
100 North Tampa Street
Suite 2325
Tampa, Florida
      Appearing on behalf of Official Committee of
      Unsecured Creditors

CAROLINE HERTER, ESQUIRE
JONATHAN M. STREISFELD, ESQUIRE - Zoom
Kopelowitz, Ostrow, Ferguson, Weiselberg, Gilbert
One West Las Boulevard
Suite 500
Ft. Lauderdale, Florida
      Appearing on behalf of Clark Chamberlin,
      Kelly Chamberlin and Todd Chamberlin,
      Plaintiffs in Adversary No. 24-00139

DAVID S. JENNIS, ESQUIRE
Jennis Morse
606 East Madison Street
Tampa, Florida
      Appearing on behalf of Clark Chamberlin,
      Kelly Chamberlin and Todd Chamberlin,
      Plaintiffs in Adversary No. 24-00139

WILLIAM A. MCBRIDE, ESQUIRE
Trenam Law
101 East Kennedy Boulevard
Suite 2700
Tampa, Florida
      Appearing on behalf Boston Finance
      Group, LLC and Leo J. Govoni,
      Defendants in Adversary No. 24-00139

3

1   APPEARANCES CONTINUED:
2
3   EDWARD J. PETERSON, III, ESQUIRE
4   Johnson, Pope, Bokor, Ruppel & Burns, LLP
5   400 North Ashley Drive
6   Suite 3100
7   Tampa, Florida
8        Appearing on behalf Austin Colby Company,
9        Boston Asset Management, Inc., and Fiduciary
10       Tax & Accounting Services
11
12  MARCOS ROSALES, ESQUIRE
13  Beck redden LLP
14  1221 McKinney Street
15  Suite 4500
16  Houston, Texas
17       Appearing on behalf of American Momentum Bank
18
19  JOHN RYAN YANT, ESQUIRE
20  Carlton Fields, P.A.
21  4221 West Boy Scout Boulevard
22  Suite 1000
23  Tampa, Florida
24       Appearing on behalf of American Momentum Bank
25
26  THOMAS H. LEEDER, ESQUIRE - Zoom
27  Leeder Law
28  8551 West Sunrise Boulevard
29  Suite 202
30  Plantation, Florida
31       Appearing on behalf of Clark Chamberlin,
32       Kelly Chamberlin and Todd Chamberlin,
33       Plaintiffs in Adversary No. 24-00139
34
35  TERESA MARIE DORR, TRIAL ATTORNEY - Zoom
36  Office of the United States Trustee
37  501 East Polk street
38  Suite 1200
39  Tampa, Florida
40       Appearing on behalf of United States Trustee
41
42
43
44
45
46
47
48

4

1                            I N D E X
2
3       PROCEEDINGS BEFORE JUDGE COLTON:                    5
4
5       1) Continued Status Conference
6
7       2) Continued Emergency Motion for Approval of
8          Trust Distribution Procedures
9
10      3) Continued Emergency Motion for Interim and
11         Final Orders Granting Authority to Maintain
12         Trust Bank Accounts and to Continue to Use
13         Existing Business Forms and Checks for Trust
14         Accounts; Continue to Use Existing Trust Cash
15         Management System
16
17      4) Continued Motion to Enforce Automatic Stay by
18         Trustee Goldberg
19
20      5) Preliminary Hearing on Motion for Relief from
21         Stay filed by Creditor American Momentum Bank
22
23
24      CERTIFICATE OF REPORTER:                            78
25
26      WORD INDEX:                                         79
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48

1          TAMPA, FLORIDA, JULY 23, 2024, 1:30 P.M.

2                    P R O C E E D I N G S

3          THE CLERK: All rise.

4          The United States Bankruptcy Court for the

5    Middle District of Florida is back in session.  The

6    Honorable Roberta A. Colton presiding.

7          THE COURT: Good afternoon everyone.  Please be

8    seated.

9          THE CLERK: Calling cases from the Court's 1:30

10   calendar, Case 24-676, The Center of Special Needs Trust

11   Administration, with related Adversary 24-139, Michael

12   Goldberg versus the Boston Finance Group LLC and Leo J.

13   Govoni.

14         The Court will take appearances.  All

15   interested parties, please come forward and enter your

16   appearance in the courtroom.

17         MR. WIRTH: Good afternoon, Your Honor.  Steven

18   Wirth of Akerman here on behalf of Michael Goldberg, the

19   Chapter 11 Trustee.

20         MS. MURRAY: Good afternoon, Your Honor.  Megan

21   Murray and Scott Underwood representing the Official

22   Committee of Un -- Official Committee of Unsecured

23   Creditors.

24         MR. MCBRIDE: Good afternoon, Your Honor.  Burt

25   McBride on behalf of Boston Finance Group and Leo Govoni,

1    the Defendants in the adversary proceeding.

2            MR. PETERSON: Good afternoon, Your Honor.

3    Edward Peterson on behalf of Austin Colby, Boston Asset

4    Management, and Fiduciary Tax Advisory Services.  Thank

5    you.

6            MS. HERTER: Good afternoon, Your Honor.

7    Caroline Herter on behalf of the Chamberlin Class Action

8    Plaintiffs, and I'm also joined by my colleague, Jonathan

9    Streisfeld, who is attending via Zoom.

10           THE COURT: Very good.

11           MR. JENNIS: Good afternoon, Your Honor.  David

12   Jennis, also on behalf of the Chamberlin Class Action

13   Plaintiffs.

14           MR. ROSALES: Your Honor, Marcos Rosales on

15   behalf of American Momentum Bank, joined today with my

16   co-counsel Mr. Ryan Yant.

17           THE COURT: Very good.

18           Any attorneys on Zoom who wish to make an

19   appearance?  I know there are a lot of people, but only

20   if you need to make an appearance.  If you're just

21   listening, no need to do so.

22           MR. LEEDER: Judge, Tom Leeder here on behalf of

23   the Chamberlin Class Action Plaintiffs as well, as co-

24   counsel with Mr. Streisfeld, Ms. Herter and Mr. Jennis.

25           THE COURT: Very good.

7

1          MS. DORR: Good afternoon, Your Honor.  Teresa

2     Dorr on behalf of the United States Trustee.

3          THE CLERK: And I guess those are the

4     appearances, Judge.

5          THE COURT: All right.  Very good.

6          We've got a number of things on the docket for

7     today.  Obviously, the stay issues are probably the ones

8     that will take the most time, but the main thing I'd like

9     to hear to start with, Mr. Wirth, is a status.  This is a

10    status conference.  So tell me about what's happening in

11    the case and where we are and where we're going.

12         MR. WIRTH: Thank you, Your Honor.

13         Just briefly.  The Chapter 11 Trustee is in the

14    final drafts of documentation to transition the

15    management and the servicing of the trusts, and I think

16    we have documents in final form.  We had a call yesterday

17    with the committee and all counsel.  So I think we'll be

18    ready to file a motion late this week, early next week,

19    to transition and get the Center out of the trust

20    administration business.

21         So that's -- it's been a little bit of a longer

22    process than we expected but we think that this -- this

23    process is in the best interest of all parties and the

24    beneficiaries, and we're looking forward to moving on

25    from the trust administration business and to go forward

1    with litigation.

2            With respect to the adversary, Your Honor, a

3    brief update.  The Trustee had filed a motion for summary

4    judgment, and the Court yesterday set a briefing schedule

5    deadline for that motion for summary judgment.  We

6    briefly talked to counsel for the Defendants, and we are

7    looking to draft an agreed order granting summary

8    judgment as to liability on that motion.  We haven't yet

9    drafted it.  We're going to do that after this hearing

10   and circulate it and hopefully submit that to the Court

11   in short order.  So I think -- I think that's sort of the

12   update on the status so far.

13           THE COURT: So since we're not yet to the point

14   of approving the transfer of trust administration, I

15   assume that the motion for approval of trust distribution

16   procedures needs to be extended, at least on a short-term

17   basis.

18           MR. WIRTH: Yeah.  I think another 30 days would

19   probably be sufficient.  We think, when we file the

20   motion, we think we should be able to go effective with

21   that transition September.  So if we can get through

22   September or, you know, August, the end of August, we

23   think that will be sufficient for purposes for the bank

24   account and the trust distribution procedures.  So we'd

25   ask that those be continued to the next, you know,

1    available hearing date about 30 days out.

2            THE COURT: So about 30 days.  So that's, for

3    the record, we're talking about Docket Number 10, which

4    has been extended since the very beginning of the case,

5    and Docket Number 18, which deals with the authority to

6    maintain bank accounts.

7            Is there any party who wishes to speak to the

8    Debtor's, or the Chapter 11 Trustee's proposal to

9    continue both of those orders for another 30 days or so?

10           Okay.  Then the Court will go ahead and grant

11   both motions again for 30 days, an interim basis, and

12   let's pick a time in August.

13           THE CLERK: September 2nd, Judge, 2:00 o'clock.

14           THE COURT: Okay.  September 2nd.  That's a

15   Monday.  How does that look for everyone?

16           MS. MURRAY: I think that's Labor Day.

17           THE COURT: Miss Chatham, that's Labor Day,

18   that's why it's open.  So that's not a good day.  Let's

19   see.

20           THE CLERK: We have the Tuesday, the 3rd.

21           THE COURT: We have -- let's see.

22           THE CLERK: Do you want to go to --

23           THE COURT: How about -- okay.

24           THE CLERK: We can do September 9th.

25           THE COURT: How does September 9th work for

1   everyone?  It's a Monday.

2           MR. WIRTH: Works for us, Your Honor.

3           THE COURT: Okay.  September 9th, and want to do

4   it again at 1:30.  Is that open, Ms. Chatham?

5           THE CLERK: 2:00 o'clock.

6           THE COURT: 2:00 o'clock?

7           THE CLERK: Um-hum.

8           THE COURT: Okay.  2:00 o'clock.  Okay.  Both of

9   those motions will be continued until 2:00 o'clock, and

10  you can give me orders on both of them.

11          MR. WIRTH: Thank you, Your Honor.

12          THE COURT: And I think that brings us to the

13  stay motions, and I know that there have been a lot of

14  briefs that are filed.  I think I tried to read them all.

15          Is there anybody who hasn't had an opportunity

16  to brief the issues that are before the Court that that

17  is still looking to participate?

18          Okay.  So anyway, we have two motions; I think

19  the Trustee's motion to enforce the stay and all of the

20  documents and responses that have been filed in

21  connection with that, and then I think American Momentum

22  Bank has filed a motion to lift the automatic stay

23  tentatively, if it applies, but then the responses to

24  that motion.

25          So, Mr. Wirth, you can start.

1          MR. WIRTH: Thank you, Your Honor.  And it's

2    Doc. 195, it's the Chapter 11 Trustee's motion to enforce

3    the automatic stay.  Your Honor, the Trustee filed this

4    motion in response to two class actions that were filed

5    purportedly on behalf of certain beneficiaries; one I'll

6    call the Orris Class Action and the other I'll call the

7    Chamberlin Class Action.  The Orris Class Action

8    Plaintiffs do not oppose the stay and will consent to the

9    entry of an order staying that case.  The Chamberlin

10   Class Action Plaintiffs obviously have opposed that.

11          I think, Your Honor, it makes sense to go

12   through a little bit of a brief background of the case.

13   The Debtor's a Section 501(e)(3) -- (c)(3) nonprofit

14   Florida corp that administers pooled and special needs

15   trusts.  The Debtor is the trustee or co-trustee of

16   approximately 2,000 special needs trusts for

17   beneficiaries suffering various degrees of disability,

18   and by virtue of his appointment as Chapter 11 Trustee,

19   Mr. Goldberg now serves as trustee or co-trustee of all

20   or substantially all of the special needs trusts at issue

21   here.  And prior to the petition date, obviously, Your

22   Honor, you're well aware, the Debtor loaned approximately

23   a hundred million dollars to Boston Financial Group and

24   that loan was guaranteed by Leo Govoni, the principal who

25   started the Center.

1          The note and personal guarantee are property of

2    the bankruptcy estate, and they're included on Debtor's

3    schedules as assets.  So standing in the shoes of the

4    Debtor, the Chapter 11 Trustee has exclusive standing to

5    sue on the note and the personal guarantee, and that

6    cause of action is also property of the bankruptcy

7    estate,

8          On April 25th, the Chapter 11 Trustee sued BFG

9    and Govoni on the note and the loan documents, and the

10   Defendants again filed answers, asserted no affirmative

11   defenses, and basically conceded default and liability

12   under the note.

13         On July 19th, the Trustee filed his motion for

14   partial summary judgment.  Again, we should have a

15   judgment as to liability entered within the next, you

16   know, few weeks, if we can agree on a form of order.  And

17   in connection with that lawsuit by the Trustee, seeking

18   to recover the hundred million dollars loaned under the

19   loan documents, the Trustee and his professionals met

20   with the Defendants and their professionals along with

21   counsel for a number of the other Govoni-related entities

22   including most of the Defendants, who are -- who are

23   Defendants in the Chamberlin Class Action, and we are in

24   the process of getting documents from them and engaging

25   in settlement discussions with respect to the note claim

1   and also where all the money went, you know, from Boston

2   Financial Group or Leo Govoni to other related entities,

3   but all of those entities are participating in these

4   discussions with us so far.

5            Instead of jumping up for joy, Your Honor, and

6   applauding the Chapter 11 Trustee for getting to a place

7   of liability on a hundred million dollar claim that's

8   going to benefit all of the beneficiaries in such -- in

9   such fast time and for such a de minimis cost, the class

10  continues to push forward on its class claims, and I

11  think it's for obvious reasons, and it's apparent -- and

12  it's apparent that it's not in the best interests of the

13  beneficiary constituency that they represent, which is

14  the same beneficiary constituency that the Chapter 11

15  Trustee is seeking to recover funds from -- for.

16           Essentially, the Chamberlin Class Action

17  Complaint seeks the recovery of this very same hundred

18  million dollars that the Chapter 11 Trustee's pursuing.

19  It alleges that the loan, which is property of the

20  estate, is a sham.  It asserts that the Debtor was

21  engaged in a fraud and various bad acts, and thus those

22  allegations undercut D&O claims that the Trustee has

23  asserted against the Defendants' D&O and E&O policies,

24  again property of the estate, and it alleges claims

25  against non-debtors that are inextricably intertwined

14

1   with claims against the Debtor themselves.  So thus a

2   finding of liability with respect to any of those non-

3   debtor defendants would effectively result in a finding

4   of liability against the Debtor itself, another stay

5   violation.  So there's no question that the Complaint as

6   a whole violates the automatic stay.

7          Also, Your Honor, the Chapter 11 Trustee

8   believes that all of the causes of action asserted in the

9   class, Chamberlin Class Complaint are derivative claims,

10  derivative of the harm to the Debtor on the unpaid loan

11  and thus are property of the estate.  And,

12  notwithstanding, Your Honor, even if some of the claims

13  are direct, the Chapter 11 Trustee is the trustee under

14  the trust indenture and has exclusive standing to pursue

15  those direct claims under the trust documents and Florida

16  trust law.

17         And lastly, Judge, I think this is important,

18  that the Chamberlin Plaintiffs either misunderstand or

19  misrepresent the law on, but there's -- KapilaMukamal,

20  the Debtor's forensic accountant, the Chapter 11

21  Trustee's forensic accountant, has done a preliminary

22  analysis, and there's a declaration attached to our most

23  recent filing in that regard, and their preliminary

24  findings that all of the trust funds were commingled with

25  other funds including Debtor funds to such an extent that

1   it would be almost and likely impossible to trace those

2   funds back to beneficiaries' accounts.  Thus, Your Honor,

3   under all of the case law that I've seen in this regard,

4   commingled funds with Debtor funds, trust funds

5   commingled with Debtor funds that cannot be traced are

6   property of the estate.  So all the claims for recovery

7   of those hundred million dollars are property of the

8   estate under the commingling, commingling analysis, too.

9           So the bottom line, Your Honor, the Chamberlin

10  Class Action, it's interfering with the orderly and

11  effective administration of the estate by the Chapter 11

12  Trustee in pursuit of his estate claims, the note, in

13  pursuit of his estate claims, the D&O claims, the E&O

14  claims, and as a result -- and again the claims that they

15  assert against non-debtors are rife with allegations of

16  bad faith, misconduct by the Debtor -- so a finding in

17  that case of liability against any of those non-debtors

18  will essentially be a finding of liability against the

19  Debtor.

20          So for all those reasons that Complaint

21  violates the stay, and the Court should enter an order

22  enforcing the stay in that regard.  Thank you, Your

23  Honor.

24          THE COURT: Let me ask you a couple of questions

25  about the documents that you filed.  The reformed

16

1    Declaration of Trust that was signed in 2018 –

2              MR. WIRTH: Yes.

3              THE COURT: -- is that consistent with prior

4    declarations of trust that were I think started back in

5    2001?

6              MR. WIRTH: I think they are, Your Honor.  I'm

7    not a hundred percent certain, but I think they're

8    substantially -- they were substantially the same.

9              THE COURT: Okay.  And you didn't -- you didn't

10   reference that in your argument, so I'm taking from that

11   that that's not the principal basis --

12             MR. WIRTH: Well, Your Honor –

13             THE COURT: -- of your contention that the

14   Complaint on its face violates the automatic stay.

15             MR. WIRTH: The Complaint on its face violates

16   the stay.  There's no doubt about that.  But also, we do

17   think under those trust documents that the Trustee, the

18   Chapter 11 Trustee, has a legal and equitable interest in

19   the trust funds, and he's the proper plaintiff to assert

20   direct claims as trustee under the trust document in

21   Florida law and as Chapter 11 Trustee for derivative

22   claims on behalf of the company.

23             So I think either way you slice it, direct

24   claims, derivative claims, Mr. Goldberg's the proper

25   plaintiff.

1        THE COURT: And in terms of the analysis that

2   was presented by both the Class Plaintiffs and the

3   Trustee, there are pooled trusts and then there are

4   individual trusts.  Has the Trustee gotten to the point

5   where you can tell what was taken from what at this

6   point?

7        MR. WIRTH: Not at this point, Your Honor,

8   because the pooled trust money was commingled with the

9   individual trust money which was commingled with Debtor

10  money and then which went out the door.  And then there

11  was some internal transfers regarding liability with

12  respect to or investments in the BFG loan.  So it's --

13  it's preliminarily they've determined that there was so

14  many transfers that it will be almost impossible to trace

15  any of those funds back to any particular trust.

16       THE COURT: Okay.  Very good.  Thank you.

17       MR. WIRTH: Thank you, Your Honor.

18       THE COURT: Ms. Murray, on behalf of the

19  committee, did you want to make some comments?  And then

20  I'll let the Class Plaintiffs respond to everyone.  Or

21  Mr. Underwood, as the case may be.

22       MR. UNDERWOOD: Yes, if Your Honor permits.

23  Scott Underwood, Ms. Murray's law partner, on behalf of

24  the Official Committee of Unsecured Creditors.

25       One thing I just want to note, because I think

1    it's very important for this analysis, and as I was

2    preparing for today it occurred to me we've referred to

3    this Complaint extensively, it's in the federal docket in

4    the district court here, but I don't think anyone's put

5    it on record.  So I just want to make sure I give the

6    docket entry and the docket number we're referring to --

7         THE COURT: Okay.

8         MR. UNDERWOOD: -- because I think that

9    Complaint --

10        THE COURT: I think you're right, but I think

11   I've read it so.

12        MR. UNDERWOOD: Okay.  So as long as you have

13   it, but maybe for the benefit if there's anyone else or

14   just the record, the case number is 8:24-cv-00438-SDM-A

15   -- AEP.  It's Docket Entry Number 41.

16        THE COURT: Um-hum.

17        MR. UNDERWOOD: And, Your Honor, as I started

18   with my presentation last time on this issue, I think

19   it's important to note who our constituent unsecured

20   creditors are, because this is a very different case than

21   a typical operating case.  We don't have trade creditors.

22   We don't have landlords.  As a matter of fact, one of

23   the --

24        THE COURT: You represent all of the

25   beneficiaries?

1          MR. UNDERWOOD: We functionally represent the

2    beneficiaries.  I know one of the arguments made in

3    connection with the stay relief motions that you'll hear

4    is concern about who gets the proceeds if a trustee in

5    bankruptcy -- a bankruptcy trustee were to recover, for

6    instance, under the note and that there are extensive --

7    there may be other creditors who are sharing in the pot,

8    and I just want to address what the other creditors are.

9          There are four other potential creditors in

10   this case that have filed claims or have scheduled claims

11   to date.  One is the IRS, which seems to have protective

12   filed claims in various amounts.  The other three are

13   small service providers.  Collectively, those four

14   creditors total claims -- there's five different of them

15   because the IRS has filed multiple -- they add up to less

16   than $20,000 in connection and comparison to the hundred

17   plus million dollars of potentially missing funds.  And

18   the reason I say hundred plus is there's obviously

19   interest and fees and other charges that have occurred

20   here.

21         So we represent functionally the beneficiaries

22   and the current beneficiaries and those parties.  And

23   really those, to be more specific, those parties who are

24   out money, because if there's a beneficiary who's not out

25   -- has not lost funds, that's not within our constituent

1   group.

2            So from our perspective, the goal is simple and

3   the focus needs to be on the beneficiaries.  This is a

4   case about recovering as much as possible for those

5   beneficiaries.  Whether you call them beneficiary victims

6   or just beneficiaries, beneficiary creditors, that is the

7   constituent we care most about, and that may ultimately,

8   in our view, involve litigation brought by the Trustee,

9   but at least theoretically possible that some of those

10   beneficiaries have their own direct claims that we have

11   an interest in not going away.  And, as a result, I think

12   we have tried to play the role, if you will, of Henry

13   Kissinger of trying to get everyone to figure out a

14   process of how we might be able to split this up; and to

15   that end, I think it's notable that we spent days on

16   calls and I can say that from our perspective in that

17   role the trust -- the Chapter 11 Trustee has made

18   multiple efforts to get that done.

19            From the class side, we're here and we don't

20   have any proposals as to how this breaks down.  Instead,

21   when I read their initial response and even the

22   supplemental, the surreply or supplemental brief, the

23   phrase the claims belong to or who do the claims belong

24   to is in there consistently, and I heard even the Trustee

25   has a position these claims need to be brought only here.

1            From our perspective, at least for today and

2     for the next round of this issue, that's not actually the

3     question presented to Your Honor.  The question presented

4     to Your Honor is, does the Complaint, which is at Docket

5     Entry 41 in the adversary proceeding, violate the

6     automatic stay as it currently exists?  And, as we note

7     in our paper, but it's important to note what is not

8     being asked of this Court, there is not a proposal from

9     the Class Plaintiffs to say, we think there are this

10    group of claims we can bring and we can bring them in a

11    way that will not harm the estate, of the bankruptcy

12    estate, will not harm the beneficiaries, will not harm

13    the note claim, or we have, if we choose to do so, we can

14    come before this Court, but that aspect is not before

15    you.

16            You do not need to decide whether in fact the

17    Trustee owns all potential claims or whether there are

18    claims that the class could assert in a different way

19    that would not violate the stay, because you haven't been

20    asked.  Rather, the only thing is, does this Complaint

21    violate the automatic stay?  And we, in Paragraphs 8

22    through 11 of our brief -- I'm not going to go through

23    them because they're extensive.  I mean, there are --

24    it's probably close to 50 citations of ways that this

25    Complaint violates the stay by exercising control over a

22

1    known estate asset, which is the note.

2            THE COURT: Maybe I can ask you the question,

3    because I'm sure you've reviewed it.  So if the goal is

4    to recover the hundred million dollars under the note,

5    doesn't that provide an additional mechanism to recover

6    the hundred million plus interest and plus attorneys'

7    fees?  I assume that those kind of provisions are

8    included in the note.

9            MR. UNDERWOOD: I'll let the Trustee speak as to

10   the attorneys' fees provision.

11           THE COURT: Okay.

12           MR. UNDERWOOD: But certainly as to interest,

13   that's absolutely correct.

14           THE COURT: Okay.

15           MR. UNDERWOOD: And there's a default and the

16   default has been acknowledged.  So the default interest

17   would kick in.  There is additional potentially recovery

18   there.

19           THE COURT: Okay.

20           MR. UNDERWOOD: That doesn't mean necessarily

21   that it's the only possible recovery that could ever be

22   had, and it doesn't mean that -- what I stand here

23   concerned with is, as I hear any side argue before we've

24   reached a final adjudication, before Mr. Kapila for

25   instance has gone through his analysis, before that

1   analysis has been tested whether by class counsels,

2   professionals, or probably more likely defense counsels'

3   professionals, that the idea that there are no defenses

4   that will be raised by the Class Action Defendants or

5   other defendants, whether against the Chapter 11 Trustee

6   or against the Class Plaintiffs, we don't know.  We don't

7   know how those defenses will play out.  We don't how they

8   will be successful.  What we do know is one of them.  One

9   of them, for instance, is American Momentum Bank, and

10   American Momentum Bank's position is, we don't owe a duty

11   to the beneficiaries.

12          As a matter of fact, the beneficiaries, as we

13   note, is not -- I know that's up for later, but it's an

14   example of the concern we have -- in one case going to

15   another court and saying, we don't owe a duty to these

16   beneficiaries, so there is no direct claim.  Any claim

17   must have to come through the Chapter 11 estate and the

18   trustee.  While there might be similar defenses, there

19   haven't been in the current note case.  But if the

20   Trustee, the Chapter 11 Trustee brings additional claims,

21   there might be similar defenses raised that those claims

22   belong, and the word "belong" as asserted to

23   beneficiaries.  From our perspective, we want to maintain

24   the maximum plausibility there, but none of that

25   coordinated process to maintain that is before you.

24

1      Again, the only motion before you is, does this

2   Complaint violate?

3      THE COURT: Okay.

4      MR. UNDERWOOD:  And on that, I don't think you

5   need to make the full-blown factual record you would need

6   to delve into the commingling, the legal determinations

7   of the impact of commingling no less here -- yes, we have

8   trust accounts but we have a very unusual circumstance

9   where you have a law that allowed pooled trust accounts,

10  which are themselves not the typical way you would have a

11  trust account.  So there are a lot of dynamics there.

12      I think it's important to note, as I said, that

13  there are really no non-beneficiary creditors or (sic)

14  incredibly limited at this point.  The claims deadline

15  has been extended, so there is theoretically a deadline.

16  But the reason for the claims deadline extension, and I

17  think it will be more narrow if it's extended again in

18  the future, is to allow Mr. Kapila's firm and Mr. Mukamal

19  to finish their analysis so that they know whether we

20  should be supplementing the claims ourselves because some

21  beneficiaries may not know they're claimants.  Really the

22  purpose for extending claim deadline wasn't so an

23  accounting firm or a law firm with a five thousand dollar

24  claim can come back before this Court.  But if the issue

25  is whether there should be a constructive trust or

1    whether dollars that are recovered from this estate

2    should be distributed to a subgroup, because they have a

3    different right to those funds, that is something that

4    can be decided in the future and at a later date.

5           I am still hopeful that if needed to collect

6    assets and have a hundred percent recovery or a fantastic

7    -- the maximum recovery, whatever that is, in this

8    estate, that everyone, any possible party that has claims

9    can work together to bring them, but that's not today.

10          You know, the Chamberlin's position, when I

11   talk about those facts and KapilaMukamal, there's a

12   presumption that their assertion of the facts will prove

13   true.  If it proves true and if certain facts prove true

14   and if in fact the note is found to be a sham, which is

15   referenced multiple times -- one of the big things that

16   we worry about, right, that the note is called a sham.

17   There are specific allegations as to why the note is not

18   enforceable, and yet we know in the note case there's no

19   defense currently asserted, and there may be an expedited

20   summary process.  But beyond that, Mr. Wirth referenced

21   the D&O claims.  I didn't put this in my papers, but for

22   purposes at least for today, one of the -- some of the

23   allegations, the use of the word "fraud" and "fraudulent"

24   and outside of a fraudulent transfer context are

25   extensive in the Complaint.  That's obviously a potential

1   problem.  We would not concede that.  That's not the

2   Trustee, the Chapter 11 Trustee's writing.  But if found,

3   it could be a bar to those claims.

4          So there's ways that this can be worked

5   through.  The lack of a proposal to get there is

6   frustrating, but we still are open no matter how Your

7   Honor rules today on, or in the future, on stay

8   enforcement as to the existing adversary -- excuse me --

9   existing Amended Complaint in the class action, we are

10  still open and think maybe a judicial settlement

11  conference may make sense to see if there's a coordinated

12  way parties can amend and work together.  That still

13  makes sense, but that's also not really before you.

14         We are concerned though when we hear some of

15  the arguments about there being a constructive trust or

16  the Trustee maybe shouldn't really recover the note.

17  It's the class counsel themselves asserting that, in a

18  sense are arguing against the beneficiaries and the net

19  loser beneficiaries, which again from my -- our

20  constituents are not all beneficiaries throughout

21  history, but in that sense there really is an odd

22  conflict here.  Who -- who do we know are not defendants

23  in that class action case?  Perhaps pleasantly so but

24  non-defendants include prior trusts.  And I mention that

25  because there have been six to seven thousand trusts that

1   went through, and the large -- the theft that was

2   complained of, as it's categorized, or the note as it's

3   been alleged through the Trustee, and maybe the note

4   itself was also some other wrong, however you title it,

5   but that original taking of north of a million dollars

6   occurred over ten years ago.  Since then, it appears

7   what's happened is almost like a traditional -- a more

8   traditional Ponzi scheme.  New trusts have been used to

9   cover the losses of old trusts that were actually stolen,

10  such that old trusts might be the beneficiaries of

11  current creditor funds.

12          Now ideally, wrongdoers, not innocent

13  beneficiaries, are the parties who are the targets here

14  collectively.  But there absolutely is a scenario where

15  the current creditors of this estate have claims against

16  prior creditors and prior beneficiaries, and how that

17  gets worked out is also a substantial issue.  It's one I

18  think this Court deals with frequently, and we need to

19  have a plan for how we're dealing with it, but that

20  conflict with the class counsel position of currently

21  coming before and saying, we may have a sham note, when

22  the note would benefit their same constituents as mine is

23  a concern.

24          So again, our position is that from a legal and

25  factual perspective, for the various allegations I'm not

1  going to re-read through, the Complaint violates the

2  stay.  There's not a motion for relief from stay.

3  There's not an assertion of cause as to why certain

4  counts should be brought forward, and that would be

5  important, as I mentioned at the last hearing, because in

6  fashioning stay relief, even if you were to consider it,

7  you could fashion protections for the estate as well

8  rather than simply deciding now the very complex factual

9  question and a very complex legal question of who the

10  claims belong to when we don't know the answer to some of

11  those until these facts are more fully developed.

12          THE COURT: Very good.  Thank you.

13          MR. UNDERWOOD: Thank you.

14          THE COURT: All right.  Ms. Herter or Mr. Jansen

15  -- Jennis rather.  Ms. Herter.

16          MS. HERTER: Thank you, Your Honor.

17          I think to start off it's important to clarify

18  that we agree with the creditors' committee to the extent

19  that Mr. Underwood brings up why we are not here today,

20  and we are not here to invalidate the note and we're not

21  agnostic to the note claim, but we are here in response

22  to a motion arguing that our class action violates the

23  automatic stay.

24          THE COURT: Well, I think I -- I think I may

25  have asked you the question at the initial hearing that

29

1   we had on this, whether you were trying to recover the

2   same hundred million as them and you said that there

3   might be other more than the hundred million that you

4   could recover.  So why don't you go into that a little

5   bit, because I think that's -- that's kind of critical

6   here.

7           MS. HERTER: Well, that is true.  And I would

8   like to clarify, we are not -- the class claims are not

9   seeking to recover the specific dollars that went out of

10  trust accounts.  They're seeking compensatory monetary

11  damages for injuries and losses to the special needs

12  trust property at the hands of the Class Defendants who

13  are jointly liable tortfeasors with the Debtor.  We are

14  not suing under the note.  And anything that is said in

15  the Class Action Complaint about the note being, for

16  example, a sham, I think we call it the purported loan

17  throughout the Class Action Complaint, not necessarily a

18  sham, but the underlying facts are the same as what's

19  been alleged in this bankruptcy case since it was filed

20  and including in the adversary proceeding petition on the

21  note claim, which is that the money used to fund this

22  note loan to BFG was misappropriated by the special needs

23  trust in order to fund that loan.

24          The legal effect of that misappropriation,

25  whether that invalidates the note or not, is that it is

1    what it is, but the facts leading to whether this note is

2    a sham or not are undisputed and not as that the money

3    was misappropriated from the trust to begin with, and

4    that's the damages that we're seeking to recover in the

5    class action against the non-debtor defendants who share

6    liability for that loss to trust property.

7            THE COURT: So what about the D&O insurance?  Do

8    you maintain that your client has a claim to the D&O

9    insurance?

10           MS. HERTER: Well, yes, to the extent that the

11   D&O insurance provides coverage for third-party liability

12   claims, we would argue that that is not estate property

13   to the extent that there's no equitable interest.

14           THE COURT: But you understand that the

15   allegations that are in this Complaint would jeopardize a

16   recovery of D&O insurance, don't you?

17           MS. HERTER: Well, I wouldn't necessarily agree

18   with that, because again nothing -- no facts that we are

19   alleging in the class action are inconsistent with any

20   facts that have been alleged in this bankruptcy case.  It

21   has not been disputed at any point that this

22   misappropriation of trust property occurred in order to

23   make this purported loan to be achieved, regardless of --

24           THE COURT: So who's the trustee here?

25           MS. HERTER: So --

1          THE COURT: Who was in charge and they made sure

2     that -- was supposed to make sure that the funds were

3     properly managed?

4          MS. HERTER: So the Debtor was partially in

5     charge, and the Class Defendants as we allege in our

6     Complaint also because of the nature of trust assets that

7     they had control or custody of also owed independent

8     duties to protect that trust property.  But again, it's

9     important to point out that even if the Debtor shares

10     liability with the non-debtor joint tortfeasors that

11     we're suing, and even if our class action involves the

12     wrongful acts of the Debtor, we are not asserting claims

13     against the Debtor.  We're asserting claims against non-

14     debtors --

15          THE COURT: No, no, no.

16          MS. HERTER: -- that share liability.

17          THE COURT: My point is that the beneficiaries

18     have claims against the Debtor.  That's who the claims

19     should be against is the Debtor.  I mean, for purposes

20     of, you know, making sure that they get recovery on those

21     claims.

22          MS. HERTER: Well, we believe it should be --

23     they do definitely have claims against the Debtor, but

24     there are other parties that share liability and that we

25     also have claims against.  And I think the recent case

32

1   from the United States Supreme Court in Harrington versus

2   Purdue Pharma LP that was issued about three weeks ago,

3   it's very illustrative on this point, because in that

4   case involved a slightly different context of non-

5   consensual third-party releases of opioid victim

6   creditors claims against the directors, officers, and

7   owners of the Debtor for these directors, officers, and

8   owners' injuries to the opioid victim claimant --

9        THE COURT: That's not going to happen here, Ms.

10  Herter.  I think you can appreciate that.

11       MS. HERTER: But the -- but in that case,

12  despite that these claims were against those in control

13  of the debtor, despite that it was acknowledged that the

14  debtor's conduct was, and I'm quoting footnote 3 in that

15  case, a legally relevant factor to those claims, the

16  Supreme Court still held that those claims neither

17  belonged to Purdue, the Debtor, nor are they asserted

18  against Purdue or its estate.  And that turned not on the

19  facts underlying the claims or the allegations or whether

20  it's inconsistent or not, it turned on the nature of the

21  injury that those claims are seeking to -- to compensate

22  and the fact that those are direct injuries.  And in our

23  case, the class claims all are for the direct injuries to

24  the beneficiaries trust property that the Debtor has no

25  equitable interest in, and these injuries do not flow

1   through the Debtor because this is not the Debtor's money

2   or the Debtor's property that was injured to begin with.

3       THE COURT: Well, that's -- and that may

4   ultimately prove to be true.  I don't know that at this

5   point.  You've alleged it in the Complaint, but I don't

6   know who -- whose money was taken or where it came from,

7   was it a pooled trust, was it an individual trust.

8       MS. HERTER: Well, we do allege in that, based

9   on our specific Class Plaintiffs, Clark Chamberlin, who

10  had losses to his individual non-pooled trust assets.

11      THE COURT: So they had an individual, your

12  clients had an individual?

13      MS. HERTER: Yes.  He also had some assets in

14  the pooled trust as well, but he established his trust as

15  an individual special needs trust, and that is correct.

16  But --

17      THE COURT: So I understand from what was filed,

18  and again this is -- we haven't had discovery, we haven't

19  had a trial, so I'm just throwing out what is in the

20  record right now, that there were about 1200 pooled

21  trusts and 750 individual trusts.  Is that your

22  understanding as well based on your investigation?

23      MS. HERTER: Yes.  And, like I mentioned, it's

24  some beneficiaries perhaps had like, for example, Clark

25  Chamberlin had assets in -- certain assets in a pooled

1  trust while other assets were in individual trusts.  But

2  regardless --

3           THE COURT: And how do you know that?

4           MS. HERTER: Only because that is Clark

5  Chamberlin, our Class Plaintiff's situation.

6           THE COURT: Based on documents provided by the

7  Debtor?

8           MS. HERTER: Well, based on his own records of

9  documents that, yes, prepetition the Debtor had provided

10  like the trust agreements and the pool trust.  That

11  joinder agreement, for example.

12           THE COURT: So are you looking to have a class

13  that has -- represents individuals that have trusts in

14  both or trust in -- an interest in either?

15           MS. HERTER: That is a possibility.  And under

16  Rule 23 of the Federal Rules of Civil Procedure certain

17  subclasses or issue classes can be certified.  So there

18  isn't a requirement that we have one class definition

19  that applies to all injured beneficiaries.  We have the

20  ability to have separate subclasses.

21           THE COURT: So are you purporting to represent

22  the same folks that the unsecured creditors' committee,

23  the exact same people?  Is that what you're asking for in

24  you class action?

25           MS. HERTER: Yes.  So that is the putative class

1  more or less.  Of course, we don't represent any non-

2  beneficiary creditors, but as --

3          THE COURT: Well, that's minor in this case.

4          MS. HERTER: Yes.

5          THE COURT: And that's a big thing in other

6  cases, but in this case it's really not even a serious

7  factor.  The beneficiaries are the creditors in this

8  case.

9          MS. HERTER: Yes.  And the injured beneficiaries

10  who suffered losses to their special needs trust due to

11  the Class Defendants' conduct are the putative class that

12  the Chamberlins are bringing this class -- putative Class

13  Action Complaint on behalf of.

14          But, I also would like to point out where we

15  are in this class action, because at this time we haven't

16  been appointed as interim or just class counsel.  We've

17  had a pending motion for interim appointment, but because

18  the stay motion was filed shortly after that that hasn't

19  been ruled on.  We essentially put a pause on the class

20  case until Your Honor can decide the stay motion.  So, at

21  this point, we don't have the authority to negotiate on

22  behalf of the putative class or bind a putative class to

23  any settlement working out what is going to happen with

24  this note claim versus the class claims.  We're here on

25  behalf of our clients, our Plaintiffs, the Chamberlins,

1    in response to the stay motion.  But I do also agree with

2    what the creditors' committee has argued, that whatever

3    happens with the note claim, whether there's a

4    constructive trust, how that gets distributed, that is

5    not -- that is not central to the issue or relevant to

6    the issue that we're here for today, which is do the

7    class action claims violate the automatic stay, and they

8    don't because these are --

9              THE COURT: Well, I don't know if the question

10   is do any potential class action claims violate the

11   automatic stay.  I think the issue, and I think it's been

12   capsulized by the creditors' committee probably better

13   than the Trustee, is that does this Complaint violate the

14   automatic stay, because it seeks to recover the same

15   hundred million dollars because it attempts to and could

16   potentially jeopardize D&O claim coverages that the

17   beneficiaries may be entitled to.

18             MS. HERTER: So, and on that point, I do want to

19   clarify again, we're not going after the same hundred

20   million dollars.

21             THE COURT: Um-hum.

22             MS. HERTER: We are going after -

23             THE COURT: That's what I -- well, that was my

24   point.  I think I tried to talk to you about that at the

25   last hearing, that is there -- you know, there may be a

1    way to craft a complaint that doesn't violate the stay.

2    I'm leaning towards it at this point.  I haven't made a

3    final decision.  But assuming that that we're there, I

4    think it may be possible to craft a complaint that

5    doesn't violate the automatic stay and could potentially

6    be beneficial to all of the beneficiaries in the long

7    run.  I know it takes -- I was involved in a lot of class

8    actions when I was in practice and they take a long time.

9    You know that.

10          MS. HERTER: Yes, they definitely, and that is

11    possible that --

12          THE COURT: And if we can get funds to people

13    quicker, why wouldn't we?

14          MS. HERTER: Well, and we're not arguing that

15    the note claim and the class claims are mutually

16    exclusive.  We're not saying that the note claim at this

17    point can't go forward because it's all or nothing with

18    our class action, it has to be either our class action or

19    the note claim, and we haven't argued that.  We haven't

20    at this point had any affirmative action to put in

21    constructive trust over the note claim or --

22          THE COURT: So over the --

23          MS. HERTER: -- invalidate the note claim.

24          THE COURT: -- over the hundred million dollars,

25    and I think this was the question I asked, what are the

1  additional damages –

2          MS. HERTER: Well, for example --

3          THE COURT: -- that you would prove?

4          MS. HERTER: -- in addition to losses to the

5  actual trust property --

6          THE COURT: Um-hum.

7          MS. HERTER: -- there are -- we do actually

8  allege additional damages from, for example, fees paid to

9  Fiduciary Tax & Accounting Services and Boston Asset

10 Management.  We do also allege that there's a loss of the

11 return on investment of what this trust property would

12 have been worth if it had been invested prudently.

13     There's punitive damages that we believe we can

14 collect.  There's potential claims for treble damages

15 based on, for example, a RICO claim or a civil theft

16 claim that we have been considering, should we be allowed

17 to proceed, and we think that that is the best way to get

18 the most money to beneficiaries.  We're not here to

19 invalidate the note claim.  We are just here to --

20          THE COURT: Well, that's, I think, what the

21 committee was really asking is, why can't we figure out a

22 way to do it together to do it for the best interest of

23 everybody instead of fighting over who pursues who.  Just

24 coordinate.

25          MS. HERTER: Well, I think in theory that is

1    possible but at this point, we, as class counsel, we have

2    not been appointed with the authority to bind the

3    putative class of beneficiaries to any agreement or even

4    to negotiate on behalf of this entire class of

5    beneficiaries.

6              THE COURT: No, no, no, you can't negotiate for

7    money, but you can negotiate as to who is going to pursue

8    what claims and what forum.

9              I think that the Trustee has a plan here and it

10   seems to be moving very quickly and fairly effectively

11   but that that initial plan is not going to be the only

12   plan in the case, and I think that's what the creditors'

13   committee was saying when it was trying to reach out,

14   maybe have a judicial conference to figure out, you know.

15             You obviously have done some investigation that

16   could benefit people.  I don't want to -- you know, I

17   think there may be claims out there that are separate

18   from the ones that the Trustee might have.  But I think

19   in this Complaint, when I asked, you know, the hundred

20   million is -- you're saying punitive damages, treble

21   damages, and that makes sense to me.  I mean, that may be

22   something that's worth going after at some point.

23             MS. HERTER: Well, and that is what we're trying

24   to go after, and we do believe that the note case and the

25   recovery under that can benefit the Class Plaintiffs or

1    the putative class action and all beneficiaries.  But,

2    unless, I mean, unless that recovery is to the tune of

3    hundreds of million dollars, we still think that there

4    are more damages that can be recovered --

5                THE COURT: Okay.  That's fair --

6                MS. HERTER: -- through the class case.

7                THE COURT: Fair point.  That's a fair point.

8    And, as I said, I accepted that in the original hearing

9    as well.

10               MS. HERTER: And I would also like to just point

11   out about the argument that our allegations of the note

12   have -- will potentially affect the note claim.  Those

13   allegations -- we filed this initial Complaint, I believe

14   it was February 19th, that had been pending for months

15   before the adversary proceeding on the note was filed,

16   and as the Chapter 11 Trustee's counsel mentioned,

17   there's already been liability admitted in that case.

18   They're working on an agreed motion for summary judgment.

19   So clearly, at least as to this note claim, the

20   allegations in our class action didn't have any detriment

21   or impact on that note claim because they're --

22               THE COURT: That's because it stopped (sic).

23               MS. HERTER: Our class action has stopped but

24   the allegations were there.

25               THE COURT: You represent -- you're in the one

41

1    in front of Judge Merryday; is that correct?

2            MS. HERTER: Yes.

3            THE COURT: Okay.

4            MS. HERTER: But the allegations were there.

5    And again, nothing that we have alleged about the nature

6    of the misappropriation is inconsistent --

7            THE COURT: I don't think -- I don't think

8    anybody is really saying the allegations. It's the

9    findings that are -- might be detrimental.

10           MS. HERTER: Well, and I don't believe that a

11   finding that -- I don't think we need a finding that note

12   is a sham in order to prevail on our claims, because

13   whether or not the note is legitimate doesn't take away

14   from the fact that these special needs trusts suffered

15   losses. They suffered property damage. Whether it's to

16   make a legitimate note, whether it was to buy a house, it

17   doesn't matter. What matters is the injury to these

18   special needs trust property, and this is the

19   beneficiaries' and the trusts' direct injury because the

20   Debtor does not have equitable interest in property that

21   it only holds legal title to as trustee. And, I'll also

22   point out that the fact that the claims involved, the

23   Debtor's conduct, again that doesn't mean that these

24   claims are against the Debtor.

25           There's -- we cite many, many cases in our

42

1    response and also our surreply.  But, for just one

2    example, the In re: Seven Seas Petroleum case from the

3    Fifth Circuit, I mean specifically -- that case

4    specifically noted that the claims at issue were against

5    the debtor's co-conspirators and specifically involved

6    the debtor's bad acts that the co-conspirator non-debtor

7    defendants assisted in or conspired with the debtor to do

8    to injure the plaintiffs in that case, and it

9    specifically held that the stay did not apply to those

10   claims, those are direct claims, despite the fact that

11   the debtor's conduct was at issue because they're not

12   claims against the debtor.  And even though they may be

13   are factually -- there's a factual likelihood that they

14   could impact estate property, that doesn't mean that they

15   are against the estate or they are claims against the

16   debtor.

17          And, the Second Circuit actually in the case of

18   Picard versus Fairfield Greenwich Limited, which is 762

19   F.3d 199, held that the stay does not apply to actions

20   against non-debtors even if they are factually likely to

21   impact estate property.  And the Supreme Court recently

22   followed suit in a way in the Purdue case because that

23   that opinion notes that the non-debtor defendants in that

24   case potentially had indemnity claims against the estate

25   and against the debtor for the opioid victim claims and

43

1    that still did not move these claims into being against

2    the estate or property of the estate.  Because what it

3    hinged on is that the interest involved, the nature of

4    the substantive rights involved in those claims and the

5    fact that they were direct claims for injuries to the

6    opioid victim claimants specifically that did not depend

7    on a separate injury to the debtor and the debtor cannot

8    have suffered an injury from the misappropriation of

9    trust property because the debtor has no equitable

10   interest in that trust property and would not have been

11   able to use it to pay its personal creditors if it had

12   not --

13            THE COURT: So --

14            MS. HERTER: -- filed for bankruptcy.

15            THE COURT: So I'll ask -- I asked Mr. Wirth a

16   couple of questions about the trust declaration and I did

17   read your response but if you could address that a little

18   bit because it's pretty clear, at least in the language,

19   that the beneficiaries had contributed this money to a

20   pool and, you know, it was obviously mismanaged, but it

21   was in a pool.

22            MS. HERTER: Yes.  And, for one, I mean, I think

23   it's important to read through the entire -- the entire

24   agreement and the first section --

25            THE COURT: Um-hum.  I did.

1          MS. HERTER: I'm not surprised.  But the first

2    section, Section 1.1, specifically it states

3    unambiguously the intent of establishing the trust, and

4    it states, the trust incorporates the recitals above and

5    hereby establishes a pool trust for the sole benefit of

6    the beneficiaries hereunder.

7          Sole benefit is defined in this declaration of

8    trust.  Sole benefit means, and this is Section 2.8, sole

9    benefit means that the trust and/or a trust sub-account

10   may not benefit anyone but the beneficiary for whom a

11   trust sub-account is established.

12         And then to go on, there's the spendthrift

13   provision that the Trustee cites, which is the section

14   heading that has no weight, is not binding, Section 3.1.

15   This is a classic spendthrift provision that the

16   beneficiaries have no claim on trust class assets.  This

17   is in trust to create spendthrift trusts which means that

18   creditors of the beneficiaries cannot reach into the

19   trust to --

20         THE COURT: Of course.

21         MS. HERTER: -- collect those assets.  The fact

22   that this is a spendthrift trust doesn't mean that the

23   beneficiaries don't have an equitable interest in their

24   own trust property.

25         THE COURT: No.  I know that -- I don't think

1   that.  I think that -- I mean, and I'm just learning

2   about these trusts, so I don't pretend to be an expert

3   and I'm not yet but I'm hoping everybody in this court is

4   going to teach me to be an expert, but they have to be,

5   it seems from reading it, that they have to be structured

6   a certain way so that the beneficiaries can continue to

7   receive public assistance and that seems to be a very

8   important goal in the structure of these.  Would you

9   agree with that?

10              MS. HERTER: Yes.  Yes.

11              THE COURT: Okay.

12              MS. HERTER: We do agree, and the statute --

13              THE COURT: And that there may be some things

14   that look odd to a typical trust attorney because you're

15   trying to protect the interest of the beneficiaries

16   getting Medicaid and whatever other public assistance

17   might be available.

18              MS. HERTER: Yes, and that is exactly what these

19   special needs trusts were established to do.

20              And on top of that, this declaration of trust

21   is governed by Florida law.

22              THE COURT: Um-hum.

23              MS. HERTER: And to the extent that the Trustee,

24   the Chapter 11 Trustee's argument is that it can use

25   trust property to benefit or to distribute through its

1   bankruptcy estate, there is Florida Statute 736.0507,

2   which is in the Florida Trust Code Chapter V governing

3   spendthrift trusts; and it again unambiguously states

4   that, except to the interest -- except to the extent of

5   the trustee's interest in the trust other than as a

6   trustee, trust property is not subject to personal

7   obligations of the trustee, even if the trustee becomes

8   insolvent or bankrupt.

9        So to the extent that any provision in this

10  declaration of trust could be read to give the Debtor

11  some interest in the trust or some ability to distribute

12  equitable trust property to -- through its bankruptcy

13  administration, that would be contrary to that provision

14  of the Florida Trust Code.

15       THE COURT: Well, that's a little broad reading

16  of that.  I mean, obviously a trustee can get paid for

17  services and pay people who are working for them.  So

18  that's --

19       MS. HERTER: Well, yes.  But that would be --

20  but that isn't trust property distributed to the

21  trustee's personal obligations.  That would be

22  obligations of the trust.

23       THE COURT: Well, an employee might be.

24       MS. HERTER: But, yeah, and then the trustee

25  cannot pay -- the Center could not have paid its

47

1    employees with trust property, and I don't think that

2    that any provision of this declaration of trust can --

3                THE COURT: Okay.

4                MS. HERTER: -- be read to provide otherwise.

5                And I also would like to point out as to the

6    argument that the Chapter 11 Trustee has stepped into the

7    shoes of the Debtor.  That may be true prepetition if a

8    new debtor -- or a new trustee came in to replace the

9    Center as the administrator and trustee of these special

10   needs trusts, but Section 541(b)(1) explicitly excludes

11   from the estate any benefit -- or any power that the

12   debtor may exercise on behalf of another entity that is

13   not the debtor.  And that is the -- any legal right to

14   bring claims on behalf of the trust, while that may have

15   existed prepetition, the fact that the Debtor is now in

16   bankruptcy, it changes things because that is explicitly

17   excluded from the estate.  And that is actually -- and we

18   addressed the case, the In re: Canon case from the Sixth

19   Circuit in our response to the same motion, also in our

20   surreply, which is this exact -- basically this exact

21   situation.

22               In that case, the debtor prior to filing for

23   bankruptcy had served as a trustee.  The debtor

24   misappropriated trust money from the trust under its

25   administration prepetition.  It transferred them to non-

1     bonafide purchasers, and then it filed for bankruptcy.

2     And the trustee in that case tried to bring claims in

3     bankruptcy, now the debtor, tried to bring claims in

4     bankruptcy for the misappropriation of the trust assets

5     that were under its administration and argue just as the

6     Chapter 11 Trustee is arguing here, that because it

7     served as trustee prepetition it has the right to bring

8     these claims on behalf of the trust.  But the Sixth

9     Circuit in that case found that the expressed trust

10    complicates matters because now that the debtor had filed

11    for bankruptcy and was in bankruptcy it no longer

12    had the ability to exercise that right because it's a

13    purely legal right, it's on behalf of the trust, and the

14    debtor itself and the estate had no equitable interest in

15    that right or in the trust property that was injured

16    giving rise to those claims.  And that's what made them,

17    those claims not estate property, which is basically an

18    analogous situation to what we have here.

19          THE COURT: But does that case say that the

20    trust goes away?

21          MS. HERTER: No, it doesn't say that the trust

22    goes away.  It actually cites, I believe it's the

23    O'Halloran case, and I will find that citation, but --

24          THE COURT: I think you said it was a Sixth

25    Circuit case --

1        MS. HERTER: Yes, and --

2        THE COURT: -- that you were referring to.

3        MS. HERTER: In the Sixth.  In that case the

4   Sixth Circuit cites -- let me find it.  I believe --

5        THE COURT: Well, it's okay.

6        MS. HERTER: Well, anyway, it's a case for the

7   proposition that when there is a breach of trust, when

8   there is a breach of fiduciary duty, the beneficiaries

9   also gain a right to sue for that breach of trust, to sue

10  on behalf of the trust when there is a breach of

11  fiduciary duty or a breach of trust on behalf of the

12  debtor.

13        So in this case, it would be like prepetition,

14  if the Debtor had not filed for bankruptcy and just

15  admitted outside of the bankruptcy case that this trust

16  money was misappropriated, there theoretically could be

17  commingled standing that the Trustee could sue on behalf

18  of the trust, but the beneficiaries could also sue on

19  behalf of the trust because of the breach of trust and

20  misappropriation, the breach of fiduciary duty.  However,

21  the filing of the bankruptcy petition changes that

22  because it specifically excludes that right that the

23  Debtor/Trustee otherwise may have had prepetition to sue

24  on behalf of the trust from the bankruptcy estate.  And I

25  don't think that the Chapter 11 Trustee is arguing that

50

1   this right to sue on behalf of the trust gives any right

2   to sue and collect money into the estate that wouldn't be

3   on behalf of the trust.  That would be on behalf of the

4   Debtor, because that would go to satisfy the Debtor's

5   personal obligations.  And when we have joint tortfeasors

6   who had custody, had control, over the trust property and

7   caused a over a hundred million dollar loss in trust

8   assets, there's no reason that the Debtor should be able

9   to bring claims to recover --

10          THE COURT: The Debtor's gone, Ms. Herter.

11          MS. HERTER: I'm sorry.  There's no reason that

12   the Chapter Trustee -- the Chapter 11 Trustee should

13   bring those claims in order to marshal recovery under

14   those claims to its estate to pay its own liabilities to

15   the beneficiaries.  The beneficiaries have claims against

16   the Debtor as well but they have these direct claims

17   against the non-debtor defendants, and there's no reason

18   that recovery for those claims should go to paying for

19   the Debtor's own liability.  They should be used to --

20          THE COURT: The beneficiary -- the liability to

21   the beneficiary.

22          MS. HERTER: Yes.  And they should be used to,

23   which is what we are trying to do, to recover as much as

24   possible through as many means and avenues as possible

25   for the beneficiaries who's special needs trust assets

1   were lost.

2          THE COURT: And, as I say, I think that's an

3   excellent idea, I just wish it could be coordinated

4   better.  But since it's not able to be so, I'm going to

5   have to make some decisions here.

6          MS. HERTER: And I just would like to --

7          THE COURT: Um-hum.

8          MS. HERTER: -- underscore again, we're not here

9   to say that this note claim can't go on while our class

10  claim is going on.  It's the opposite.  We're here in

11  response to a motion saying that our class action can't

12  go on while this note claim goes on.  But that is not

13  what we're trying to do, and if that can bring a

14  recovery --

15         THE COURT: So how is your class action

16  different from the one where they've consented to the

17  stay?

18         MS. HERTER: Well, for one, it's against the

19  Defendants.  The Orris Class Action, that they consented

20  to the stay, was largely against officers and directors

21  of the Center.  We took particular care -- even though we

22  think that based on the Purdue Pharma case that still

23  would not violate the stay -- we did take particular care

24  to not name any officers or directors of the Debtor in

25  our case, and we -- while we named Govoni and John

52

1    Staunton our case, they stopped being officers and

2    directors of the Center before the conducts that gave

3    rise to our claim which is the difference that we would

4    cite.

5            THE COURT: Okay.  Thank you.  Appreciate it.

6    Anything else?

7            MS. HERTER: Does the Court have any questions

8    that I can address?

9            THE COURT: I think I've already asked them but

10   thank you.

11           Yes.  On behalf of American Momentum.

12           MR. ROSALES: And, Your Honor, we have our own

13   motion pending as the Court --

14           THE COURT: Right.

15           MR. ROSALES: -- is aware.  And that's really

16   where I want to start.  Right.  We are here and the clash

17   is obvious and so the Court's inclination to kind of pump

18   the brakes I think makes a lot of sense.  And what I

19   would suggest is a slightly different question than what

20   you framed it which is does the Complaint violate the

21   automatic stay.  I agree, and I know I'm sitting over

22   here, but I agree with the articulation of the Trustee

23   and the creditors' committee.

24           What we're asking the Court to consider is

25   that, do the claims against American Momentum Bank

53

1  violate the automatic stay?  And the answer to that

2  question, Your Honor, is no.  They are outside of the

3  estate.  They're actually -- they alleged direct duties

4  on the part of my client to the beneficiaries, and we

5  didn't have any sort of contractual relationship with

6  those beneficiaries, and so that is the nature of our

7  motion to dismiss and that's what we're here to ask the

8  Court about.

9         I'm not asking the Court to lift the stay at

10  large, I'm not even asking the Court to lift the stay as

11  to my client.  We are taking a much more measured

12  approach, and it's to have one issue, one motion address

13  that I think is actually to the benefit of everybody

14  involved.  And so the analysis really hangs on, are the

15  claims alleged against American Momentum Bank assets of

16  the estate, and they're -- they're just not.  The way

17  that they're pled, they are direct claims, and they've

18  been very clear about that.

19         Now why are we not asking for the stay to be

20  lifted more broadly?  Well, it's because it didn't make

21  practical sense, Your Honor, and so we're trying to take

22  a more practical approach here.  There is one motion that

23  will have to be decided at some point and it may be in

24  this Court, it may be in that court, there's a lot of

25  ways that it could play out, but at some point it needs

54

1    to be addressed.  And as a matter of fairness, Your

2    Honor, American Momentum Bank respectfully submits that

3    it should be addressed sooner rather than later, and that

4    the estate and the beneficiaries are not harmed by having

5    that decision made sooner rather than later.  And I'll

6    note that Mr. Underwood talked about how this Court has

7    the opportunity to fashion protections for the estate, to

8    make sure that the estate is not prejudiced in any way,

9    and that we, of course, have offered that, what do you

10   need.  We have said on the record that this does not

11   prejudice the estate in any way, this is not binding in

12   any way, and we've kind of gotten some vague suggestions

13   about, you know, what conceivably could happen, and

14   nothing really concrete about how the estate or the

15   beneficiaries are actually prejudiced by moving this

16   forward a little bit.

17          By contrast, Your Honor, there is considerable

18   harm that is and continues to be visited on my client and

19   it is in two formats, Your Honor.  The first of those is

20   reputation harm.  I believe there are reporters here in

21   the room today.  This is not the only litigation going

22   on.  We had one of our executives testifying a little

23   over two weeks ago at a state court proceeding relating

24   to an appointment of a receiver and a Govoni-related

25   entity, and our witness was there simply to authenticate,

1    yes, these are bank documents and this is what these

2    documents mean and reflect.  And, of course, whoever is

3    on the other side of that doesn't like that particular

4    evidence goes after the witness and says, well, you know,

5    you're a defendant in a hundred million dollar class

6    action and therefore, you know, you've got an interest in

7    protecting yourselves.  And the key here, Your Honor, is

8    American Momentum Bank -- it's not Wells Fargo or JP

9    Morgan or Bank of America -- it operates in a few

10    counties in Texas and in a few counties in Florida, three

11    of those counties are right here, all right.  It's

12    Hillsborough, it's Pinellas, it's Sarasota.  And so these

13    fights are going on out in the public record.

14          And, Your Honor, I have for the Court, if you

15    will give me permission to approach, and I've got copies

16    for everybody who would like one, just I flagged a couple

17    of points from that testimony.  This is a transcript from

18    the hearing in that Pinellas County case.  Just it's

19    illustrative of the kinds of things that are being said

20    about our client, and it's completely unnecessary,

21    unwarranted.  Our employees, they don't deserve this.

22    They haven't done anything.

23          Remember, Judge, nobody here has said that

24    American Momentum Bank did anything other than what its

25    customer told it to do.  The Plaintiffs take issue with

56

1    that.  They say they shouldn't have.  They say that they

2    should --

3              THE COURT: Well, as I understand in reading

4    your papers, you're saying that you should be let out of

5    Judge Merryday's case, which I have nothing to do with --

6              MR. ROSALES: Right.

7              THE COURT: -- because you had no direct

8    relationship with the beneficiaries.

9              MR. ROSALES: That's -- that is the crux of our

10   argument.  I'm not going to say that's --

11             THE COURT: It's a motion to dismiss.

12             MR. ROSALES: -- all of it, but that is a big

13   portion of it, yes, Your Honor.  There is --

14             THE COURT: So that doesn't -- I don't know how

15   that, you know, to suggest that, well, maybe the Debtor

16   has a claim against your client doesn't really help your

17   reputation.

18             MR. ROSALES: And I don't believe that the

19   Debtor does, and certainly we're not making that

20   argument.  We don't think there are any viable claims

21   against our client because our client did --

22             THE COURT: I mean, I don't know that --

23             MR. ROSALES: Right.

24             THE COURT: -- at all but...

25             MR. ROSALES: And so what we are saying is that

1   they haven't said they have a claim, and so we're not

2   picking that fight.  They've said they have a claim.

3   We're saying as a matter of law in the State of Florida,

4   under the Eleventh Circuit, they don't based on what they

5   have pled.  And the key thing here is, no findings have

6   to be made in terms of the findings that we're actually

7   concerned about.  The only finding at issue here is, does

8   this Complaint sufficiently, plausibly allege a cause of

9   action?  Does it pass muster under Twombly and Iqbal?

10  And in our view of the world, it does not.  And so, you

11  know, we think that we should be let out of that.

12          We don't think the Trustee is going to assert

13  claims.  We think they're going to review everything that

14  happened.  And this is the same Trustee that has asked

15  the Court five or six times now -- I guess the Debtor and

16  the Trustee -- to keep the money at American Momentum

17  Bank.  If they thought American Momentum Bank had been,

18  you know, doing something nefarious --

19          THE COURT: I wouldn't count on that as a

20  defense.

21          MR. ROSALES: Well, it is a point for cross

22  examination, Your Honor, right.  The Debtor, the Debtor

23  who performed a pre-bankruptcy investigation asked this

24  Court to keep the money there.

25          THE COURT: We're with a new animal now.  We've

58

1    got a Chapter -- an 11 Trustee who is --

2            MR. ROSALES: No question.  And they have a

3    duty, they're duty bound to investigate.

4            THE COURT: They were given what they have and

5    they're doing the best they can with it.  I just wouldn't

6    read anything into that.

7            MR. ROSALES: Undoubtedly, Your Honor.  And

8    we're not suggesting anything to prejudice that.  I'm

9    just telling you, I don't think it's going to happen

10   because I don't think there's any claims out there.  I'm

11   not suggesting that it's binding on them, and quite the

12   opposite.  What I'm saying here is there is nothing that

13   is binding on them.  There is no way that a ruling on

14   this motion to dismiss can harm the estate or the

15   beneficiaries except to the extent that the claims --

16           THE COURT: Well, if the motion is -- and you

17   say it's not just whether or not they have standing,

18   you're saying that it's more than that, that it's going

19   to clear your name.  But if it's just a technical issue,

20   I don't -- how does that help you?

21           MR. ROSALES: Being dismissed from a hundred

22   million dollar class action, Your Honor?

23           THE COURT: Um-hum.  Just on that basis.

24           MR. ROSALES: Yes, Your Honor.  And again,

25   right, we are -- we're a relatively small bank and so we

1    have bankers -- we're trying to hire people and they can

2    go to this bank over here that has a hundred million

3    dollar lawsuit looming over them, or they can go to this

4    bank that doesn't, or we have a customer who is

5    considering where they want to move their banking

6    relationship and they're facing that same calculus.  This

7    is the harm that cannot be quantified but it is real and

8    it persists, and as a matter of fairness, we believe,

9    Your Honor, shouldn't be visited on our -- on our client.

10        THE COURT: Well, do -- if the Complaint

11   violates the stay, how does that affect you?

12        MR. ROSALES: Well, and that's why, Your Honor,

13   we're not asking for the case at large to go forward.

14   We're asking for this one narrow issue to be resolved

15   that can be resolved without triggering any of the

16   concerns that have been raised either by the Trustee's

17   counsel or by the creditors' committee counsel.

18        The other thing that I need to clarify is the

19   beneficiaries actually have an interest in getting this

20   resolved sooner rather than later, and that's, Your

21   Honor, because we actually are a creditor and we are a

22   secured creditor as the bank that, you know, has the --

23   the Debtor's accounts.  We have indemnity obligations.

24   We have not filed a proof of claim, that's coming, and

25   the main reason we haven't filed it, Your Honor, is we're

1    not trying to be antagonistic here.  I don't want to be

2    at odds with these people.  I want as -- I want every

3    dollar to be recovered for these beneficiaries.

4         We do have contractual indemnity rights in our

5    contracts with The Center for Special Needs Trust.  Those

6    rights are secured by the money that is currently and was

7    held in American Momentum Bank accounts and we provided

8    or we included in one of the orders a provision that

9    moving it to another account does not --

10         THE COURT: So what you're telling me is that if

11    I allow the class plaintiffs to proceed against you, that

12    it will create claims against the estate against for this

13    indemnification?

14         MR. ROSALES: What I am suggesting, Your Honor,

15    is that -- I don't think so.  What I am suggesting, Your

16    Honor, is that us being dismissed from that case sooner

17    is ultimately to the benefit of the beneficiaries.

18         THE COURT: You could lose.

19         MR. ROSALES: That's true.

20         THE COURT: Okay.

21         MR. ROSALES: That is absolutely true, Your

22    Honor, and that's why there's no unfair prejudice, right.

23         THE COURT: And if you lose, then you're telling

24    me you're going to kind of make claims against the Debtor

25    for indemnification, which means that it implicates the

1   automatic stay.

2          MR. ROSALES: Well, we're going to -- we've got

3   a deadline coming up.  We're going to have to -- we're

4   going to have to protect our interests no matter what.

5   What I'm saying is, my client is not trying to be

6   greedy here.  At some point, though, the expense gets to

7   a point where you just can't ignore it anymore, and

8   that's why I'm trying to minimize the unnecessary

9   expense.

10          You're right, we could lose, that is a

11  possibility, but that is as true nine months from now or

12  twelve months from now.  The difference is at that point

13  we've incurred a lot more in fees that perhaps could have

14  been avoided by being dismissed from that case, and so

15  there's an opportunity to save that expense, and in my --

16  in my estimation, I believe reduce the likelihood that we

17  would proceed and pursue an indemnification claim for all

18  of the defense costs.

19          THE COURT: I don't think Ms. Herter is going to

20  agree that you're going to prevail.

21          MR. ROSALES: I wouldn't expect her to, Your

22  Honor.  And again, but if that happens, there's no harm

23  to anybody.  Obviously, that's not a good outcome for me,

24  but it's not harm.

25          THE COURT: But you told me that it's not a good

1  outcome for the estate, too, because then you would claim

2  indemnification.

3          MR. ROSALES: That's happening -- unfortunately,

4  Your Honor, we've got to protect our interest.

5          THE COURT: Okay.  That's fine.

6          MR. ROSALES: And we're going to work with

7  the --

8          THE COURT: That's fine.  I have a single issue,

9  whether this proceeding that's pending in front of Judge

10 Merryday violates the automatic stay and interferes with

11 the administration of this Chapter 11 case.

12         MR. ROSALES: And our position is just very

13 simply that the motion to dismiss can be resolved to the

14 benefit ultimately, we believe, of the beneficiaries.

15 Yes, to the benefit of my client, too.  I wouldn't be

16 asking for it if it wasn't beneficial, but we believe to

17 the ultimate benefit of the beneficiaries without

18 touching any of the issues about which they're concerned.

19         And, so it's very limited relief.  It's a

20 comfort order, right.  We're not saying exactly lift the

21 stay.  We're saying the stay doesn't apply as to the

22 claims against us, and I recognize, right, the claims

23 more largely -- they clash, right.  You can't collect the

24 same hundred million dollars from, you know, Leo Govoni

25 over here that you can collect from him over here.  I

1   think that's indisputable.  But we do believe that this

2   narrow issue can be resolved fully and fairly to the

3   benefit of all of the parties and without harming

4   anybody, and to the extent that there are protections

5   that they want in place that are separate from what we

6   have said on the record that this is not binding on the

7   estate, we are absolutely open to that.  We welcome those

8   suggestions.  We've been welcoming that conversation for

9   months now.

10           THE COURT: Okay.  Thank you.

11           All right.  Turning to this side of the room.

12  Mr. Wirth, do you want to do a brief rebuttal?

13           MR. WIRTH: Yes, just briefly, Your Honor.

14           I think the Court understands the issue quite

15  well.  You know, obviously, we think there's a potential

16  of implicating the estate in an adverse ruling on a

17  motion to dismiss, you know, and for all of the reasons

18  we stated on our motion to stay, to enforce a stay with

19  respect to the class action.  And again, they're pursuing

20  the hundred million dollars, I didn't see any -- I didn't

21  hear anything really different.

22           THE COURT: Well, they're saying they're

23  pursuing more than the hundred million dollars.

24           MR. WIRTH: But I didn't actually hear anything

25  that was articulated above and beyond that.  But --

64

1          THE COURT: Punitive damages, treble damages.

2          MR. WIRTH: Okay.  And so -- but, Your Honor,

3     one point I want to make clear and I don't think -- maybe

4     I didn't articulate it well enough before is so the

5     derivative claims Mr. Goldberg clearly has standing to

6     bring as Chapter 11 Trustee on behalf of the Debtor.

7     He's also the Trustee.

8          THE COURT: Well, Ms. Herter says that once a

9     bankruptcy is filed you have the power to bring no

10    claims.

11         MR. WIRTH: Well, I mean, that's obviously not a

12    correct reading of 541, I think.

13         So he's still the Trustee, he's still the

14    Trustee of these beneficiary special needs trusts.  He

15    has standing, and he's the proper plaintiff to bring

16    those direct claims.  That's not -- that doesn't mean

17    that those direct claims are estate property, but he's

18    the person to pursue those as Trustee, and that's clear

19    under the trust documents and Florida law.  I mean, he's

20    the proper plaintiff.

21         So, you know, our real concern here is that,

22    you know, the case against AMB goes forward where Mr.

23    Goldberg should be the plaintiff and his counsel should

24    be in there on behalf of the beneficiaries as trustee and

25    also possibly as a derivative claim on behalf of the

1    Center against AMB, but those claims are going to be

2    investigated by the Trustee and, you know, ultimately

3    brought or not brought, but we haven't done that.  But,

4    you know, again, you know, in the context of responding

5    to a motion to dismiss, undoubtedly the Class Plaintiffs

6    are going to assert the same things that they have

7    asserted throughout their Complaint.  You know, the note

8    is a sham, the Debtor's involved in this fraud and

9    misappropriated these funds.  And, you know, finding an

10   adverse finding we think could possibly be detrimental to

11   the estate's claims because they're inextricably

12   intertwined we think with the claims, the direct claims.

13        So for those reasons we don't -- we don't think

14   the stay should be lifted.  We think -- we think that the

15   Trustee and the estate have an interest in that lawsuit

16   and that claim as it's framed now.  So for those reasons

17   we think the motion should be denied.

18             THE COURT: Thank you.

19             MR. ROSALES: May I respond?

20             THE COURT: Well, let Mr. Underwood go first.

21             MR. UNDERWOOD: Your Honor, I'm going to try to

22   be really brief.

23             THE COURT: Um-hum.

24             MR. UNDERWOOD: Particularly with connection to

25   Ms. Herter's argument.  You had asked a specific question

1    about the Complaint and whether it sought the same

2    hundred million dollars that related to the loan, and to

3    that end I would suggest that Your Honor or chambers --

4    there's too many citations to give you them all now --

5    search for the phrase not "a" hundred million dollars or

6    in excess but search for the phrase "the" one hundred

7    million dollars.  And, if Your Honor were to look at just

8    the most blatant example of Count I is conversion count,

9    and within that count Paragraph 199 specifically refers

10   to BFG, Govoni, Staunton, and Golden wrongfully

11   transferred the funds from S -- the SNT accounts to BFG's

12   for the purported BFG loan.  That's the collectively the

13   hundred million dollar issue.  So it definitely crosses

14   over, which is back to my point.

15        As a matter of fact, I could come up, if you

16   were to ask me to just theorize other damages that the

17   beneficiaries have, I could definitely come up with some.

18   I think there's emotional damage claims.  There are

19   potential beneficiary claims that are -- seem unique but

20   they're just not the ones that currently are -- are in

21   the Complaint.  And there was also references to the

22   Seven Seas case and co-conspirators and that this case

23   was different than that and not the other class action

24   pending because it doesn't name directors and officers.

25   The counts in this Complaint, and we've cited to the ones

1    that are at issue, referenced management, the managing

2    members, that the parties were acting as agents to the

3    Debtor, which so I will leave it there.

4            I'll just note that Purdue has been mentioned a

5    few times.  Before Purdue, we were saying everyone needs

6    to coordinate against all the bad actors and all who

7    aided and abetted the bad actors.  That point to me is

8    even more highlighted now.  The reality of Purdue is we

9    have to work together because parties that maybe wishing

10   to pay money are going to be looking for -- just like

11   they did before the Purdue ruling -- as complete releases

12   as possible, which means coordination would be beneficial

13   to everyone.  So I think Purdue is important and it's

14   telling but it's telling as to why we need to be

15   cooperative.

16           So with that, I'll move to the AMB point and,

17   you know, the AMB's primary position is their cause is

18   that they should be dismissed because it's bad press

19   essentially.  And that, one, I'm not aware of any case

20   that cites to that being cause; two, it seems to be that

21   they have such a strong belief that they're going to win,

22   including one of their arguments is a factual one, of

23   whether they had actual knowledge of what was going on

24   here.  And to say you don't want press and yet make this

25   argument brings you in attention, because I've read the

68

1    AMB, the American Momentum Bank allegations, they are

2    strong.  These were known trust accounts.  The name of

3    the entity is The Center for Special Needs Trust.  These

4    were known pooled trusts.  Under "know your customer"

5    American Momentum Bank should have known who its

6    customers were, who the related business is; Boston

7    Financial Group, Boston Asset Management, the other

8    Govoni entities, the other Staunton entities.  They are

9    very serious allegations regardless of who brings them.

10            I think it's nearly outrageous to say that our

11   constituent beneficiaries would be benefitted by American

12   Momentum Bank being dismissed from any claims that would

13   benefit beneficiaries whether they violate a stay or not.

14   But the idea that they need stay relief because of the

15   bad press, it's an interesting approach, particularly

16   when the opening statement was that the defense is going

17   to be essentially "we did what our client told us" which

18   was the Debtor entity, The Center for Special Needs

19   Trust.  So they knew what they were being told in

20   connection with the trust, to transfer money outside of

21   trust accounts to what are beyond at this point even

22   alleged bad actors, pretty well-known bad actors, and I

23   think to grant American Momentum Bank here stay relief --

24   our primary point, we underline the phrase the

25   beneficiaries in our written reply repeatedly, because I

1    think they should be the focus.  They are the

2    beneficiaries of this bankruptcy estate.  They're

3    beneficiaries of that litigation.  They're the victims.

4    They do not benefit, there is no cause for them and no

5    benefit for them in granting American Momentum Bank an

6    opportunity to have its narrow issue or it's the only

7    party that can possibly win.  Particularly, when I think

8    Mr. Wirth is right, if that goes forward, the Chapter 11

9    Trustee should at least have a say in it, and again it

10   highlights the need for cooperation because it may be one

11   where if brought jointly or claims are brought at the

12   same it eliminates American Momentum Bank's ability to

13   say, you can't sue us but you can or vice versa.  Thank

14   you.

15            THE COURT: Okay.  Yes, you may.

16            MS. HERTER: May I briefly respond?

17            THE COURT: Well, why don't you go first, Ms.

18   Herter, since you went first and then we'll pick up

19   the --

20            MS. HERTER: So just a couple of points in

21   response to American Momentum Bank's argument, and just

22   want to note about the Chapter 11 Trustee's argument

23   regarding the Debtor's legal ability to sue or Chapter 11

24   Trustee's legal ability to sue on behalf of trusts.

25            It's explicit in the Bankruptcy Code Section

1  541(b)(1), that excluded from the bankruptcy estate is

2  any power the debtor may exercise on behalf of another

3  entity other than the debtor.  So to the extent that the

4  Chapter 11 Trustee admits that these are direct claims

5  that argues the Chapter 11 Trustee can bring them as

6  stepping into the shoes of the Debtor, that is exactly

7  the situation that 541(b)(1) covers.

8          THE COURT: I don't think he's exactly conceded

9  that these are direct claims.

10          MS. HERTER: I did hear there may be direct

11  claims.

12          THE COURT: At least to the extent of the

13  hundred million for sure.

14          MS. HERTER: And I do -- and again, we're not

15  going -- the same hundred million dollars is -- is such

16  an odd way in my opinion to paint these claims because

17  we're not going after, we're not trying to follow the

18  hundred million dollars that came out of the trust and

19  went through the Debtor to other defendants.  We are

20  alleging that because of breaches of duty these Class

21  Defendants owed to the trust or to beneficiaries, they

22  allowed a hundred million dollars to be misappropriated

23  from the special needs trust, and to make beneficiaries

24  and their trust whole again, they need to pay

25  compensatory damages.  That is a theory.  We're not

1 trying to find the same money, we're not trying to sue

2 under the loan documents.

3          THE COURT: Out of trust to those claims for

4 compensatory damages could be included in the proofs of

5 claim that are filed against the Debtor as well.

6          MS. HERTER: Yes.  And our theory is there's

7 joint liability here, and to that extent, collecting from

8 jointly liable tortfeasors in order to proportionately

9 lessen or reduce the beneficiaries' claims against the

10 estate is actually helpful to the estate.  And that kind

11 of segues into the argument of the American Momentum Bank

12 counsel made about potential indemnification claims it

13 may have against the Debtor.

14          In the Purdue Pharma case, it was specifically

15 noted that the Sackler family had potential

16 indemnification claims against the debtor.  That still

17 did not affect the court's reasoning or holding that

18 these claims by the opioid victim claimants against the

19 non-debtor Sacklers are not estate property and are not

20 against the estate, and it doesn't matter that again

21 that the debtor's conduct was legally relevant factor and

22 didn't even matter that the court's decision had the

23 potential to blow up a multi-billion dollar bankruptcy

24 plan, because as a matter of law the direct claims for

25 direct injuries against non-debtor defendants were not

72

1   estate property and the bankruptcy trustee did not have

2   authority to act on them.

3            THE COURT: And I think that's -- I think that

4   last sentence really characterized it.  And so now as a

5   result of that decision the beneficiaries are getting

6   nothing for a long time, correct?

7            MS. HERTER: Well, not necessarily, because

8   again if there's collection --

9            THE COURT: Well, at least the first one to get

10  in there and get a judgment might.

11           MS. HERTER: Right.  And if, you know, there's a

12  settlement on the note and there's collection on the note

13  claim in the meantime.

14           THE COURT: And that's -- I think that's why I

15  would again strongly urge the parties to coordinate, that

16  we've got to do what's best for everybody and --

17           MS. HERTER: I just -- and we would like to do

18  that but we're at such a difficult position right now

19  because again we've essentially paused our class action

20  case.  We had a pending motion to be appointed interim

21  counsel, specifically which requested the authority to

22  negotiate with the Chapter 11 Trustee, come to an

23  agreement with the Chapter 11 Trustee, but we just do not

24  -- we do not have the authority right now.  The class has

25  not been certified, and we can not bind a putative class

1  of beneficiaries to any agreement as to how these claims

2  are going to be allocated, how recovery under our class,

3  putative class that hasn't been certified is going to be

4  allocated until we at least have that interim appointment

5  as lead counsel with the authority from the district

6  court to enter into those negotiations and bind a

7  putative class to whatever we are able to come up with as

8  an agreement.

9        THE COURT: Okay.  I understand.  Thank you.

10  Yes.

11        MR. ROSALES: Thank you, Your Honor.  I'll be

12  brief.

13        In response to Mr. Wirth's suggestion that the

14  claims rightfully belong to Mr. Goldberg, it's axiomatic

15  that if the claim belongs to somebody else, I can't

16  prejudice that person's rights by saying it's my claim.

17  And so I just -- I don't think that's a fair and

18  legitimate concern, particularly given the extent to

19  which we've stated on the record and our briefing this is

20  not binding on the Trustee in any way.  And so I just --

21  I don't buy that, Your Honor, and I don't think the Court

22  should.

23        In response to the creditors' committee, what

24  they're saying is effectively what the Plaintiff said.

25  You should have known, there were red flags.  And we have

74

1   articulated in our motion to dismiss briefing where the

2   Eleventh Circuit has said time and again that's not

3   enough.  You have to have not just knowledge but actual

4   participation you're misrepresenting things.  We cited

5   all that to the Court.  That's not really before the

6   Court, right.  That's a question for Judge Merryday.

7   What they're really suggesting is that Rule 12(b)(6) just

8   shouldn't apply to my client, right, and we should --

9           THE COURT: Well, it may be a question for me if

10  the committee or the estate brings claims.

11          MR. ROSALES: Undoubtedly, and it will be under

12  a different paradigm, right.

13          To begin with, if it is the Trustee, there will

14  be a contractual relationship that is not implicated by

15  what Judge Merryday has to decide on the motion to

16  dismiss, and that the suggestion that, you know, Rule

17  12(b)(6) just be disregarded until we get, you know, a

18  full airing of facts and discovery, well, there's not a

19  rule that says you get to skip over 12(b)(6).  And so

20  that's -- that's a threshold question of are these claims

21  adequately pleaded, they have to be decided.  We believe

22  that it's more efficient to do it sooner rather than

23  later.  They don't have to lift a finger.  And if they

24  ultimately decide to pursue claims, then we will have to

25  do it all over again.  They don't have to engage in this,

1    and it will not prejudice them in any way.

2           THE COURT: Okay.  I understand what you're

3    saying.  I appreciate it.

4           MR. ROSALES: Thank you, Your Honor.

5           THE COURT: Thank you.

6           And again, I wish that we were not spending all

7    this time and attorneys' efforts trying to decide who is

8    going to bring these claims.  I think it's a waste, but

9    it is what it is and I'm going to make a decision.  I'll

10   make it quickly.  I'm going to go back and read some of

11   the cases and make a final decision, but I'll make it as

12   quickly as I can and get it out to you.

13          The last thing I wanted to just note is I think

14   we kind of covered the adversary proceeding.  The Court

15   has entered the scheduling order, and Mr. Wirth reported

16   that the parties were working on some kind of an

17   agreement.  So as far as the status conference goes,

18   should I just continue and set another status conference?

19          MR. WIRTH: I think so, Your Honor.  I think

20   that was sufficient for purposes of the status conference

21   earlier.

22          THE COURT: Okay.

23          MR. WIRTH: Earlier in discussion.

24          THE COURT: Mr. McBride, are you in agreement

25   with that?

76

1          MR. MCBRIDE: Yes, Your Honor.  I think we're --

2          THE COURT: Okay.

3          MR. MCBRIDE: -- fine with that.  We should be

4    able to get this resolved.  I think the current

5    scheduling order is 21 days for a response and I think,

6    as Mr. Wirth mentioned, our response would probably be

7    some form of submission of a proposed order.  But that

8    has not been finalized yet --

9          THE COURT: Okay.

10         MR. MCBRIDE: -- liability obviously.  We still

11   have a lot of work to do to figure out as far --

12         THE COURT: So, Ms. Chatham -

13         MR. MCBRIDE: -- damages.

14         THE COURT: -- remind me, what was the date that

15   we continued the other two motions?

16         THE CLERK: September 9th.

17         THE COURT: September 9th.  So I'll just

18   continue the pretrial conference until September 9th and

19   you can both report back to me.  And if there's any

20   change in the circumstances, I'll expect Rule 26 meetings

21   and the like, but it sounds like things are progressing

22   well.

23         All right.  Thank you everyone for the

24   arguments.  Very helpful.  Very good.  I'm going to take

25   the matter under advisement, and as I said, I'll get an

1    order out as soon as I can.  We'll be in recess.

2              MR. WIRTH: Thank you, Your Honor.

3              (Thereupon, the taking of the proceedings was

4    concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings in

the above-styled matter.


*Cynthia D. Vachon*                September 3, 2024

Cynthia D. Vachon

Notary Public-State of Florida

Commission Expires: 07/24/2026

Commission Number: HH291609

**A**

**abetted** 67:7
**ability** 34:20 46:11
 48:12 69:12,23,24
**able** 8:20 20:14 43:11
 50:8 51:4 73:7 76:4
**above-styled** 78:4
**absolutely** 22:13
 27:14 60:21 63:7
**accepted** 40:8
**account** 8:24 24:11
 60:9
**accountant** 14:20,21
**accounting** 3:10
 24:23 38:9
**accounts** 4:12,14 9:6
 15:2 24:8,9 29:10
 59:23 60:7 66:11
 68:2,21
**ACCREDITED** 1:48
**achieved** 30:23
**acknowledged** 22:16
 32:13
**acreporters@emba...**
 1:49
**act** 72:2
**acting** 67:2
**action** 6:7,12,23 11:6
 11:7,7,10 12:6,23
 13:16 14:8 15:10
 23:4 26:9,23 28:22
 29:15,17 30:5,19
 31:11 34:24 35:13
 35:15 36:7,10 37:18
 37:18,20 40:1,20,23
 51:11,15,19 55:6
 57:9 58:22 63:19
 66:23 72:19
**actions** 11:4 37:8
 42:19
**actors** 67:6,7 68:22
 68:22
**acts** 13:21 31:12 42:6
**actual** 38:5 67:23
 74:3
**add** 19:15
**addition** 38:4

**additional** 22:5,17
 23:20 38:1,8
**address** 19:8 43:17
 52:8 53:12
**addressed** 47:18 54:1
 54:3
**adequately** 74:21
**adjudication** 22:24
**administers** 11:14
**administration** 1:10
 1:20 5:11 7:20,25
 8:14 15:11 46:13
 47:25 48:5 62:11
**administrator** 47:9
**admits** 70:4
**admitted** 40:17 49:15
**ADV** 1:15
**adversary** 2:27,35,44
 3:33 5:11 6:1 8:2
 21:5 26:8 29:20
 40:15 75:14
**adverse** 63:16 65:10
**advisement** 76:25
**Advisory** 6:4
**AEP** 18:15
**affect** 40:12 59:11
 71:17
**affirmative** 12:10
 37:20
**afternoon** 5:7,17,20
 5:24 6:2,6,11 7:1
**agents** 67:2
**agnostic** 28:21
**ago** 27:6 32:2 54:23
**agree** 12:16 28:18
 30:17 36:1 45:9,12
 52:21,22 61:20
**agreed** 8:7 40:18
**agreement** 34:11
 39:3 43:24 72:23
 73:1,8 75:17,24
**agreements** 34:10
**ahead** 9:10
**aided** 67:7
**airing** 74:18
**Akerman** 2:4 5:18
**allegations** 13:22

15:15 25:17,23
 27:25 30:15 32:19
 40:11,13,20,24 41:4
 41:8 68:1,9
**allege** 31:5 33:8 38:8
 38:10 57:8
**alleged** 27:3 29:19
 30:20 33:5 41:5
 53:3,15 68:22
**alleges** 13:19,24
**alleging** 30:19 70:20
**allocated** 73:2,4
**allow** 24:18 60:11
**allowed** 24:9 38:16
 70:22
**AMB** 64:22 65:1
 67:16 68:1
**AMB's** 67:17
**amend** 26:12
**Amended** 26:9
**America** 55:9
**American** 3:17,24
 4:21 6:15 10:21
 23:9,10 52:11,25
 53:15 54:2 55:8,24
 57:16,17 60:7 68:1
 68:5,11,23 69:5,12
 69:21 71:11
**amounts** 19:12
**analogous** 48:18
**analysis** 14:22 15:8
 17:1 18:1 22:25
 23:1 24:19 53:14
**and/or** 44:9
**animal** 57:25
**answer** 28:10 53:1
**answers** 12:10
**antagonistic** 60:1
**anybody** 10:15 41:8
 61:23 63:4
**anymore** 61:7
**anyone's** 18:4
**anyway** 10:18 49:6
**apparent** 13:11,12
**appearance** 5:16 6:19
 6:20
**appearances** 3:1 5:14

7:4
**Appearing** 2:8,16,25
 2:33,42 3:8,17,24
 3:31,40
**appears** 27:6
**applauding** 13:6
**applies** 10:23 34:19
**apply** 42:9,19 62:21
 74:8
**appointed** 35:16 39:2
 72:20
**appointment** 11:18
 35:17 54:24 73:4
**appreciate** 32:10
 52:5 75:3
**approach** 53:12,22
 55:15 68:15
**approval** 4:7 8:15
**approving** 8:14
**approximately** 11:16
 11:22
**April** 12:8
**argue** 22:23 30:12
 48:5
**argued** 36:2 37:19
**argues** 70:5
**arguing** 26:18 28:22
 37:14 48:6 49:25
**argument** 16:10
 40:11 45:24 47:6
 56:10,20 65:25
 67:25 69:21,22
 71:11
**arguments** 19:2
 26:15 67:22 76:24
**articulate** 64:4
**articulated** 63:25
 74:1
**articulation** 52:22
**Ashley** 3:5
**asked** 21:8,20 28:25
 37:25 39:19 43:15
 52:9 57:14,23 65:25
**asking** 34:23 38:21
 52:24 53:9,10,19
 59:13,14 62:16
**aspect** 21:14

**assert** 15:15 16:19
21:18 57:12 65:6
**asserted** 12:10 13:23
14:8 23:22 25:19
32:17 65:7
**asserting** 26:17 31:12
31:13
**assertion** 25:12 28:3
**asserts** 13:20
**asset** 3:9 6:3 22:1
38:9 68:7
**assets** 12:3 25:6 31:6
33:10,13,25,25 34:1
44:16,21 48:4 50:8
50:25 53:15
**assistance** 45:7,16
**assisted** 42:7
**assume** 8:15 22:7
**assuming** 37:3
**attached** 14:22
**attempts** 36:15
**attending** 6:9
**attention** 67:25
**attorney** 3:35 45:14
**attorneys** 6:18 22:6
22:10 75:7
**August** 8:22,22 9:12
**Austin** 3:8 6:3
**authenticate** 54:25
**authority** 4:11 9:5
35:21 39:2 72:2,21
72:24 73:5
**automatic** 4:17 10:22
11:3 14:6 16:14
21:6,21 28:23 36:7
36:11,14 37:5 52:21
53:1 61:1 62:10
**available** 9:1 45:17
**AVENUE** 1:41
**avenues** 50:24
**avoided** 61:14
**aware** 11:22 52:15
67:19
**axiomatic** 73:14

**B**
**back** 5:5 15:2 16:4

17:15 24:24 66:14
75:10 76:19
**background** 11:12
**bad** 13:21 15:16 42:6
67:6,7,18 68:15,22
68:22
**bank** 3:17,24 4:12,21
6:15 8:23 9:6 10:22
23:9 52:25 53:15
54:2 55:1,8,9,24
57:17,17 58:25 59:2
59:4,22 60:7 68:1,5
68:12,23 69:5 71:11
**Bank's** 23:10 69:12
69:21
**bankers** 59:1
**banking** 59:5
**bankrupt** 46:8
**bankruptcy** 1:1,38
5:4 12:2,6 19:5,5
21:11 29:19 30:20
43:14 46:1,12 47:16
47:23 48:1,3,4,11
48:11 49:14,15,21
49:24 64:9 69:2,25
70:1 71:23 72:1
**bar** 26:3
**based** 33:8,22 34:6,8
38:15 51:22 57:4
**basically** 12:11 47:20
48:17
**basis** 8:17 9:11 16:11
58:23
**Beck** 3:13
**beginning** 9:4
**behalf** 2:8,16,25,33
2:42 3:8,17,24,31
3:40 5:18,25 6:3,7
6:12,15,22 7:2 11:5
16:22 17:18,23
35:13,22,25 39:4
47:12,14 48:8,13
49:10,11,17,19,24
50:1,3,3 52:11 64:6
64:24,25 69:24 70:2
**belief** 67:21
**believe** 31:22 38:13

39:24 40:13 41:10
48:22 49:4 54:20
56:18 59:8 61:16
62:14,16 63:1 74:21
**believes** 14:8
**belong** 20:23,23
23:22,22 28:10
73:14
**belonged** 32:17
**belongs** 73:15
**beneficial** 37:6 62:16
67:12
**beneficiaries** 7:24
11:5,17 13:8 15:2
18:25 19:2,21,22
20:3,5,6,10 21:12
23:11,12,16,23
24:21 26:18,19,20
27:10,13,16 31:17
32:24 33:24 34:19
35:7,9 36:17 37:6
38:18 39:3,5 40:1
41:19 43:19 44:6,16
44:18,23 45:6,15
49:8,18 50:15,15,25
53:4,6 54:4,15 56:8
58:15 59:19 60:3,17
62:14,17 64:24
66:17 68:11,13,25
69:2,3 70:21,23
71:9 72:5 73:1
**beneficiary** 13:13,14
19:24 20:5,6 35:2
44:10 50:20,21
64:14 66:19
**benefit** 13:8 18:13
27:22 39:16,25 44:5
44:7,8,9,10 45:25
47:11 53:13 60:17
62:14,15,17 63:3
68:13 69:4,5
**benefitted** 68:11
**best** 7:23 13:12 38:17
38:22 58:5 72:16
**better** 36:12 51:4
**beyond** 25:20 63:25
68:21

**BFG** 12:8 17:12
29:22 66:10,12
**BFG's** 66:11
**big** 25:15 35:5 56:12
**bind** 35:22 39:2
72:25 73:6
**binding** 44:14 54:11
58:11,13 63:6 73:20
**bit** 7:21 11:12 29:5
43:18 54:16
**blatant** 66:8
**blow** 71:23
**Bokor** 3:4
**bonafide** 48:1
**Boston** 1:25 2:42 3:9
5:12,25 6:3 11:23
13:1 38:9 68:6,7
**bottom** 15:9
**Boulevard** 2:22,39
3:21,28
**bound** 58:3
**Boy** 3:21
**brakes** 52:18
**breach** 49:7,8,9,10,11
49:19,20
**breaches** 70:20
**breaks** 20:20
**brief** 8:3 10:16 11:12
20:22 21:22 63:12
65:22 73:12
**briefing** 8:4 73:19
74:1
**briefly** 7:13 8:6 63:13
69:16
**briefs** 10:14
**bring** 21:10,10 25:9
47:14 48:2,3,7 50:9
50:13 51:13 64:6,9
64:15 70:5 75:8
**bringing** 35:12
**brings** 10:12 23:20
28:19 67:25 68:9
74:10
**broad** 46:15
**broadly** 53:20
**brought** 20:8,25 28:4
65:3,3 69:11,11


Burns 3:4
Burt 5:24
business 4:13 7:20,25
68:6
buy 41:16 73:21

**C**

c 2:1 5:2 11:13 78:1,1
calculus 59:6
calendar 5:10
call 7:16 11:6,6 20:5
29:16
called 25:16
Calling 5:9
calls 20:16
can't 37:17 38:21
39:6 51:9,11 61:7
62:23 69:13 73:15
Canon 47:18
capsulized 36:12
care 20:7 51:21,23
Carlton 3:20
Caroline 2:19 6:7
case 1:5 5:10 7:11 9:4
11:9,12 15:3,17
17:21 18:14,20,21
19:10 20:4 23:14,19
25:18 26:23 29:19
30:20 31:25 32:4,11
32:15,23 35:3,6,8
35:20 39:12,24 40:6
40:17 42:2,3,8,17
42:22,24 47:18,18
47:22 48:2,9,19,23
48:25 49:3,6,13,15
51:22,25 52:1 55:18
56:5 59:13 60:16
61:14 62:11 64:22
66:22,22 67:19
71:14 72:20
cases 5:9 35:6 41:25
75:11
Cash 4:14
categorized 27:2
cause 12:6 28:3 57:8
67:17,20 69:4
caused 50:7

causes 14:8
Center 1:9,19 5:10
7:19 11:25 46:25
47:9 51:21 52:2
60:5 65:1 68:3,18
central 36:5
certain 11:5 16:7
25:13 28:3 33:25
34:16 45:6
certainly 22:12 56:19
CERTIFICATE 4:24
certified 34:17 72:25
73:3
certify 78:2
Chamberlin 2:25,26
2:26,33,34,34 3:31
3:32,32 6:7,12,23
11:7,9 12:23 13:16
14:9,18 15:9 33:9
33:25 34:5
Chamberlin's 25:10
Chamberlins 35:12
35:25
chambers 66:3
change 76:20
changes 47:16 49:21
Chapter 23:5
Chapter 1:17 2:8
5:19 7:13 9:8 11:2
11:18 12:4,8 13:6
13:14,18 14:7,13,20
15:11 16:18,21
20:17 23:17,20 26:2
40:16 45:24 46:2
47:6 48:6 49:25
50:12,12 58:1 62:11
64:6 69:8,22,23
70:4,5 72:22,23
characterized 72:4
charge 31:1,5
charges 19:19
Chatham 9:17 10:4
76:12
Checks 4:13
choose 21:13
Circuit 42:3,17 47:19
48:9,25 49:4 57:4

74:2
circulate 8:10
circumstance 24:8
circumstances 76:20
citation 48:23
citations 21:24 66:4
cite 41:25 52:4
cited 66:25 74:4
cites 44:13 48:22 49:4
67:20
civil 34:16 38:15
claim 12:25 13:7
21:13 23:16,16
24:22,24 28:21
29:21 30:8 35:24
36:3,16 37:15,16,19
37:21,23 38:15,16
38:19 40:12,19,21
44:16 51:9,10,12
52:3 56:16 57:1,2
59:24 61:17 62:1
64:25 65:16 71:5
72:13 73:15,16
claimant 32:8
claimants 24:21 43:6
71:18
claims 13:10,22,24
14:1,9,12,15 15:6
15:12,13,13,14,14
16:20,22,24,24
19:10,10,12,14
20:10,23,23,25
21:10,17,18 23:20
23:21 24:14,16,20
25:8,21 26:3 27:15
28:10 29:8 30:12
31:12,13,18,18,21
31:23,25 32:6,12,15
32:16,19,21,23
35:24 36:7,10 37:15
38:14 39:8,17 41:12
41:22,24 42:4,10,10
42:12,15,24,25 43:1
43:4,5 47:14 48:2,3
48:8,16,17 50:9,13
50:14,15,16,18
52:25 53:15,17

56:20 57:13 58:10
58:15 60:12,24
62:22,22 64:5,10,16
64:17 65:1,11,12,12
66:18,19 68:12
69:11 70:4,9,11,16
71:3,9,12,16,18,24
73:1,14 74:10,20,24
75:8
clarify 28:17 29:8
36:19 59:18
Clark 2:25,33 3:31
33:9,24 34:4
clash 52:16 62:23
class 6:7,12,23 11:4,6
11:7,7,10 12:23
13:9,10,16 14:9,9
15:10 17:2,20 20:19
21:9,18 23:1,4,6
26:9,17,23 27:20
28:22 29:8,12,15,17
30:5,19 31:5,11
32:23 33:9 34:5,12
34:18,24,25 35:11
35:11,12,12,15,16
35:19,22,22,24 36:7
36:10 37:7,15,18,18
39:1,3,4,25 40:1,6
40:20,23 44:16 51:9
51:11,15,19 55:5
58:22 60:11 63:19
65:5 66:23 70:20
72:19,24,25 73:2,3
73:7
classes 34:17
classic 44:15
clear 43:18 53:18
58:19 64:3,18
clearly 40:19 64:5
CLERK 5:3,9 7:3
9:13,20,22,24 10:5
10:7 76:16
client 30:8 53:4,11
54:18 55:20 56:16
56:21,21 59:9 61:5
62:15 68:17 74:8
clients 33:12 35:25

**close** 21:24
**co-** 6:23
**co-conspirator** 42:6
**co-conspirators** 42:5
66:22
**co-counsel** 6:16
**co-trustee** 11:15,19
**Code** 46:2,14 69:25
**Colby** 3:8 6:3
**colleague** 6:8
**collect** 25:5 38:14
44:21 50:2 62:23,25
**collecting** 71:7
**collection** 72:8,12
**collectively** 19:13
27:14 66:12
**Colton** 1:37 4:3 5:6
**come** 5:15 21:14
23:17 24:24 66:15
66:17 72:22 73:7
**comfort** 62:20
**coming** 27:21 59:24
61:3
**comments** 17:19
**commingled** 14:24
15:4,5 17:8,9 49:17
**commingling** 15:8,8
24:6,7
**Commission** 78:9,10
**committee** 2:16 5:22
5:22 7:17 17:19,24
28:18 34:22 36:2,12
38:21 39:13 52:23
59:17 73:23 74:10
**company** 3:8 16:22
**comparison** 19:16
**compensate** 32:21
**compensatory** 29:10
70:25 71:4
**complained** 27:2
**complaint** 13:17 14:5
14:9 15:20 16:14,15
18:3,9 21:4,20,25
24:2 25:25 26:9
28:1 29:15,17 30:15
31:6 33:5 35:13
36:13 37:1,4 39:19

40:13 52:20 57:8
59:10 65:7 66:1,21
66:25
**complete** 67:11
**completely** 55:20
**complex** 28:8,9
**complicates** 48:10
**concede** 26:1
**conceded** 12:11 70:8
**conceivably** 54:13
**concern** 19:4 23:14
27:23 64:21 73:18
**concerned** 22:23
26:14 57:7 62:18
**concerns** 59:16
**concluded** 77:4
**concrete** 54:14
**conduct** 32:14 35:11
41:23 42:11 71:21
**conducts** 52:2
**conference** 4:5 7:10
26:11 39:14 75:17
75:18,20 76:18
**conflict** 26:22 27:20
**connection** 10:21
12:17 19:3,16 65:24
68:20
**consensual** 32:5
**consent** 11:8
**consented** 51:16,19
**consider** 28:6 52:24
**considerable** 54:17
**considering** 38:16
59:5
**consistent** 16:3
**consistently** 20:24
**conspired** 42:7
**constituency** 13:13
13:14
**constituent** 18:19
19:25 20:7 68:11
**constituents** 26:20
27:22
**constructive** 24:25
26:15 36:4 37:21
**contention** 16:13
**context** 25:24 32:4

65:4
**continue** 4:12,14 9:9
45:6 75:18 76:18
**continued** 3:1 4:5,7
4:10,17 8:25 10:9
76:15
**continues** 13:10
54:18
**contracts** 60:5
**contractual** 53:5 60:4
74:14
**contrary** 46:13
**contrast** 54:17
**contributed** 43:19
**control** 21:25 31:7
32:12 50:6
**conversation** 63:8
**conversion** 66:8
**cooperation** 69:10
**cooperative** 67:15
**coordinate** 38:24
67:6 72:15
**coordinated** 23:25
26:11 51:3
**coordination** 67:12
**copies** 55:15
**corp** 11:14
**correct** 22:13 33:15
41:1 64:12 72:6
78:2
**cost** 13:9
**costs** 61:18
**counsel** 6:24 7:17 8:6
12:21 26:17 27:20
35:16 39:1 40:16
59:17,17 64:23
71:12 72:21 73:5
**counsels** 23:1,2
**count** 57:19 66:8,8,9
**counties** 55:10,10,11
**counts** 28:4 66:25
**County** 55:18
**couple** 15:24 43:16
55:16 69:20
**course** 35:1 44:20
54:9 55:2
**court** 1:1,48 5:4,7,14

6:10,17,25 7:5 8:4
8:10,13 9:2,10,14
9:17,21,23,25 10:3
10:6,8,12,16 15:21
15:24 16:3,9,13
17:1,16,18 18:4,7
18:10,16,24 21:8,14
22:2,11,14,19 23:15
24:3,24 27:18 28:12
28:14,24 30:7,14,24
31:1,15,17 32:1,9
32:16 33:3,11,17
34:3,6,12,21 35:3,5
36:9,21,23 37:12,22
37:24 38:3,6,20
39:6 40:5,7,22,25
41:3,7 42:21 43:13
43:15,25 44:20,25
45:3,11,13,22 46:15
46:23 47:3 48:19,24
49:2,5 50:10,20
51:2,7,15 52:5,7,9
52:13,14,24 53:8,9
53:10,24,24 54:6,23
55:14 56:3,7,11,14
56:22,24 57:15,19
57:24,25 58:4,16,23
59:10 60:10,18,20
60:23 61:19,25 62:5
62:8 63:10,14,22
64:1,8 65:18,20,23
69:15,17 70:8,12
71:3 72:3,9,14 73:6
73:9,21 74:5,6,9
75:2,5,14,22,24
76:2,9,12,14,17
**court's** 5:9 52:17
71:17,22
**COURTHOUSE**
1:40
**courtroom** 5:16
**cover** 27:9
**coverage** 30:11
**coverages** 36:16
**covered** 75:14
**covers** 70:7
**craft** 37:1,4

create 44:17 60:12
creditor 4:21 27:11
59:21,22
creditors 2:17 5:23
17:24 18:20,21 19:7
19:8,9,14 20:6
24:13 27:15,16
28:18 32:6 34:22
35:2,7 36:2,12
39:12 43:11 44:18
52:23 59:17 73:23
critical 29:5
cross 57:21
crosses 66:13
crux 56:9
current 19:22 23:19
27:11,15 76:4
currently 21:6 25:19
27:20 60:6 66:20
custody 31:7 50:6
customer 55:25 59:4
68:4
customers 68:6
Cynthia 78:7

D
D 4:1 5:2 78:7
D&O 13:22,23 15:13
25:21 30:7,8,11,16
36:16
damage 41:15 66:18
damages 29:11 30:4
38:1,8,13,14 39:20
39:21 40:4 64:1,1
66:16 70:25 71:4
76:13
date 9:1 11:21 19:11
25:4 76:14
David 2:29 6:11
day 9:16,17,18
days 8:18 9:1,2,9,11
20:15 76:5
de 13:9
deadline 8:5 24:14,15
24:16,22 61:3
dealing 27:19
deals 9:5 27:18

debtor 1:12,18 11:15
11:22 12:4 13:20
14:1,3,4,10,25 15:4
15:5,16,19 17:9
29:13 31:4,9,12,13
31:18,19,23 32:7,13
32:17,24 33:1 34:7
34:9 41:20,24 42:7
42:12,16,25 43:7,7
43:9 46:10 47:7,8
47:12,13,15,22,23
48:3,10,14 49:12,14
50:4,8,16 51:24
56:15,19 57:15,22
57:22 60:24 64:6
67:3 68:18 70:2,3,6
70:19 71:5,13,16
Debtor/Trustee
49:23
debtor's 9:8 11:13
12:2 14:20 32:14
33:1,2 41:23 42:5,6
42:11 50:4,10,19
59:23 65:8 69:23
71:21
debtors 31:14
decide 21:16 35:20
74:15,24 75:7
decided 25:4 53:23
74:21
deciding 28:8
decision 37:3 54:5
71:22 72:5 75:9,11
decisions 51:5
declaration 14:22
16:1 43:16 44:7
45:20 46:10 47:2
declarations 16:4
default 12:11 22:15
22:16,16
defendant 55:5
defendants 1:28 2:44
6:1 8:6 12:10,20,22
12:23 13:23 14:3
23:4,5 26:22 29:12
30:5 31:5 35:11
42:7,23 50:17 51:19

70:19,21 71:25
defense 23:2 25:19
57:20 61:18 68:16
defenses 12:11 23:3,7
23:18,21
defined 44:7
definitely 31:23
37:10 66:13,17
definition 34:18
degrees 11:17
delve 24:6
denied 65:17
depend 43:6
derivative 14:9,10
16:21,24 64:5,25
deserve 55:21
despite 32:12,13
42:10
determinations 24:6
determined 17:13
detriment 40:20
detrimental 41:9
65:10
developed 28:11
didn't 16:9,9 25:21
40:20 53:5,20 63:20
63:20,24 64:4 71:22
difference 52:3 61:12
different 18:20 19:14
21:18 25:3 32:4
51:16 52:19 63:21
66:23 74:12
difficult 72:18
direct 14:13,15 16:20
16:23 20:10 23:16
32:22,23 41:19
42:10 43:5 50:16
53:3,17 56:7 64:16
64:17 65:12 70:4,9
70:10 71:24,25
directors 32:6,7
51:20,24 52:2 66:24
disability 11:17
discovery 33:18
74:18
discussion 75:23
discussions 12:25

13:4
dismiss 53:7 56:11
58:14 62:13 63:17
65:5 74:1,16
dismissed 58:21
60:16 61:14 67:18
68:12
disputed 30:21
disregarded 74:17
distribute 45:25
46:11
distributed 25:2 36:4
46:20
distribution 4:8 8:15
8:24
district 1:2 5:5 18:4
73:5
DIVISION 1:3
Doc 11:2
docket 7:6 9:3,5 18:3
18:6,6,15 21:4
document 16:20
documentation 7:14
documents 7:16
10:20 12:9,19,24
14:15 15:25 16:17
34:6,9 55:1,2 64:19
71:2
doesn't 22:5,20,22
37:1,5 41:13,17,23
42:14 44:22 48:21
55:3 56:14,16 59:4
62:21 64:16 66:24
71:20
doing 57:18 58:5
dollar 13:7 24:23
50:7 55:5 58:22
59:3 60:3 66:13
71:23
dollars 11:23 12:18
13:18 15:7 19:17
22:4 25:1 27:5 29:9
36:15,20 37:24 40:3
62:24 63:20,23 66:2
66:5,7 70:15,18,22
don't 18:4,21,22
20:19 23:6,6,7,10

23:15 24:4 28:10
29:4 30:16 33:4,5
35:1,21 36:8,9
39:16 41:7,7,10,11
44:23,25 45:2 47:1
49:25 55:21 56:14
56:18,20,22 57:4,12
58:9,10,20 60:1,15
61:19 64:3 65:13,13
67:24 69:17 70:8
73:17,21,21 74:23
74:25
**door** 17:10
**Dorr** 3:35 7:1,2
**doubt** 16:16
**draft** 8:7
**drafted** 8:9
**drafts** 7:14
**Drive** 3:5
**due** 35:10
**duties** 31:8 53:3
**duty** 23:10,15 49:8
49:11,20 58:3,3
70:20
**dynamics** 24:11

**E**

**E** 2:1,1 4:1 5:2,2 78:1
78:1
**E&O** 13:23 15:13
**earlier** 75:21,23
**early** 7:18
**East** 2:5,31,39 3:37
**Edward** 3:3 6:3
**effect** 29:24
**effective** 8:20 15:11
**effectively** 14:3 39:10
73:24
**efficient** 74:22
**efforts** 20:18 75:7
**either** 14:18 16:23
34:14 37:18 59:16
**electronic** 1:47 78:3
**Eleventh** 57:4 74:2
**eliminates** 69:12
**Emergency** 4:7,10
**emotional** 66:18

**employee** 46:23
**employees** 47:1 55:21
**enforce** 4:17 10:19
11:2 63:18
**enforceable** 25:18
**enforcement** 26:8
**enforcing** 15:22
**engage** 74:25
**engaged** 13:21
**engaging** 12:24
**enter** 5:15 15:21 73:6
**entered** 12:15 75:15
**entire** 39:4 43:23,23
**entities** 12:21 13:2,3
68:8,8
**entitled** 36:17
**entity** 47:12 54:25
68:3,18 70:3
**entry** 11:9 18:6,15
21:5
**equitable** 16:18
30:13 32:25 41:20
43:9 44:23 46:12
48:14
**ESQUIRE** 2:3,10,11
2:19,20,29,37 3:3
3:12,19,26
**essentially** 13:16
15:18 35:19 67:19
68:17 72:19
**established** 33:14
44:11 45:19
**establishes** 44:5
**establishing** 44:3
**estate** 1:18 12:2,7
13:20,24 14:11 15:6
15:8,11,12,13 21:11
21:12 22:1 23:17
25:1,8 27:15 28:7
30:12 32:18 42:14
42:15,21,24 43:2,2
46:1 47:11,17 48:14
48:17 49:24 50:2,14
53:3,16 54:4,7,8,11
54:14 58:14 60:12
62:1 63:7,16 64:17
65:15 69:2 70:1

71:10,10,19,20 72:1
74:10
**estate's** 65:11
**estimation** 61:16
**everybody** 38:23 45:3
53:13 55:16 72:16
**evidence** 55:4
**exact** 34:23 47:20,20
**exactly** 45:18 62:20
70:6,8
**examination** 57:22
**example** 23:14 29:16
33:24 34:11 38:2,8
38:15 42:2 66:8
**excellent** 51:3
**excess** 66:6
**excluded** 47:17 70:1
**excludes** 47:10 49:22
**exclusive** 12:4 14:14
37:16
**excuse** 26:8
**executives** 54:22
**exercise** 47:12 48:12
70:2
**exercising** 21:25
**existed** 47:15
**existing** 4:13,14 26:8
26:9
**exists** 21:6
**expect** 61:21 76:20
**expected** 7:22
**expedited** 25:19
**expense** 61:6,9,15
**expert** 45:2,4
**Expires** 78:9
**explicit** 69:25
**explicitly** 47:10,16
**expressed** 48:9
**extended** 8:16 9:4
24:15,17
**extending** 24:22
**extension** 24:16
**extensive** 19:6 21:23
25:25
**extensively** 18:3
**extent** 14:25 28:18
30:10,13 45:23 46:4

46:9 58:15 63:4
70:3,12 71:7 73:18

**F**

**F** 78:1
**F.3d** 42:19
**face** 16:14,15
**facing** 59:6
**fact** 18:22 21:16
23:12 25:14 32:22
41:14,22 42:10 43:5
44:21 47:15 66:15
**factor** 32:15 35:7
71:21
**facts** 25:11,12,13
28:11 29:18 30:1,18
30:20 32:19 74:18
**factual** 24:5 27:25
28:8 42:13 67:22
**factually** 42:13,20
**fair** 40:5,7,7 73:17
**Fairfield** 42:18
**fairly** 39:10 63:2
**fairness** 54:1 59:8
**faith** 15:16
**family** 71:15
**fantastic** 25:6
**far** 8:12 13:4 75:17
76:11
**Fargo** 55:8
**fashion** 28:7 54:7
**fashioning** 28:6
**fast** 13:9
**February** 40:14
**federal** 18:3 34:16
**fees** 19:19 22:7,10
38:8 61:13
**Ferguson** 2:21
**fiduciary** 3:9 6:4 38:9
49:8,11,20
**Fields** 3:20
**Fifth** 42:3
**fight** 57:2
**fighting** 38:23
**fights** 55:13
**figure** 20:13 38:21
39:14 76:11

**file** 7:18 8:19
**filed** 4:21 8:3 10:14
10:20,22 11:3,4
12:10,13 15:25
19:10,12,15 29:19
33:17 35:18 40:13
40:15 43:14 48:1,10
49:14 59:24,25 64:9
71:5
**filing** 14:23 47:22
49:21
**final** 4:11 7:14,16
22:24 37:3 75:11
**finalized** 76:8
**Finance** 1:25 2:42
5:12,25
**Financial** 11:23 13:2
68:7
**find** 48:23 49:4 71:1
**finding** 14:2,3 15:16
15:18 41:11,11 57:7
65:9,10
**findings** 14:24 41:9
57:5,6
**fine** 62:5,8 76:3
**finger** 74:23
**finish** 24:19
**firm** 24:18,23,23
**first** 43:24 44:1 54:19
65:20 69:17,18 72:9
**five** 19:14 24:23
57:15
**flagged** 55:16
**flags** 73:25
**Florida** 1:2,41,42 2:7
2:15,24,32,41 3:7
3:23,30,39 5:1,5
11:14 14:15 16:21
45:21 46:1,2,14
55:10 57:3 64:19
78:8
**flow** 32:25
**focus** 20:3 69:1
**folks** 34:22
**follow** 70:17
**followed** 42:22
**footnote** 32:14

**foregoing** 78:2
**forensic** 14:20,21
**form** 7:16 12:16 76:7
**formats** 54:19
**Forms** 4:13
**forum** 39:8
**forward** 5:15 7:24,25
13:10 28:4 37:17
54:16 59:13 64:22
69:8
**found** 25:14 26:2
48:9
**four** 19:9,13
**framed** 52:20 65:16
**fraud** 13:21 25:23
65:8
**fraudulent** 25:23,24
**frequently** 27:18
**front** 41:1 62:9
**frustrating** 26:6
**Ft** 2:24
**full** 74:18
**full-blown** 24:5
**fully** 28:11 63:2
**functionally** 19:1,21
**fund** 29:21,23
**funds** 13:15 14:24,25
14:25 15:2,4,4,4,5
16:19 17:15 19:17
19:25 25:3 27:11
31:2 37:12 65:9
66:11
**future** 24:18 25:4
26:7

**G**

**G** 5:2
**gain** 49:9
**getting** 12:24 13:6
45:16 59:19 72:5
**GIBBONS** 1:40
**Gilbert** 2:21
**give** 10:10 18:5 46:10
55:15 66:4
**given** 58:4 73:18
**gives** 50:1
**giving** 48:16

**go** 7:25 8:20 9:10,22
11:11 21:22 29:4
37:17 39:24 44:12
50:4,18 51:9,12
59:2,3,13 65:20
69:17 75:10
**goal** 20:2 22:3 45:8
**goes** 48:20,22 51:12
55:4 64:22 69:8
75:17
**going** 7:11 8:9 13:8
20:11 21:22 23:14
28:1 32:9 35:23
36:19,22 39:7,11,22
45:4 51:4,10 54:21
55:13 56:10 57:12
57:13 58:9,18 60:24
61:2,3,4,19,20 62:6
65:1,6,21 67:10,21
67:23 68:16 70:15
70:17 73:2,3 75:8,9
75:10 76:24
**Goldberg** 1:17 4:18
5:12,18 11:19 64:5
64:23 73:14
**Goldberg's** 16:24
**Golden** 66:10
**good** 5:7,17,20,24 6:2
6:6,10,11,17,25 7:1
7:5 9:18 17:16
28:12 61:23,25
76:24
**gotten** 17:4 54:12
**governed** 45:21
**governing** 46:2
**Govoni** 1:26 2:43
5:13,25 11:24 12:9
13:2 51:25 62:24
66:10 68:8
**Govoni-related** 12:21
54:24
**grant** 9:10 68:23
**granting** 4:11 8:7
69:5
**greedy** 61:6
**Greenwich** 42:18
**group** 1:25 2:43 5:12

5:25 11:23 13:2
20:1 21:10 68:7
**guarantee** 12:1,5
**guaranteed** 11:24
**guess** 7:3 57:15

**H**

**H** 3:26
**hands** 29:12
**hangs** 53:14
**happen** 32:9 35:23
54:13 58:9
**happened** 27:7 57:14
**happening** 7:10 62:3
**happens** 36:3 61:22
**harm** 14:10 21:11,12
21:12 54:18,20
58:14 59:7 61:22,24
**harmed** 54:4
**harming** 63:3
**Harrington** 32:1
**hasn't** 10:15 35:18
73:3
**haven't** 8:8 21:19
23:19 33:18,18
35:15 37:2,19,19
55:22 57:1 59:25
65:3
**he's** 16:19 64:7,13,13
64:15,17,19 70:8
**heading** 44:14
**hear** 7:9 19:3 22:23
26:14 63:21,24
70:10
**heard** 20:24
**hearing** 4:20 8:9 9:1
28:5,25 36:25 40:8
55:18
**held** 32:16 42:9,19
60:7
**help** 56:16 58:20
**helpful** 71:10 76:24
**Henry** 20:12
**hereunder** 44:6
**Herter** 2:19 6:6,7,24
28:14,15,16 29:7
30:10,17,25 31:4,16

31:22 32:10,11 33:8
33:13,23 34:4,8,15
34:25 35:4,9 36:18
36:22 37:10,14,23
38:2,4,7,25 39:23
40:6,10,23 41:2,4
41:10 43:14,22 44:1
44:21 45:10,12,18
45:23 46:19,24 47:4
48:21 49:1,3,6
50:10,11,22 51:6,8
51:18 52:7 61:19
64:8 69:16,18,20
70:10,14 71:6 72:7
72:11,17
**Herter's** 65:25
**HH291609** 78:10
**highlighted** 67:8
**highlights** 69:10
**Hillsborough** 55:12
**hinged** 43:3
**hire** 59:1
**history** 26:21
**holding** 71:17
**holds** 41:21
**Honor** 5:17,20,24 6:2
6:6,11,14 7:1,12 8:2
10:2,11 11:1,3,11
11:22 13:5 14:7,12
15:2,9,23 16:6,12
17:7,17,22 18:17
21:3,4 26:7 28:16
35:20 52:12 53:2,21
54:2,17,19 55:7,14
56:13 57:22 58:7,22
58:24 59:9,12,21,25
60:14,16,22 61:22
62:4 63:13 64:2
65:21 66:3,7 73:11
73:21 75:4,19 76:1
77:2
**Honorable** 1:37 5:6
**hopeful** 25:5
**hopefully** 8:10
**hoping** 45:3
**house** 41:16
**Houston** 3:16

**hundred** 11:23 12:18
13:7,17 15:7 16:7
19:16,18 22:4,6
25:6 29:2,3 36:15
36:19 37:24 39:19
50:7 55:5 58:21
59:2 62:24 63:20,23
66:2,5,6,13 70:13
70:15,18,22
**hundreds** 40:3

---

**I**

**I'd** 7:8
**I'll** 11:5,6 17:20 22:9
41:21 43:15 54:5
67:4,16 73:11 75:9
75:11 76:17,20,25
**I'm** 6:8 16:6,10 21:22
22:3 27:25 32:14
33:19 37:2 44:1
45:1,3,3 50:11 51:4
52:21 53:9,10 56:10
58:8,10,12 61:5,8
65:21 67:19 75:9,10
76:24
**I've** 15:3 18:11 52:9
55:15 67:25
**idea** 23:3 51:3 68:14
**ideally** 27:12
**ignore** 61:7
**III** 3:3
**illustrative** 32:3
55:19
**impact** 24:7 40:21
42:14,21
**implicated** 74:14
**implicates** 60:25
**implicating** 63:16
**important** 14:17 18:1
18:19 21:7 24:12
28:5,17 31:9 43:23
45:8 67:13
**impossible** 15:1
17:14
**inclination** 52:17
**include** 26:24
**included** 12:2 22:8

60:8 71:4
**including** 12:22
14:25 29:20 67:22
**inconsistent** 30:19
32:20 41:6
**incorporates** 44:4
**incredibly** 24:14
**incurred** 61:13
**indemnification**
60:13,25 61:17 62:2
71:12,16
**indemnity** 42:24
59:23 60:4
**indenture** 14:14
**independent** 31:7
**INDEX** 4:26
**indisputable** 63:1
**individual** 17:4,9
33:7,10,11,12,15,21
34:1
**individuals** 34:13
**inextricably** 13:25
65:11
**initial** 20:21 28:25
39:11 40:13
**injure** 42:8
**injured** 33:2 34:19
35:9 48:15
**injuries** 29:11 32:8
32:22,23,25 43:5
71:25
**injury** 32:21 41:17,19
43:7,8
**innocent** 27:12
**insolvent** 46:8
**instance** 19:6 22:25
23:9
**insurance** 30:7,9,11
30:16
**intent** 44:3
**interest** 7:23 16:18
19:19 20:11 22:6,12
22:16 30:13 32:25
34:14 38:22 41:20
43:3,10 44:23 45:15
46:4,5,11 48:14
55:6 59:19 62:4

65:15
**interested** 5:15
**interesting** 68:15
**interests** 13:12 61:4
**interferes** 62:10
**interfering** 15:10
**interim** 4:10 9:11
35:16,17 72:20 73:4
**internal** 17:11
**intertwined** 13:25
65:12
**invalidate** 28:20
37:23 38:19
**invalidates** 29:25
**invested** 38:12
**investigate** 58:3
**investigated** 65:2
**investigation** 33:22
39:15 57:23
**investment** 38:11
**investments** 17:12
**involve** 20:8
**involved** 32:4 37:7
41:22 42:5 43:3,4
53:14 65:8
**involves** 31:11
**Iqbal** 57:9
**IRS** 19:11,15
**isn't** 34:18 46:20
**issue** 11:20 18:18
21:2 24:24 27:17
34:17 36:5,6,11
42:4,11 53:12 55:25
57:7 58:19 59:14
62:8 63:2,14 66:13
67:1 69:6
**issued** 32:2
**issues** 7:7 10:16
62:18
**it's** 7:21 9:18 10:1
11:1,2 13:11,11,12
13:12 15:10 17:12
17:13 18:1,3,15,19
20:15 21:7,24 22:21
23:13 24:12,17
26:17 27:2,2,17
28:17 31:8 32:3,20

33:23 35:6 36:11
37:17 41:8,15 43:18
43:23 48:12,13,22
49:5,6 51:4,10,18
53:12,20 55:8,11,12
55:12,18,20 56:11
58:9,11,17,18,18,19
61:24,25 62:19,19
65:16 67:13,14,18
68:10,15 69:6,25
73:14,16 74:22 75:8

**J**

**J** 1:26 2:43 3:3 5:12
**Jackson** 2:5
**Jansen** 28:14
**Jennis** 2:29,30 6:11
6:12,24 28:15
**jeopardize** 30:15
36:16
**John** 3:19 51:25
**Johnson** 3:4
**joinder** 34:11
**joined** 6:8,15
**joint** 31:10 50:5 71:7
**jointly** 29:13 69:11
71:8
**Jonathan** 2:20 6:8
**joy** 13:5
**JP** 55:8
**Judge** 1:38 4:3 6:22
7:4 9:13 14:17 41:1
55:23 56:5 62:9
74:6,15
**judgment** 8:4,5,8
12:14,15 40:18
72:10
**judicial** 26:10 39:14
**July** 1:33 5:1 12:13
**jumping** 13:5

**K**

**Kapila** 22:24
**Kapila's** 24:18
**KapilaMukamal**
14:19 25:11
**keep** 57:16,24

**Kelly** 2:26,34 3:32
**Kennedy** 2:39
**key** 55:7 57:5
**kick** 22:17
**kind** 22:7 29:5 52:17
54:12 60:24 71:10
75:14,16
**kinds** 55:19
**Kissinger** 20:13
**knew** 68:19
**know** 6:19 8:22,25
10:13 12:16 13:1
19:2 23:6,7,8,13
24:19,21 25:10,18
26:22 28:10 31:20
33:4,6 34:3 36:9,25
37:7,9 39:14,16,19
43:20 44:25 52:21
54:13 55:4,6 56:14
56:15,22 57:11,18
59:22 62:24 63:15
63:17 64:21,22 65:2
65:4,4,7,9 67:17
68:4 72:11 74:16,17
**knowledge** 67:23
74:3
**known** 22:1 68:2,4,5
73:25
**Kopelowitz** 2:21

**L**

**Labor** 9:16,17
**lack** 26:5
**landlords** 18:22
**language** 43:18
**large** 27:1 53:10
59:13
**largely** 51:20 62:23
**Las** 2:22
**lastly** 14:17
**late** 7:18
**Lauderdale** 2:24
**law** 2:38 3:27 14:16
14:19 15:3 16:21
17:23 24:9,23 45:21
57:3 64:19 71:24
**lawsuit** 12:17 59:3

65:15
**lead** 73:5
**leading** 30:1
**leaning** 37:2
**learning** 45:1
**leave** 67:3
**Leeder** 3:26,27 6:22
6:22
**legal** 16:18 24:6
27:24 28:9 29:24
41:21 47:13 48:13
69:23,24
**legally** 32:15 71:21
**legitimate** 41:13,16
73:18
**Leo** 1:26 2:43 5:12,25
11:24 13:2 62:24
**lessen** 71:9
**let's** 9:12,18,21
**liabilities** 50:14
**liability** 8:8 12:11,15
13:7 14:2,4 15:17
15:18 17:11 30:6,11
31:10,16,24 40:17
50:19,20 71:7 76:10
**liable** 29:13 71:8
**lift** 10:22 53:9,10
62:20 74:23
**lifted** 53:20 65:14
**likelihood** 42:13
61:16
**limited** 24:14 42:18
62:19
**line** 15:9
**listening** 6:21
**litigation** 8:1 20:8
54:21 69:3
**little** 7:21 11:12 29:4
43:17 46:15 54:16
54:22
**LLC** 1:25 2:43 5:12
**LLP** 3:4,13
**loan** 11:24 12:9,19
13:19 14:10 17:12
29:16,22,23 30:23
66:2,12 71:2
**loaned** 11:22 12:18

**long** 18:12 37:6,8
72:6
**longer** 7:21 48:11
**look** 9:15 45:14 66:7
**looking** 7:24 8:7
10:17 34:12 67:10
**looming** 59:3
**lose** 60:18,23 61:10
**loser** 26:19
**loss** 30:6 38:10 50:7
**losses** 27:9 29:11
33:10 35:10 38:4
41:15
**lost** 19:25 51:1
**lot** 6:19 10:13 24:11
37:7 52:18 53:24
61:13 76:11
**LP** 32:2

**M**

**M** 1:40 2:20
**Madison** 2:31
**main** 7:8 59:25
**maintain** 4:11 9:6
23:23,25 30:8
**making** 31:20 56:19
**managed** 31:3
**management** 3:9
4:15 6:4 7:15 38:10
67:1 68:7
**managing** 67:1
**Marcos** 3:12 6:14
**MARIE** 3:35
**marshal** 50:13
**matter** 18:22 23:12
26:6 41:17 54:1
57:3 59:8 61:4
66:15 71:20,22,24
76:25 78:4
**matters** 41:17 48:10
**maximum** 23:24 25:7
**McBride** 2:37 5:24
5:25 75:24 76:1,3
76:10,13
**McKinney** 3:14
**mean** 21:23 22:20,22
31:19 39:21 40:2

41:23 42:3,14 43:22
44:22 45:1 46:16
55:2 56:22 64:11,16
64:19
**means** 44:8,9,17
50:24 60:25 67:12
**measured** 53:11
**mechanism** 22:5
**Medicaid** 45:16
**meetings** 76:20
**Megan** 2:11 5:20
**members** 67:2
**mention** 26:24
**mentioned** 28:5
33:23 40:16 67:4
76:6
**Merryday** 41:1 62:10
74:6,15
**Merryday's** 56:5
**met** 12:19
**Michael** 1:17 5:11,18
**Middle** 1:2 5:5
**million** 11:23 12:18
13:7,18 15:7 19:17
22:4,6 27:5 29:2,3
36:15,20 37:24
39:20 40:3 50:7
55:5 58:22 59:2
62:24 63:20,23 66:2
66:5,7,13 70:13,15
70:18,22
**mine** 27:22
**minimis** 13:9
**minimize** 61:8
**minor** 35:3
**misappropriated**
29:22 30:3 47:24
49:16 65:9 70:22
**misappropriation**
29:24 30:22 41:6
43:8 48:4 49:20
**misconduct** 15:16
**mismanaged** 43:20
**misrepresent** 14:19
**misrepresenting** 74:4
**missing** 19:17
**misunderstand** 14:18

**Momentum** 3:17,24
4:21 6:15 10:21
23:9,10 52:11,25
53:15 54:2 55:8,24
57:16,17 60:7 68:1
68:5,12,23 69:5,12
69:21 71:11
**Monday** 9:15 10:1
**monetary** 29:10
**money** 13:1 17:8,9,10
19:24 29:21 30:2
33:1,6 38:18 39:7
43:19 47:24 49:16
50:2 57:16,24 60:6
67:10 68:20 71:1
**months** 40:14 61:11
61:12 63:9
**Morgan** 55:9
**Morse** 2:30
**motion** 4:7,10,17,20
7:18 8:3,5,8,15,20
10:19,22,24 11:2,4
12:13 24:1 28:2,22
35:17,18,20 36:1
40:18 47:19 51:11
52:13 53:7,12,22
56:11 58:14,16
62:13 63:17,18 65:5
65:17 72:20 74:1,15
**motions** 9:11 10:9,13
10:18 19:3 76:15
**move** 43:1 59:5 67:16
**moving** 7:24 39:10
54:15 60:9
**Mukamal** 24:18
**multi-billion** 71:23
**multiple** 19:15 20:18
25:15
**Murray** 2:11,12 5:20
5:21 9:16 17:18
**Murray's** 17:23
**muster** 57:9
**mutually** 37:15

———————
**N**
———————
N 2:1 4:1 5:2
**name** 51:24 58:19

66:24 68:2
**named** 51:25
**narrow** 24:17 59:14
63:2 69:6
**nature** 31:6 32:20
41:5 43:3 53:6
**nearly** 68:10
**necessarily** 22:20
29:17 30:17 72:7
**need** 6:20,21 20:25
21:16 24:5,5 27:18
41:11 54:10 59:18
67:14 68:14 69:10
70:24
**needed** 25:5
**needs** 1:9,19 5:10
8:16 11:14,16,20
20:3 29:11,22 33:15
35:10 41:14,18
45:19 47:10 50:25
53:25 60:5 64:14
67:5 68:3,18 70:23
**nefarious** 57:18
**negotiate** 35:21 39:4
39:6,7 72:22
**negotiations** 73:6
**neither** 32:16
**net** 26:18
**new** 27:8 47:8,8
57:25
**nine** 61:11
**non-** 14:2 31:13 32:4
35:1 47:25
**non-beneficiary**
24:13
**non-debtor** 30:5
31:10 42:6,23 50:17
71:19,25
**non-debtors** 13:25
15:15,17 42:20
**non-defendants**
26:24
**non-pooled** 33:10
**nonprofit** 11:13
**north** 1:41 2:13 3:5
27:5
**notable** 20:15

**Notary** 78:8
**note** 12:1,5,9,12,25
15:12 17:25 18:19
19:6 21:6,7,13 22:1
22:4,8 23:13,19
24:12 25:14,16,17
25:18 26:16 27:2,3
27:21,22 28:20,21
29:14,15,21,22,25
30:1 35:24 36:3
37:15,16,19,21,23
38:19 39:24 40:11
40:12,15,19,21
41:11,13,16 51:9,12
54:6 65:7 67:4
69:22 72:12,12
75:13
**noted** 42:4 71:15
**notes** 42:23
**notwithstanding**
14:12
**number** 7:6 9:3,5
12:21 18:6,14,15
78:10

———————
**O**
———————
**O** 5:2
**o'clock** 9:13 10:5,6,8
10:9
**O'Halloran** 48:23
**obligations** 46:7,21
46:22 50:5 59:23
**obvious** 13:11 52:17
**obviously** 7:7 11:10
11:21 19:18 25:25
39:15 43:20 46:16
61:23 63:15 64:11
76:10
**occurred** 18:2 19:19
27:6 30:22
**odd** 26:21 45:14
70:16
**odds** 60:2
**offered** 54:9
**Office** 3:36
**officers** 32:6,7 51:20
51:24 52:1 66:24

**Official** 2:16 5:21,22 17:24

**okay** 9:10,14,23 10:3 10:8,8,18 16:9 17:16 18:7,12 22:11 22:14,19 24:3 40:5 41:3 45:11 47:3 49:5 52:5 60:20 62:5 63:10 64:2 69:15 73:9 75:2,22 76:2,9

**old** 27:9,10

**once** 64:8

**ones** 7:7 39:18 66:20 66:25

**open** 9:18 10:4 26:6 26:10 63:7

**opening** 68:16

**operates** 55:9

**operating** 18:21

**opinion** 42:23 70:16

**opioid** 32:5,8 42:25 43:6 71:18

**opportunity** 10:15 54:7 61:15 69:6

**oppose** 11:8

**opposed** 11:10

**opposite** 51:10 58:12

**order** 8:7,11 11:9 12:16 15:21 29:23 30:22 41:12 50:13 62:20 71:8 75:15 76:5,7 77:1

**orderly** 15:10

**orders** 4:11 9:9 10:10 60:8

**original** 27:5 40:8

**Orris** 11:6,7 51:19

**Ostrow** 2:21

**outcome** 61:23 62:1

**outrageous** 68:10

**outside** 25:24 49:15 53:2 68:20

**owe** 23:10,15

**owed** 31:7 70:21

**owners** 32:7,8

**owns** 21:17

## P

**P** 2:1,1 5:2

**P.A** 2:12 3:20

**P.M** 5:1

**paid** 38:8 46:16,25

**paint** 70:16

**paper** 21:7

**papers** 25:21 56:4

**paradigm** 74:12

**Paragraph** 66:9

**Paragraphs** 21:21

**part** 53:4

**partial** 12:14

**partially** 31:4

**participate** 10:17

**participating** 13:3

**participation** 74:4

**particular** 17:15 51:21,23 55:3

**particularly** 65:24 68:15 69:7 73:18

**parties** 5:15 7:23 19:22,23 26:12 27:13 31:24 63:3 67:2,9 72:15 75:16

**partner** 17:23

**party** 9:7 25:8 69:7

**pass** 57:9

**pause** 35:19

**paused** 72:19

**pay** 43:11 46:17,25 50:14 67:10 70:24

**paying** 50:18

**pending** 35:17 40:14 52:13 62:9 66:24 72:20

**people** 6:19 34:23 37:12 39:16 46:17 59:1 60:2

**percent** 16:7 25:6

**performed** 57:23

**permission** 55:15

**permits** 17:22

**persists** 59:8

**person** 64:18

**person's** 73:16

**personal** 12:1,5 43:11

46:6,21 50:5

**perspective** 20:2,16 21:1 23:23 27:25

**Peterson** 3:3 6:2,3

**petition** 11:21 29:20 49:21

**Petroleum** 42:2

**Pharma** 32:2 51:22 71:14

**phrase** 20:23 66:5,6 68:24

**Picard** 42:18

**pick** 9:12 69:18

**picking** 57:2

**Pinellas** 55:12,18

**place** 13:6 63:5

**plaintiff** 1:22 16:19 16:25 64:15,20,23 73:24

**Plaintiff's** 34:5

**plaintiffs** 2:27,35 3:33 6:8,13,23 11:8 11:10 14:18 17:2,20 21:9 23:6 33:9 35:25 39:25 42:8 55:25 60:11 65:5

**plan** 27:19 39:9,11,12 71:24

**Plantation** 3:30

**plausibility** 23:24

**plausibly** 57:8

**play** 20:12 23:7 53:25

**pleaded** 74:21

**pleasantly** 26:23

**please** 5:7,15

**pled** 53:17 57:5

**plus** 19:17,18 22:6,6

**point** 8:13 17:4,6,7 24:14 30:21 31:9,17 32:3 33:5 35:14,21 36:18,24 37:2,17,20 39:1,22 40:7,7,10 41:22 47:5 53:23,25 57:21 61:6,7,12 64:3 66:14 67:7,16 68:21,24

**points** 55:17 69:20

**policies** 13:23

**Polk** 3:37

**Ponzi** 27:8

**pool** 34:10 43:20,21 44:5

**pooled** 11:14 17:3,8 24:9 33:7,14,20,25 68:4

**Pope** 3:4

**portion** 56:13

**position** 20:25 23:10 25:10 27:20,24 62:12 67:17 72:18

**possibility** 34:15 61:11

**possible** 20:4,9 22:21 25:8 37:4,11 39:1 50:24,24 67:12

**possibly** 64:25 65:10 69:7

**pot** 19:7

**potential** 19:9 21:17 25:25 36:10 38:14 63:15 66:19 71:12 71:15,23

**potentially** 19:17 22:17 36:16 37:5 40:12 42:24

**power** 47:11 64:9 70:2

**practical** 53:21,22

**practice** 37:8

**pre-bankruptcy** 57:23

**prejudice** 54:11 58:8 60:22 73:16 75:1

**prejudiced** 54:8,15

**preliminarily** 17:13

**preliminary** 4:20 14:21,23

**preparing** 18:2

**prepetition** 34:9 47:7 47:15,25 48:7 49:13 49:23

**presentation** 18:18

**presented** 17:2 21:3,3

**presiding** 5:6

press 67:18,24 68:15
presumption 25:12
pretend 45:2
pretrial 76:18
pretty 43:18 68:22
prevail 41:12 61:20
primary 67:17 68:24
principal 11:24 16:11
prior 11:21 16:3
26:24 27:16,16
47:22
PRO 1:15
probably 7:7 8:19
21:24 23:2 36:12
76:6
problem 26:1
Procedure 34:16
procedures 4:8 8:16
8:24
proceed 38:17 60:11
61:17
proceeding 6:1 21:5
29:20 40:15 54:23
62:9 75:14
proceedings 1:35,47
4:3 77:3 78:3
proceeds 19:4
process 7:22,23 12:24
20:14 23:25 25:20
professionals 12:19
12:20 23:2,3
progressing 76:21
proof 59:24
proofs 71:4
proper 16:19,24
64:15,20
properly 31:3
property 12:1,6
13:19,24 14:11 15:6
15:7 29:12 30:6,12
30:22 31:8 32:24
33:2 38:5,11 41:15
41:18,20 42:14,21
43:2,9,10 44:24
45:25 46:6,12,20
47:1 48:15,17 50:6
64:17 71:19 72:1

proportionately 71:8
proposal 9:8 21:8
26:5
proposals 20:20
proposed 76:7
proposition 49:7
protect 31:8 45:15
61:4 62:4
protecting 55:7
protections 28:7 54:7
63:4
protective 19:11
prove 25:12,13 33:4
38:3
proves 25:13
provide 22:5 47:4
provided 1:48 34:6,9
60:7
providers 19:13
provides 30:11
provision 22:10
44:13,15 46:9,13
47:2 60:8
provisions 22:7
prudently 38:12
public 45:7,16 55:13
Public-State 78:8
pump 52:17
punitive 38:13 39:20
64:1
purchasers 48:1
Purdue 32:2,17,18
42:22 51:22 67:4,5
67:8,11,13 71:14
purely 48:13
purported 29:16
30:23 66:12
purportedly 11:5
purporting 34:21
purpose 24:22
purposes 8:23 25:22
31:19 75:20
pursue 14:14 39:7
61:17 64:18 74:24
pursues 38:23
pursuing 13:18 63:19
63:23

pursuit 15:12,13
push 13:10
put 18:4 25:21 35:19
37:20
putative 34:25 35:11
35:12,22,22 39:3
40:1 72:25 73:3,7

**Q**

quantified 59:7
question 14:5 21:3,3
22:2 28:9,9,25 36:9
37:25 52:19 53:2
58:2 65:25 74:6,9
74:20
questions 15:24
43:16 52:7
quicker 37:13
quickly 39:10 75:10
75:12
quite 58:11 63:14
quoting 32:14

**R**

R 2:1,3 5:2 78:1
raised 23:4,21 59:16
re-read 28:1
reach 39:13 44:18
reached 22:24
read 10:14 18:11
20:21 43:17,23
46:10 47:4 58:6
67:25 75:10
reading 45:5 46:15
56:3 64:12
ready 7:18
real 59:7 64:21
reality 67:8
really 19:23 24:13,21
26:13,16,21 35:6
38:21 41:8 52:15
53:14 54:14 56:16
63:21 65:22 72:4
74:5,7
reason 19:18 24:16
50:8,11,17 59:25
reasoning 71:17

reasons 13:11 15:20
63:17 65:13,16
rebuttal 63:12
receive 45:7
receiver 54:24
recess 77:1
recitals 44:4
recognize 62:22
record 9:3 18:5,14
24:5 33:20 54:10
55:13 63:6 73:19
recorded 1:47
recording 1:47 78:3
records 34:8
recover 12:18 13:15
19:5 22:4,5 26:16
29:1,4,9 30:4 36:14
50:9,23
recovered 25:1 40:4
60:3
recovering 20:4
recovery 13:17 15:6
22:17,21 25:6,7
30:16 31:20 39:25
40:2 50:13,18 51:14
73:2
red 73:25
redden 3:13
reduce 61:16 71:9
reference 16:10
referenced 25:15,20
67:1
references 66:21
referred 18:2
referring 18:6 49:2
refers 66:9
reflect 55:2
reformed 15:25
regard 14:23 15:3,22
regarding 17:11
69:23
regardless 30:23 34:2
68:9
related 5:11 13:2
66:2 68:6
relating 54:23
relationship 53:5

56:8 59:6 74:14
**relatively** 58:25
**releases** 32:5 67:11
**relevant** 32:15 36:5
  71:21
**relief** 4:20 19:3 28:2
  28:6 62:19 68:14,23
**Remember** 55:23
**remind** 76:14
**repeatedly** 68:25
**replace** 47:8
**reply** 68:25
**report** 76:19
**reported** 75:15
**REPORTER** 4:24
**reporters** 1:48 54:20
**represent** 13:13
  18:24 19:1,21 34:21
  35:1 40:25
**representing** 5:21
**represents** 34:13
**reputation** 54:20
  56:17
**requested** 72:21
**requirement** 34:18
**resolved** 59:14,15,20
  62:13 63:2 76:4
**respect** 8:2 12:25
  14:2 17:12 63:19
**respectfully** 54:2
**respond** 17:20 65:19
  69:16
**responding** 65:4
**response** 11:4 20:21
  28:21 36:1 42:1
  43:17 47:19 51:11
  69:21 73:13,23 76:5
  76:6
**responses** 10:20,23
**result** 14:3 15:14
  20:11 72:5
**return** 38:11
**review** 57:13
**reviewed** 22:3
**RICO** 38:15
**rife** 15:15
**right** 7:5 18:10 25:3

25:16 28:14 33:20
  47:13 48:7,12,13,15
  49:9,22 50:1,1
  52:14,16 55:11,11
  56:6,23 57:22 58:25
  60:22 61:10 62:20
  62:22,23 63:11 69:8
  72:11,18,24 74:6,8
  74:12 76:23
**rightfully** 73:14
**rights** 43:4 60:4,6
  73:16
**rise** 5:3 48:16 52:3
**Roberta** 1:37 5:6
**role** 20:12,17
**room** 54:21 63:11
**Rosales** 3:12 6:14,14
  52:12,15 56:6,9,12
  56:18,23,25 57:21
  58:2,7,21,24 59:12
  60:14,19,21 61:2,21
  62:3,6,12 65:19
  73:11 74:11 75:4
**round** 21:2
**rule** 34:16 74:7,16,19
  76:20
**ruled** 35:19
**rules** 26:7 34:16
**ruling** 58:13 63:16
  67:11
**run** 37:7
**Ruppel** 3:4
**Ryan** 3:19 6:16

---

## S

**S** 2:1,29 5:2 66:11
**Sackler** 71:15
**Sacklers** 71:19
**SAM** 1:40
**Sarasota** 55:12
**satisfy** 50:4
**save** 61:15
**saying** 23:15 27:21
  37:16 39:13,20 41:8
  51:11 56:4,25 57:3
  58:12,18 61:5 62:20
  62:21 63:22 67:5

73:16,24 75:3
**says** 55:4 64:8 74:19
**scenario** 27:14
**schedule** 8:4
**scheduled** 19:10
**schedules** 12:3
**scheduling** 75:15
  76:5
**scheme** 27:8
**Scott** 2:10 5:21 17:23
**Scout** 3:21
**search** 66:5,6
**Seas** 42:2 66:22
**seated** 5:8
**Second** 42:17
**section** 11:13 43:24
  44:2,2,8,13,14
  47:10 69:25
**secured** 59:22 60:6
**see** 9:19,21 26:11
  63:20
**seeking** 12:17 13:15
  29:9,10 30:4 32:21
**seeks** 13:17 36:14
**seen** 15:3
**segues** 71:11
**sense** 11:11 26:11,13
  26:18,21 39:21
  52:18 53:21
**sentence** 72:4
**Senterfitt** 2:4
**separate** 34:20 39:17
  43:7 63:5
**September** 8:21,22
  9:13,14,24,25 10:3
  76:16,17,18 78:6
**serious** 35:6 68:9
**served** 47:23 48:7
**serves** 11:19
**service** 19:13
**services** 3:10 6:4 38:9
  46:17
**servicing** 7:15
**session** 5:5
**set** 8:4 75:18
**settlement** 12:25
  26:10 35:23 72:12

**seven** 26:25 42:2
  66:22
**sham** 13:20 25:14,16
  27:21 29:16,18 30:2
  41:12 65:8
**share** 30:5 31:16,24
**shares** 31:9
**sharing** 19:7
**shoes** 12:3 47:7 70:6
**short** 8:11
**short-term** 8:16
**shortly** 35:18
**shouldn't** 26:16 56:1
  59:9 74:8
**sic** 24:13 40:22
**side** 20:19 22:23 55:3
  63:11
**signed** 16:1
**similar** 23:18,21
**simple** 20:2
**simply** 28:8 54:25
  62:13
**single** 62:8
**sitting** 52:21
**situation** 34:5 47:21
  48:18 70:7
**six** 26:25 57:15
**Sixth** 47:18 48:8,24
  49:3,4
**skip** 74:19
**slice** 16:23
**slightly** 32:4 52:19
**small** 19:13 58:25
**SNT** 66:11
**sole** 44:5,7,8,8
**somebody** 73:15
**soon** 77:1
**sooner** 54:3,5 59:20
  60:16 74:22
**sorry** 50:11
**sort** 8:11 53:5
**sought** 66:1
**sound** 1:47 78:3
**sounds** 76:21
**speak** 9:7 22:9
**special** 1:9,19 5:10
  11:14,16,20 29:11

29:22 33:15 35:10
41:14,18 45:19 47:9
50:25 60:5 64:14
68:3,18 70:23
**specific** 19:23 25:17
29:9 33:9 65:25
**specifically** 42:3,4,5,9
43:6 44:2 49:22
66:9 71:14 72:21
**spending** 75:6
**spendthrift** 44:12,15
44:17,22 46:3
**spent** 20:15
**split** 20:14
**stand** 22:22
**standing** 12:3,4
14:14 49:17 58:17
64:5,15
**start** 7:9 10:25 28:17
52:16
**started** 11:25 16:4
18:17
**state** 54:23 57:3
**stated** 63:18 73:19
**statement** 68:16
**states** 1:1,38,40 3:36
3:40 5:4 7:2 32:1
44:2,4 46:3
**status** 4:5 7:9,10 8:12
75:17,18,20
**statute** 45:12 46:1
**Staunton** 52:1 66:10
68:8
**stay** 4:17,21 7:7
10:13,19,22 11:3,8
14:4,6 15:21,22
16:14,16 19:3 21:6
21:19,21,25 26:7
28:2,2,6,23 35:18
35:20 36:1,7,11,14
37:1,5 42:9,19
51:17,20,23 52:21
53:1,9,10,19 59:11
61:1 62:10,21,21
63:18,18 65:14
68:13,14,23
**staying** 11:9

**stepped** 47:6
**stepping** 70:6
**Steven** 2:3 5:17
**stolen** 27:9
**stopped** 40:22,23
52:1
**street** 2:5,13,31 3:14
3:37
**Streisfeld** 2:20 6:9,24
**strong** 67:21 68:2
**strongly** 72:15
**structure** 45:8
**structured** 45:5
**sub-account** 44:9,11
**subclasses** 34:17,20
**subgroup** 25:2
**subject** 46:6
**submission** 76:7
**submit** 8:10
**submits** 54:2
**substantial** 27:17
**substantially** 11:20
16:8,8
**substantive** 43:4
**successful** 23:8
**sue** 12:5 49:9,9,17,18
49:23 50:1,2 69:13
69:23,24 71:1
**sued** 12:8
**suffered** 35:10 41:14
41:15 43:8
**suffering** 11:17
**sufficient** 8:19,23
75:20
**sufficiently** 57:8
**suggest** 52:19 56:15
66:3
**suggesting** 58:8,11
60:14,15 74:7
**suggestion** 73:13
74:16
**suggestions** 54:12
63:8
**suing** 29:14 31:11
**suit** 42:22
**Suite** 2:6,14,23,40
3:6,15,22,29,38

**summary** 8:3,5,7
12:14 25:20 40:18
**Sunrise** 3:28
**supplemental** 20:22
20:22
**supplementing** 24:20
**supposed** 31:2
**Supreme** 32:1,16
42:21
**sure** 18:5 22:3 31:1,2
31:20 54:8 70:13
**surprised** 44:1
**surreply** 20:22 42:1
47:20
**System** 4:15

---

**T**

**T** 78:1,1
**take** 5:14 7:8 37:8
41:13 51:23 53:21
55:25 76:24
**taken** 17:5 33:6
**takes** 37:7
**talk** 25:11 36:24
**talked** 8:6 54:6
**talking** 9:3
**Tampa** 1:3,42 2:7,13
2:15,32,41 3:7,23
3:39 5:1
**targets** 27:13
**Tax** 3:10 6:4 38:9
**teach** 45:4
**technical** 58:19
**tell** 7:10 17:5
**telling** 58:9 60:10,23
67:14,14
**ten** 27:6
**tentatively** 10:23
**Teresa** 3:35 7:1
**terms** 17:1 57:6
**tested** 23:1
**testifying** 54:22
**testimony** 55:17
**Texas** 3:16 55:10
**thank** 6:4 7:12 10:11
11:1 15:22 17:16,17
28:12,13,16 52:5,10

63:10 65:18 69:13
73:9,11 75:4,5
76:23 77:2
**that's** 7:21 8:11 9:2
9:14,16,17,18,18
13:7 16:11 19:25
21:2 22:13 23:13
25:9,25 26:1,13
29:5,5 30:4 31:18
32:9 33:3 35:3,5
36:23 38:20 39:12
39:22 40:5,7,22
46:15,18 48:16 51:2
52:15 53:7 56:9,10
59:12,20,24 60:19
60:22 61:8,23 62:3
62:5,8,9 63:1 64:11
64:16,18 66:12 72:3
72:14,14 73:17 74:2
74:5,6,20,20
**theft** 27:1 38:15
**theoretically** 20:9
24:15 49:16
**theorize** 66:16
**theory** 38:25 70:25
71:6
**there's** 14:5,19,22
16:16 18:13 19:14
19:18,24 22:15
25:11,18 26:4,11
28:2,3 30:13 36:3
38:10,13,14 40:17
41:25 42:13 44:12
50:8,11,17 53:24
58:10 60:22 61:15
61:22 63:15 66:4,18
71:6 72:8,11,12
74:18 76:19
**they're** 12:2 16:7
21:23 24:21 29:10
40:18,21 42:11 53:3
53:16,16,17 57:13
58:3,5 59:6 62:18
63:19,22,22 65:11
66:20 67:21 69:2,3
73:24 74:7
**they've** 17:13 51:16

53:17 57:2
**thing** 7:8 17:25 21:20
35:5 57:5 59:18
75:13
**things** 7:6 25:15
45:13 47:16 55:19
65:6 74:4 76:21
**think** 7:15,17,22 8:11
8:11,18,19,20,23
9:16 10:12,14,18,21
11:11 13:11 14:17
16:4,6,7,17,23
17:25 18:4,8,10,10
18:18 20:11,15 21:9
24:4,12,17 26:10
27:18 28:17,24,24
29:5,16 31:25 32:10
36:11,11,24 37:4,25
38:17,20,25 39:9,12
39:17,18 40:3 41:7
41:7,11 43:22 44:25
45:1 47:1 48:24
49:25 51:2,22 52:9
52:18 53:13 56:20
57:11,12,13 58:9,10
60:15 61:19 63:1,14
63:15 64:3,12 65:10
65:12,13,14,14,17
66:18 67:13 68:10
68:23 69:1,7 70:8
72:3,3,14 73:17,21
75:8,13,19,19 76:1
76:4,5
**third-party** 30:11
32:5
**THOMAS** 3:26
**thought** 57:17
**thousand** 24:23
26:25
**three** 19:12 32:2
55:10
**threshold** 74:20
**throwing** 33:19
**time** 7:8 9:12 13:9
18:18 35:15 37:8
72:6 74:2 75:7
**times** 25:15 57:15

67:5
**title** 27:4 41:21
**today** 6:15 7:7 18:2
21:1 25:9,22 26:7
28:19 36:6 54:21
**Todd** 2:26,34 3:32
**told** 55:25 61:25
68:17,19
**Tom** 6:22
**top** 45:20
**tortfeasors** 29:13
31:10 50:5 71:8
**total** 19:14
**touching** 62:18
**trace** 15:1 17:14
**traced** 15:5
**trade** 18:21
**traditional** 27:7,8
**transcript** 1:35,48
55:17 78:2
**transfer** 8:14 25:24
68:20
**transferred** 47:25
66:11
**transfers** 17:11,14
**transition** 7:14,19
8:21
**treble** 38:14 39:20
64:1
**Trenam** 2:38
**trial** 3:35 33:19
**tried** 10:14 20:12
36:24 48:2,3
**triggering** 59:15
**true** 25:13,13,13 29:7
33:4 47:7 60:19,21
61:11
**trust** 1:10,20 4:8,12
4:13,14 5:10 7:19
7:25 8:14,15,24
14:14,15,16,24 15:4
16:1,4,17,19,20
17:8,9,15 20:17
24:8,9,11,25 26:15
29:10,12,23 30:3,6
30:22 31:6,8 32:24
33:7,7,10,14,14,15

34:1,10,10,14 35:10
36:4 37:21 38:5,11
41:18 43:9,10,16
44:3,4,5,8,9,9,11,16
44:17,19,22,24
45:14,20,25 46:2,5
46:6,10,11,12,14,20
46:22 47:1,2,14,24
47:24 48:4,8,9,13
48:15,20,21 49:7,9
49:10,11,15,18,19
49:19,24 50:1,3,6,7
50:25 60:5 64:19
68:2,3,19,20,21
70:18,21,23,24 71:3
**trustee** 1:18 2:8 3:36
3:40 4:18 5:19 7:2
7:13 8:3 11:3,15,18
11:19 12:4,8,13,17
12:19 13:6,15,22
14:7,13,13 15:12
16:17,18,20,21 17:3
17:4 19:4,5 20:8,17
20:24 21:17 22:9
23:5,18,20,20 26:2
26:16 27:3 30:24
36:13 39:9,18 41:21
44:13 45:23 46:6,7
46:7,16,24 47:6,8,9
47:23 48:2,6,7
49:17,25 50:12,12
52:22 57:12,14,16
58:1 64:6,7,13,14
64:18,24 65:2,15
69:9 70:4,5 72:1,22
72:23 73:20 74:13
**trustee's** 9:8 10:19
11:2 13:18 14:21
26:2 40:16 45:24
46:5,21 59:16 69:22
69:24
**trusts** 7:15 11:15,16
11:20 17:3,4 26:24
26:25 27:8,9,10
33:21,21 34:1,13
41:14,19 44:17 45:2
45:19 46:3 47:10

64:14 68:4 69:24
**try** 65:21
**trying** 20:13 29:1
39:13,23 45:15
50:23 51:13 53:21
59:1 60:1 61:5,8
70:17 71:1,1 75:7
**Tuesday** 9:20
**tune** 40:2
**turned** 32:18,20
**Turning** 63:11
**twelve** 61:12
**two** 10:18 11:4 54:19
54:23 67:20 76:15
**Twombly** 57:9
**typical** 18:21 24:10
45:14

— U —

**ultimate** 62:17
**ultimately** 20:7 33:4
60:17 62:14 65:2
74:24
**Um-hum** 10:7 18:16
36:21 38:6 43:25
45:22 51:7 58:23
65:23
**Un** 5:22
**unambiguously** 44:3
46:3
**undercut** 13:22
**underline** 68:24
**underlying** 29:18
32:19
**underscore** 51:8
**understand** 30:14
33:17 56:3 73:9
75:2
**understanding** 33:22
**understands** 63:14
**Underwood** 2:10,12
5:21 17:21,22,23
18:8,12,17 19:1
22:9,12,15,20 24:4
28:13,19 54:6 65:20
65:21,24
**undisputed** 30:2

**undoubtedly** 58:7 65:5 74:11
**unfair** 60:22
**unfortunately** 62:3
**unique** 66:19
**United** 1:1,38,40 3:36 3:40 5:4 7:2 32:1
**unnecessary** 55:20 61:8
**unpaid** 14:10
**unsecured** 2:17 5:22 17:24 18:19 34:22
**unusual** 24:8
**unwarranted** 55:21
**update** 8:3,12
**urge** 72:15
**use** 4:12,14 25:23 43:11 45:24

**V**

**V** 46:2
**Vachon** 78:7
**vague** 54:12
**various** 11:17 13:21 19:12 27:25
**versa** 69:13
**versus** 5:12 32:1 35:24 42:18
**viable** 56:20
**vice** 69:13
**victim** 32:5,8 42:25 43:6 71:18
**victims** 20:5 69:3
**view** 20:8 57:10
**violate** 21:5,19,21 24:2 36:7,10,13 37:1,5 51:23 52:20 53:1 68:13
**violates** 14:6 15:21 16:14,15 21:25 28:1 28:22 59:11 62:10
**violation** 14:5
**virtue** 11:18
**visited** 54:18 59:9
**vs** 1:23

**W**

**want** 9:22 10:3 17:19 17:25 18:5 19:8 23:23 36:18 39:16 52:16 59:5 60:1,2,2 63:5,12 64:3 67:24 69:22
**wanted** 75:13
**wasn't** 24:22 62:16
**waste** 75:8
**way** 16:23 21:11,18 24:10 26:12 37:1 38:17,22 42:22 45:6 53:16 54:8,11,12 58:13 70:16 73:20 75:1
**ways** 21:24 26:4 53:25
**we'd** 8:24
**we'll** 7:17 69:18 77:1
**we're** 7:11,24 8:9,13 9:3 18:6 20:19 27:19 28:20 30:4 31:11,13 35:24 36:6 36:19 37:3,14,16 38:18 39:23 51:8,10 51:13 52:24 53:7,21 56:19 57:1,3,6,25 58:8,25 59:1,13,14 59:25 61:2,3,3 62:6 62:20,21 70:14,17 70:17,25 71:1 72:18 76:1
**we've** 7:6 18:2 22:23 35:16 54:12 57:25 61:2,13 62:4 63:8 66:25 72:16,19 73:19
**week** 7:18,18
**weeks** 12:16 32:2 54:23
**weight** 44:14
**Weiselberg** 2:21
**welcome** 63:7
**welcoming** 63:8
**well-known** 68:22
**Wells** 55:8
**went** 13:1 17:10 27:1

29:9 69:18 70:19
**West** 2:22 3:21,28
**what's** 7:10 27:7 29:18 72:16
**who's** 19:24 30:24 50:25
**WILLIAM** 2:37
**WILSON** 2:11
**win** 67:21 69:7
**Wirth** 2:3 5:17,18 7:9 7:12 8:18 10:2,11 10:25 11:1 16:2,6 16:12,15 17:7,17 25:20 43:15 63:12 63:13,24 64:2,11 69:8 75:15,19,23 76:6 77:2
**Wirth's** 73:13
**wish** 6:18 51:3 75:6
**wishes** 9:7
**wishing** 67:9
**witness** 54:25 55:4
**word** 4:26 23:22 25:23
**work** 9:25 25:9 26:12 62:6 67:9 76:11
**worked** 26:4 27:17
**working** 35:23 40:18 46:17 75:16
**Works** 10:2
**world** 57:10
**worry** 25:16
**worth** 38:12 39:22
**wouldn't** 30:17 37:13 50:2 57:19 58:5 61:21 62:15
**writing** 26:2
**written** 68:25
**wrong** 27:4
**wrongdoers** 27:12
**wrongful** 31:12
**wrongfully** 66:10

**X**

**X** 4:1

**Y**

**Yant** 3:19 6:16
**yeah** 8:18 46:24
**years** 27:6
**yesterday** 7:16 8:4
**you'll** 19:3
**you're** 6:20 11:22 18:10 34:23 39:20 40:25 45:14 55:5 56:4 58:18 60:10,23 60:24 61:10,20 74:4 75:2
**you've** 22:3 33:5 55:6

**Z**

**Zoom** 2:20 3:26,35 6:9,18

**0**

**07/24/2026** 78:9

**1**

**1** 4:5
**1.1** 44:2
**1:30** 5:1,9 10:4
**10** 9:3
**100** 2:13
**1000** 3:22
**101** 2:39
**11** 1:17 2:8 5:19 7:13 9:8 11:2,18 12:4,8 13:6,14,18 14:7,13 14:20 15:11 16:18 16:21 20:17 21:22 23:5,17,20 26:2 40:16 45:24 47:6 48:6 49:25 50:12 58:1 62:11 64:6 69:8,22,23 70:4,5 72:22,23
**12(b)(6)** 74:7,17,19
**1200** 3:38 33:20
**1221** 3:14
**1700** 2:6
**18** 9:5
**195** 11:2
**199** 42:19 66:9
**19th** 12:13 40:14

Case 8:24-bk-00676-RCT    Doc 338    Filed 09/06/24    Page 95 of 95

Page 17

**2**

**2** 4:7
**2,000** 11:16
**2.8** 44:8
**2:00** 9:13 10:5,6,8,9
**20,000** 19:16
**2001** 16:5
**2018** 16:1
**202** 3:29
**2024** 1:33 5:1 78:6
**21** 76:5
**23** 1:33 5:1 34:16
**2325** 2:14
**24-00139** 2:27,35,44
  3:33
**24-139** 5:11
**24-676** 5:10
**25th** 12:8
**26** 76:20
**2700** 2:40
**2nd** 9:13,14

**3**

**3** 4:10 11:13 32:14
  78:6
**3.1** 44:14
**30** 8:18 9:1,2,9,11
**3100** 3:6
**3rd** 9:20

**4**

**4** 4:17
**400** 3:5
**401** 2:5
**407** 1:50
**41** 18:15 21:5
**4221** 3:21
**443-9289** 1:50
**4500** 3:15

**5**

**5** 4:3,20
**50** 21:24
**500** 2:23
**501** 3:37
**501(e)(3)** 11:13
**541** 64:12

**541(b)(1)** 47:10 70:1
  70:7

**6**

**606** 2:31

**7**

**736.0507** 46:1
**750** 33:21
**762** 42:18
**78** 4:24
**79** 4:26

**8**

**8** 21:21
**8:24-ap-00139-RCT**
  1:15
**8:24-bk-00676-RCT**
  1:5
**8:24-cv-00438-SD...**
  18:14
**801** 1:41
**8551** 3:28

**9**

**9th** 9:24,25 10:3
  76:16,17,18

Accredited Court Reporters
(407) 443-9289