UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,

    Debtor.
_____/

Case No. 8:24-bk-00676-RCT

Chapter 11

**CHAMBERLIN CLASS PLAINTIFFS' LIMITED OBJECTION TO CHAPTER 11 TRUSTEE'S WIND-DOWN MOTION AND RESERVATION OF RIGHTS (DOC. 376)**

    Creditors, Clark Chamberlin by and through his parents and co-guardians Todd Chamberlin and Kelli Chamberlin, file this Limited Objection and Reservation of Rights to the *Chapter 11 Trustee's Motion to Approve (I) Wind-Down and Termination of Operations of the Debtor, (II) Resignation of the Debtor as Trustee of Trusts, (III) Approve Procedures to Appoint Cpt Institute, Inc. as Successor Trustee of the Trusts, and (IV) Approve Form and Manner of Opt-Out Notice for Appointment of Cpt Institute, Inc. as Successor Trustee* (Doc. 376) ("Wind-Down Motion").

    The Chamberlins object to the Wind-Down Motion primarily to the extent it seeks an automatic assignment of special needs trust beneficiaries' claims to the Chapter 11 Trustee and/or to grant the Chapter 11 Trustee a right to bring such claims without the beneficiaries' consent (*See* Doc. 376 ¶ 41), and file this Limited Objection before the preliminary hearing on the Wind-Down Motion to preserve their rights in anticipation of further briefing to be set by the Court, as well as all rights related to the pending appeal.

**Background**

    1.    On October 4, 2024, the Chapter 11 Trustee filed the Wind-Down Motion in connection with the wind-down and termination of the Debtor's operations, and specifically, the transfer of special needs trust under the Debtor's current administration to proposed successor

trustee CPT, Inc. ("CPT").  The Wind-Down Motion is set for preliminary hearing on October 29, 2024 at 2:30 PM.  (Doc. 394).

2.	The Wind-Down Motion purports to grant the Chapter 11 Trustee an automatic right to bring and/or assignment of any and all special needs trust beneficiaries' ("Beneficiaries") claims, against seemingly any party (including the Debtor), as follows:

> For all Trusts, whether transitioned to CPT or a third-party successor trustee, unless specifically requested by a Beneficiary in writing, the Chapter 11 Trustee shall *automatically retain* all rights and standing *in his capacity both as Trustee of the Trusts* and Chapter 11 Trustee of the Debtor to pursue Litigation Claims on behalf of the Beneficiaries and the bankruptcy estate and make distributions to them through this bankruptcy case. In addition, as of the Effective Date of the transition of each Trust to CPT or such other successor trustee, *each Beneficiary shall be deemed to have automatically assigned to the Chapter 11 Trustee* all right to pursue Litigation Claims on his or her behalf against third parties. This assignment *shall be self-effectuating* without the need for further documentation.

(Doc. 376 ¶ 41) (emphasis added).

3.	The foregoing provision is ambiguous as to whether it purports to assign Beneficiaries' claims to the Chapter 11 Trustee, grant the Chapter 11 Trustee the right to bring such claims "in his capacity . . . as Trustee of the Trusts," or both.

4.	As used in ¶ 41 of the Wind-Down Motion, the term "Litigation Claims" is defined very broadly as follows:

> Litigation Claims shall mean all claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, rights to payment, [etc.] . . . whether known or unknown, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively in law, equity, or otherwise. Litigation Claims include, without limitation, those which are: . . . (ix) **direct or derivative claims** or causes of action of any type or kind; (x) against any and all **current and/or former officers and directors of the Debtor** or any affiliates thereof; (xi) for breach of fiduciary duty or aiding and abetting breach of fiduciary duty; (xii) under and pursuant to any policies for insurance, including for bad faith, maintained by the Debtor, including, without limitation, any liability insurance policy; . . . (xvii) for common law torts or aiding and abetting common law torts; . . . (xxi) arise out of or are related in any way **to actions or claims pending as of the Effective Date**; (xxii) for negligence including professional

2

negligence; (xxiii) for unjust enrichment; (xxiv) to disallow or subordinate any proof of claim filed in the Bankruptcy Case; . . .or (xxvi) any claim held or assertable by the Chapter 11 Trustee ***or any Beneficiary***.

(*Id.* ¶ 41 n.9) (emphasis added).

5. This Court has recognized that "[i]ndividualized tort claims, or other direct claims, for emotional, special or even punitive damages may exist in favor of a specific beneficiary or even a group of similarly situated beneficiaries . . . nothing that happens in this Chapter 11 case will release any such claims without the consent of the Beneficiaries." *See* Order Granting Motion to Enforce Stay (Doc. 314).

6. While the Wind-Down Motion attaches form Opt-Out and Opt-In Notices in connection with the transfer of trusts to CPT, those forms do not address the proposed automatic assignment of Beneficiaries' Litigation Claims per ¶ 41, or include any notice or opportunity to consent to or even opt out of the assignment. Instead, special needs trust beneficiaries must "specifically request[] . . . in writing" to retain their own choses in action. The Wind-Down Motion does not provide further instruction as to how, when, or to whom Beneficiaries must make their refusal to assign their Litigation Claims.

7. While the Chamberlins appreciate and generally support the Chapter 11 Trustee's work to transition their trusts to a successor trustee in anticipation of the Debtor's wind-down, the proposed automatic assignment of all Beneficiaries' Litigation Claims contemplated by the Wind-Down Motion, given the Supreme Court's admonishment of such nonconsensual extinguishment of third-party claims in *Harrington v. Purdue Pharma L.P.*, 603 U.S. ___ (2024).

8. Further, the issue of whether certain Litigation Claims are Beneficiaries' direct claims or derivative, and correspondingly, belong to Beneficiaries or the estate, is pending on appeal of the Court's *Order Granting Chapter 11 Trustees Motion to Enforce Automatic Stay* (Doc.

3

314). Should the Chamberlins prevail on appeal, the result would impact the Chapter 11 Trustee's ability to assert or act on certain Litigation Claims, and the automatic assignment would appear to eliminate putative class members from participating in a class action.

9. Additionally, the Wind-Down Motion and Exhibit C thereto represent that special needs trust accounts are either "fully compromised," "partially compromised," or "uncompromised," with different procedures for each trust category in connection with the transfer to a successor trustee. The Wind-Down Motion does not confirm whether the Chapter 11 Trustee is requesting the Court to deem the categorization of each Beneficiary's special needs trust as conclusive. (Doc. 376 ¶¶ 31–37). How was it determined that some Beneficiaries' interests in pooled trusts have been compromised while others have not?

10. Counsel for the Chamberlin has conferred with the counsel for the Chapter 11 Trustee as to issues related to the assignment of claims. On October 28, 2024, and October 29, 2024, counsel for the Chapter 11 Trustee forwarded revised forms of a proposed order granting the Wind-Down Motion. The proposal to alter a filing as substantive as the Wind-Down Motion, which purports to serve as the only form of notice of an automatic assignment of Beneficiaries' claims, orally at preliminary hearing, with circulation of proposed orders mere hours before raises substantial due process concerns.

11. The most recently revised form of proposed order circulated adds a provision regarding the Chapter 11 Trustee's ability to assert claims on Beneficiaries' behalf, representing that "nothing set forth in this Paragraph shall be deemed to grant the Chapter 11 Trustee, in his capacity as both Chapter 11 Trustee and as Trustee under the various Trust documents, any greater rights than he possessed prior to the Effective Date." However, this addition does not assuage concerns; it does not alter the Wind-Down Motion's broad definition of "Litigation Claims" or

address whether Beneficiaries' claims against the Debtor are being assigned. Moreover, it remains unclear why Beneficiaries' claims would need to be automatically assigned to the Chapter 11 Trustee if he already has the ability to assert them and what is being given in exchange for such automatic assignment.

12. Additionally, the revised form of proposed order provides that nothing contained therein shall affect the rights of the Theresa Alessandra Russo Foundation "to assert an interest in [such] residual benefits or otherwise assert claims or rights in this Bankruptcy Case or otherwise." The Theresa Alessandra Russo Foundation is an unsecured creditor of the Debtor's and submitted a proof of claim worth $5,544,027.00 in this case (claim no. 0000010265).[1] The Theresa Alessandra Russo Foundation, nor any right to residual benefits it may have, is not referenced in the Wind-Down Motion, and there is no explanation or basis as to why the Theresa Alessandra Russo Foundation is being specifically addressed, or why similar language preserving Beneficiaries' rights to assert claims is not included.

## Limited Objection and Reservation of Rights

13. To the extent the Wind-Down Motion would allow the Chapter 11 Trustee to "extinguish claims against the [third-parties] that belong to their victims," it runs afoul of *Harrington v. Purdue Pharma* and should be denied.

---

[1] According to the Theresa Alessandra Russo Foundation's 2019 Annual Report, Leo Govoni helped found the organization, and he and the Debtor provided its initial funding in September 2009—around when the misappropriation of special needs trust assets began. Thereafter, "[o]ver the course of a two year period, a total of $200,000 was donated by Leo and The Center" to the Theresa Alessandra Russo Foundation. *See* 2019 Annual Report, https://static1.squarespace.com/static/6279330140cfe2383267edac/t/629506ec64f2fa293405cd7f/1653933808887/TARF_2019_Annual_Report.pdf (last visited Oct. 29, 2024). Govoni's connection to the Theresa Alessandra Russo Foundation raises significant concerns about the seemingly preferential treatment it receives in the Chapter 11 Trustee's revised form of proposed order, especially given that the Wind-Down Motion does not request such relief.

14. Similar to Wind-Down's broad definition of Litigation Claims, *Purdue Pharma* involved a broad release of opioid victim creditors' claims against Purdue's officers, directors, and owners, the Sackler family, which "would run in favor of hundreds, if not thousands, of Sackler family members and entities under their control." *Purdue Pharma*, No. 23–124, at 4. The *Purdue Pharma* release "sought to extinguish not only claims for negligence, but also claims for fraud and willful misconduct." *Id.* "And it proposed to end all these lawsuits without the consent of the opioid victims who brought them." *Id*.

15. The Court ruled that the releases could not stand. Recognizing "that bankruptcy courts may have many powers, including the power to address certain collective-action problems when they implicate the debtor's rights and responsibilities," the Court nonetheless affirmed, "a bankruptcy court's powers are not limitless and do not endow it with the power to extinguish without their consent claims held by nondebtors (here, the opioid victims) against other nondebtors (here, the Sacklers)." *Id.* at 13. Nor does 11 U.S.C. § 105(a) provide authority for such nonconsensual extinguishment of third-party claims. *Id.* at 9 n.2. In other words, nothing in the Bankruptcy Code "suggests those claims can be bargained away without the consent of those affected, as if the claims were somehow [the Debtor's] own property." *Id.* at 12.

16. Following *Purdue*'s rationale, the automatic relinquishment of Beneficiaries' claims against non-debtors to the Chapter 11 Trustee as contemplated by the Wind-Down Motion—with minimal notice, no consideration, and no requirement for Beneficiaries' consent— finds no authority in the Bankruptcy Code and cannot stand.

17. Moreover, the issue of whether certain Litigation Claims are Beneficiaries' direct claims or derivative, and correspondingly, belong to Beneficiaries or the estate, is pending on appeal of the Court's *Order Granting Chapter 11 Trustees Motion to Enforce Automatic Stay* (Doc.

314). Should the Chamberlins prevail on appeal, the result would likely invalidate any ability of the Chapter 11 Trustee to assert or act on certain Litigation Claims. The Wind-Down Motion's request for an automatic retention or assignment of Beneficiaries' claims should be denied for this additional reason.

18. Additionally, the Chapter 11 Trustee's proposal to alter a filing as substantive as the Wind-Down Motion (which purports to serve as the only form of notice of an automatic assignment of Beneficiaries' claims) orally at a preliminary hearing, with circulation of proposed orders mere hours before, raises substantial due process concerns. Indeed, preferential or specific treatment for the Theresa Alessandra Russo Foundation as referenced in the Chapter 11 Trustee's revised form of proposed order is not addressed in the Wind-Down Motion at all. The Chamberlins therefore object to any order being entered with respect to an orally modified Wind-Down Motion at the October 29, 2024 preliminary hearing.

19. Finally, while the Chamberlins do not object to the transition of special needs trusts to successor trustees in general, they do object to the extent granting the Wind-Down Motion would represent a final determination that special needs trusts are either "fully compromised," "partially compromised," or "uncompromised," without the opportunity to hear, dispute, or present evidence to support such determination.

## Conclusion

Based on the foregoing, the Chamberlins file this Limited Objection and Reservation of Rights to preserve the foregoing arguments and those currently pending on appeal, and request that the Court set a schedule at the October 29, 2024 preliminary hearing for any concerned parties to submit further briefing on the issue.

<table>
<tr><td>Dated: October 29, 2024</td><td>Respectfully submitted,<br><br>By: <u>*s/Caroline Herter*</u><br>Jonathan M. Streisfeld FBN 117447<br>Caroline Herter FBN 1035444<br>**KOPELOWITZ OSTROW P.A.**<br>One West Las Olas Blvd., Suite 500<br>Fort Lauderdale, Florida 33301<br>Telephone: 954-525-4100<br>streisfeld@kolawyers.com<br>herter@kolawyers.com<br><br>Thomas H. Leeder FBN: 746401<br>**LEEDER LAW**<br>8551 West Sunrise Blvd. | Ste. 202<br>Plantation, FL 33322<br>Telephone: (954) 734-2382<br>pleadings@leederlaw.com<br><br>David S. Jennis FBN 775940<br>Michael Stavros FBN 1033851<br>**JENNIS MORSE**<br>606 E. Madison Street<br>Tampa, FL 33602<br>Telephone: (813) 229-2800<br>djennis@jennislaw.com<br>mstavros@jennislaw.com<br><br>*Attorneys for the Chamberlins*</td></tr>
</table>

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via electronic transmission through the Court's CM/ECF system.

<u>*s/ Caroline Herter*</u>
Caroline Herter