## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:                                                          Case No. 8-24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                         Chapter 11

            Debtor.

_____

### CHAPTER 11 TRUSTEE'S RESPONSE TO EMERGENCY MOTION TO COMPEL EXPUNGEMENT OF NOTICE OF ENTRY OF ORDER GRANTING SUMMARY JUDGMENT AS TO LIABILITY [DOC. 437]

Plaintiff, Michael Goldberg, as Chapter 11 Trustee ("Chapter 11 Trustee") of the estate of The Center for Special Needs Trust Administration, Inc. (the "Debtor"), files this Response to the December 4, 2024 *Emergency Motion to Compel Expungement of Notice of Entry of Order Granting Summary Judgment as to Liability* [Doc. 437] (the "Motion") filed by Propertycraft Enterprises, LLC ("Propertycraft")[1] and states:

### INTRODUCTION

Propertycraft is yet another insider of the Debtor, affiliated with the Debtor's former principal, Leo Govoni. The evidence shows that Propertycraft has received over $625,000 from Boston Finance Group, LLC ("BFG"),[2] without providing any reasonably equivalent value in return, and used that money to procure and maintain real property in Pinellas County. Now, Propertycraft is trying to liquidate that ill-gotten real property in order to line the pockets of Leo Govoni and other participants in his scheme, who have already taken so much from so many. Whatever equity there is in the real property should be marshaled and given back to the beneficiaries of the special needs

_____

[1] In the Motion, the Movant is erroneously identified as Propertycraft Enterprises, **Inc.**

[2] As has been well-documented, Mr. Govoni caused the Center to loan $100 million to BFG and then directed BFG to invest in his pet projects, including Propertycraft. *See, generally,* Adv. Pro. No. 8:24-ap-00139-RCT.

trusts who have been bilked by Govoni and his cohorts; and the Chapter 11 Trustee will continue to do everything in his power to do that, including by recording notices claim against real property and/or seeking to impose constructive trusts everywhere they are warranted. The actions of the Chapter 11 Trustee are an appropriate step to that result and Propertycraft's procedurally deficient Motion can be summarily denied.

### BACKGROUND AND KEY FACTS

1.      Propertycraft is a Florida limited liability company that was formed in 2016.

2.      The Debtor's own staff, including Tracey Gregory, were involved in forming the entity, obtaining the entity's Tax ID number, establishing its bank account at American Momentum Bank (the same bank that held Debtor's funds, much of the special needs trust funds, and the funds of BFG), and funding its bank account through BFG. Copies of exemplar email correspondence are attached as ***Composite Exhibit 1***.

3.      According to Sunbiz, Propertycraft's registered agent is Leo Joseph Govoni; and its manager is Boston Holding Real Estate, LLC, which is, yet again, owned and controlled by Leo Govoni.

4.      According to the Title Company responsible for closing the contemplated transaction at the heart of the Motion, Leo Govoni owns as much as 90% of Propertycraft; on the other hand, according to a 2017 email from John Witeck, Leo Govoni owns (or owned) 50% of the company. Either way, Propertycraft was an insider of the Debtor when the funds were diverted to BFG and then sent to Propertycraft. *See* 11 U.S.C. § 101(31); *see also, In re Bos*, 561 BR 868, fn. 69 (Bankr. N.D. Fla. 2016)("An insider of an insider of the debtor is an insider of the debtor").

5.      In March 2016, the Debtor's staff wired $51,534.84 to a bank account that they formed for Propertycraft. A copy of the wire transfer confirmation is attached as ***Exhibit 2***.

2

6.      That same month, Propertycraft purchased the property located at 12705 Daniel Drive, Clearwater, FL (the "Real Property"), in a seller-financed transaction, receiving a deed from and giving a mortgage to the seller. True and correct copies of those documents are attached as *Exhibit 3*.

7.      Thereafter, BFG funded Propertycraft's monthly mortgage payments. An example of one such payment is attached as *Exhibit 4*.

8.      In total, BFG paid $627,200.48 to Propertycraft or on Propertycraft's behalf.

9.      Additionally, BFG's accounting records reflect a loan receivable due from Propertycraft totaling $842,944 as of June 27, 2023.

10.     It is clear that Propertycraft never funded a dollar of its own toward the Real Property; rather, the entirety of the purchase and maintenance were paid by BFG, with funds that it received from the Debtor.

11.     On August 20, 2024, this Court entered an order granting summary judgment of liability against Leo Govoni and BFG, leaving the amount of the judgment to be determined.

12.     On September 25, 2024, the Chapter 11 Trustee recorded that order granting summary judgment in the chain of title of the Real Property.

13.     As discussed in the Chapter 11 Trustee's Reply in support of its motion for summary judgment re: damages, Mr. Govoni has filed a sham declaration in bad faith, in an attempt to delay entry of a final judgment as to damages in the pending adversary proceeding against him and BFG. [Adv. Pro. No. 8:24-ap-00139-RCT, Doc. 36].

14.     The Chapter 11 Trustee intends to pursue the recovery of at least $627,200.48 in fraudulent transfers and constructive trust claims against Propertycraft, which received all of the funds in bad faith due to Leo Govoni's knowledge of his own scheme to extract trust fund dollars

3

form people with special needs. In addition, Mr. Govoni must return not only the money which he wrongfully took, but must also disgorge the amount of the appreciated value of the properties that were acquired with the misappropriated money.

15.    This result is not only supported by the law, but is also mandated by centuries old principles of fairness and equity. As between an innocent victim and a wrongdoer, it is most appropriate that the victim receives the benefit of the appreciation in value. *See Bailey v. St. Louis, D.O.*, 268 So. 3d 197, 201-2 (Fla. 2d DCA 2018); *see also* Restatement (Third) Restitution § 3 ("A person is not permitted to profit by his own wrong").

16.    As discussed in the Motion, Mr. Govoni and Propertycraft are trying to liquidate the Real Property. Their goal, of course, is to further frustrate the Chapter 11 Trustee's efforts to recover assets for the benefit of the special needs trust beneficiaries that Mr. Govoni and his cronies absconded for their own benefit for over 15 years. Now, they as the Court to assist them in those efforts.

17.    If nothing else, and assuming this sale is to a disinterested third party for fair market value, the proceeds of the sale of the Real Property should be escrowed until the Bankruptcy Court can determine the proper beneficiaries of the sale proceeds.

## MEMORANDUM OF LAW

The order granting summary judgment against Mr. Govoni and BFG was recorded in the chain of title of the Real Property. Propertycraft contends that the Chapter 11 Trustee must file an adversary proceeding to prove that he has a constructive trust against the Real Property; but an adversary proceeding is not required to record an order granting summary judgment in the county where real estate -- in which Mr. Govoni has an interest -- is located.[3]

---

[3] And a recorded judgment becomes a lien on real property by function of statute, not an adversary proceeding. *See, e.g.,* § 55.10, Fla. Stat.

4

Propertycraft's contention is ironic because in seeking equitable relief in connection with the duly-recorded Order of this Court granting summary judgment, it is *Propertycraft* who must file an adversary proceeding. *See, e.g., Matter of Zale Corporation,* 62 F.3d 746, 763 (5th Cir.1995) (citing *Village Mobile Homes, Inc. v. First Gibraltar Bank* (*In re Village Mobile Homes, Inc.*), 947 F.2d 1282, 1283 (5th Cir. 1991)) ("*It is the party seeking equitable relief* who must file a complaint and serve each of the other affected parties.")); *see also* F.R.B.P. 7001(7) (specifically providing that an adversary proceeding is the appropriate vehicle for obtaining an injunction *or any other equitable relief*.) (emphasis added). Essentially, Propertycraft is seeking, through its Motion, a declaratory judgment that the Trustee's constructive trust is invalid. And, having failed to file an adversary proceeding, the Motion should be denied.

In addition, Mr. Govoni, acting through Propertycraft, has acted in a manner entirely contrary to the principles of equity by engaging in a scheme for over 15 years to dissipate the assets of our most vulnerable citizens. As a result, Propertycraft is not entitled to any equitable relief.[4]  for over 15 years for over 15 years For all of the foregoing reasons, the Motion should be denied in its entirety.

AKERMAN LLP

By: */s/ Steven R. Wirth*
    Steven R. Wirth, Florida Bar No.: 170380
    Email: steven.wirth@akerman.com
    Raye C. Elliott, Florida Bar No.:  18732
    Email:  raye.elliott@akerman.com
    401 East Jackson Street, Suite 1700
    Tampa, Florida 33602
    Telephone: (813) 223-7333
    Facsimile: (813) 223-2837
    *Counsel for Chapter 11 Trustee, Michael Goldberg*

---

[4] Notably, the Title Company has apparently determined that the recording of this Court's summary judgment order against Mr. Govoni and BFG has clouded title on the Real Property, which is owned indirectly by Mr. Govoni and was purchased with funds absconded from the Debtor and the special needs trust beneficiaries.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 6, 2024, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record.

By: */s/ Steven R. Wirth*

79033754

# COMPOSITE EXHIBIT 1

**From:**          Tracey Gregory[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE
                   GROUP
                   (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=278A2D23F64C41E5A3ACFFDA5
                   5BF8D40-TRACEY GREG]

**Sent:**          Wed 3/9/2016 9:03:16 PM (UTC)

**To:**            John Malmrose (BFG)[john.malmrose@bostonfinancegroup.com]

**Subject:**       RE:  Propertycraft LLC - SS-4 application

**Attachment:**    Propertycraft LLC SS-4 application.pdf

John,

Attached is the application for your signature.

I will also need to know your SS#.  I erased the number last night after I finished our conversation.  Did not memorize!

Also, question # 9A – Type of entity was not sure if Corporation or Other.

If you want to sign and date the application and e-mail back to me.  I will then fax it over with a cover requesting to have the EIN number faxed back to us.

Thank you for your help.

Tracey

| | |
|---|---|
| **From:** | Tracey Gregory[Tracey.Gregory@centersmail.com] |
| **Sent:** | Tue 3/8/2016 5:52:31 PM (UTC-05:00) |
| **To:** | Anthony Janicki (BFG)[anthony.janicki@bostonfinancegroup.com] |
| **Subject:** | RE: Propertycraft |

Anthony,

FYI

I received the information from Anna but I was not successful on obtaining the EIN online.  John Malmrose is going to call tomorrow and get the EIN.

I will keep you updated on the status of the bank account and when it is opened.

Thank you.

Tracey

---

**From:** Anthony Janicki (BFG)
**Sent:** Tuesday, March 08, 2016 4:47 PM
**To:** Tracey Gregory
**Subject:** RE: Propertycraft

I just called and confirmed with Anna that we do not have an EIN for Propertycraft LLC yet.

Thanks

Anthony Janicki

---

**From:** Tracey Gregory
**Sent:** Tuesday, March 08, 2016 4:45 PM
**To:** Anthony Janicki (BFG) <anthony.janicki@bostonfinancegroup.com>
**Subject:** RE: Propertycraft

Anthony,

Yes, I will start to work on the AMB account.  Do you know if there is an EIN?

Thank you.

Tracey

---

**From:** Anthony Janicki (BFG)
**Sent:** Tuesday, March 08, 2016 4:33 PM
**To:** Tracey Gregory

**Subject:** FW: Propertycraft

Tracey,

Can you also begin to open an American Momentum Bank account for us?  I also have a call to David Schroeder to sign on the bank account for Directed Benefits Foundation.

Thanks

Anthony Janicki

**From:** Jonathan Golden (BFG)
**Sent:** Tuesday, March 08, 2016 2:50 PM
**To:** Anthony Janicki (BFG) <anthony.janicki@bostonfinancegroup.com>
**Subject:** RE: Propertycraft

Leo

Jonathan Golden, General Counsel
Boston Finance Group LLC
4912 Creekside Drive
Clearwater, Florida 33760
Phone: 727-497-1661

The above communication is confidential and may be protected by the attorney-client privilege and/or the work product doctrine. If you believe you received this email by mistake, please notify the sender by return email as soon as possible.

**From:** Anthony Janicki (BFG)
**Sent:** Tuesday, March 08, 2016 2:42 PM
**To:** Jonathan Golden (BFG) <jg@bostonfinancegroup.com>
**Subject:** RE: Propertycraft

Jonathan,

Who would you like the signer to be on the Propertycraft LLC account with American Momentum account?

Thanks

Anthony Janicki

**From:** Jonathan Golden (BFG)
**Sent:** Tuesday, March 08, 2016 2:31 PM
**To:** Anthony Janicki (BFG) <anthony.janicki@bostonfinancegroup.com>
**Subject:** Propertycraft

Propertycraft LLC account needs to be funded with Fifty-One Thousand Five Hundred Thirty-Four and 84/100 ($51,534.84)

25,000 wire to Blake Bringgold firm today if possible, tomorrow definitely – wire instructions attached – I need confirmation of wire

Thanks for your help

Jonathan Golden, General Counsel
Boston Finance Group LLC
4912 Creekside Drive
Clearwater, Florida 33760
Phone: 727-497-1661

The above communication is confidential and may be protected by the attorney-client privilege and/or the work product doctrine. If you believe you received this email by mistake, please notify the sender by return email as soon as possible.

| | |
|---|---|
| **From:** | Tracey Gregory[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=278A2D23F64C41E5A3ACFFDA5 5BF8D40-TRACEY GREG] |
| **Sent:** | Tue 3/8/2016 10:47:20 PM (UTC) |
| **To:** | John Malmrose (BFG)[john.malmrose@bostonfinancegroup.com] |
| **Cc:** | Annalu Varanda[Annalu.Varanda@centersmail.com] |
| **Subject:** | RE:  Propertycraft LLC - EIN number online |

John,

I tried to get an EIN number online but I received an error 101.  This means "Conflict with the entity name. A rejected EIN application indicating Reference Number 101 has a name conflict. The IRS requires a unique entity name before it will issue an EIN, similar to how the secretary of state requires a unique entity name within that state before Articles or Certificates of Formation may be successfully filed. However, because the IRS is a federal agency issuing EINs for entities in all 50 states, it potentially checks for duplicate entity names across multiple states. There are numerous references to a state on the online EIN application, such as the physical location state, mailing address state, and the state where the Articles are or will be filed. This is the most difficult error to fix and may require the application to be mailed or faxed; include a copy of the filed formation document (Articles of Organization, etc.) as I have had IRS agents request a copy in these situations."

Did you want meet to complete an SS-4 application and fax it to the IRS or would you prefer to call them and get an EIN?  I want to check with you because I am using your personal information.

Thank you for your help.

Tracey

**From:**     Tracey Gregory [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
                     (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=278A2D23F64C41E5A3ACFFDA55BF8D40-TRACEY GREG]
**Sent:**       3/8/2016 9:44:53 PM
**To:**        Anthony Janicki (BFG) [anthony.janicki@bostonfinancegroup.com]
**Subject:**   RE: Propertycraft

Anthony,

Yes, I will start to work on the AMB account. Do you know if there is an EIN?

Thank you.

Tracey

**From:** Anthony Janicki (BFG)
**Sent:** Tuesday, March 08, 2016 4:33 PM
**To:** Tracey Gregory
**Subject:** FW: Propertycraft

Tracey,

Can you also begin to open an American Momentum Bank account for us? I also have a call to David
Schroeder to sign on the bank account for Directed Benefits Foundation.

Thanks

Anthony Janicki

**From:** Jonathan Golden (BFG)
**Sent:** Tuesday, March 08, 2016 2:50 PM
**To:** Anthony Janicki (BFG) <anthony.janicki@bostonfinancegroup.com>
**Subject:** RE: Propertycraft

Leo

Jonathan Golden, General Counsel
Boston Finance Group LLC
4912 Creekside Drive
Clearwater, Florida 33760
Phone: 727-497-1661

The above communication is confidential and may be protected by the attorney-client privilege and/or the work product doctrine. If you believe you
received this email by mistake, please notify the sender by return email as soon as possible.

**From:** Anthony Janicki (BFG)
**Sent:** Tuesday, March 08, 2016 2:42 PM
**To:** Jonathan Golden (BFG) <jg@bostonfinancegroup.com>
**Subject:** RE: Propertycraft

Jonathan,

Who would you like the signer to be on the Propertycraft LLC account with American Momentum account?

Thanks

Anthony Janicki

---

**From:** Jonathan Golden (BFG)
**Sent:** Tuesday, March 08, 2016 2:31 PM
**To:** Anthony Janicki (BFG) <anthony.janicki@bostonfinancegroup.com>
**Subject:** Propertycraft

Propertycraft LLC account needs to be funded with Fifty-One Thousand Five Hundred Thirty-Four and 84/100 ($51,534.84)

25,000 wire to Blake Bringgold firm today if possible, tomorrow definitely – wire instructions attached – I need confirmation of wire

Thanks for your help




Jonathan Golden, General Counsel
Boston Finance Group LLC
4912 Creekside Drive
Clearwater, Florida 33760
Phone: 727-497-1661

The above communication is confidential and may be protected by the attorney-client privilege and/or the work product doctrine. If you believe you received this email by mistake, please notify the sender by return email as soon as possible.

| | |
|---|---|
| **From**: | Tracey Gregory [Tracey.Gregory@centersmail.com] |
| **on behalf of** | Tracey Gregory <Tracey.Gregory@centersmail.com> [Tracey.Gregory@centersmail.com] |
| **Sent**: | 3/10/2016 10:39:28 AM |
| **To**: | John Malmrose (BFG) [john.malmrose@bostonfinancegroup.com] |
| **CC**: | Jonathan Golden (BFG) [jg@bostonfinancegroup.com]; John Witeck [John.Witeck@Austin-Colby.com] |
| **Subject**: | RE: Propertycraft Enterprises |

John,

The new bank acct # is ██████ 3505.

Please let me know if you have any questions.

Thank you.

Tracey

---

**From:** Tracey Gregory
**Sent:** Wednesday, March 09, 2016 4:59 PM
**To:** John Malmrose (BFG)
**Cc:** Jonathan Golden (BFG)
**Subject:** RE: Propertycraft Enterprises

John,

Thank you.

I spoke to our bank rep, at AMB, and she will open the bank account first thing in the morning. I will send you the bank acct. # as soon as I receive it.

Tracey

---

**From:** John Malmrose (BFG)
**Sent:** Wednesday, March 09, 2016 4:47 PM
**To:** Tracey Gregory
**Cc:** Jonathan Golden (BFG)
**Subject:** Propertycraft Enterprises

Attached

Tracey

---

**From:** John Witeck
**Sent:** Tuesday, March 21, 2017 2:09 PM
**To:** Tracey Gregory
**Subject:** RE: RE: Propertycraft Enterprises

I don't.  I received that information from JM.

**John L Witeck**
**Controller**



4912 Creekside Drive
Clearwater, FL 33760
Phone: (727) 497-1827 ext. 229
Fax:  (727) 497-1829

CONFIDENTIALITY NOTE:  The information contained in this transmission is privileged and confidential information intended to be delivered to, and for the use of, only the individual(s) to whom it is addressed.  It may contain information that is confidential, proprietary, attorney work product, attorney-client privileged, or subject to other doctrines and/or privileges recognized under applicable law.  If you are not the intended recipient, do not read this message but instead please immediately notify the sender by electronic mail and by telephone to (727)-894-4489 and obtain instructions as to the disposal of the transmitted material.  In no event is this material to be read, used, copied, reproduced, stored, or retained by anyone other than the named addressee(s) except with the express consent of the sender. IRS CIRCULAR 230 DISCLOSURE:  Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained in this communication (including any attachments), unless explicitly provided otherwise, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

**From:** Tracey Gregory
**Sent:** Tuesday, March 21, 2017 1:13 PM
**To:** John Witeck <John.Witeck@Austin-Colby.com>
**Subject:** RE: RE: Propertycraft Enterprises

John,

Thank you.

Do you have any documents that show the ownership that I could send to the bank?

Tracey

---

**From:** John Witeck
**Sent:** Tuesday, March 21, 2017 12:54 PM
**To:** Tracey Gregory
**Subject:** RE: RE: Propertycraft Enterprises

Leo and Jonathan, 50/50

**John L Witeck**
**Controller**



4912 Creekside Drive
Clearwater, FL 33760
Phone: (727) 497-1827 ext. 229
Fax:  (727) 497-1829

CONFIDENTIALITY NOTE:  The information contained in this transmission is privileged and confidential information intended to be delivered to, and for the use of, only the individual(s) to whom it is addressed.  It may contain information that is confidential, proprietary, attorney work product, attorney-client privileged, or subject to other doctrines and/or privileges recognized under applicable law.  If you are not the intended recipient, do not read this message but instead please immediately notify the sender by electronic mail and by telephone to (727)-894-4489 and obtain instructions as to the disposal of the transmitted material.  In no event is this material to be read, used, copied, reproduced, stored, or retained by anyone other than the named addressee(s) except with the express consent of the sender. IRS CIRCULAR 230 DISCLOSURE:  Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained in this communication (including any attachments), unless explicitly provided otherwise, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Tracey Gregory
**Sent:** Tuesday, March 21, 2017 12:41 PM
**To:** John Witeck <John.Witeck@Austin-Colby.com>
**Subject:** RE: Propertycraft Enterprises

John,

Can you tell me the ownership of Propertycraft Enterprises?  The bank is looking for a document that shows the ownership.  When we opened the bank acct we had provided the bank the Delaware Articles that has John Malmrose listed as manager.

Thank you.

Tracey

# EXHIBIT 2

| | |
|---|---|
| **From:** | Tracey Gregory [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=278A2D23F64C41E5A3ACFFDA55BF8D40-TRACEY GREG] |
| **Sent:** | 3/8/2016 7:56:21 PM |
| **To:** | Anthony Janicki (BFG) [anthony.janicki@bostonfinancegroup.com] |
| **Subject:** | RE: Propertycraft |

Anthony,

The $ 25K wire has been sent.  I will forward to you the confirmation as soon as I receive it.

Thank you.

Tracey

---

**From:** Anthony Janicki (BFG)
**Sent:** Tuesday, March 08, 2016 2:35 PM
**To:** Tracey Gregory
**Subject:** FW: Propertycraft

Here is the information for the wire.

Thanks

Anthony Janicki

---

**From:** Jonathan Golden (BFG)
**Sent:** Tuesday, March 08, 2016 2:31 PM
**To:** Anthony Janicki (BFG) <anthony.janicki@bostonfinancegroup.com>
**Subject:** Propertycraft

Propertycraft LLC account needs to be funded with Fifty-One Thousand Five Hundred Thirty-Four and 84/100 ($51,534.84)

25,000 wire to Blake Bringgold firm today if possible, tomorrow definitely – wire instructions attached – I need confirmation of wire

Thanks for your help

Jonathan Golden, General Counsel
Boston Finance Group LLC
4912 Creekside Drive
Clearwater, Florida 33760
Phone: 727-497-1661

The above communication is confidential and may be protected by the attorney-client privilege and/or the work product doctrine. If you believe you received this email by mistake, please notify the sender by return email as soon as possible.

| | |
|---|---|
| **From:** | Tracey Gregory [Tracey.Gregory@centersmail.com] |
| on behalf of | Tracey Gregory <Tracey.Gregory@centersmail.com> [Tracey.Gregory@centersmail.com] |
| **Sent:** | 3/15/2016 1:34:19 PM |
| **To:** | Anthony Janicki (BFG) [anthony.janicki@bostonfinancegroup.com] |
| **CC:** | Jonathan Golden (BFG) [jg@bostonfinancegroup.com] |
| **Subject:** | FW: American Momentum Bank Incoming Wire Notification |
| | |
| **Importance:** | High |

Anthony,


FYI

Tracey


Attention!

American Momentum Bank 3/15/16

NOTICE OF WIRE TRANSFER

Wire Tracking Number: 20160315MMQFMPBS00001803151212FT03
Funds in the amount of $ 51,534.84
have been wired from FIRST AMERICAN TITLE INSURANCE COMP
to account ending in Acct Ending 3505

Originating Bank Name:
Originating Bank ABA#: 122241255

Originator to Beneficiary Notes:
SANDY GREEN 813 549 4744
12705 DANIEL DRIVE,PINELLAS,FL,USA
PROPERTYCRAFT, LLC


Propertycraft Enterprises LLC
7491 N Federal Hwy C-5311
Boca Raton FL 33487


American Momentum Bank Operations Dept

**This is an automated email. Please do not respond.**

# EXHIBIT 3

THIS INSTRUMENT PREPARED BY AND
AFTER RECORDING RETURN TO:

McIntyre Thanasides Bringgold
Elliott Grimaldi & Guito, P.A.
501 E. Kennedy Blvd.
Suite 1900
Tampa, Florida 33602


Real Estate Parcel No. 09/30/16/20295/000/0010

## SPECIAL WARRANTY DEED

    **THIS INDENTURE,** made as of March 15, 2016, between **SPIRIT REAL ESTATE CORPORATION,** a Florida corporation, whose address is 801 West Bay Drive, Suite 516, Largo, Florida 33770 (herein called "*Grantor*"), and **PROPERTYCRAFT ENTERPRISES LLC,** a Florida limited liability company, whose address is 7491 North Federal Highway #C-5311, Boca Raton, Florida 33487 (herein called "*Grantee*").

    (Wherever used herein the terms "*Grantor*" and "*Grantee*" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations).

    **WITNESSETH:** That Grantor, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration to Grantor in hand paid by Grantee, the receipt and sufficiency of which is hereby acknowledged, by these presents does grant, bargain, sell, alien, remise, release, convey, and confirm unto Grantee, its successors and assigns forever, all that certain land situated in Pinellas County, Florida, as more particularly described in Exhibit "A" attached hereto and made a part hereof by this reference.

    Together with all the tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining.

    TO HAVE AND TO HOLD the same in fee simple forever.

    AND Grantor hereby covenants with Grantee that it is lawfully seized of the land in fee simple; that it has good right and lawful authority to sell and convey such land; that it hereby specially warrants the title to such land and will defend the same against the lawful claims of all persons claiming by, through, or under Grantor, but against none other; subject, however, to those matters set forth on Exhibit "B" attached hereto and made a part hereof; provided that this reference shall not serve to reimpose the same.


### [Execution Page Follows]


712164

*[Signature Page of Special Warranty Deed]*

IN WITNESS WHEREOF, Grantor has caused these presents to be executed in manner and form sufficient to bind it as of the day and year first above written.

Signed, sealed and delivered in the
presence of:

**GRANTOR:**

**SPIRIT REAL ESTATE CORPORATION, a Florida corporation**

Print Name: _Jacqn Wagner_

Print Name: _Raina M. Sullivan_

By: _____
Name: _Stephen E. Terepka_
Title: _President_

**STATE OF FLORIDA**
**COUNTY OF** _Pinellas_

The foregoing instrument was acknowledged before me this **14th** day of **March**, 2016 by **Stephen E. Terepka** as **President** of Spirit Real Estate Corporation, a Florida corporation. He ☑ is personally known to me or ☐ has produced _____, as identification.

(Notarial Seal)

Print Name: _Raina M. Sullivan_
Notary Public_____

712164

### EXHIBIT "A"
#### [LEGAL DESCRIPTION OF PROPERTY]

Address: 12705 Daniel Drive, Clearwater, Florida

Tax Id No. 09/30/16/20295/000/0010

The land referred to herein below is situated in the County of Pinellas, State of Florida, and is described as follows:

TRACT "A"

The North 312.00 feet of Lot 1, DANIEL'S INDUSTRIAL PARK, as recorded in Plat Book 65, Page 27, Public Records of Pinellas County, Florida.

TRACT "B"

That part of Lot 13, Pinellas Groves, in the Northeast 1/4 of Section 9, Township 30 South, Range 16 East, as recorded in Plat Book 1, Page 55 of the Public Records of Pinellas County, Florida, lying between the Northerly and Southerly boundary lines of the above Tract "A" as extended Westerly a distance of 40.00 feet to the center line of Daniel Drive, a private access road.

Tract "C"

That part of the Southeast 1/4 of the Northeast 1/4 of Section 9, Township 30 South, Range 16 East, Pinellas County, Florida, being more particularly described as follows: Commence at the Southeast corner of the Southeast 1/4 of the Northeast 1/4 of said Section 9 and measure thence in a Westerly direction (North 89°57'22" West, Plat bearing as shown on DANIEL'S INDUSTRIAL PARK) along the South boundary thereof, a distance of 654.75 feet (654.82 feet measured); thence North 00°07'30" East (North 00°04'19" East measured), a distance of 40.00 feet; thence North 89°57'22" West, a distance of 122.39 feet; thence North 00°06'11" West (North 00°02'58" East), a distance of 634.62 feet measured to the Northwest corner of Lot 1, DANIEL'S INDUSTRIAL PARK as recorded in Plat Book 65, Page 27 of the Public Records of Pinellas County, Florida and being the Point of Beginning; thence South 89°57'22" East, a distance of 122.52 feet (122.64 feet measured) to the East line of Lot 13, Pinellas Groves, as per Plat recorded in Plat Book 1, Page 55; thence North 00°07'30" East (North 00°04'19" East measured) and along the same East line of Lot 13, a distance of 10.00 feet; thence North 89°57'22" West, a distance of 122.39 feet (122.64 feet measured) to a point which bears North 00°06'11" West (North 00°02'58" East measured) and 10.00 feet from the Point of Beginning; thence South 00°06'11" West (South 00°02'58" West measured), a distance of 10.00 feet to the aforesaid Point of Beginning.

Tract "D"

That part of Lot 13, PINELLAS GROVES in the Northeast 1/4 of Section 9, Township 30 South, Range 16 East, as recorded in Plat Book 1, Page 55 of the Public Records of Pinellas County, Florida, lying between the Northerly and Southerly boundary lines of the above Tract "C", as extended Westerly a distance of 40.00 feet to the center line of Daniel Drive, a private access road.

Together with a non-exclusive right of way over the private road known as Daniel's Drive from the South line of Tract "B" to the North line of 126th Avenue North.

712164

EXHIBIT "B"

[Permitted Exceptions]

1.  Taxes and assessments for the year 2016 and subsequent years, which are not yet due and payable.

2.  Restrictions, dedications, conditions, reservations, easements and other matters shown on the plat of DANIEL'S INDUSTRIAL PARK, as recorded in Plat Book 65, Page(s) 27, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

3.  Easement granted to Florida Power Corporation by instrument recorded in Book 4055, Page 1355.

4.  Subject to right of way for Daniel Drive a private access road along the West boundary of subject property as set forth in Deed recorded in Book 5599, Page 1618.

712164

**PREPARED BY AND RETURN TO:**
Joseph W. Gaynor, Esquire
Johnson, Pope, Bokor, Ruppel & Burns, LLP
Post Office Box 1368
Clearwater, Florida 33757-1368
Telephone: 727-461-1818

## MORTGAGE, SECURITY AGREEMENT
## AND ASSIGNMENT OF LEASES, RENTS AND PROFITS

Between

PROPERTYCRAFT ENTERPRISES, LLC, a Florida limited liability company
**("Borrower")**

and

SPIRIT REAL ESTATE CORPORATION, a Florida corporation
**("Lender")**

## MORTGAGE, SECURITY AGREEMENT
## AND ASSIGNMENT OF LEASES, RENTS AND PROFITS

THIS MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES RENTS AND PROFITS ("Mortgage") is made this _15th_ day of _March_ 2016, between **PROPERTYCRAFT ENTERPRISES LLC,** a Florida limited liability company, whose address is 7491 North Federal Highway #C-5311, Boca Raton, Florida 33487 ("Borrower"), and **SPIRIT REAL ESTATE CORPORATION,** a Florida corporation, whose address is 801 West Bay Drive, Suite 516, Largo, Florida 33770 ("Lender").

### W I T N E S S E T H:

WHEREAS, Borrower, by its Promissory Note ("Note") bearing even date herewith, is indebted to Lender in the principal sum of EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($800,000.00) lawful money of the United States of America, advanced or to be advanced by Lender to Borrower according to the terms and conditions of the Note and which Note has an maturity date of the 15th day of March, 2024 unless otherwise extended in accordance with the term of the Note.

NOW, THEREFORE, in consideration of said indebtedness and to secure payment to Lender of the Note, including all interest earned thereon, as well as all other sums provided for in the Note, the Loan Documents or herein, and to secure performance by Borrower of the covenants and agreements hereinafter expressed and in the Loan Documents, Borrower does hereby grant, bargain, sell, alien, remise, release, convey and confirm unto Lender, its successors and assigns, in fee simple, all of the real property together with buildings and improvements thereon, erected or to be erected (the "Land"), more particularly described in Exhibit "A" attached hereto and by reference made a part hereof;

TOGETHER WITH:

      (i)      all leasehold estates, and all right, title and interest of Borrower in and to all leases or subleases covering the Land or any portion thereof now or hereafter existing or entered into, and all right, title and interest of Borrower there under including, without limitation, all cash or security deposits, advance rentals, and deposits or payments of similar nature;

      (ii)      all right, title and interest of Borrower in and to all options to purchase or lease the Land or any portion thereof or interest therein, and any greater estate in the Land owned or hereafter acquired;

      (iii)      all easements, streets, ways, alleys, rights-of-way and rights used in connection therewith or as a means of access thereto and any rights to any vacated street, way, alleys, rights-of-way abutting the said Land, licenses, uses, and privileges of whatsoever kind or character, the reversions, remainders, mineral, water, aquifer and air rights, and all tenements, hereditaments and appurtenances thereof and thereto, and all water rights, and water stock appurtenant to the said Land, littoral rights and riparian rights;

      (iv)      any and all buildings, structures and improvements now or hereafter erected thereon, including, but not limited to, the fixtures, attachments, appliances, equipment, machinery and other articles attached to said buildings, structures and improvements (sometimes hereinafter referred to as the "Improvements");

      (v)      all fixtures, appliances, machinery, equipment, furniture, furnishings and articles of personal property now or hereafter affixed to, placed upon or used in connection with the operation of any of said properties (even if located off the Land); all gas, steam, electric, water and other heating, cooking, refrigerating, lighting, plumbing, ventilating, irrigating and power systems, machines, appliances, fixtures, and appurtenances which are now or may hereafter pertain to or be used with, in or on said Land, even though they may be detached or

detachable; all building improvement and construction materials, supplies and equipment hereafter delivered to said Land contemplating installation or use in the constructions thereon and; all rights and interest of Borrower in building permits and architectural plans and specifications, permits, licenses, fees, vested interests in zoning, land use, or density, relating to contemplated construction, development or improvements on said Land (sometimes hereinafter referred to as the "Personal Property");

(vi)     all awards and proceeds of condemnation for the Land or any part thereof to which Borrower is entitled, for any taking of all or any part of the Land by condemnation or exercise of the right of eminent domain. All such awards and condemnation proceeds are hereby assigned to Lender and Lender is hereby authorized, subject to the provisions contained in this Mortgage, to apply such awards and condemnation proceeds or any part thereof, after deducting therefrom any expenses incurred by the Lender in the collection or handling thereof, toward the payment, in full or in part, of the Note, notwithstanding the fact that the amount owing thereon may not then be due and payable;

(vii)     all rents, issues and profits of the Land and all the estate, right, title and interest of every nature whatsoever of the Borrower in and to the same;

(viii)     all accounts (including contract rights) and general intangibles pertaining to or arising from or in connection with all or any part of the Land including, without limitation, all proceeds and choses in action arising under any insurance policies maintained with respect to all or any part of the Land;

(ix)     all proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing items; and

(x)     all of the foregoing even if such rights or interest are not upon the Land but are nevertheless beneficial to the Land and off the Land.

All of the foregoing and the Land, Improvements, Personal Property, and all rights, privileges and franchises recited herein are collectively referred to as the "Premises".

TO HAVE AND TO HOLD the Premises unto the Lender in fee simple forever.

AND Borrower covenants and agrees with Lender as follows:

## 1. <u>WARRANTY OF TITLE</u>

A.     Borrower hereby covenants and warrants that it is the owner in fee simple of the Land and is indefensibly seized with the absolute fee simple title to the Land and has full power and lawful authority to sell, convey, transfer and mortgage the same; that it shall be lawful for Borrower at all times peaceably and quietly to enter upon, hold, occupy, and enjoy the Land and every part thereof; that the land is free from all liens and encumbrances and claims of any kind, including taxes and assessments, except those shown on Exhibit "B" attached ("Permitted Exceptions"). Borrower hereby fully warrants onto Lender the title to the Premises and will defend the same against the claims of all persons whomsoever.

B.     The Borrower will, on request of Lender, do any of the following: (i) promptly correct any defect, error or omission which may be discovered in the contents of this Mortgage or in any other instrument executed in connection herewith or in the execution or acknowledgment thereof; (ii) execute, acknowledge, deliver and record and/or file such further instruments (including, without limitation, further Mortgages, Security Agreements, Financing Statements, Continuation Statements and Assignments of Rents or Leases) and do such other acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Mortgage and such other instruments, and to subject to the liens and security interest hereof and thereof any property intended by the terms hereof and thereof to be covered hereby and thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements or appurtenances to said property; and (iii) execute, acknowledge, deliver, procure and file and/or record any document or instrument (including specifically any financing statement) deemed

advisable by the Lender to protect the lien of the security interest hereunder against the rights or interest of third persons, and Borrower will pay all costs connected with any of the foregoing.

C.      (1)      Borrower forthwith, upon the execution and delivery of this Mortgage and thereafter from time to time, will cause this Mortgage and any security agreement creating a lien or evidencing the lien hereof upon the Personal Property or any part or portion of the Premises and each instrument of further assurance, to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien and interest of Lender upon, on and to the Premises.

(2)      Borrower will pay all filing, registration or recording fees, and all other expenses incident to the execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Personal Property, or any part or portion of the Premises, and any instrument of further assurance, and all federal, state, county and municipal stamp taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of the Note, this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Personal Property or any part or portion of the Premises or any instrument of further assurance.

## 2. PAYMENT OF SUMS SECURED

This Mortgage is given to secure the faithful payment and performance of the Note, including payment of both principal and interest and such other indebtedness evidenced thereby, together with the covenants and agreements herein contained. Borrower hereby covenants and agrees to timely pay all sums of principal and interest upon the Note and to perform every other covenant and agreement of the Loan Documents secured hereby. In addition, this Mortgage is intended to be and is a mortgage to secure the payment of such future or additional advances as may be made by Lender at its option to Borrower, or its successors in title, for any purpose, provided that all those advances are to be made within twenty (20) years from the date of this Mortgage or within such lesser period of time as may be provided hereafter by law as a prerequisite for the sufficiency of actual notice or record notice of the optional future or additional advances as against the rights of creditors or subsequent purchasers for valuable consideration. The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed five times the principal amount of the Note, plus interest that may have accrued thereon, together with any disbursements made for the payment of taxes, levies or insurance on the Premises covered by the lien of this Mortgage, including interest on all such disbursements. Nothing herein contained shall be deemed an obligation on the part of the Lender to make any future advances.

## 3. CONDITIONS OF IMPROVEMENTS; PAYMENT OF INDEBTEDNESS

Borrower shall: (a) promptly repair, restore or rebuild any improvements hereafter erected on the Premises which may become damaged or be destroyed; (b) upon redevelopment of the mortgaged property, keep the Premises in good condition and repair, without waste, and free from mechanic's liens or claims for liens not expressly subordinated to the lien hereof; (c) not do or permit waste thereon or to suffer anything to be done which would impair or depreciate the value of the Premises; (d) pay when due any indebtedness which may be secured by a lien or charge on the Premises superior to the lien hereof; (e) complete within a reasonable time any building or buildings now or at any time in process of erection upon the Premises; (f) comply with all requirements of law, county or municipal ordinances, all governmental authorities, including federal, state or local, or restrictions of record with respect to the Premises and the use thereof; and (g) pay each item of indebtedness secured by this Mortgage when due according to the terms hereof or of the Note. Borrower may use the Premises for any use that is currently allowed under applicable governmental law ("Legal Use"). Borrower shall not change the use of the Premises to any use that is not a Legal Use without the written consent of Lender (which written consent shall not be unreasonably withheld or delayed so long as the change of use would not decrease the fair market value of the Property).

## 4. COMPLIANCE WITH GOVERNMENTAL AUTHORITIES

Borrower covenants and agrees to comply with any municipal or governmental ordinance and/or governmental regulation affecting the Premises within thirty (30) days after notice thereof or within thirty (30) days

4

after notice of any change in any existing municipal or governmental ordinance and/or regulation; provided, however, that if Borrower shall, in good faith and by proper legal action, contest any such ordinance or regulation as it affects the Premises, or the validity thereof, then Borrower shall not be required to comply therewith so long as such contest operates to prevent enforcement and is maintained and prosecuted with diligence, and shall not have been terminated or discontinued adversely to Borrower.

## 5. TAXES AND ASSESSMENTS

Borrower shall pay all real estate taxes, special assessments, water and sewer charges, other claims and liens assessed or which may be assessed against the Premises or any part thereof, without deduction, deficiency or abatement, not later than ten (10) days before the dates on which such taxes, water and sewer rents, claims and liens commence to bear interest or penalties and, not later than such dates, shall produce to Lender, at Lender's request, receipts for the payment thereof in full and shall pay every other tax, assessment, claim, lien or encumbrance which may at any time be or become a lien upon the Premises prior to the lien of this Mortgage; provided, however, that if Borrower shall in good faith, and by proper legal action, contest any such taxes, claims, liens, encumbrances or other charges or the validity thereof, and shall have established on its books, or by deposit of cash with Lender (as Lender may elect), or by deposit of cash or bond with an appropriate governmental authority, a reserve for the payment thereof in such amount as Lender may require, then Borrower shall not be required to pay the same, or to produce such receipts, during the maintenance of said reserve and for as long as such contest operates to prevent collection and is being pursued and prosecuted with diligence and shall not have been terminated or discontinued adversely to Borrower.

## 6. INSURANCE

Borrower shall keep the Improvements which are hereafter erected on the mortgaged property, including any Personal Property, fixtures, and all parts and portions of the Premises described above, constantly insured against loss by fire with extended coverage in a sum not less than full insurable value so as to avoid any claim on the part of the insurers for co-insurance, and in addition shall keep in full force and effect policies of insurance insuring against such other hazards, casualties, and contingencies as Lender may reasonably require including, but not limited to, Flood Insurance "All Risk" or "Fire extended coverage - difference in conditions", general public liability coverage, "Builder's Risk" Insurance and such other insurances as Lender deems necessary for minimum protection of its security.

All insurance required by Lender hereunder shall be on such forms, for such periods, and in such amounts as Lender may require with loss payable to the Lender under the New York Standard Lender Clause. Borrower shall deliver the policy or policies to the Lender as additional security, and where renewal policies are necessary in the performance of this covenant, to deliver them at least thirty (30) days before the expiration of the existing insurance. Upon any default hereof, the Lender may (but without obligation on its part to do so), place insurance of not less than full insurable value upon the date of payment and pay the premium and charge such sums to the Borrower, and such sums or money so paid shall bear interest at the highest rate permitted by law, all of which shall be secured by this Mortgage.

So long as Borrower is not in default of this Mortgage or the Note, Lender and Borrower shall jointly collect and receive any insurance money. In the event the insurance proceeds alone or the insurance proceeds together with the separate funds of the Borrower, deposited with the Lender, are in the discretion of the Lender (and the reasonable consent of the Borrower if Borrower is not in default of this Mortgage or the Note), adequate to reconstruct or repair after casualty, and such reconstruction and repair, the time required and all other considerations impacting reconstruction and repair do not, in the sole discretion of the Lender, impair the payment of the loan or the risk of the loan and if the loan is not otherwise in default, then the insurance proceeds and such other funds of the Borrower, as the case may be, shall be deposited with the Lender and used to reconstruct or repair in accordance with payments, contracts, plans and specifications acceptable to the Lender. The Premises shall be so restored or rebuilt as to be of at least equal value and substantially the same character as prior to such damage or destruction. Such policies of insurance and all renewals thereof are hereby assigned to Lender as additional security for the payment of the indebtedness hereby secured and the Borrower hereby agrees that any cash values available there under upon cancellation or return of premiums or otherwise, shall be payable to Lender, as assignee thereof.

In the event the Borrower is in default of this Mortgage or the Note, or the insurance proceeds alone or insurance proceeds together with the separate funds of the Borrower are insufficient to reconstruct or repair, the said proceeds shall be applied in reduction of the principal balance of the Note, or any other sum secured hereby, whether due or not. Such payments and reductions shall not cause a delay or postponement of the next installment due but shall be applied in inverse order as required by the Note.

In case of loss after foreclosure proceedings have been instituted, the proceeds of any such insurance policy or policies, if not applied as aforesaid in rebuilding or restoring the Premises, shall be used to pay the amount due in accordance with any decree of foreclosure that may be entered in any such proceedings, and the balance, if any, shall be paid to the owner of the equity of redemption if such owner shall then be entitled to same or as the court may otherwise direct. In the event of foreclosure sale, Lender is hereby authorized, without the consent of Borrower, to assign any and all insurance policies to the purchaser at the sale, or to take such other steps as Lender may deem advisable to cause the interest of such purchaser to be protected by any of the said insurance policies.

## 7. <u>ADDITIONAL TAXES</u>

Borrower shall pay to the Lender, when due and payable, the amount of all taxes, including assessments, public dues or charges levied or to be levied by law within the State of Florida on this Mortgage or on the Note or on Lender by reason of the ownership of this Mortgage or the Note or on account of interest derived therefrom (with the exception of federal and state income taxes); but if the amount of such taxes, assessments, public dues or charges mentioned in this paragraph, together with interest on the Note, shall exceed the maximum amount permitted by law to be paid for the use of money in the State of Florida, then the Borrower shall not be required to pay any such excess.

## 8. <u>ESCROW FUNDS</u>

Provided the Mortgagor, Borrower and Guarantor, are not in default under the terms of the Note, other Loan Documents or this Mortgage, Mortgagor shall not be required to pay to the Lender equal monthly installments for the annual real estate taxes and insurance premiums for the Property. However, subsequent to a default, Lender may, in its sole and absolute discretion, at any time upon prior written notice as described in paragraph 25 (the "Written Notice") to the Mortgagor, require an annual escrow for real estate taxes and insurance, which shall be paid in equal monthly installments to the Lender along with the monthly payment due under the Note. Borrower shall annually provide to Lender within ten (10) days of payment, a receipt showing full payment of real estate taxes, which said taxes shall be paid on or before the November 30th discount date. Additionally, Borrower shall, after redevelopment of the mortgaged property, insure the Property for full replacement value and shall provide Lender with proof of insurance showing Lender as a loss payee prior to the expiration of each policy of insurance. The certificate of insurance must contain a provision (if available form the insuror) that each policy shall not be cancelled by the insurer without first giving the Lender at least thirty (30) days prior Written Notice of said cancellation. In the event Mortgagor fails to timely pay either the taxes or insurance premiums, the Lender, at its sole and absolute discretion, may advance the sums due and said amount shall bear interest at the Default Rate of Interest under the Note and secured by this Mortgage until said amounts are reimbursed to the Lender.

## 9. APPLICATION OF UNIFORM COMMERCIAL CODE

This Mortgage shall be deemed a security agreement in accordance with the Uniform Commercial Code and as established by the Statutes of the State of Florida, in support of any financing statement which may hereafter be executed and filed with respect to any and all goods, chattels, fixtures and equipment which Borrower has installed or may install in or use on the Premises, and Borrower shall execute any financing statements (or renewals thereof) or other security agreements as the Lender shall require from time to time, as may be required in the Uniform Commercial Code, promptly upon request therefor by Lender. In the event of a default in this Mortgage or the Note, Lender may assert any remedy accorded under the Uniform Commercial Code simultaneously with any action brought or any remedy enforced hereunder. Such remedies for and violation of the covenants, terms and conditions of the agreements herein contained shall be (i) as prescribed herein, or (ii) by general law, or (iii) as to such part of the security which is also reflected in said financing statement by the specific statutory consequences now or hereafter enacted and specified in the Uniform Commercial Code, all at Lender's sole election. Borrower and Lender agree that the filing of such financing statement in the records normally having to do with personal property shall never be construed as in any wise derogating from or impairing this declaration and hereby stated intention of the parties hereto, that everything used in connection with the production of income from the Premises (furniture only excepted) and/or adapted for use therein and/or which is described or reflected in this Mortgage is, and at all times and for all purposes and in all proceedings both legal or equitable shall be regarded as part of the real estate irrespective of whether (i) any such item is physically attached to the Land or Improvements, (ii) serial numbers are used for the better identification of certain equipment items capable of being thus identified in a recital contained herein or in any list filed with the Lender, or (iii) any such item is referred to or reflected in any such financing statement so filed at any time. Similarly, the mention in any such financing statement of (1) the rights in or the proceeds of any fire and/or hazard insurance policy, or (2) any award in eminent domain proceedings for a taking or for loss of value, or (3) the debtor's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Premises mortgaged hereby, whether pursuant to lease or otherwise, shall never be construed as in anywise altering any of the rights of Lender as determined by this instrument or impugning the priority of the Lender's lien granted hereby or by any other recorded documents, but such mention in the financing statement is declared to be for the protection of the Lender in the event any court or judge shall at any time hold with respect to (1), (2) and (3) that notice of Lender's priority of interest to be effective against a particular class of persons, including, but not limited to, the Federal government and any subdivisions or entity or the Federal government, must be filed in the Commercial Code Records. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses, including reasonable attorneys' fees and any record searches for financing statements Lender may reasonably require, incident to the preparation and filing of such financing statements.

## 10. RIGHT TO REMEDY DEFECTS

If Borrower fails to pay any tax, claim, lien or encumbrance which shall be, or become, prior in lien to this Mortgage, or to pay an insurance premium as aforesaid, or to keep the Premises in repair, as aforesaid, or commits or permits waste, and the Borrower has failed to cure within twenty (20) days after Buyer's receipt of Written Notice thereof from Seller, then Lender, at its option, may pay said claim, lien, encumbrance, tax, assessment or premium, with right of subrogation thereunder, may make such repairs and take such steps as it deems advisable to prevent or cure such waste, and may appear in any action or proceeding with respect to any of the foregoing and retain counsel therein, and take such action therein as Lender deems advisable, and for any of said purposes Lender may advance such sums of money as it deems necessary. Borrower will pay to Lender, immediately and without demand, all sums of money advanced by Lender, including reasonable attorneys' fees, together with interest on each such advance at the default rate set forth in the Note, but which shall not, in any event, be higher than the maximum interest rate permitted by the laws of the State of Florida.

## 11. COSTS OF COLLECTION

Borrower shall pay to Lender, upon demand, all costs and expenses, including without limitation the costs and expenses of securing title insurance binders and policies, certified title report updates, abstracts or supplemental abstracts of title, as well as all other costs, including reasonable attorneys' fees, incurred during the course of

7

condemnation proceedings, foreclosure proceedings, bankruptcy proceedings, and all proceedings related to the enforcement or interpretation of the terms and provisions of the Note, or this Mortgage, or of any of the other Loan Documents of any nature whatsoever affecting the Premises or which may have heretofore been made a part of the aforementioned documents; it being further provided that the Borrower shall pay to the Lender all costs and expenses, including reasonable attorneys' fees, incurred in any proceeding relating to the title on the Premises, or to the priority of this Mortgage or by reason of the failure on the part of the Borrower to keep and perform any and all of the covenants and agreements contained herein, any Loan Documents or in the Note. Costs, expenses and reasonable attorneys' fees shall include, but not be limited to, legal assistant charges, copies, travel expenditures, professional witness fees and expenses, at trial and appellate level, and in any proceeding in bankruptcy or reorganization and in any administrative proceeding, including arbitration, mediation or the like by the Lender to collect the sums due or enforce the terms of the Note, Mortgage or Loan Documents whether or not suit be brought. All such costs, expenses and attorneys' fees paid by the Lender shall bear interest from the date of payment thereof at the default rate set forth in the Note (but in no event higher than the maximum interest rate allowed by the laws of the State of Florida) until repaid by the Borrower and shall, with such interest, be a part of the debt secured by this Mortgage.

## 12. EVENTS OF DEFAULT AND REMEDIES

Each of the following shall constitute events of default hereunder:

A.     If Borrower shall file a petition in voluntary bankruptcy or under any bankruptcy act or similar law, state or federal, whether now or hereafter existing, or an answer admitting insolvency or inability to pay its debts, or fail to obtain a vacation or stay of involuntary proceedings within thirty (30) days, as hereinafter provided;

B.     If Borrower shall be adjudicated as a bankrupt, or a trustee or a receiver shall be appointed for Borrower or for all of its property or the major part thereof in any involuntary proceedings, or any court shall have taken jurisdiction of all or any part of the property of Borrower in any involuntary proceedings for the reorganization, dissolution or liquidation of Borrower, and such trustee or receiver shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal or otherwise stayed within sixty (60) days;

C.     If Borrower shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due, or shall consent to the appointment of a receiver or trustee or liquidator of all of its property or the major part thereof;

D.     If default shall be made in the due observance or performance of any non-monetary covenants, agreements or conditions heretofore or hereafter contained, required to be kept or performed or observed by Borrower in this Mortgage, the Note, the Loan Documents or any other instrument executed concurrently with or in connection with this Mortgage, and the same shall not be cured within thirty (30) days following delivery of Written Notice thereof;

E.     If default shall be made that is not cured within an applicable grace or notice period (i) in the payment of any interest on the Note or in the payment of any installment of principal, or either of them, as the same shall become due and payable; or (ii) in any other payment of the principal of the Note, when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any prepayment or otherwise, in each case, as in the Note and Mortgage provided; or (iii) in the payment of any tax required by Paragraph 5 to be paid; or (iv) in the due observance or performance of any other monetary covenant and such payment is not made when due. Unless a longer period is specified in any Loan Document, the Borrower shall have five (5) business days after receipt of Written Notice from Lender to cure any monetary default; provided, however, that the Borrower shall have a right to a Written Notice within five (5) business days to cure up to a maximum of 3 times per calendar year.

F.     Except as hereinbefore permitted, the actual or threatened demolition or removal of any Improvements on the land or any alteration of the building structure at a cost in excess of $100,000.00, without written consent of the Lender (which consent shall not be unreasonably withheld).

Through the occurrence of any such event of default as set forth in A through F of this Paragraph, the entire unpaid balance of the principal, any accrued interest thereon, and all other sums secured by this Mortgage, shall become immediately due and payable as set forth in the Note and without further demand, and, in any such event of default, the Lender may forthwith:

(1)    Foreclose. When the Note or any indebtedness secured hereby, or any part thereof, shall become due, whether by acceleration or otherwise, Lender shall have the right to foreclose the lien hereof for all of such indebtedness or any part thereof.

To the extent this Mortgage may encumber more than one property, the Lender at its sole option shall have the right to foreclose any one property or to foreclose en masse. In any suit to foreclose the lien hereof, there shall be allowed and included as additional indebtedness to the decree for sale all costs, fees and expenses described in Paragraph 11 hereof which may be paid or incurred by or on behalf of Lender to prosecute such suit, and such other costs and fees including, but not limited to, appraisers' fees, outlays for documentary and expert evidence, stenographers' charges, publication costs, accounting fees, brokerage commissions, costs of whatever nature or kind to protect and avoid impairment of the Premises, and other related costs and fees as shall be necessary.

(2)    Appoint a Receiver. At, or any time after, the filing of a complaint to foreclose the Mortgage, the court in which such complaint is filed may appoint a receiver of the Premises. Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of Borrower at the time of application for such receiver and without regard to the then value of the Premises, and Lender may be appointed receiver. Such receiver shall have power to collect the rents, issues and profits of the Premises during the pendency of such foreclosure suit and during any statutory period of redemption, and all other powers which may be necessary for the protection, possession, control, management and operation of the Premises during said period. The court from time to time may authorize the receiver to apply the net income in its hands in payment in whole or in part of: (a) the indebtedness secured hereby, or by any decree foreclosing the Mortgage, or any tax, special assessment or other lien which may be or become superior to the lien hereof or of such decree, provided such application is made prior to foreclosure sale, or (b) the deficiency in case of a sale and deficiency. The Lender's right to a receiver shall be absolute.

(3)    Apply the Proceeds. The proceeds of any foreclosure sale of the Premises shall be distributed and applied in the following order of priority: first, on account of all costs and expenses incident to the foregoing proceedings, including all such items as are mentioned in Paragraph (1) above; second, all other items which, under the terms hereof, constitute secured indebtedness additional to that evidenced by the Note, with interest thereon as herein provided; third, all principal and interest remaining unpaid on the Note; and fourth, any surplus to the Borrower or as directed by the Court.

## 13. ASSIGNMENT OF RENTS, ETC.

To further secure the indebtedness secured hereby, Borrower does hereby sell, assign and transfer unto Lender all the rents, issues income, accounts receivable and profits now due and which may hereafter become due under or by virtue of any lease, whether written or verbal, or any letting of, or profits or proceeds from the operation of the Premises as a result of any business conducted thereon, or of any agreement for the sale, use or occupancy of the Premises or any part thereof, which may have been heretofore or may be hereafter made or agreed to or which may be made or agreed to by Lender under the powers herein granted, it being the intention hereby to establish an absolute transfer and assignment of all of such leases, rents, profits and agreements, and all the avails thereunder, unto Lender, and Borrower hereby appoints Lender its true and lawful attorney in its name and stead, with or without suit, to collect such rents and proceeds as are herein transferred to the Lender and to rent, lease or let all or any portion of the Premises to any party or parties at such rental and upon such terms as Lender shall, in its discretion, determine, and to collect all of such rents, issues and profits, proceeds, incomes, accounts receivable arising from or accruing at any time hereafter under each lease or other tenancy, use or agreement existing, or which may hereafter exist, on the Premises. The Lender in collecting such proceeds shall apply the same, less expenses of collection, to the said indebtedness, other secured items and repairs, in such manner as the Lender may elect; provided, however, that until there be a default under the term of this Mortgage (which is not cured within the applicable curative period prescribed herein), Borrower may continue to collect and enjoy said rents, issues, profits, income and accounts

9

receivable giving only an annual accounting to the Note holder for the same. The curing of any default within the period permitted by this Mortgage shall entitle the Borrower to again collect said rents, issues, profits, income and accounts receivable.

Borrower shall assign and transfer to Lender all leases upon all or any part of the Premises and shall execute and deliver all such further assurances and assignments as Lender shall from time to time require.

This assignment of rents, issues, profits, income, and accounts receivable and the granting of the power of attorney shall be irrevocable and shall be in addition to the other remedies herein provided for in event of default and may be put into effect independently of or concurrently with any of said remedies, but no liability shall attach to the Lender for failure or inability to collect any rents, issues, profits, income and accounts receivable herein assigned. Assignment, lien, and power of attorney shall apply to all rents, issues, profits, income, accounts receivable choses in action and the proceeds of same hereafter accruing from present contracts for deed, purchase agreements, option agreements or leases and rentals of the Premises and from all contracts for deed or purchase agreements, option agreements or leases and rentals and any business activity hereafter made or conducted by the present or any future owners of the Premises, and any persons entering into contracts for purchase or sale of the Premises shall take subject to all the provisions and conditions hereof.

Lender shall not exercise any of the rights or powers conferred upon it by this paragraph until an event of default shall exist hereunder and not be timely cured.

## 14. **RIGHT OF POSSESSION**

When an event of default occurs, which is not timely cured, Borrower shall surrender to Lender possession of the Premises or any part thereof and Lender may, itself or through its agents, enter upon and do any of the following: (i) take possession of all or any part of the Premises, together with all documents, books, records, papers, and accounts of Borrower or then owner of the Premises relating thereto and may, as agent of Borrower or in its own name, operate, manage, and control the Premises and conduct the business, if any, thereof, or any other business deemed appropriate by the Lender either personally or by its agents;(ii) with full power to use such measures, legal or equitable, as in its discretion may be deemed proper or necessary, to enforce the payment or security of the rents, issues and profits of the Premises; (iii) to exercise each and every of the rights, privileges and powers herein granted at any and all times hereafter, without notice to Borrower, and (iv) to cancel any lease or agreement subordinate to the lien hereof and to make all necessary or proper repairs.

Should Lender incur any liability, loss or damage, under any lease hereby assigned or under or by reason of the assignment thereof, or in the defense of any claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured hereby, and Borrower shall reimburse Lender therefore immediately upon demand.

## 15. **APPLICATION OF INCOME**

After the occurrence or in the event of default, which is not timely cured, Lender shall have full power to use and apply the rents, issues and profits of the Premises to the payment of or on account of the following, in such order as Lender may determine:

(a)     all operating expenses of the Premises, including costs of managing and leasing thereof;

(b)     all taxes, insurance premiums and special assessments now due or which may hereafter become due on the Premises;

(c)     all repairs, alterations, additions and improvements of the Premises; and

(d)     any indebtedness secured hereby or any deficiency which may result from any foreclosure sale.

(e) for the payment of any or all of the amounts due hereunder or upon the Note or any Loan Document, including but not limited to, principal, interest, costs, expenses, including attorneys fees due to the Lender.

## 16. RIGHT OF INSPECTION

In the event of a default by Borrower beyond any applicable notice and cure period, the Lender shall have the right to inspect the Premises at all reasonable times after reasonable notice, and access thereto shall be permitted for that purpose.

## 17. CUMULATIVE RIGHTS AND REMEDIES

The rights and remedies of Lender as provided herein, or in the Note or Loan Documents, shall be cumulative and concurrent, and may be pursued singly, successively or together at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur, and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release of the same.

## 18. CONDEMNATION

Borrower hereby assigns, transfers and sets over unto Lender the entire proceeds of any award or any claim for damages for any of the Premises taken or damaged under the power of eminent domain or by condemnation.

In the event the condemnation proceeds alone or the condemnation proceeds together with the separate funds of the Borrower, deposited with the Lender, are, in the sole and absolute discretion of the Lender, adequate to reconstruct or repair after condemnation, and such reconstruction and repair, the time required and all other considerations impacting reconstruction and repair do not, in the sole discretion of the Lender, impair the payment of the loan or the risk of the loan, and if the loan is not otherwise in default, then the condemnation proceeds and such other funds of the Borrower, as the case may be, shall be deposited with the Lender and used to reconstruct or repair in accordance with payments, contracts, plans and specifications acceptable to the Lender.

In the event the condemnation proceeds alone or condemnation proceeds together with the separate funds of the Borrower are insufficient to reconstruct or repair, the said proceeds may be applied in reduction of the principal balance of the Note, or any other sum secured hereby, whether due or not. Such payments and reductions shall not cause a delay or postponement of the next installment due but shall be applied in inverse order as required by the Note.

Any surplus remaining from the said award, shall, at the option of the Lender, be applied on account of the indebtedness secured hereby or be paid to any other party entitled thereto. In applying the proceeds of any award on account of the indebtedness secured hereby, Lender shall be entitled to collect out of the proceeds of the award at the same rate as though Borrower had elected to prepay the indebtedness in accordance with the terms of the Note. Any and all costs and expenses and reasonable attorneys' fees incurred by Lender by reason of any condemnation, threatened condemnation or proceeding thereunder shall be secured hereby and Borrower shall reimburse Lender therefor immediately upon demand or Lender may, at its option, deduct the same from any award assigned to Lender hereunder.

Borrower shall notify Lender at once of the commencement of condemnation proceedings of any character affecting the Premises or any part thereof. In the event that the Premises is wholly condemned, Lender shall receive from the Borrower and/or the proceeds of such condemnation proceedings, the entire indebtedness secured by this Mortgage.

## 19. INVALIDITY

Nothing contained herein, nor any transaction related hereto, shall be construed or so operate to require the Borrower to pay interest at a rate greater than is lawful in such case to contract for, or to make any payment or to do any act contrary to law. It is understood and agreed that if any clauses or provisions herein contained operate or

11

would prospectively operate to invalidate this Mortgage, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein contained, and the remainder of this Mortgage shall remain operative and in full force and effect.

## 20. WAIVER

Borrower shall not avail itself of any laws now existing or hereafter enacted in order to prevent or hinder the enforcement or foreclosure of the Mortgage, and to the extent permitted, hereby waives the benefit of such laws. Borrower waives any and all right to have the Premises marshaled upon any foreclosure of the lien hereof and agrees that any court having jurisdiction to foreclose such lien may order the Premises sold as on entirety

No delay or omission by the Lender in the exercise of any right or remedy accruing upon any default or in the doing of any of the matters and things by it permitted to be done under the terms and provisions of this Mortgage and the Note shall impair any such right or acquiescence therein, nor shall it affect any subsequent default of the same or a different nature and every such right or remedy may be exercised from time to time and as often as it is deemed expedient by the Lender.

## 21. CHANGE OF OWNERSHIP

The identity of the Borrower and principals of Borrower is of material importance to Lender in extending this mortgage loan. Therefore, if conveyance shall be made by Borrower of the Premises or any part thereof or any interest therein without the express written consent of the Lender, or if there be a lease or other arrangement, which in the sole discretion of the Lender has the effect of a conveyance, transfer or relinquishment of the benefits of ownership of the Premises, or if there is any change in the principals or the control of the Borrower or in the ownership of the interest (stock, shares, partnership shares, beneficial interests, memberships, etc.) of the Borrower, or if the Premises are further encumbered without the prior written consent of Lender, then and upon the occurrence of any such event, the whole amount, including principal, interest and all other amounts hereby secured shall, at once, at the option of the Lender, become immediately due and payable, together with accrued interest thereon, without notice or demand, which such notice and demand are hereby expressly waived. In the event consent for transfer is granted (which consent shall only be by express written consent), the Lender shall have the absolute right to cause the Grantee, new owners and/or principals of Grantee to assume and agree to pay the Note and to perform all terms and conditions of the Loan Documents, including this Mortgage, and may charge such fees and costs, including a reasonable attorney's fee, as may reasonably be charged for such assumption and to further adjust rates and terms such that they will be consistent with Lender's policies and requirements. Such consent to transfer and acceptance of the Grantee shall not constitute a release of any Maker, Co-Maker, Endorser, Guarantor, or Borrower, unless such release is expressly given in writing by the Lender, and shall only be considered for the transfer permitted and shall not be construed as approval of any subsequent transfer.

## 22. DEALING WITH NEW OWNERS OF PREMISES

In the event the ownership of the Premises or any part of it becomes vested in a person other than the Borrower, the Lender, without notice to the Borrower, may deal with the successor or successors in interest with reference to this Mortgage or the Loan Documents and the debt secured in the same manner as with the Borrower and may forbear to sue or may extend time for payment of the debt secured, without discharging or in any way affecting the liability of any Maker, Co-Maker, Endorser, Guarantor or Borrower under this Mortgage or upon the debt secured.

## 23. FORECLOSURE OF LIEN

If foreclosure proceedings of any lien of any kind affecting the Premises should be instituted, whether such lien is superior or inferior to the lien of this Mortgage, the Lender may, at its option, immediately or thereafter declare this Mortgage and the indebtedness secured hereby due and payable.

## 24. BORROWER'S FINANCIAL STATEMENTS

The Borrower agrees to furnish Lender with annual financial statements on the anniversary date of this Mortgage and, federal income tax returns and/or extensions/modifications within 30 days of filing. The tax returns must be complete, executed, governmental copies including all supporting schedules and attachments.

## 25. NOTICE

All notices required under the terms of this Mortgage shall be deemed to have been duly given either: (i) three (3) days after their deposit in the United States mail postage prepaid, or (ii) two (2) days after their deposit in a nationally recognized overnight courier service, (iii) on the day of their personal delivery, if addressed or delivered to Lender or Borrower at their following respective addresses, or such other address as is specified in writing by any party to the others, provided that no change of address by the Borrower shall be effective unless Borrower first serves notice of such change of address on Lender in writing by certified mail with return receipt requested, retaining a copy of such return receipt in its files, or (iv) electronic Written Notice at the email address ir facsimile address provided below. In any event, Borrower shall exercise reasonable diligence to ensure that Lender is at all times advised of the correct address of each, and any changes thereto, stipulated as the following as of the date of this Mortgage:

Borrower:    Propertycraft Enterprises LLC
7491 North Federal Highway
#C-5311
Boca Raton, Florida 33487
Facsimile:
Email: jg@bostonfinancegroup.com

Lender:    Spirit Real Estate Corporation
801 West Bay Drive
Suite 516
Largo, Florida 33770
Facsimile:
Email: steve.terepka@gmail.com

## 26. SECURITY INTEREST AND RIGHT OF SETOFF

As additional collateral for the payment of the indebtedness of the Borrower hereunder and all other indebtedness or liabilities of the Borrower to the Lender (all such indebtedness and liabilities being hereafter in this paragraph called the "Obligation"), Lender shall have, and is hereby granted by the Borrower, a security interest and right of setoff in and to all monies, securities, and other property of the Borrower now or hereafter on deposit with or otherwise held by or coming into the possession or under the control of Lender and Lender may, at its option at any time and without notice to Borrower, appropriate and apply to the payment or reduction, either in whole or in part, of the amount owing on all or any such Obligations (whether or not then due), any and all such monies, securities or other property, including, but not limited to that certain account wherein the Borrower deposited the sum of Fifty-One Thousand Five Hundred Thirty-Four and 84/100 ($51,534.84) (12 months of monthly principal and interest payments) (the "Bank Account Sum") in American Momentum Bank ("Bank") and (ii) the Borrower hereby collaterally assigns the Bank Account Sum to the Lender as additional security for payment of the Note.

13

## 27. CROSS DEFAULTS

A default in the terms and conditions of any obligations of the Borrower to the Lender of whatever nature or kind, including but not exclusive of this obligation, shall constitute a default of the terms and conditions of this Mortgage and Note. Likewise, any default in the terms and conditions of this Mortgage and Note shall be and constitute a default under the terms and conditions of any other obligations owed by the Borrower to the Lender. Upon such default, any of the Borrower's monies, securities or other property deposited with the Lender shall be immediately and irrevocably assigned to the Lender to apply to the obligations in any manner the Lender deems necessary.

## 28. MISCELLANEOUS

A. Neither the acceptance of this Mortgage nor the enforcement thereof shall prejudice or in any manner affect the right of Lender to realize upon or enforce any other security now or hereafter held by Lender, it being understood that Lender shall be entitled to enforce in the order and manner as it may in its discretion determine.

B. This Mortgage shall extend to and be binding upon Borrower, his or its heirs, administrators, successors and assigns and all persons claiming under or through Borrower. The word "Lender" when used herein shall include the successors and assigns of Lender named herein, and the holder or holders, from time to time, of the Note.

C. The Mortgage is intended to and does secure the payment of any and all extensions, modifications or renewals of the Note and any future advances made in accordance with this Mortgage or the Loan Documents.

D. Without affecting the liability of any other person liable for the payment of the Note or the lien of this Mortgage, Lender may release any person so liable, extend the time of payment or renew the Note, or grant other indulgences or modify any of the terms or provisions hereof or of the Note, release any parcel or portion of the Premises, or consent to the granting of any easement, or enter into any agreement subordinating the lien hereof, or take or release any other security for the payment of the Note or for the performance of any of the covenants and agreements hereunder, and/or make compositions or other arrangements with debtors in relations thereto.

E. All covenants, agreements and undertakings herein shall be joint and several.

F. The Mortgage, Note, and other Loan Documents constitute Florida contracts and shall be construed according to the laws of the State of Florida.

G. The headings of the paragraphs contained in this Mortgage are for convenience or reference only and do not form a part hereof and in no way modify, interpret or construe the meaning of the parties hereto.

H. Wherever possible, each provision of this Mortgage shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision hereof shall be prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity only, without invalidating the remainder of such provisions or other remaining provisions of this Mortgage.

I. This Mortgage may not be changed, terminated or modified in any manner except by an instrument in writing signed by the party against whom enforcement is sought.

J. If both the Lessor's and Lessee's estates under any lease or any portion thereof which constitutes a part of the Premises shall at any time become vested in any one owner, this Mortgage and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger and, in such event, Lender shall continue to have and enjoy all of the rights and privileges of Lender as to this separate estate. In addition, upon the foreclosure of the lien created by this Mortgage on the Premises pursuant to the provisions hereof, any leases or

14

subleases then existing and created by Borrower shall not be destroyed or terminated by application of the law of merger or as a result of such foreclosure sale unless Lender shall so elect. No act by or on behalf of Lender or any such purchaser shall constitute a termination of any lease or sublease unless Lender or such purchaser shall give Written Notice thereof to such tenant or subtenant.

     K.     Borrower within five (5) days after request in person or within ten (10) days after request by mail, will furnish to Lender or any person, firm or corporation designated by Lender a duly acknowledged written statement setting forth the amount of the debt secured by this Mortgage and stating either that no offsets or defenses exist against such debt, or, if such offsets or defenses are alleged to exist, full information with respect to such alleged offsets and/or defenses.

### 29. WAIVER OF HOMESTEAD

     Borrower does hereby waive all rights and protections afforded the Borrower under the homestead laws of the State of Florida, to the extent such rights and protections exist.

### 30. DEFINITIONS

     For purposes of this Mortgage, the following terms are defined:

     Lender: As set forth in the opening paragraph of this Mortgage, Lender shall include its successors, heirs and assigns and may otherwise be known or referred to in the Loan Documents as "Secured Party" or "Assignee".

     Borrower: As set forth in the opening paragraph of this Mortgage, Borrower shall include its successors, heirs and assigns and may otherwise be known as or referred to in the Loan Documents as "Debtor" or "Assignor".

     Loan Documents: Shall include this Mortgage, Assignment of Leases, Rents and Profits, the Note, Security Agreement, Financing Statements, Loan Agreement, and such other instruments and documents executed and delivered pursuant to the extension of credit between the Borrower and Lender, and any modification, extensions or renewals, all of the terms of which are herein incorporated by reference.

### 31. WAIVER OF JURY TRIAL

     BY THE EXECUTION HEREOF, BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY AGREES THAT:

     (A)     NEITHER THE BORROWER NOR ANY ASSIGNEE, SUCCESSOR, HEIR, OR LEGAL REPRESENTATIVE OF ANY OF THE SAME SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE ARISING FROM OR BASED UPON THIS MORTGAGE, THE NOTE, ANY OTHER LOAN AGREEMENT OR ANY LOAN DOCUMENT EVIDENCING, SECURING OR RELATING TO THE OBLIGATIONS OR TO THE DEALINGS OR RELATIONSHIP BETWEEN OR AMONG THE PARTIES THERETO;

     (B)     NEITHER THE BORROWER NOR LENDER WILL SEEK TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL HAS NOT BEEN OR CANNOT BE WAIVED;

     (C)     THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE PARTIES HERETO, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS;

     (D)     NEITHER THE BORROWER NOR LENDER HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES; AND

(E)     THIS PROVISION IS A MATERIAL INDUCEMENT FOR Lender TO ENTER INTO THIS TRANSACTION.

### 32. 2005 PATRIOT ACT COMPLIANCE.

Borrower will use its good faith and commercially responsible efforts to comply with the Patriot Act (as defined below) and all applicable requirements of governmental authorities having jurisdiction of the Borrower and the Property, including those relating to money laundering and terrorism. The Lender shall have the right to audit the Borrower's compliance with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction of the Borrower and the Property, including those relating to money laundering and terrorism. In the event that the Borrower fails to comply with the Patriot Act or any such requirements of governmental authorities, then the Lender may, at its option, cause the Borrower to comply therewith and any and all reasonable costs and expenses incurred by the Lender in connection therewith shall be secured by this Mortgage and other Loan Documents shall be immediately due and payable. For purposes hereof, the term "Patriot Act" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and corresponding provisions of future laws.

Neither the Borrower nor any partner in the Borrower or member of such partner nor any owner of a direct or indirect interest in the Borrower (a) is listed on any Government Lists (as defined below), (b) is a person who has been determined by competent authority to be subject to the prohibitions contained in Presidential Executive Order No. 13224 (September 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC (as defined below) or in any enabling legislation or other Presidential Executive Orders in respect thereof, (c) has been previously indicted for or convicted of any felony involving a crime or crimes of moral turpitude or for any Patriot Act Offense (as defined below), or (d) is not currently under investigation by any governmental authority for alleged criminal activity. For purposes hereof, the term "Patriot Act Offense" means any violation of the criminal laws of the United States of America or of any of the several states, or that would be a criminal violation if committed within the jurisdiction of the United States of America or any of the several states, relating to terrorism or the laundering of monetary instruments, including any offense under (a) the criminal laws against terrorism; (b) the criminal laws against money laundering; (c) the Bank Secrecy Act, as amended; (d) the Money Laundering Control Act of 1986, as amended; or (e) Patriot Act. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term "Government Lists" means (i) the Specially Designated Nations and Blocked Persons Lists maintained by Office of Foreign Assets Control ("OFAC"), (ii) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that Lender notified Borrower in writing is now included in "Governmental Lists", or (iii) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other government authority or pursuant to any Executive Order of the President of the United States of America that Lender notified Borrower in writing is now included in "Governmental Lists".

**Signature on the following pages.**

16

IN WITNESS WHEREOF, Borrower has executed this Mortgage on the day and year first above written.

Signed, sealed and delivered
in the presence of:

**PROPERTYCRAFT ENTERPRISES LLC,**
a Florida limited liability company

Michelle A. Gironda
Print: Michelle A. Gironda

By: _____
Print Name: JONATHAN GOLDEN
Title: VICE PRESIDENT

Print: ANNALU VARANDA

STATE OF FLORIDA     )
COUNTY OF _____   )

The foregoing instrument was acknowledged before me this 11th day of March 2016, by
Jonathan Golden, as Manager of Propertycraft Enterprises LLC, a Florida limited liability company.

Michelle A. Gironda
NOTARY PUBLIC-STATE OF FLORIDA

> MICHELLE A. GIRONDA
> Commission # EE 877317
> Expires June 3, 2017
> Bonded Thru Troy Fain Insurance 800-385-7019

Print, type or stamp commissioned name of Notary Public
Personally known ✓ or Produced Identification ____
Type of Identification Produced: Driver's License OR Other _____

713567

17

## EXHIBIT "A"
### [LEGAL DESCRIPTION OF PROPERTY]

Address: 12705 Daniel Drive, Clearwater, Florida

Tax Id No. 09/30/16/20295/000/0010

The land referred to herein below is situated in the County of Pinellas, State of Florida, and is described as follows:

TRACT "A"

The North 312.00 feet of Lot 1, DANIEL'S INDUSTRIAL PARK, as recorded in Plat Book 65, Page 27, Public Records of Pinellas County, Florida.

TRACT "B"

That part of Lot 13, Pinellas Groves, in the Northeast 1/4 of Section 9, Township 30 South, Range 16 East, as recorded in Plat Book 1, Page 55 of the Public Records of Pinellas County, Florida, lying between the Northerly and Southerly boundary lines of the above Tract "A" as extended Westerly a distance of 40.00 feet to the center line of Daniel Drive, a private access road.

Tract "C"

That part of the Southeast 1/4 of the Northeast 1/4 of Section 9, Township 30 South, Range 16 East, Pinellas County, Florida, being more particularly described as follows: Commence at the Southeast corner of the Southeast 1/4 of the Northeast 1/4 of said Section 9 and measure thence in a Westerly direction (North 89°57'22" West, Plat bearing as shown on DANIEL'S INDUSTRIAL PARK) along the South boundary thereof, a distance of 654.75 feet (654.82 feet measured); thence North 00°07'30" East (North 00°04'19" East measured), a distance of 40.00 feet; thence North 89°57'22" West, a distance of 122.39 feet; thence North 00°06'11" West (North 00°02'58" East), a distance of 634.62 feet measured to the Northwest corner of Lot 1, DANIEL'S INDUSTRIAL PARK as recorded in Plat Book 65, Page 27 of the Public Records of Pinellas County, Florida and being the Point of Beginning; thence South 89°57'22" East, a distance of 122.52 feet (122.64 feet measured) to the East line of Lot 13, Pinellas Groves, as per Plat recorded in Plat Book 1, Page 55; thence North 00°07'30" East (North 00°04'19" East measured) and along the same East line of Lot 13, a distance of 10.00 feet; thence North 89°57'22" West, a distance of 122.39 feet (122.64 feet measured) to a point which bears North 00°06'11" West (North 00°02'58" East measured) and 10.00 feet from the Point of Beginning; thence South 00°06'11" West (South 00°02'58" West measured), a distance of 10.00 feet to the aforesaid Point of Beginning.

Tract "D"

That part of Lot 13, PINELLAS GROVES in the Northeast 1/4 of Section 9, Township 30 South, Range 16 East, as recorded in Plat Book 1, Page 55 of the Public Records of Pinellas County, Florida, lying between the Northerly and Southerly boundary lines of the above Tract "C", as extended Westerly a distance of 40.00 feet to the center line of Daniel Drive, a private access road.

Together with a non-exclusive right of way over the private road known as Daniel's Drive from the South line of Tract "B" to the North line of 126th Avenue North.

# EXHIBIT 4

**From**: Tracey Gregory [Tracey.Gregory@centersmail.com]
**on behalf of** Tracey Gregory <Tracey.Gregory@centersmail.com> [Tracey.Gregory@centersmail.com]
**Sent**: 4/28/2016 10:20:14 AM
**To**: John Witeck [John.Witeck@Austin-Colby.com]
**CC**: Cindy Jolly (FTS) [Cindy.Jolly@fiduciarytaxservices.tax]
**Subject**: RE: Daniel Drive - Propertycraft

John,

Try it again.

It should be set for both you and Cindy to release.

Thank you.

Tracey

---

**From:** John Witeck
**Sent:** Thursday, April 28, 2016 10:09 AM
**To:** Tracey Gregory
**Cc:** Cindy Jolly (FTS)
**Subject:** RE: Daniel Drive - Propertycraft

Tracey, I don't see PropertyCraft in my list of companies to release the wire.  Does Cindy or I have this ability?

**John L Witeck**
**Controller**

 Austin Colby Co.

4912 Creekside Drive
Clearwater, FL 33760
Phone: (727) 497-1827 ext. 229
Fax: (727) 497-1829

CONFIDENTIALITY NOTE:  The information contained in this transmission is privileged and confidential information intended to be delivered to, and for the use of, only the individual(s) to whom it is addressed.  It may contain information that is confidential, proprietary, attorney work product, attorney-client privileged, or subject to other doctrines and/or privileges recognized under applicable law.  If you are not the intended recipient, do not read this message but instead please immediately notify the sender by electronic mail and by telephone to (727)-894-4489 and obtain instructions as to the disposal of the transmitted material.  In no event is this material to be read, used, copied, reproduced, stored, or retained by anyone other than the named addressee(s) except with the express consent of the sender. IRS CIRCULAR 230 DISCLOSURE:  Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained in this communication (including any attachments), unless explicitly provided otherwise, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

**From:** Tracey Gregory
**Sent:** Thursday, April 28, 2016 9:41 AM
**To:** John Witeck <John.Witeck@Austin-Colby.com>
**Cc:** Cindy Jolly (FTS) <Cindy.Jolly@fiduciarytaxservices.tax>
**Subject:** RE: Daniel Drive - Propertycraft

John,

It has been set-up.

Please let me know if you have any questions or changes.

Thank you.

Tracey

---

**From:** John Witeck
**Sent:** Thursday, April 28, 2016 9:11 AM
**To:** Tracey Gregory
**Cc:** Cindy Jolly (FTS)
**Subject:** FW: Daniel Drive - Propertycraft
**Importance:** High

Tracey,

We have someone starting soon to handle the properties, however, I currently don't have anyone that can set up a wire from Property Craft Enterprises.  Would you be so kind and set up the wire below?

**John L Witeck**
**Controller**

 Austin Colby Co.

4912 Creekside Drive
Clearwater, FL 33760
Phone: (727) 497-1827 ext. 229
Fax: (727) 497-1829

CONFIDENTIALITY NOTE:  The information contained in this transmission is privileged and confidential information intended to be delivered to, and for the use of, only the individual(s) to whom it is addressed.  It may contain information that is confidential, proprietary, attorney work product, attorney-client privileged, or subject to other doctrines and/or privileges recognized under applicable law.  If you are not the intended recipient, do not read this message but instead please immediately notify the sender by electronic mail and by telephone to (727)-894-4489 and obtain instructions as to the disposal of the transmitted material.  In no event is this material to be read, used, copied, reproduced, stored, or retained by anyone other than the named addressee(s) except with the express consent of the sender. IRS CIRCULAR 230 DISCLOSURE:  Pursuant to Regulations Governing Practice Before the Internal Revenue Service, any tax advice contained in this communication (including any attachments), unless explicitly provided otherwise, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

**From:** Jonathan Golden (BFG)
**Sent:** Thursday, March 17, 2016 4:05 PM
**To:** John Witeck <John.Witeck@Austin-Colby.com>
**Subject:** FW: Daniel Drive - Propertycraft

Monthly mortgage payment is $4294.57 --- wire instructions below --- this note has very strict default provisions – payment MUST be on the 1st

Starting May 1, 2016

I will have to send you a copy of the promissory note when I am next in the office – I am not able to attach documents when working remotely (don't ask)

Call me if you have any questions

Jonathan Golden, General Counsel
Boston Finance Group LLC

4912 Creekside Drive
Clearwater, Florida 33760
Phone: 727-497-1661

The above communication is confidential and may be protected by the attorney-client privilege and/or the work product doctrine. If you believe you received this email by mistake, please notify the sender by return email as soon as possible.

**From:** Steve Terepka [mailto:steve.terepka@gmail.com]
**Sent:** Thursday, March 17, 2016 3:15 PM
**To:** Jonathan Golden (BFG) <jg@bostonfinancegroup.com>
**Subject:** RE: Daniel Drive

**Wire Routing Transit Number:**
    ████0248

**Bank Name:**
    Wells Fargo Bank

**Bank Address:**
    420 Montgomery
    San Francisco, CA 94104

**Beneficiary Account Number:**
    ████9668

**Beneficiary Account Name:**
    Spirit Real Estate Corporation

**Beneficiary Account Address:**
    Stephen E Terepka
    14112 Harborwood Dr
    Largo FL 33774


Thanks

    Steve
    _____
    
    Engineer Classes
    Contractor Classes
    On-Line-Classes
Toll Free: 1 888 405-7849

**From:** Jonathan Golden (BFG) [mailto:jg@bostonfinancegroup.com]
**Sent:** Thursday, March 17, 2016 2:09 PM
**To:** Steve Terepka
**Subject:** Re: Daniel Drive

Thanks Steve

Our bank will require your banks name and address

Jonathan Golden

Sent from my iPhone

On Mar 17, 2016, at 1:43 PM, Steve Terepka <steve.terepka@gmail.com> wrote:

Hi Jonathan

Wired into our account if you would.
Our bank gave me the following info:
Wire Routing Transit Number : ████0248
Account Number : ████9668

Thanks

So how is everything going out there?
Great I hope...


        Steve
  _____
    Engineer Classes
    Contractor Classes
      On-Line-Classes
  Toll Free: 1 888 405-7849

---

**From:** Jonathan Golden (BFG) [mailto:jg@bostonfinancegroup.com]
**Sent:** Thursday, March 17, 2016 9:10 AM
**To:** Steve Terepka
**Subject:** Daniel Drive

Hi Steve-

I am setting up the mortgage account with our accounting department --- do you want a check mailed each month or a wire to automatically go into your account?  If it is the latter, I will need the bank information for Spirit (account number, routing number, bank address, bank contact).  Let me know what works best for you – the payments are to begin May 1, 2016.

Jonathan


Jonathan Golden, General Counsel
Boston Finance Group LLC
4912 Creekside Drive
Clearwater, Florida 33760
Phone: 727-497-1661

The above communication is confidential and may be protected by the attorney-client privilege and/or the work product doctrine. If you believe you received this email by mistake, please notify the sender by return email as soon as possible.

**From:** Tracey Gregory [Tracey.Gregory@centersmail.com]
on behalf of     Tracey Gregory <Tracey.Gregory@centersmail.com> [Tracey.Gregory@centersmail.com]
**Sent:** 4/28/2016 10:36:09 AM
**To:** BFG AMB Statements [bfgamb@bostonfinancegroup.com]
**Subject:** FW: American Momentum Bank Outgoing Wire Notification

**Importance:** High

Attention!

American Momentum Bank 4/28/16

NOTICE OF WIRE TRANSFER

Wire Tracking Number: 20160428I1B7032R00788404281031FT03
Funds in the amount of $ 4,294.57
have been wired to Spirit Real Estate Corporation
from account ending in Acct Ending 3505

Originator to Beneficiary Notes:
May 1, 2016 Mortgage payment

Propertycraft Enterprises LLC
7491 N Federal Hwy C-5311
Boca Raton FL 33487

American Momentum Bank Operations Dept

**This is an automated email. Please do not respond.**