**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,

Debtor.

Case No. 8-24-bk-00676-RCT

Chapter 11

## CHAPTER 11 TRUSTEE'S RESPONSE TO THE THERESA ALESSANDRA RUSSO FOUNDATION'S APPLICATION FOR ADMINISTRATIVE EXPENSE

Michael Goldberg, as Chapter 11 Trustee ("Chapter 11 Trustee") of the estate of The Center for Special Needs Trust Administration, Inc. (the "Debtor"), files this Response to the December 18, 2024 *Application for Allowance of Administrative Expense* [Doc. 451] (the "Application") filed by The Theresa Alessandra Russo Foundation ("Foundation") and states:

1. The Debtor and the Foundation entered into a Letter of Understanding dated November 4, 2010 (the "Agreement"), a copy of which is attached as Exhibit A to the Application. The Agreement provided that the Debtor would administer a pooled trust program "to complement and enhance the services already provided by" the Foundation. In order to provide a pooled trust program, the Debtor re-named one of its New York pooled trusts as "The Theresa Foundation Pooled Trust of New York" (the "Pooled Trust").

2. The Agreement states that "The parties intend that the Center will provide a fully operational, turn key program that will be administered by the Center using its resources and economies of scale. The Center will provide all necessary documents, including a specific joinder agreement in the name of The Theresa Foundation, and the Pooled Trust Program will receive the full benefit of the Center'[s] systems and personnel." *See* Application at Ex. A, ¶ 4. Notably, there

79491073

is nothing in the Agreement requiring the Foundation to provide any services or other consideration to the Debtor in exchange for the Debtor administering the Pooled Trust program.

3. The Agreement provides at paragraph 5 that the Debtor would pay the Foundation 90% of any funds remaining in an individual Pooled Trust sub-account upon the death of the beneficiary which was to be used by the Foundation at its discretion (the "Residual Death Benefits"). Indeed, according to the Debtor's records, the Debtor transferred the total sum of $3,274,659.93 (collectively, the "Fraudulent Transfers") to the Foundation within the ten years preceding the petition date for this bankruptcy case.[1]

4. The Debtor always treated the payment of the Residual Death Benefits to the Foundation as a charitable donation. The Debtor categorized the payments of the Residual Death Benefits to the Foundation as a charitable contribution on its books and records. The Debtor did not treat the payments of the Residual Death Benefits to the Foundation as payment for services rendered. In reality, the sham Agreement with the Foundation is illegal and void as it was used to facilitate the fraudulent transfer of funds from the Debtor to the Foundation which the Chapter 11 Trustee will seek to recover in a forthcoming adversary complaint.[2]

5. The Debtor stopped paying the Residual Death Benefits to the Foundation when it filed its bankruptcy petition. The Chapter 11 Trustee believes that Vincent Russo, the co-founder

---

[1] The combination of the Bankruptcy Code's strong arm powers and the collection period available to the Internal Revenue Service ("IRS") under 26 U.S.C. § 6502 effectively creates a ***ten year*** statute of limitations for fraudulent transfers. *See United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights."); *Williamson v. Smith (In re Smith)*, Case No. 19-40964, 2022 WL 1814415 (Bankr. D. Kan. June 2, 2022) (holding trustee pursuing state law fraudulent transfer claims could, via Section 544 of the Bankruptcy Code, utilize the ten year lookback found in the Internal Revenue Code (the "IRC") if the IRS holds an allowable claim against a debtor). On or about May 8, 2024, the IRS filed a proof of claim no. 4-3 in this bankruptcy case.

[2] Section 502(d) of the Bankruptcy Code is a mechanism for disallowing claims from creditors who possess estate property or receive asset transfers that are avoidable, and who do not return such property to the estate. *See* 11 U.S.C. § 502(d). The Foundation has not returned the Fraudulent Transfers to the Chapter 11 Trustee.

of the Foundation, is a personal friend of the Debtor's founder, Leo Govoni, and that Govoni (on behalf of the Debtor) agreed to give the Foundation 90% of the Residual Death Benefits without receiving anything of value in return. Indeed, the last paragraph of the Agreement references the "discussions" Vincent Russo had with Govoni. In addition, the Foundation's annual reports list Govoni as a "sustaining donor" – not the Debtor --- further demonstrating that the Debtor received no value in return for its services and 90% donation of Residual Death Benefits to the Foundation.

6.     Furthermore, upon information and belief, Mr. Russo is also an attorney who rendered legal advice to the Debtor from time to time. An example of the relationship between the Debtor and Mr. Russo is attached hereto as **Exhibit A**.

7.     On October 21, 2024, the Chapter 11 Trustee filed an Omnibus Motion for Entry of an Order (I) Authorizing the Rejection of Certain Contracts and Unexpired Leases and (II) Granting Related Relief (Doc. 391) (the "Rejection Motion") which sought rejection of the Agreement, among other contracts and leases. The Court granted the Rejection Motion by Order dated November 18, 2024 (Doc. 420).

8.     In its Application, the Foundation claims that it provided services to the Debtor in exchange for payment of the Residual Death Benefits such as the use of the Foundation's name, promotion of the Pooled Trust to the community, referral of beneficiaries, assistance with onboarding beneficiaries, etc. *See* Application at ¶ 6. However, in reality, the Foundation was not required to provide any services under the Agreement and did not provide any services to the Debtor. The Foundation has not provided any services to the Debtor post-petition and the Debtor does not owe any additional amounts to the Foundation for any services rendered post-petition.

9.     The Application is merely an attempt by the Foundation to get more money from the Debtor – without providing any value in return -- which the Foundation has always relied on

79491073

for its survival. The Foundation's annual reports show that the Residual Death Benefits paid by the Debtor provided 80% of the Foundation's funding. And, as noted above, the donating party was listed as Leo Govoni and not the Debtor.

WHEREFORE, Michael Goldberg, as Chapter 11 Trustee, respectfully requests that the Court deny the Foundation's Application for Allowance of Administrative Expense, and for such other relief as the Court deems just.

AKERMAN LLP

By: */s/ Steven R. Wirth*
  Steven R. Wirth, Florida Bar No.: 170380
  Email: steven.wirth@akerman.com
  Raye C. Elliott, Florida Bar No.: 18732
  Email: raye.elliott@akerman.com
  401 East Jackson Street, Suite 1700
  Tampa, Florida 33602
  Telephone: (813) 223-7333
  Facsimile: (813) 223-2837

  *Counsel for Chapter 11 Trustee, Michael Goldberg*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 8, 2025, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record.

By: */s/ Steven R. Wirth*