**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | Case No.: 8:24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Chapter 11 |
| Debtor. _____/ | |

**RESPONSE IN OPPOSITION TO BRIAR CAPITAL'S**
**OBJECTION TO THE RISING GROUP'S FEE APPLICATION**

Michael Goldberg, as Chapter 11 Trustee of the estate of The Center for Special Needs Trust Administration, Inc., by and through undersigned counsel, hereby files this response in opposition to *Briar Capital Real Estate Fund LLC's Objection to Emergency First Interim Application of the Rising Group Consulting, Inc. for Allowance and Payment of Compensation for Services Rendered and for Reimbursement of Expenses Incurred as the Chief Restructuring Officer of the Big Storm Entities from March 19, 2025 through May 29, 2025* [Doc. 559] (the "Fee Objection") and states:

It is without legitimate dispute the CRO has provided valuable and critical services to the Bankruptcy Estate. As the Court may recall, the CRO was appointed because Leo Govoni and his team were deliberately violating the Court's injunction, and continuing to operate the Big Storm Entities in secret. *See* Adv. Pro. No. 139, Doc. No. 75. Since his appointment, Mr. Rizack has taken control of the Big Storm Entities (which took considerable effort in and of itself, requiring Court intervention and resulting in several Orders of contempt and sanctions against Mr. Govoni), firmed up operations, cut expenses, marshalled assets, negotiated sales of personal property, negotiated sales of real property, and spent many hours evaluating options for the Big Storm Entities' future. *See* Doc. 553. It is also worth noting that in his role as CRO of the Big Storm Entities, he is,

essentially, the landlord of all 120-odd Govoni-related entities, requiring his coordination and presence any time Bill Long, law enforcement, or anyone else needs to access the premises.

Given all that he has achieved in a limited time, Mr. Rizack's Fee Application is imminently reasonable. For the sake of comparison, Govoni, *et al.* produced a budget for *just one* of the Big Storm Entities back in January, 2025. In that document, the "labor and wages" line item for the brewery alone – ***not*** the real estate operations, liquidation of assets, strategic planning, or dealing with Mr. Govoni's contemptuous conduct – was $64,000 per month. A true and correct copy of that budget is attached as *Exhibit 1*.

On May 23, 2025, the Court entered an Order approving the sale of the Big Storm Entities' Lee County building, located at 610 Charlotte St. That sale paid off the mortgage (which was not held by Briar Capital) and brought proceeds into the bankruptcy estate. Critically, when the Court approved that sale, the Court specifically ruled that "all net sale proceeds" minus a $25,000 carve out for critical care expenses, "will be used to satisfy the ordinary operating expenses of the Big Storm Entities, including the fees and expenses of the Chief Restructuring Officer." *See* Doc. No. 542, ¶ 3. So, authority for paying Mr. Rizack's fees has already been given. Consistent with that Order, Mr. Rizack filed his Fee Application to specify the amount.

Ironically, Briar's primary objection to the Fee Application is its "concern[] that the cash proceeds of $150,000… from the sale of the 'Punta Gorda' property… will be immediately routed to pay professional fees that in part have been incurred by the Rising Group." *See* Fee Objection, ¶ 2. But the time for raising that concern was *before* the Court specifically ruled that:

> **All net sale proceeds from the liquidation of the Real Property,** less $25,000 that will be transmitted to the Debtor to be utilized to fund critical care expenses of special needs beneficiaries, will be used to satisfy the ordinary operating expenses of the Big Storm Entities, **including the fees and expenses of the Chief Restructuring Officer.**

*See* Doc. No. 542, ¶ 3 (emphasis added). In other words, that objection has been waived.

Additionally, the Fee Objection is also legally defective because Briar Capital (by its own admission) "is not providing a line-by-line objection to the Fee Application," which is required under the rules. Instead, Briar is merely "highlighting some of the most facially objectional [sic] elements contained in the Application." *See* Fee Objection, ¶ 22. Instead of substantively confronting the time entries and tasks performed by the CRO, Briar's objection just takes issue with the whole thing. That is patently inadequate because "[t]he amount requested by a fee application cannot be considered unreasonable simply because one party feels it is excessive." *In re Blackwood Assocs., L.P.*, 165 B.R. 108, 111-12 (Bankr. E.D.N.Y. 1994). "Objectors have the responsibility to challenge [the] information [presented in a fee application] and to produce evidence controverting that produced by the applicant . . . ][A] gestalt reaction that there was too much time spent . . . isn't good enough.'" *Hunt's Health Care*, 161 B.R. 971, 981-82 (Bankr. N.D. Ind. 1993) (quoting *Steinlauf v. Continental Ill. Corp. (In re Continental Ill. Sec. Litig.)*, 962 F.2d 566, 570 (7th Cir. 1992)).

The party opposing the fee application has the burden of explaining what therein is unreasonable. Absent such evidence, the opposition fails. *See Norman v. Housing Auth. Of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) ("Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight"); *In re Investors Lending Grp., LLC*, No. 11-br-41963, 2013 WL 3380995, at *3 (Bankr. S.D. G.A. July 8, 2013) ("For the court to consider objections to fee and expense requests, the objections must be as reasonably detailed as the fee and expense requests themselves."); *Hunt's Health Care*, 161 B.R. 971, 971 (Bankr. N.D. Ind. 1993) ("just as the district court . . . could not properly reduce fees for 'inarticulate and unsubstantiated dissatisfaction with the lawyers' efforts to economize' . . . this court should not heed a creditor's unexplained dissatisfaction"). It is not the Court's role to "supply such evidence or the detail required to support the objectant's overly general

pleading." *In re Blackwood Assocs., L.P.*, 165 B.R. 108, 112 (Bankr. E.D.N.Y. 1994). And that is all the Fee Objection is—an overly generalized pleading that urges this Court to blanketly deny Mr. Rizack's Application.

Finally, the timing and the vehemence of the Fee Objection suggest a new and noteworthy chapter in Briar Capital's legal strategy. In the Fee Objection, Briar Capital says that it "would be willing to permit a reasonable and fixed amount of time for the Pinellas Park Property to be sold with the amounts owed to Briar Capital by BSRE to be paid in full, with the excess funds flowing to the bankruptcy estate in this case." But that is demonstrably false. Until last week, Briar Capital's lawyers had led the Chapter 11 Trustee to believe that this was true; but, in State Court last week, Briar Capital's lawyers changed tact. Now, they are refusing to work with the Chapter 11 Trustee, moving for a clerk's default in violation of the automatic stay, and refusing to allow the Chapter 11 Trustee to file an answer. Consistent with that conduct, they have now apparently chosen to start a proxy war by objecting to the CRO's Fee Application. True and correct copies of relevant emails and state court filings are attached as ***Exhibit 2***. Regardless of why their strategy has changed, it's too late to lodge this legally deficient objection.

WHEREFORE, the Chapter 11 Trustee requests that this Court overrule Briar Capital's Objection, enter an order granting the CRO's Fee Application, and grant such other relief that is just and proper.

Dated: June 5, 2025

Respectfully submitted,

By: */s/ Steven R. Wirth*
Steven R. Wirth
Florida Bar No.: 170380
Email: steven.wirth@akerman.com
Raye C. Elliott
Florida Bar No.:  18732
Email:  raye.elliott@akerman.com
401 East Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone: (813) 223-7333
Facsimile: (813) 223-2837
*Counsel for Chapter 11 Trustee, Michael Goldberg*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on June 4, 2025, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record.

                                                              */s/ Steven R. Wirth*