**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                                                  Case No. 8:24-bk-00676-RCT

THE CENTER FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.,                                     Chapter 11

        Debtor.
_____/

**CHAPTER 11 TRUSTEE'S RENEWED EMERGENCY MOTION**
**TO APPROVE SALE OF REAL PROPERTY OWNED**
**BY PROPERTYCRAFT ENTERPRISES LLC FREE AND**
**<u>CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES AND RELATED RELIEF</u>**
**(12705 DANIEL DR CLEARWATER FLORIDA)**

Michael Goldberg, the Chapter 11 Trustee ("<u>Chapter 11 Trustee</u>"), by and through undersigned counsel, files this renewed emergency motion (the "<u>Motion</u>") requesting entry of: (i) an order approving the sale of Real Property located at 12705 Daniel Dr. Clearwater Florida (the "<u>Real Property</u>") and granting related relief, pursuant to sections 105(a), 363, 364, 365, and 503 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), and Rules 2002, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"). The Chapter 11 Trustee seeks an emergency hearing to approve the sale of the Real Property, which is proposed after the last auction/sale process approved by the Court resulted in no offers and the stalking horse bidder's withdrawal of their offer (Doc. 592 and 613). Given the secured creditor who remains to be paid, Spirit Real Estate Corporation ("<u>Spirit</u>"), and whose claim is accruing interest, the Trustee wants to complete a sale of the Real Property as soon as possible to the proposed buyer, Tide LLC (the "<u>Purchaser</u>"), who provided the Trustee with a $2.3 million all-cash offer with no contingencies with an expected closing date of September 12, 2025 to purchase

the Real Property, which offer the Trustee accepted.  In support of this Motion, the Chapter 11 Trustee states the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 364, 365, and 503, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014.

## BACKGROUND

4. On February 9, 2024, The Center for Special Needs Trust Administration, Inc. (the ("Center" or the "Debtor") filed a voluntary chapter 11 petition (Doc. 1).

5. On March 8, 2024, the U.S. Trustee filed an Expedited Motion for Order Directing the United States Trustee to Appoint a Chapter 11 Trustee by Agreement of the Debtor (Doc. 88). The Court granted the U.S. Trustee's Motion by Order dated March 11, 2024 (Doc. 93).

6. On March 21, 2024, the Court entered its Order Approving Appointment of Chapter 11 Trustee, appointing Michael Goldberg as Chapter 11 Trustee (Doc. 109).

7. The Debtor is a 501(c)(3) non-profit Florida corporation that administers pooled trusts and special needs trusts. The Debtor is the trustee or co-trustee of numerous special needs trusts, including both stand-alone trusts and pooled trusts (the "Trusts") for approximately 2,000 beneficiaries who suffer from various levels of disability (the "Beneficiaries"). The Debtor's primary service as trustee of the Trusts is to manage the Trusts, maintain records for assets managed by third-party investment managers, respond to request for distributions from Beneficiaries, and make

distributions in a manner that still ensures that the applicable beneficiary meets the income and asset thresholds to qualify for certain public assistance benefits, such as Medicaid, Social Security, or Supplemental Security Income. The Debtor's services help to ensure that Beneficiaries maintain their qualification for these critical public assistance benefits.

8. The Debtor was initially established by Leo Govoni, who served on the Debtor's Board of Directors until he resigned in 2008 or early to mid-2009. However following his resignation, Govoni allegedly continued to control and exert his influence over the Debtor's operation and finances through a web of corporate entities.

9. The Chapter 11 Trustee, through its Final Judgment against Boston Finance Group, LLC ("BFG"), has established that BFG received numerous transfers of funds from the Debtor totaling well over $100 million between 2009 and 2020. The funds utilized to make these transfers were allegedly taken from over 1,000 Trusts managed by the Debtor and the transfers were documented as a purported loan from the Debtor to BFG.

10. On April 25, 2024, the Chapter 11 Trustee filed an adversary complaint against Govoni and BFG for recovery of the "loan" which was designated Adversary Proceeding Number 8:24-ap-00139-RCT. On August 20, 2024, the Court entered an Agreed Order Granting Plaintiff's Motion for Partial Summary Judgment and on January 17, 2025, the Court entered an Amended Final Judgment as to Counts I and Two of the Adversary Complaint (ECF No. 52) totaling $120,324,391.07 in damages in favor of the Chapter 11 Trustee and against Govoni and BFG.

11. Govoni owns interests in many other companies that also allegedly received transfers from the Debtor over the years, including but not limited to Propertycraft Enterprises LLC ("Propertycraft"). Propertycraft is a Florida limited liability company formed in 2016 that maintains a principal office at 12707 49th Street N., Suite 300, Clearwater, FL 33762.

12. According to Sunbiz, Propertycraft's registered agent is Govoni; and its manager is Boston Holding Real Estate, LLC ("BHRE"), which is owned and controlled by Govoni.

13. Between March 2016 and February 2024, BFG transferred at least $602,200.48 to Propertycraft or paid others on behalf of Propertycraft (the "Transfers").

14. On December 18, 2024 the Chapter 11 Trustee filed an adversary complaint against Propertycraft for the recovery of the Transfers, which was designated Adversary Proceeding Number 8:24-ap-00407-RCT (the "Propertycraft Adversary") (Adv. No. 1). The Chapter 11 Trustee then amended the Propertycraft Adversary complaint on February 5, 2025 to add Spirit (the "Propertycraft Amended Complaint").

15. On March 12, 2025 the Chapter 11 Trustee moved for entry of a court's default and entry of a default final judgment against Propertycraft. On March 21, 2025 the Court entered a Default Final Judgment totaling $602,200.48 in favor of the Chapter 11 Trustee and against Propertycraft (the "Final Judgment") (Adv. No. 19.).

16. Govoni, on behalf of Propertycraft, consented to the Chapter 11 Trustee's sale of the Real Property after entry of the Final Judgment.

17. On March 19, 2025, upon the consent of Govoni, the Trustee sought and obtained an order appointing Nperspective Advisory Services, LLC and William A. Long, Jr. as Restructuring Advisor and Chief Restructuring Officer of Global Litigation Consultants, LLC, Boston Settlement Group, LLC, and Boston Asset Management, Inc in the adversary filed against Govoni and Boston Finance Group LLC (Adv. No. 74). The Chapter 11 Trustee also sought and obtained an order appointing The Rising Group Consulting, Inc. and Joshua Rizack as Chief Restructuring Officer for Defendant Big Storm Real Estate LLC and other related entities (Adv. No. 73).[1]

---

[1] All orders appointing the CROS are in Adv. No. 8:24-00139-RCT.

82948035

18. Mr. Long's role as CRO was subsequently expanded over a host of additional entities including Defendant Propertycraft (Adv. No. 95).

19. On June 3, 2025, upon the consent of Govoni, the Court entered the Agreed Order Transferring Defendants' Stock and Limited Liability Company Membership Interests to Chapter 11 Trustee (ECF. No. 134 in Adv Case No. 8:24-ap-00139-RCT) through which Govoni agreed to the transfer all of his interests in Propertycraft directly to the Chapter 11 Trustee.

20. On June 23, 2025 Govoni was indicted by the U.S. Attorney's Office for the Middle District of Florida on one count of conspiracy to commit wire and mail fraud, three counts of mail fraud, six counts of wire fraud, and one count of conspiracy to commit money laundering. Govoni is also charged separately with one count of bank fraud, one count of illegal monetary transaction, and one count of making a false bankruptcy declaration. The bank fraud offense carries a maximum penalty of 30 years in prison. Each count of wire fraud, mail fraud, conspiracy to commit wire and mail fraud, and the money laundering conspiracy offense carries a maximum penalty of 20 years' imprisonment. The illegal monetary transaction count carries a maximum penalty of 10 years in federal prison and the false bankruptcy declaration carries a maximum penalty of 5 years' imprisonment.

21. On June 26, 2025 the Trustee filed the first a motion to approve auction and sale procedures in regards to the Real Property (Doc. 592), which motion the Court approved on July 8, 2025. Ultimately the Trustee was not able to sell the Real Property after the stalking horse bidder withdrew its offer and no other offers were received.

22. The full legal description of the Real Property is below:

> TRACT "A"
> The North 312.00 feet of Lot 1, DANIEL'S INDUSTRIAL PARK, as recorded in Plat Book 65, Page 27, Public Records of Pinellas County, Florida.

TRACT "B"
That part of Lot 13, Pinellas Groves, in the Northeast 1/4 of Section 9, Township 30 South, Range 16 East, as recorded in Plat Book 1, Page 55 of the Public Records of Pinellas County, Florida, lying between the Northerly and Southerly boundary lines of the above Tract "A" as extended Westerly a distance of 40.00 feet to the center line of Daniel Drive, a private access road.

TRACT "C"
That part of the Southeast 1/4 of the Northeast 1/4 of Section 9, Township 30 South, Range 16 East, Pinellas County, Florida, being more particularly described as follows: Commence at the Southeast corner of the Southeast 1/4 of the Northeast 1/4 of said Section 9 and measure thence in a Westerly direction (North 89°57'22" West, Plat bearing as shown on DANIEL'S INDUSTRIAL PARK) along the South boundary thereof, a distance of 654.75 feet (654.82 feet measured); thence North 00°07'30" East (North 00°04'19" East measured), a distance of 40.00 feet; thence North 89°57'22" West, a distance of 122.39 feet; thence North 00°06'11" West (North 00°02'58" East), a distance of 634.62 feet measured to the Northwest corner of Lot 1, DANIEL'S INDUSTRIAL PARK as recorded in Plat Book 65, Page 27 of the Public Records of Pinellas County, Florida and being the Point of Beginning; thence South 89°57'22" East, a distance of 122.52 feet (122.64 feet measured) to the East line of Lot 13, Pinellas Groves, as per Plat recorded in Plat Book 1, Page 55; thence North 00°07'30" East (North 00°04'19" East measured) and along the same East line of Lot 13, a distance of 10.00 feet; thence North 89°57'22" West, a distance of 122.39 feet (122.64 feet measured) to a point which bears North 00°06'11" West (North 00°02'58" East measured) and 10.00 feet from the Point of Beginning; thence South 00°06'11" West (South 00°02'58" West measured), a distance of 10.00 feet to the aforesaid Point of Beginning.

TRACT "D"
That part of Lot 13, PINELLAS GROVES in the Northeast 1/4 of Section 9, Township 30 South, Range 16 East, as recorded in Plat Book 1, Page 55 of the Public Records of Pinellas County, Florida, lying between the Northerly and Southerly boundary lines of the above Tract "C", as extended Westerly a distance of 40.00 feet to the center line of Daniel Drive, a private access road

## **THE SECURED CREDITOR**

23.     Spirit, on March 15, 2016 sold the Real Property to Propertycraft for a total sale price of $800,000. The Chapter 11 Trustee asserts that Debtor funds were used for the initial payments to purchase the property and for subsequent mortgage payments.

24. Upon filing the Propertycraft Amended Complaint, Spirit, through counsel, reached out to the Chapter 11 Trustee and provided evidence, including an affidavit from Spirit's President, that Spirit was a good faith subsequent transferee of Debtor funds, and that the sale of the Real Property in 2016 was an arm's length transaction for reasonably equivalent value.

25. Spirit has provided a payoff statement as of September 12, 2025, the date this proposed sale is scheduled to close, which is attached hereto as **Exhibit A**. Spirit's payoff amount totals $792,593.33

## RELIEF REQUESTED

26. The Chapter 11 Trustee respectfully request that the Court approve the sale of the Real Property to Tide LLC, the Purchaser, for $2,300,000.00 free and clear of all liens with an expected closing date of September 12, 2025 (the "Proposed Sale"). The executed Commercial Contract for the Proposed Sale are attached as **Exhibit B** to this Motion.

27. The Chapter 11 Trustee, through his ownership of all the stock/equity in Propertycraft, is treating the Real Property as property of the estate. By this Motion, the Chapter 11 Trustee seeks entry of the proposed Order attached hereto as **Exhibit C** approving the Proposed Sale of the Real Property to the Purchaser.

28. As part of the prior and unsuccessful sale process, the Chapter 11 Trustee, together with the CROs, and the estate's realtor and broker, James Defusto of Marcus & Millichap, engaged in a robust marketing effort for the Real Property, contacting both financial and strategic investors regarding this Sale. No other party submitted a bid and the stalking horse bid was eventually withdrawn. To date the current all cash offer of $2.3 million with no contingencies and a quick closing date is the highest and best offer that the Chapter 11 Trustee has received for the Real Property as of the date of this Motion.

29. The Chapter 11 Trustee estimates that between closing costs, unpaid taxes, commissions to the brokers, and other miscellaneous expenses, the net sale proceeds the estate expects to receive from the Proposed Sale total approximately $1,267,058.23.[2] A detailed breakdown is attached hereto as **Exhibit D**.

30. The Chapter 11 Trustee, to the extent not already authorized by the estate's control over the shares/interest of Propertycraft, and Bill Long as CRO of Propertycraft, requests authority to execute any required Sale documents.

### a) *The Real Property Sale Should Be Authorized Pursuant to Bankruptcy Code Section 363 as a Sound Exercise of the Trustee's Business Judgment.*

31. Bankruptcy Code section 363(b)(1) provides that a trustee, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

32. A sale of the debtor's assets should be authorized pursuant to Bankruptcy Code section 363 if a sound business purpose exists for the proposed transaction. Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re: Fiddler's Creek, LLC,* No. 10-BK-03846-KRM, 2012 WL 1452360, at *3 (Bankr. M.D. Fla. Apr. 20, 2012).

33. As set forth above, the Chapter 11 Trustee has a sound business justification to sell the Real Property at the best and highest price possible in order to maximize the return to creditors. Ultimately, the Chapter 11 Trustee accepted the $2.3 million purchase in the exercise of his

---

[2] This number is subject to de minimis variation depending on the timing of the closing and other factors.

reasonable business judgment, as it is the highest or otherwise best offer for the Real Property and will provide a greater recovery for this estate than any known or practically available alternative. The prior failed sale process, which included an auction, is the best evidence for this.

### b) *The Sale of the Assets Should Be Free and Clear of Interests Pursuant to Bankruptcy Code Section 363(f).*

34. The Chapter 11 Trustee submits that it is appropriate to sell the Real Property free and clear of all liens, claims, encumbrances, and interests (collectively, the "Interests") pursuant to Bankruptcy Code section 363(f), with any such Claims and Interests attaching to the net sale proceeds of the Assets, to the extent applicable.

35. Section 363(f) permits the Trustee to sell property free and clear of another party's interest in the property if (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. See 11 U.S.C. § 363(f).

36. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to permit the Debtor's sale of the Assets free and clear of all interests. *See e.g. In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of five conditions are met, the Debtors have the authority to conduct the sale free and clear of all liens.").

37. The Chapter 11 Trustee submits that the Real Property may be sold free and clear of liens, claims, encumbrances, and other interests—all in accordance with at least one of the five conditions of section 363(f) as Spirit, the secured creditor, agrees to the relief and the sale exceeds

any known claims on the Real Property. Accordingly, section 363(f) authorizes the sale and transfer of the Assets free and clear of any such Interests.

c) *The Sale Has Been Proposed in Good Faith and Without Collusion, and the Successful Bidder Will Be a "Good-Faith Purchaser" Entitled to the Full Protection of Bankruptcy Code Section 363(m); and the Sale of the Assets Does Not Violate Bankruptcy Code Section 363(n).*

38. The Chapter 11 Trustee requests that the Court find that the Successful Bidder is entitled to the benefits and protections provided by Bankruptcy Code section 363(m) in connection with the sale of the Real Property. Section 363(m) protects purchasers of assets sold pursuant to section 363 from the risk of losing whatever they purchased if the sale is reversed on appeal, as long as such purchaser purchased the assets in "good faith." *See id.*; *see also MOAC Mall Holdings LLC v. Transform Holdco LLC*, 143 S. Ct. 927 (2024) (recognizing that section 363(m) "cloak[s] certain good-faith purchasers or lessees with a targeted protection of their newly acquired property interest, applicable even when an appellate court properly exercises jurisdiction").

39. While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that, where there is a lack of such integrity, a good-faith finding may not be made. *See, e.g., Abbotts Dairies of Pa.*, 788 F.2d at 147 ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Servs., Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

40. The Chapter 11 Trustee submits that the Purchaser is a "good faith purchaser" within the meaning of section 363(m) entitled to the protections of section 363(m) given that it has

no connections to the Debtor or any other Govoni entity and that the Proposed Sale satisfies the secured claim in its entirety that will yield a surplus to this estate.

41.     Moreover, because there will be no fraud or improper insider dealing of any kind, the Sale will not constitute an avoidable transaction pursuant to Bankruptcy Code section 363(n), and, as a result, the Purchaser should receive the protections afforded good faith purchasers by Bankruptcy Code section 363(m). Accordingly, the Chapter 11 Trustee requests that the Court make a finding at the Proposed Sale is an arm's length transaction which entitles the Purchaser to the full protections of Bankruptcy Code section 363(m).

**d)      Shortening Notice of the Sale Hearing**

42.     Pursuant to Bankruptcy Rule 2002(a), the Chapter 11 Trustee is required to provide creditors with 21 days' notice of the hearing on this Motion. Given the September 12, 2025 expected closing date, the Chapter 11 Trustee seeks relief to shorten the notice requirement pursuant to Rule 2002.

43.     The Chapter 11 Trustee has served, or will serve, this Motion, and any resulting notice of hearing on: (a) the Office of the United States Trustee; (b) each of the creditors listed on the schedules filed by the Debtor with the Court and any creditor which has filed a proof of claim and any other known creditors and interest holders of the Debtor; (c) all parties known that might be asserting a lien on the Debtor's assets; (d) all applicable federal, state and local taxing and regulatory authorities; (e) any party that has filed a notice of appearance with the Court in the Debtor's case requesting notice pursuant to Bankruptcy Rule 2002; and (f) Spirit.

44.     The Chapter 11 Trustee submits that the methods of notice described in this Motion comply fully with Bankruptcy Rule 2002 in terms of the form of notice required.

**e) Relief Pursuant to Bankruptcy Rules 6004(h) Is Appropriate.**

45. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Trustee requests that the Sale Order be effective immediately upon its entry by providing that the 14-day stays under Bankruptcy Rule 6004(h) is waived.

46. To maximize the value received from the Real Property, the Chapter 11 Trustee seeks to close the Sale as soon as possible after the Sale Hearing. Accordingly, the Chapter 11 Trustee requests that the Court waive the 14-day stay periods under Bankruptcy Rule 6004(h).

**WHEREFORE**, the Chapter 11 Trustee respectfully requests that the Court enter the proposed order substantially in the form attached hereto as **Exhibit C** granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: September 3, 2025

Respectfully submitted,

AKERMAN LLP

By: */s/ Steven R. Wirth*
    Steven R. Wirth
    Florida Bar No.: 170380
    Email: steven.wirth@akerman.com
    Raye C. Elliott
    Florida Bar No.: 18732
    Email: raye.elliott@akerman.com
    401 East Jackson Street, Suite 1700
    Tampa, Florida 33602
    Telephone: (813) 223-7333
    Facsimile: (813) 223-2837

*Counsel for Chapter 11 Trustee, Michael Goldberg*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on September 3, 2025, I filed a true and correct copy of the foregoing with the United States Bankruptcy Court for the Middle District of Florida using the Court's CM/ECF system, which will serve copies on all counsel of record. Additionally, Epiq Corporate Restructuring, LLC will cause a true and correct copy of the foregoing document to be served on the Local Rule 1007-2 Parties in Interest List and will file a certificate or affidavit of service with the Court.

                                                    */s/Steven R. Wirth*
                                                    Steven R. Wirth

82948035