# EXHIBIT B




**Commercial Contract**

1  1. **PARTIES AND PROPERTY:** _____TIDE LLC_____Simon Tusha_____ (**"Buyer"**)
2  agrees to buy and __PROPERTYCRAFT ENTERPRISES LLC_____ (**"Seller"**)
3  agrees to sell the property at:
4  Street Address: __12705    Daniel Dr_____
5  __Clearwater_____FL    33762__
6  Legal Description: __DANIEL'S INDUSTRIAL PARK N 312FT OF LOT 1 & THAT PT LOT 13 PINELLAS GROVES ALL DESC IN SEC 09-30-16
7  BEG NE COR OF SD LOT 1 FOR POB TH S00D07'30"W 312FT TH W 162.6FT TH N00D06'11"W 322FT TH S89D57'22"E 162.6FT TH S00D07'30"W 10FT T__
8  and the following Personal Property:_____
9  _____
10 (all collectively referred to as the "Property") on the terms and conditions set forth below.

11 **2. PURCHASE PRICE:** $____2,300,000.00
12   **(a)** Deposit held in escrow by: _____First American Title_____ $____100,000.00
13   ("Escrow Agent") (checks are subject to actual and final collection)
14   Escrow Agent's address: _17724 Hunting Bow Circle Suite 102 Lutz, FL 33558_ Phone: _813-371-8320_
15   **(b)** Additional deposit to be made to Escrow Agent
16   ☐within ____ days (3 days, if left blank) after completion of Due Diligence Period or
17   ☐within ____ days after Effective Date _____ $_____
18   **(c)** Additional deposit to be made to Escrow Agent
19   ☐within ____ days (3 days, if left blank) after completion of Due Diligence Period or
20   ☐within ____ days after Effective Date $_____
21   **(d)** Total financing (see Paragraph 5) _____ $_____
22   **(e)** Other _____ $_____
23   **(f)** All deposits will be credited to the purchase price at closing.
24   Balance to close, subject to adjustments and prorations, to be paid
25   via wire transfer. $____2,200,000.00
26   For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of
27   Buyer's written notice of acceptability.

28 **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**
29 and **Buyer** and an executed copy delivered to all parties on or before _____8/29/2025_____ , this offer
30 will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be
31 3 days from the date the counter offer is delivered. **The "Effective Date" of this Contract is the date on which the**
32 **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer** or
33 _____. Calendar days, based on where the Property is located, will be used when
34 computing all time periods. Other than time for acceptance and Effective Date as set forth above, any time periods
35 provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, ending
36 or occurring on a Saturday, Sunday, national legal holiday, or a day on which a national legal holiday is observed will
37 extend to the next calendar day which is not a Saturday, Sunday, national legal holiday, or a day on which a national
38 legal holiday is observed . **Time is of the essence in this Contract.**

39 **4. CLOSING DATE AND LOCATION:**

**Buyer** (__ST__) (_____) and **Seller** (__WJ__) (_____) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-6   Rev. 3/25                                                              ©2025 Florida Realtors®

This software is licensed to [Melissa Johnson - LoKation] www.transactiondesk.com.

40     **(a) Closing Date:** This transaction will be closed on _____**9/12/2025**_____ (Closing Date), unless
41     specifically extended by other provisions of this Contract. The Closing Date will prevail over all other time periods
42     including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended
43     on Closing Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after
44     the insurance underwriting suspension is lifted.

45     **(b) Location:** Closing will take place in __**Pinellas**__ County, Florida. (If left blank, closing will take place in the
46     county where the property is located.) Closing may be conducted by mail or electronic means.

47 **5. THIRD PARTY FINANCING:**
48 **BUYER'S OBLIGATION:** On or before _____ days (5 days if left blank) after Effective Date, **Buyer** will apply for third
49 party financing in an amount not to exceed _____% of the purchase price or $_____, with a fixed
50 interest rate not to exceed _____% per year with an initial variable interest rate not to exceed _____%, with points or
51 commitment or loan fees not to exceed _____% of the principal amount, for a term of _____ years, and amortized
52 over _____ years, with additional terms as follows:
53 **BUYER IS PAYING CASH NO FINANCING INVOLVED**_____.
54 **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any
55 lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within ____ days (45 days if left
56 blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and (iii) close
57 the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the mortgage
58 broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately upon
59 obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and reasonable
60 diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within ____ days (3 days if left blank)
61 deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
62 If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time thereafter.
63 Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction, by closing, of
64 those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes of Paragraph 5 only):** If **Buyer**
65 has used good faith and reasonable diligence but does not obtain Loan Approval by Loan Approval Date and
66 thereafter either party elects to cancel this Contract as set forth above or the lender fails or refuses to close on or
67 before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be returned to **Buyer**, whereupon both
68 parties will be released from all further obligations under this Contract, except for obligations stated herein as surviving
69 the termination of this Contract. If neither party elects to terminate this Contract as set forth above or **Buyer** fails to use
70 good faith or reasonable diligence as set forth above, **Seller** will be entitled to retain the Deposit(s) if the transaction
71 does not close. For purposes of this Contract, "Loan Approval" means a statement by the lender setting forth the terms
72 and conditions upon which the lender is willing to make a particular mortgage loan to a particular buyer. Neither a pre-
73 approval letter not a prequalification letter shall be deemed a Loan Approval for purposes of this Contract.

74 **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ☒ statutory warranty
75 deed ☐ special warranty deed ☐ other _____, free of liens, easements and
76 encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
77 restrictions and public utility easements of record; existing zoning and governmental regulations; and (list any other
78 matters to which title will be subject) _____
79 _____;
80 provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
81 Property as **4800 General Warehouse**_____.

82     **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
83     and pay for the title search and closing services. **Seller** will, at (check one) ☒ **Seller's** ☐ **Buyer's** expense and
84     within ___**7**___ days after Effective Date or at least _____ days before Closing Date deliver to **Buyer** (check one)
85     ☒ (i) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by
86     **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase
87     price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the evidence of title and
88     **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date. ☐ (ii.) an
89     abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
90     However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed

**Buyer** (_JT_) (_____) and **Seller** (_WL_) (_____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

CC-6    Rev. 3/25    ©2025 Florida Realtors®

**This software is licensed to [Melissa Johnson - LoKation] www.transactiondesk.com.**

91  insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy
92  exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or
93  **Buyer's** closing agent together with copies of all documents recited in the prior policy and in the update. If such
94  an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of title.

95  **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
96  of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or (2)
97  **Buyer** delivers proper written notice and **Seller** cures the defects within _____ days from receipt of the notice
98  ("Curative Period"). Seller shall use good faith efforts to cure the defects. If the defects are cured within the
99  Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
100 scheduled Closing Date. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be
101 cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have 10 days
102 from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or accept
103 title subject to existing defects and close the transaction without reduction in purchase price.

104 **(c) Survey:** (check applicable provisions below)
105     (i.) ☒ **Seller** will, within __3__ days from Effective Date, deliver to **Buyer** copies of prior surveys,
106     plans, specifications, and engineering documents, if any, and the following documents relevant to this
107     transaction:
108     Listing agent has already provided any additional paperwork Seller has is to be sent within 3 days ,
109     prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
110     transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
111     date this Contract is terminated.
112     ☐ **Buyer** will, at ☒ **Seller's** ☐ **Buyer's** expense and within the time period allowed to deliver and examine
113     title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
114     encroachments on the Property or that the improvements encroach on the lands of another, ☒ **Buyer** will
115     accept the Property with existing encroachments ☐ such encroachments will constitute a title defect to be
116     cured within the Curative Period.

117 **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

118 **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition,
119 ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller**
120 makes no warranties other than marketability of title. In the event that the condition of the Property has materially
121 changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and receive a
122 refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
123 condition existing as of the end of Due Diligence period, the cost of which is not to exceed $_____ (1.5% of
124 the purchase price, if left blank). By accepting the Property "as is", **Buyer** waives all claims against **Seller** for any
125 defects in the Property. (Check **(a)** or **(b)**)

126     ☒ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
127     condition.

128     ☐ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within _____ days from Effective Date ("Due
129     Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion. During the
130     term of this Contract, **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which
131     **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural,
132     environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
133     regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
134     state and regional growth management and comprehensive land use plans; availability of permits, government
135     approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
136     water contamination; and other inspections that **Buyer** deems appropriate. **Buyer** will deliver written notice to
137     **Seller** prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property
138     is acceptable. **Buyer's** failure to comply with this notice requirement will constitute acceptance of the Property in
139     its present "as is" condition. **Seller** grants to **Buyer**, its agents, contractors and assigns, the right to enter the
140     Property at any time during the term of this Contract for the purpose of conducting Inspections, upon reasonable
141     notice, at a mutually agreed upon time; provided, however, that **Buyer**, its agents, contractors and assigns enter
142     the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from
143     losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
144     liability to any person, arising from the conduct of any and all inspections or any work authorized by **Buyer**. **Buyer**

**Buyer** (_JT_) (_____) and **Seller** (_WL_) (_____) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

CC-6   Rev. 3/25                                                                                                    ©2025 Florida Realtors®

**This software is licensed to [Melissa Johnson -  LoKation] www.transactiondesk.com.**

145  will not engage in any activity that could result in a mechanic's lien being filed against the Property without
146  **Seller's** prior written consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the
147  Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the
148  Inspections, and (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a
149  result of the Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that
150  **Buyer's** deposit will be immediately returned to **Buyer** and the Contract terminated.

151  **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
152  parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
153  to ensure that all Property is on the premises.

154  **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
155  business conducted on the Property in the manner operated prior to Contract and will take no action that would
156  adversely impact the Property after closing, as to tenants, lenders or business, if any. Any changes, such as renting
157  vacant space, that materially affect the Property or **Buyer's** intended use of the Property will be permitted ☒ only with
158  **Buyer's** consent ☐ without **Buyer's** consent.

159  **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
160  the norms where the Property is located.
161  **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
162  closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
163  mailboxes, and security systems.

164  **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
165  statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
166  recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
167  prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

168  **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
169  service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
170  service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
171  contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
172  contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
173  documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters (if
174  applicable); tenant subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or
175  **Buyer's** lender; assignments of permits and licenses; corrective instruments; and letters notifying tenants of the
176  change in ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller**, if requested by the
177  **Buyer** in writing, will certify that information regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will
178  deliver a resolution of its governing authority authorizing the sale and delivery of the deed and certification by the
179  appropriate party certifying the resolution and setting forth facts showing the conveyance conforms to the
180  requirements of local law. **Seller** will transfer security deposits to **Buyer**. **Buyer** will provide the closing statement,
181  mortgages and notes, security agreements, and financing statements.

182  **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
183  payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
184  premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
185  amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
186  allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
187  of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

188  **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
189  will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
190  pay all installments due and payable on or before the Closing Date, with any installment for any period extending
191  beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
192  Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
193  Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
194  completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
195  estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
196  does not apply to condominium association special assessments.

**Buyer** (_SJ_) (_____) and **Seller** (_WL_) (_____) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

CC-6    Rev. 3/25                                                                                           ©2025 Florida Realtors®

**This software is licensed to [Melissa Johnson - LoKation] www.transactiondesk.com.**

197  **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
198  **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
199  complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply
200  with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or
201  Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the
202  withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
203  requirement.

204  **10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive,
205  deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the
206  terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to
207  **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent
208  has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed
209  items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator
210  determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over
211  the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all
212  liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate
213  broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items
214  or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs
215  incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs
216  in favor of the prevailing party.

217  **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
218  default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
219  complying party specifying the non-compliance. The non-complying party will have _____ days (5 days if left blank) after
220  delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

221  **12. FORCE MAJEURE: Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable
222  to each other for damages so long as performance or non-performance of the obligation, or the availability of services,
223  insurance, or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure.
224  "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual
225  transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the
226  non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will
227  be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this
228  Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than
229  30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
230  and the Deposit shall be refunded to **Buyer**, thereby releasing **Buyer** and **Seller** from all further obligations under this Contract.

231  **13. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
232  not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit
233  will be returned in accordance with applicable Florida Laws and regulations.

234  **14. DEFAULT:**
235  **(a)** In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make
236  the title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit without thereby
237  waiving any action for damages resulting from Seller's breach and may seek to recover such damages or seek
238  specific performance. If Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the
239  brokerage fee.
240  **(b)** In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1)
241  retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the
242  execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
243  specific performance. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1)
244  terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without
245  waiving any remedy for **Buyer's** default.

246  **15. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
247  prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable
248  attorneys' fees, costs, and expenses.

249  **16. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
250  electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,

**Buyer** (_JH_) (_____) and **Seller** (_WL_) (_____) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

CC-6    Rev. 3/25                                                          ©2025 Florida Realtors®

**This software is licensed to [Melissa Johnson - LoKation] www.transactiondesk.com.**

251  document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
252  representing a party will be as effective as if given by or delivered to that party.

253  **17. DISCLOSURES:**
254  **(a) Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales
255  Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of
256  commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the
257  owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not
258  attach to any interest in real property. This lien right cannot be waived before the commission is earned.

259  **(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special
260  assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such
261  liens, if any, shall be paid as set forth in Paragraph 9(e).

262  **(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in
263  sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
264  exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon
265  and radon testing may be obtained from your county public health unit.

266  **(d) Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by
267  Section 553.996, Florida Statutes.

268  **18. RISK OF LOSS:**
269  **(a)** If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will
270  bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to
271  **Buyer**. Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and
272  **Seller** will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim
273  to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any
274  such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of
275  the **Buyer**.

276  **(b)** If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the
277  right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this
278  Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of
279  purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at
280  closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate
281  with and assist **Buyer** in collecting any such award.

282  **19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☒ is not
283  assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement
284  to the **Seller** at least 5 days prior to Closing. The terms **"Buyer," "Seller"** and "Broker" may be singular or plural. This
285  Contract is binding upon **Buyer**, **Seller** and their heirs, personal representatives, successors and assigns (if
286  assignment is permitted).

287  **20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**.
288  Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound.
289  Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated
290  electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or
291  typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract
292  is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be
293  construed under Florida law and will not be recorded in any public records.

294  **21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a
295  licensed real estate Broker other than:
296  **(a) Seller's Broker:** _____MARCUS & MILLICHAP_____JAMES DEFUSTO SL3517817_____,
                                              (Company Name)                                        (Licensee)
297  _____,
                                         (Address, Telephone, Fax, E-mail)
298  who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated_ by
299  ☐ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☒ a listing agreement ☐ other (specify) _____
300  _____
301  
302  **(b) Buyer's Broker:** _____LoKation_____MELISSA JOHNSON SL3218243_____,

**Buyer** (_JT_) (_____) and **Seller** (_WL_) (_____) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-6    Rev. 3/25                                                                    ©2025 Florida Realtors®

**This software is licensed to [Melissa Johnson - LoKation] www.transactiondesk.com.**

```
                              (Company Name)                              (Licensee)
303 _____,
                         (Address, Telephone, Fax, E-mail)
304   who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated by
305   ☐ Seller's Broker ☒ Seller ☐ Buyer ☐ both parties pursuant to ☐ other (specify)
306   Seller will compensate Buyers Brokers 2% of the purchase price as commission.
```

307  (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
308  inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to
309  indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
310  reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
311  inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
312  Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of
313  services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
314  expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

315  **22. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
316  this Contract):
317  ☐ Arbitration                      ☐ Seller Warranty                      ☐ Existing Mortgage
318  ☐ Section 1031 Exchange            ☐ Coastal Construction Control Line    ☐ Buyer's Attorney Approval
319  ☐ Property Inspection and Repair   ☐ Flood Area Hazard Zone               ☐ Seller's Attorney Approval
320  ☐ Seller Representations           ☐ Seller Financing                     ☐ Other _____

321  **23. ADDITIONAL TERMS:**
322
323
324
325
326
327
328
329
330
331

332  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
333  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL**
334  **FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE**
335  **PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE**
336  **EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR**
337  **REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**
338  **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
339  **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
340  **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
341  **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
342  **GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND**
343  **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

**Buyer** (_JT_) (_____) and **Seller** (_ML_) (_____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

CC-6    Rev. 3/25                                                                    ©2025 Florida Realtors®

This software is licensed to [Melissa Johnson - LoKation] www.transactiondesk.com.

344  Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
345  party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
346  terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
347  to do so.

348  **ATTENTION: SELLER AND BUYER**

349  **CONVEYANCES TO FOREIGN BUYERS**: Part III of Chapter 692, Sections 692.201 - 692.205, Florida Statutes, 2023
350  (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by certain buyers
351  who are associated with a "foreign country of concern", namely: the People's Republic of China, the Russian
352  Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of Cuba, the
353  Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. **It is a crime to buy or knowingly sell property**
354  **in violation of the Act.**

355  **At time of purchase, Buyer must provide a signed Affidavit which complies with the requirements of the Act.**
356  Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under the Act.

357  _[signature]_ Date: 08/27/2025
     (Signature of Buyer)
358  **TIDE LLC**                                        Tax ID No.: _____
     (Typed or Printed Name of Buyer)
359  Title:_____                                   Telephone:_____

360  _____                                         Date: _____
     (Signature of Buyer)
361  **Simon Tusha**                                      Tax ID No.: _____
     (Typed or Printed Name of Buyer)
362  Title:_____                                   Telephone:_____

363  Buyer's Address for purpose of notice  6318 Pasadena Point Blvd    Gulfport    FL
364  Facsimile: _____                              Email:_____

365  _[signature: William Long]_                          Date: 8/27/2025 | 18:15:42 PDT
     (Signature of Seller)
366  **PROPERTYCRAFT ENTERPRISES LLC**                    Tax ID No.: _____
     (Typed or Printed Name of Seller)
367  Title:_____                                   Telephone:_____

368  _____                                         Date: _____
     (Signature of Seller)
369  _____                                         Tax ID No.: _____
     (Typed or Printed Name of Seller)
370  Title:_____                                   Telephone:_____

371  Seller's Address for purpose of notice: _____
372  Facsimile:_____                               Email:_____

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

**Buyer** (_ST_) (____) and **Seller** (_WL_) (____) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-6   Rev. 3/25                                        ©2025 Florida Realtors®

**This software is licensed to [Melissa Johnson - LoKation] www.transactiondesk.com.**