**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | Case No. 8-24-bk-00676-RCT |
| THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., | Chapter 11 |
| Debtor. _____/ | |

**BRIAR CAPITAL REAL ESTATE FUND LLC'S OBJECTION TO MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH BIG STORM REAL ESTATE**

COMES NOW, Briar Capital Real Estate Fund, LLC ("Briar Capital"), an interested party and secured creditor as to Big Storm Real Estate, LLC ("BSRE"), hereby files its objection (the "Objection") to the *Motion to Approve Compromise of Controversy with Big Storm Real Estate LLC* (the "9019 Motion") (Doc. 659) and states as follows.

**Preliminary Statement**

Once again, Briar Capital is being forced to protect is interests against the efforts of the Chapter 11 Trustee to attack a commercial real estate lender that did nothing more than make a capital improvement and working capital loan to a small business to support and expand its operations during the COVID-19 pandemic. The Chapter 11 Trustee's latest tactic is to attempt to impose a retroactive constructive trust as to property subject to Briar Capital's mortgage (the "Briar Capital Mortgage"), while refusing to recognize the undeniable priority of Briar Capital's liens. This position is legally baseless and strategically disingenuous. Having already voluntarily dismissed claims against Briar Capital seeking to recover ordinary course loan payments to Briar Capital after realizing the futility of those claims, the Chapter 11 Trustee's new strategy seeks an alternative route to achieve the same result under the guise of a settlement with BSRE. However,

4921-3730-1608

the Chapter 11 Trustee already owns and controls BSRE and its property, rendering the imposition of a constructive trust unnecessary and redundant.

Rather than preserving and maximizing the estate's assets, the Chapter 11 Trustee's approach has inflated litigation costs, which will correspondingly decrease a potential recovery for the estate of the Debtor to the detriment of its creditors. The Chapter 11 Trustee's real intent, which is not explicitly disclosed in the 9019 Motion, appears to be to attempt to gain leverage over Briar Capital by threatening its liens. Accordingly, Briar Capital files this Objection to the 9019 motion and urges the Court to reject the Chapter 11 Trustee's attempt to establish a constructive trust, in particular when the proposed judgment imposing the constructive trust fails to recognize the priority and validity of Briar Capital's liens vis a vis the proposed constructive trust.

I. **PROCEDURAL AND FACTUAL BACKGROUND RELATED TO BRIAR CAPITAL AND THE 9019 MOTION**.

A. **The BSRE Property and Briar Capital Loan**

1. On February 4, 2015 and September 14, 2016, BSRE acquired title to a single, contiguous parcel of real property located at 12707 49th Street North, Clearwater, FL 33762 (the "BSRE Real Property").

2. On September 18, 2020, Briar Capital made an initial loan in the original principal amount of $2,500,000.00 (the "Briar Capital Loan") to BSRE and Big Storm Pinellas, LLC ("BSP").

3. On June 23, 2023, the amount of the Loan was increased to $3,250,000.00 (the "Future Advance"). The Loan is secured by BSRE Real Property and personal property located thereon (collectively, the "BSRE Property"), as described in the loan documents executed by the parties (the "Big Storm Loan Documents").

4.       In the Loan Agreement among Briar Capital, BSRE and BSP (the "Loan Agreement"), BSRE and BSP agreed that the use of the Briar Capital Loan proceeds were to be used as follows:

> Section 3.07    <u>Use of Proceeds</u>. The proceeds of the Term Loan will be used by Borrowers (a) to further develop and make improvements to the Mortgaged Property in accordance with Section 4.03(c), (b) to finance the construction of improvements having an aggregate cost of up to $450,000 at other locations or owned by Big Storm Real Estate, (c) for working capital, and (d) for other lawful purposes expressly permitted under Section 3.13. None of such proceeds will be used for, and no Borrower is engaged in, the business of extending credit for the purpose of purchasing or carrying any "margin stock" as defined in Regulation U of the Board of Governors of the Federal Reserve System (12 C.F.R. Part 221).

A copy of the Loan Agreement is attached hereto as **Exhibit 1**.

5.       There is nothing to indicate that the loan proceeds were not used for their stated purpose. BSP and BSRE constructed an outdoor seating area to combat the COVID pandemic at the BSRE Real Property, and opened or expanded their taproom operations at other locations.

**B.   <u>The Center for Special Needs Trust Administration, Inc.'s Chapter 11 Bankruptcy</u>**

6.       On February 9, 2024, Debtor filed a Chapter 11 bankruptcy petition[1], and Michael Goldberg, following Court approval, was appointed Chapter 11 Trustee on March 21, 2024 (CSNTA Doc. 109).

**C.   <u>The Boston Finance Group, LLC Adversary Proceeding</u>**

7.       Following the Chapter 11 Trustee's appointment, on April 25, 2024, the Chapter 11 Trustee filed an adversary complaint against Leo Govoni ("Govoni") and Boston Finance Group ("BFG") (Adv. Pro. No. 8:24-ap-00139-RCT) (the "BFG Adversary").

8.       On January 17, 2025, the Court entered an Amended Final Judgment as to Counts I and II of in the BFG Adversary in favor of the Chapter 11 Trustee and against Govoni and BFG

---

[1] *The Center for Special Needs Trust Administration* ("CSNTA"), Case No. 8:24-bk-00676 (Bankr. M.D. Fla. Feb 09, 2024).


(the "Amended Final Judgment") (BFG Adv. Doc. 52). The Amended Final Judgment enjoined various Big Storm entities, including BSRE and BSP from spending any funds or continuing operations.

9. As a result, the Rising Group Consulting, Inc. (the "Rising Group"), was subsequently appointed as Chief Restructuring Office ("CRO") for various Big Storm entities, including BSRE (BFG Adv. Doc. 75).

10. Following the Rising Group's appointment as CRO of BSRE, on June 3, 2025, the Court entered an *Agreed Order Transferring Defendants' Stock and Limited Liability Company Membership Interests to Chapter 11 Trustee* (BFG Adv. Doc. 134) (the "Agreed Transfer Order"). The Agreed Transfer Order provided the Chapter 11 Trustee complete ownership of BSRE.

**D. The Big Storm Real Estate, LLC Adversary Proceeding**

11. As the BFG Adversary continued, the Chapter 11 Trustee initiated another adversary proceeding against multiple defendants, including BSRE and Briar Capital (the "BSRE Adversary").[2]

12. In the BSRE Complaint, Plaintiff sought to circumvent ordinary course loan payments made by BSRE to Briar Capital on the basis that any such payments were allegedly funded by allegedly improper upstream transfers (Compl. ¶¶ 1-2).

13. Specifically, Counts I-IV of the Complaint sought to avoid any payments made by BSRE to Briar Capital as fraudulent transfers pursuant to §§ 544, 548, and 550(a) of the Bankruptcy Code, and §§ 726.105(1)(a), 726.105(1)(b) and 726.106(1), Fla. Stat. (Compl. ¶¶ 69-98).

---

[2] See Adv. Doc. 1 – the "BSRE Complaint", in the United States Bankruptcy Court Middle District of Florida, Adv. Pro. No. 8:25-ap-00048-RCT.

14. In support thereof, the Chapter 11 Trustee alleged that the Debtor, a non-profit corporation which provides specialized trust services for special needs planning, was used by Govoni to funnel Debtor's assets to a network of companies – including Big Storm Real Estate – between 2015 and 2024.

15. The Complaint further alleged that from 2015 to 2024, at least $8.9 million was disbursed to BSRE, which was purportedly used to maintain three Florida properties, including the BSRE Real Property located at 12707 49th Street North, Pinellas Park, Florida 33762 (Compl. ¶ 49-52). The BSRE Real Property is secured by a mortgage executed by BSRE in favor of Briar Capital in September of 2020 (the "BSRE Mortgage").

16. Importantly, none of the counts against Briar Capital challenged either the validity of the Briar Capital Loan nor the enforceability of the relevant Big Storm Loan Documents. (*See e.g.*, Compl.).

17. Briar Capital provided the Chapter 11 Trustee with detailed records and documentation proving none of the payments made to Briar Capital were fraudulent, and asked that it be dropped from the BSRE Adversary. When this request was ignored, Briar Capital filed a Motion for Summary Judgment and accompanying affidavit, demonstrating that Briar Capital received all payments from BSRE in good faith, for value, and without knowledge of any potential voidability. (BSRE Adv. Doc. 32).

18. Confronted with the undisputed validity of Briar Capital's position, the Chapter 11 Trustee filed a Notice of Voluntary Dismissal as to Counts I-IV against Briar Capital on June 25, 2025 (BSRE Adv. Doc. 33). Counts I-IV against other mortgage holders as to different property formerly owned by BSRE were also dismissed. The other properties owned by BSRE have been

5

sold at the Chapter 11 Trustee's request, without the Chapter 11 Trustee asserting a priority constructive trust that trumped those mortgage holders.

19. BSRE ultimately failed to submit a responsive pleading and a clerk's default was entered against BSRE on August 4, 2025. (BSRE Adv. Doc. 45).

20. Throughout the BSRE Adversary, the Chapter 11 Trustee never once attempted to challenge the validity or priority of Briar Capital's lien, nor the liens of other mortgagees as to other properties formerly owned by BSRE.

### E. The Big Storm Real Estate LLC Bankruptcy Case

21. BSRE filed a voluntary Chapter 11 petition on June 16, 2025 (the "BSRE Bankruptcy"). The Court agreed to jointly administer the Chapter 11 bankruptcies of BSRE, Big Storm Brewery, LLC, and Big Storm Pinellas, LLC (collectively, the "Big Storm Entities") pursuant to orders entered in each case.[3]

22. BSRE's only asset is the BSRE Property, and it conducts no business other than the business of operating the BSRE Real Property and activities incidental to such operation.

23. As a result, Briar Capital filed a Motion to Designate BSRE as a Single Asset Real Estate ("SARE") Debtor (the "SARE Motion") (Big Storm BK Doc. 71).

24. Both the SARE Motion and a motion to employ Joshua Rizack of The Rising Group Consulting, Inc. as CRO for the Big Storm Debtors in those cases (Big Storm BK Doc. 81) are currently pending before this Court.

### F. The 9019 Motion

---

[3] Several cases are being jointly administered within the Middle District of Florida, Case No. 8:25-bk-04026-RCT. However, citations to documents filed will be specific to the jointly administered case as "Big Storm BK Doc. ___").

25. On August 21, 2025, the Chapter 11 Trustee filed the 9019 Motion, seeking approval of a proposed settlement agreement as described in the 9019 Motion, including the entry of the proposed judgment attached thereto.

26. Despite the Chapter 11 Trustee owning all membership interests in BSRE and thus controlling all real and personal property BSRE possesses (which fact the 9019 Motion omits), the Chapter 11 Trustee seeks to impose a retroactive constructive trust without providing the Court and interested parties with an explanation as to why that remedy is necessary. Additionally, the Chapter 11 Trustee, despite dismissing its claims against Briar Capital in BSRE Adversary, implies in the 9019 Motion that the mortgage proceeds Briar Capital received from BSRE were used for improper purposes.

27. The Chapter 11 Trustee alleges that, upon the bankruptcy filing of the Big Storm Entities, the "Trustee's administration/control of these debtor related entities stopped." This is incorrect. The Chapter 11 Trustee still owns the membership interests in the Big Storm Entities, and the CRO for the Big Storm Entities was selected by the Chapter 11 Trustee.

28. The Chapter 11 Trustee alleges, without factual support, that the Briar Capital Loan was a "Cash Out Transaction" and the proceeds were purportedly "used by Govoni to continue funding his lavish lifestyle and personal family investments." (9019 Motion, ¶ 4). The Chapter 11 Trustee also repeatedly emphasizes that the Briar Capital Loan was made four years after BSRE acquired the BSRE Property. (9019 Motion, ¶¶ 4, 28). Aside from being factually incorrect given that a portion of the BSRE Real Property was acquired in February of 2015, over five years before the Briar Capital Loan was made, the Chapter 11 Trustee fails to explain why that fact is relevant.

29. As noted above, the Briar Capital Loan was not a "Cash Out transaction." It was diligently underwritten commercial loan that provided capital to BSRE to allow it to continue

7

operate on the BSRE Property during the COVID Pandemic and expand its operations at other locations.

30. Accordingly, the relief requested in the 9019 Motion as unnecessary. To the extent a constructive trust is imposed, which Briar Capital explicitly opposes, any judgment imposing a constructive trust should make clear that such constructive trust cannot take priority over or invalidate the liens provided by the BSRE Loan Documents, including the BSRE Mortgage.

II. **ARGUMENT IN OPPOSITION TO APPROVAL OF THE 9019 MOTION**

A. **Factual Argument**

31. The 9019 Motion seeks entry of a money judgment against BSRE for $8,931,897.20, and the imposition of "a constructive trust on all of the Defendant's real and personal property, anywhere located, dating back to August 7, 2015, in favor of the estate of Debtor." (9019 Motion, p. 13). Both remedies are wholly unnecessary.

32. Initially, the Chapter 11 Trustee has already obtained a money judgment against BSRE based on the same theory in proceedings supplementary being pursued against BSRE in Pinellas County. A copy of the judgment entered against BSRE on May 29, 2025 in that case is attached hereto as **Exhibit 2** (the "BSRE Pinellas Judgment"). Notably, the Chapter 11 Trustee recorded a certified copy of the BSRE Pinellas Final Judgment on June 19, 2025, **after** the June 16, 2025 petition date in the BSRE Bankruptcy, in violation of the automatic stay in the BSRE Bankruptcy. Regardless, given that the Chapter 11 Trustee already has a virtually identical money judgment against BSRE, it is unclear why a double monetary recovery is being sought, and the 9019 Motion sheds no light on that issue.

33. Second, and more importantly as related to Briar Capital, the imposition of a retroactive constructive trust is wholly unnecessary given that the Chapter 11 Trustee already owns

8

and controls BSRE and all of its assets. The only plausible explanation for seeking this remedy is a flawed theory that such a retroactive constructive trust could somehow take priority over the Briar Capital Mortgage. However, that explanation is absent from 9019 Motion. In fact, there is no explanation provided at all in the 9019 Motion as to why the constructive trust is necessary.

34. The Chapter 11 Trustee is again implying that the Briar Capital Loan is something other than a typical commercial loan. As previously demonstrated in Briar Capital's Motion for Summary Judgment (BSRE Adv. Doc. 32), Briar Capital conducted all customary due diligence associated with a commercial lending transaction. Govoni's fraudulent activities were not known or alleged until this case was filed, which was approximately 3.5 years after the Briar Capital Loan was made. Briar Capital's due diligence include background checks, which failed to reveal any fraudulent activity. Briar Capital had no knowledge of, nor involvement in, any of Govoni's alleged financial misconduct.

35. The BSRE Loan Documents explicitly support Briar Capital's position that the stated purpose of the Loan (which was issued in September of 2020 during the COVID-19 pandemic) was to "(a) further develop and make improvements to the [Real] Property in accordance with Section 4.03(c), (b) to finance the construction of improvements having an aggregate cost of up to $450,000 at other locations or owned by Big Storm Real Estate, (c) for working capital, and (d) for other lawful purposes expressly permitted under Section 3.13."

36. As previously stated, there is and was nothing to indicate that the loan proceeds were not used for their stated purpose. BSP and BSRE utilized the loan proceeds to construct an outdoor seating area to combat the COVID pandemic at the BSRE Real Property, and opened or expanded their taproom operations at other locations. The Briar Capital Loan was not a "Cash Out Transaction" as characterized in the 9019 Motion.

**B. Legal Argument.**

37. In light of the foregoing factual background, the allegations (or lack thereof) set forth in the 9019 Motion, and applicable law with respect to the priority of constructive trusts, Briar Capital objects to the imposition of a constructive trust. Alternatively, should the Court permit entry of a judgment imposing a constructive trust, any such judgment should make clear that such constructive trust cannot take priority over or invalidate the liens provided by the BSRE Loan Documents.

38. The Chapter 11 Trustee has failed to demonstrate any requisite need for a constructive trust, given that the Chapter 11 Trustee already owns and controls BSRE. Instead, Briar Capital suspects that the Chapter 11 Trustee is seeking to obtain priority over the lien provided by the BSRE Loan Documents, and in particular, the BSRE Mortgage. Any such argument would contravene the black letter law, and is legally insufficient.

39. Specifically, § 695.01, Fla. Stat., provides that an interest in real property acquired for value and without notice of an unrecorded interest takes priority over that unrecorded interest. This statutory protection extends to unrecorded equitable interests, including those arising from constructive trusts. *See Dubai Islamic Bank v. Attorney's Title Ins. Fund, Inc.*, 778 So. 2d 413, 413 (Fla. 3d DCA 2001); *F.J. Holmes Equip., Inc. v. Babcock Bldg. Supply, Inc.*, 553 So. 2d 748, 750 (Fla. 5th DCA 1989) ("[U]nrecorded... interests, such as the equitable rights of the beneficiaries of... constructive trusts..., are generally held to be inferior to rights subsequently acquired without actual notice of the earlier created but unrecorded rights.").

40. In the 9019 Motion, the Chapter 11 Trustee cites *Gen. Coffee Corp. v. City Nat Bank of Miami (In re Gen. Coffee Corp.),* 828 F.2d 699, 702 (11th Cir. 1987), in support of the

position that the imposition of a constructive trust relates back to the time when the facts giving rise to the fraud occurred.

41. However, the court in *Gen. Coffee* also considered the rights of a constructive trust beneficiary versus those of a bona fide purchaser. *Id.* at 705. When considering whether an "ideal creditor" would prevail over a constructive trust beneficiary under Florida law, the court stated that a constructive trust beneficiary "should have the same rights to the trust assets that a beneficiary of an express trust would have." *Id.* at 706. However, *Gen. Coffee* also stated that "**a constructive trust beneficiary prevails over all subsequent takers of the trust property except bona fide purchasers**." *Id.* at 707 (emphasis added).

42. Importantly, § 695.01, Fla. Stat., accords no special priority for constructive trusts, and courts are not permitted to create one where the statutory language is unambiguous. *English v. State*, 191 So. 3d 448, 450 (Fla. 2016). As *Dubai* makes clear, a constructive trust is treated no differently than any other unrecorded interest and is subordinate to the rights of a party who acquires an interest without notice and for value. *Dubai*, 778 So. 2d at 413; *see also In re Mabbott*, 255 B.R. 787, 790 (Bankr. M.D. Fla. 2000) (under Florida law, unperfected equitable interests are junior to interests of judicial lien creditors); *Sanchez-Villalaba v. Heckert*, 2013 WL 537496 at *4 (S.D. Fla. Feb. 12, 2013) (under Florida law, "bona fide purchasers prevail over unrecorded equitable interests." (citing *Dubai*, 778 So. 2d at 413)).

43. Briar Capital had no notice of any alleged constructive trust interest at the time Briar Capital extended the Loan to BSRE in September of 2020. In fact, it appears no one outside of Govoni's inner circle knew of the fraud that forms the basis for the request for the construction trust. The Chapter 11 Trustee has repeatedly failed to demonstrate that Briar Capital had knowledge or notice that payments made to Briar Capital in relation to the BSRE Real Property

were proceeds of any wrongdoing. This is because the Chapter 11 Trustee cannot do so. None of Briar Capital's due diligence indicated any fraudulent activity.

44. Further, a motion under Federal Bankruptcy Rule 9019 must be supported by full and transparent disclosure to enable the Court to make an informed and independent determination as to whether the proposed compromise is fair, equitable, and in the best interests of the estate. *In re Fundamental Long Term Care, Inc.*, 527 B.R. 497, 509 (Bankr. M.D. Fla. 2015). Here, the Chapter 11 Trustee has failed to meet that standard. The 9019 Motion omits critical facts—most notably, the entry of the BSRE Pinellas Judgment and the Trustee's complete ownership and control of BSRE—and obscures the true purpose behind the proposed constructive trust: to attempt to retroactively subordinate Briar Capital's Mortgage. As noted above, it cannot do so.

45. The proponent of a 9019 motion bears the burden of establishing that the settlement is fair and equitable and should be approved by the court. *In re Kay*, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998). "The Court must be apprised of all necessary facts for an intelligent, objective and educated evaluation" in determining the reasonableness of a proposed settlement agreement. *See In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980). Settlements should not be used to obscure the true intentions of the parties or to manipulate outcomes in related proceedings, and the failure to provide the intent of the 9019 Motion should lead to a denial of the same.

46. Although as noted above, the money judgment and constructive trust are wholly unnecessary, in an attempt to avoid filing this Objection, Briar Capital requested that the Chapter 11 Trustee include language confirming that the proposed constructive trust will not take priority over the lien of BSRE Loan Documents, mirroring the well-established law on this issue cited hereinabove. However, the Chapter 11 Trustee refused this request and noted a disagreement with the lien priority of the Briar Capital Mortgage. Thus, the only reasonable conclusion to be drawn

from this refusal is that the Chapter 11 Trustee is operating under the misplaced belief that he can impose a retroactive constructive trust which could receive priority over Briar Capital's Mortgage, a fact that is not disclosed in the 9019. Thus, Briar Capital has been forced to file this Objection.

### III.     CONCLUSION.

47.     Given the existence of the BSRE Pinellas Judgment and Chapter 11 Trustee's existing ownership and control over BSRE, granting the 9019 Motion is wholly unnecessary. In the event that any such constructive trust is imposed, it would be an unrecorded equitable interest, and would be subordinate to Briar Capital's mortgage.

WHEREFORE, Briar Capital respectfully requests this Court sustain this Objection, deny the relief sought 9019 Motion in whole, and grant such other and further relief it deems appropriate. To the extent a retroactive constructive trust is permitted (which relief is explicitly opposed), any such judgment should make clear that the constructive trust cannot take priority over the Briar Capital Mortgage.

Dated September 11, 2025.

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
200 South Orange Avenue, Suite 2050
Orlando, Florida 32801
Telephone: (407) 422-6600
Facsimile: (407) 841-0325
*Counsel for Briar Capital Real Estate Fund, LLC*

By: */s/ Zachary J. Bancroft*
    Zachary J. Bancroft
    Florida Bar No. 0145068
    *zbancroft@bakerdonelson.com*
    *achentnik@bakerdonelson.com*
    *bkcts@bakerdonelson.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2025, a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system on all parties registered to receive electronic noticing in this case.

<div style="text-align: right;">

*/s/ Zachary J. Bancroft*
Zachary J. Bancroft

</div>

4921-3730-1608