**NOT FOR PUBLICATION**

In the
# United States Court of Appeals
For the Eleventh Circuit

---

No. 25-10933
Non-Argument Calendar

---

In Re: THE CENTER FOR SPECIAL
NEEDS TRUST ADMINISTRATION, INC.

---

CLARK CHAMBERLIN,
KELLY CHAMBERLIN,
TODD CHAMBERLIN,

*Plaintiffs-Appellants*,

*versus*

MICHAEL GOLDBERG,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:24-cv-01962-WFJ

---

Before NEWSOM, ABUDU, and KIDD, Circuit Judges.

PER CURIAM:

Todd and Kelli Chamberlin entrusted The Center for Special Needs Trust Administration, Inc. (the "Center") with funds in a pooled special needs trust benefitting their disabled son. Unfortunately, their trust was misplaced, and through nefarious acts, trust administrators stole the funds meant to benefit their son and other beneficiaries. This theft came to light after the Center declared bankruptcy. Upon learning of the missing funds, the Chamberlins filed a class action suit seeking to recover the loss. But the bankruptcy court and the district court found that the class action was subject to an automatic stay under bankruptcy law. The Chamberlins argue that this conclusion was erroneous. After careful review, and with the benefit of oral argument, we affirm.

## I. Background[1]

Clark Chamberlin is a permanently disabled teenaged boy. Clark suffered a catastrophic brain injury as an infant and requires round-the-clock care. Clark's parents, Todd and Kelli Chamberlin, pursued legal claims for medical malpractice and obtained settlements on Clark's behalf.[2] The court overseeing that case approved the creation of an irrevocable individual special needs trust for Clark with the funds obtained from the settlements.

[1] The parties largely agree on the facts. We recount them as relayed in the Chamberlins' class action complaint.

[2] The legal claims from this previous case are not at issue on this appeal.

In August 2011, the Chamberlins worked with John Staunton, an attorney, to identify an administrator for Clark's special needs trust. Staunton recommended the Center to serve as trustee. Staunton was a co-founder of the Center, along with Leo Govoni. The Chamberlins then executed a document creating an irrevocable trust with Clark as the beneficiary and the Center serving as both trustee and the trust's fiduciary.

In July 2014, the Center directed the Chamberlins to execute an agreement to join Clark's trust with a pool of other special needs trusts. The agreement creating the trust stated that it "establishes a pooled trust, for the sole benefit of the Beneficiaries hereunder, pursuant to 42 U.S.C § 1396p(d)(4)(c)" and included a spendthrift provision limiting the Chamberlins' access to trust funds.

The Center served as trustee for roughly 2,000 special needs trusts. Staunton and Govoni had both resigned from the Center by 2009, but Govoni retained control over the special needs trusts the Center administered. One of Govoni's companies, Boston Asset Management, managed investments for the trusts, while another, Fiduciary Tax & Accounting Services, was the trusts' accountant.

On February 9, 2024, the Center filed for bankruptcy after disclosing that between 2009 and 2020, the Center loaned nearly $100 million out of the special needs trusts to Boston Finance Group, a company controlled by Govoni and other defendants. The loan activity occurred over multiple years without Boston Finance Group taking any meaningful steps to repay the loan,

which has been in default since 2017. More than 1,500 special needs trusts are missing all or part of their assets.

Upon learning of the bankruptcy and loans, the Chamberlins filed a class action complaint on February 19, 2024, followed by an amended complaint, on behalf of the special needs trusts' beneficiaries against various entities allegedly associated with Govoni's scheme, including Govoni, Staunton, and the Boston Finance Group, among others. The class action did not name the Center as a defendant, nor did the suit allege a cause of action specifically for breach of contract between the Center and Boston Finance Group. Instead, the class action asserted claims for conversion, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, fraudulent transfers, and unjust enrichment.

The bankruptcy court appointed Michael Goldberg, the appellee here, as the Chapter 11 trustee to manage the Center's bankruptcy. He filed an adversary proceeding against Boston Finance Group and Govoni for breach of loan on April 25, 2024. Goldberg was not involved in the Chamberlin's class action filing, nor was he involved in a second, separate class action complaint different plaintiffs filed on April 9, 2024, raising substantially similar claims to the Chamberlins' complaint.

On April 26, 2024, Goldberg moved to enforce an automatic bankruptcy stay as to both class actions. As relevant here, he argued that the Chamberlin class action's claims were property of the debtor's bankruptcy estate because they related to Govoni and

Boston Finance Group's alleged loan breach. The bankruptcy court granted the motion, finding that "at its core, the Chamberlin Class Action Plaintiffs' claims ar[o]se from [the Center] funding a $100 million loan" to Boston Finance Group with money from the special needs trusts for which it was the trustee. In other words, the funds that the Chamberlins sought to claw back in their class action are the same funds as Goldberg sought to recover in the bankruptcy proceeding—they are ultimately property of the debtor's estate. Furthermore, the bankruptcy court concluded that the Chamberlins' claims were closely linked to Goldberg's claim for the debtor's loss from Boston Finance Group's breach and default on the loan because the Chamberlins' claims related to the same harm and same injury caused by said breach. As a result, the Chamberlins' class action suit was subject to the automatic stay and void ab initio.[3]

The Chamberlins appealed the bankruptcy court's order to the district court. The district court agreed with the bankruptcy court that the class action's claims were the bankruptcy estate's property. It concluded that the class action interfered with Goldberg's work as the bankruptcy trustee because it affected the estate's administration and was "so intertwined with the claims against [the Center] that they are effectively claims against the [Center]."

[3] The plaintiffs in the other class action suit did not oppose Goldberg's motion to enforce the stay, and the bankruptcy court found their suit was also void ab initio. They did not appeal, so the second class action is not at issue here.

The Chamberlins timely appealed the district court's decision to this Court.

## II. Discussion

In bankruptcy appeals, we act "as a second court of review," independently examining the decision of the bankruptcy court and applying the same standards as the district court. *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014). "[W]hen a district court affirms a bankruptcy court's order, as the district court did here, [we] review[] the bankruptcy court's decision." *Id.* We review *de novo* a bankruptcy or district court's decisions about the bankruptcy code's proper construction. *United States v. Verdunn*, 89 F.3d 799, 801 (11th Cir. 1996).

The Chamberlins argue that the lower courts made three errors. First, they argue that the class claims are not the bankruptcy estate's property and are not subject to the automatic stay. Instead, they contend that the law excludes special needs trust property from the estate; that the class action represents the trust beneficiaries' direct claims against defendants other than the Center; and that Goldberg does not have standing as the bankruptcy trustee to bring the claims on the trust beneficiaries' behalf. Second, the Chamberlins argue that the class actions' claims are not against the Center and are not subject to the automatic stay. According to the Chamberlins, while the Center may be a joint tortfeasor with the class action defendants, that status does not mean the class action is against the Center, and no unusual circumstances justify extending the automatic stay to the

suit. Third and finally, the Chamberlins argue that the best course to litigate the trust beneficiaries' claims is through their class action, rather than as a subset of the bankruptcy proceedings.

Goldberg disagrees, arguing that the class action claims are part of the bankruptcy estate; that the class action claims intertwine with claims against the Center; and the class action is not the proper vehicle to litigate the trust beneficiaries' claims. Goldberg also contends that we lack jurisdiction to decide this appeal because there is no longer a live controversy, and we cannot grant the Chamberlins[4] any meaningful relief.

We first address the jurisdictional issue before turning to the appeal's merits.

*A. We have jurisdiction over this non-moot appeal*

"The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered" by district courts reviewing decisions of the bankruptcy courts. 28 U.S.C. § 158(d)(1); *id*. § 158(a). Unlike civil litigation, where decisions are ordinarily final upon a case's completion, a bankruptcy case involves "an aggregation of individual controversies," and the bankruptcy court's decisions are final for purpose of appeal "when they definitively dispose of discrete

---

[4] We at times refer to the Chamberlin class action by reference only to the Chamberlins because they are the lead plaintiffs. This distinction is only for ease of reference and does not imply that our analysis does not extend to the other purported class action members.

disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020) (quotation omitted). "[A]djudication of a motion for relief from [an] automatic stay . . . . yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Id.* at 37–38.

The bankruptcy court granted Goldberg's motion for enforcement of the automatic stay and prevented the Chamberlins from pursuing their class action. Accordingly, that decision was a final order that the Chamberlins properly could (and did) appeal to the district court. The district court affirmed the order, meaning that we now have jurisdiction to hear the case. *See* 28 U.S.C. § 158(d)(1); *id.* § 158(a).

Goldberg, however, argues that continuing proceedings in the bankruptcy court have caused this appeal to become moot—specifically, the court's issuance of a wind down order for the Center and a final judgment against Govoni and others for more than $120 million means the Chamberlins' class action cannot proceed because the court's later actions bar the relief the class actions seeks.[5] We disagree. Article III of the Constitution limits our jurisdiction to "Cases" and "Controversies," and we may not decide a case that "no longer presents a live controversy with

[5] Goldberg separately contends, in a supplemental brief ordered by the Court, that the Chamberlins' appeal is moot by virtue of his recent acquisition of the equity in several of the entities listed as defendants in the Chamberlins' class action. *See* Supp. Br. of Appellee at 8. Goldberg acknowledges, however, that this argument does not extend to at least one defendant, American Momentum Bank. *See id.* at 9.

respect to which the court can give meaningful relief." *Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002) (quotation omitted). But the issue before us on appeal is whether the bankruptcy court properly held that the Chamberlins' class action was subject to the automatic stay, and the bankruptcy court's subsequent determinations do not moot that question.

Were we to reverse the lower court decisions, the Chamberlins could pursue their suit. Whether the suit will succeed does not affect our evaluation of the discrete issue before us for mootness so long as the relief sought is not impossible. *See id.* at 1243 (determining an appeal was moot when the plaintiff requested relief from immigration detention conditions but had been deported and was no longer subject to those conditions). Nor is this a case where "no action by this court could change what has been done." *See S.F. Residence Club, Inc. v. 7027 Old Madison Pike, LLC*, 583 F.3d 750, 754 (11th Cir. 2009) (quotation omitted). The Chamberlins seek to move forward with their class action, which our reversal would permit. Thus, the appeal is not moot.

We now turn to the merits and, for the reasons that follow, determine that the lower courts did not err in staying the Chamberlins' class action.

*B. The class claims are the bankruptcy estate's property*

The Chamberlins argue that the class action they wish to pursue is not the bankruptcy estate's property and thus not subject to the statutory automatic stay. They contend that their claims are their own direct claims against non-debtor defendants that do not

implicate the bankruptcy estate. Further, they argue that because Goldberg lacks standing to bring the class action's claims in his role as trustee, the claims are not estate property.

An entity's bankruptcy petition serves as an automatic stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1). The automatic stay's scope is broad and applies to any act to obtain possession or control of estate property. *Id.* § 362(a)(3); *see In re Rush-Hampton Indus., Inc.*, 98 F.3d 614, 616 (11th Cir. 1996) ("The automatic stay is fundamental to the reorganization process."). Estate property includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). These interests include "legal causes of action the debtor had against others at the commencement of the bankruptcy case." *In re Icarus Holding, LLC*, 391 F.3d 1315, 1319 (11th Cir. 2004). A bankruptcy trustee "has standing to bring any suit that the debtor could have instituted." *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir. 2003); *see also Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) (explaining that "a trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the only party with standing to prosecute causes of action belonging to the estate").

Ordinarily, a trust is not part of a trustee's bankruptcy estate because the trustee does not hold legal title to the property in the

trust. *Begier* v. *I.R.S.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); 11 U.S.C. § 541(d) ("Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."). But when trust funds are commingled with other funds in a bankruptcy estate, a trust beneficiary can claim a benefit in bankruptcy only if he can sufficiently trace those funds. *See In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 965 (5th Cir. 1980) (declining to exclude trust property from the bankruptcy estate where the creditor could not "trace the funds" it claimed); *see also id.* at 966 ("Under federal law, plaintiffs must be able to trace their funds to an identifiable trust in the hands of the trustee" in order to attach a trust to general funds held by the bankruptcy trustee)[6]; *accord, e.g.*, *Conn. Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 619 (1st Cir. 1988) (explaining that a "claimant must identify the trust fund or property and, where the trust fund has been commingled with general property of the bankrupt, sufficiently trace the property or funds"); *Goldberg v. N.J. Lawyers' Fund for Client Prot.*, 932 F.2d 273, 280 (3d Cir. 1991) ("In order to establish rights as a trust recipient,

---

[6] Former Fifth Circuit decisions issued before October 1, 1981, are binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

a claimant must make two showings: (1) demonstrate that the trust relationship and its legal source exist, and (2) identify and trace the trust funds if they are commingled."); *Matter of Wellington Foods, Inc.*, 165 B.R. 719, 726 n.7 (Bankr. S.D. Ga. 1994); *see also In re Rocco Co., Inc.*, No. 10-18799 DHS, 2014 WL 7404566, at *4 (D.N.J. Dec. 29, 2014) (holding that where a trust account was commingled with non-trust property and the funds could not be traced, the account was "property of the debtor's estate").

The Center lost the money it held for the special needs trusts as the result of a series of loans to Boston Finance Group. When Boston Finance Group defaulted on the loans in 2017, the Center could have sued to enforce the loan contract. Thus, the ongoing dispute over the loan funds between the Center and Boston Finance Group is a legal cause of action that the Center possessed when the bankruptcy case began and was therefore estate property. And Goldberg, as the bankruptcy estate trustee, has standing to bring those claims. *See O'Halloran*, 350 F.3d at 1202.

The Chamberlins were not a party to the loan agreements, but the default affects them as creditors of the Center's bankruptcy estate.[7] Despite their attempts to avoid the automatic stay by not naming the Center as a defendant, the class actions' claims depend

---

[7] The class plaintiffs, including the Chamberlins, are creditors of the Center's bankruptcy estate because they are beneficiaries of a trust the Center holds. *See* CREDITOR, Black's Law Dictionary (12th ed. 2024) (defining a creditor in the bankruptcy context as a "person or entity having a claim against the debtor predating the order for relief concerning the debtor"). They remain creditors even if the class action does not proceed.

on the plaintiffs' status as trust beneficiaries and estate creditors. *See In re Icarus Holding, LLC*, 391 F.3d at 1319. Furthermore, the Chamberlins admit that the property sought in the suit was inseparable from the bankruptcy estate's property because of the comingling of estate and trust assets. *See In re Kennedy & Cohen, Inc.*, 612 F.2d at 965. Thus, the automatic stay applies.

The Chamberlins argue that the Supreme Court's decision in *Begier v. I.R.S.* establishes that property held in trust is not bankruptcy estate property and thus not subject to the automatic stay. *See* 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"). The problem for the Chamberlins' argument is that even if the trust funds are not bankruptcy estate property, the trust funds are so commingled with funds that are part of the estate that it is impossible to analyze them separately without implicating the bankruptcy estate.

The Chamberlin class action acknowledged this problem, alleging that the defendants caused "corporate funds to be commingled with their own and/or with those of other entities under common control." The class action also alleged that the "Center failed to segregate [special needs trust] funds and commingled them with the Center's operating and/or master general-deposit accounts." And, as a forensic accountant found, the special needs trust funds were maintained and commingled in many brokerage accounts and involved more than 2.6 million transactions. Given the scale of the transactions, the extensive

commingling, and the complexity involved in tracing each trust's funds, we cannot separate the trust property from the bankruptcy estate property. Thus, we must treat all the commingled funds as bankruptcy estate property subject to the automatic stay. *See Kennedy & Cohen*, 612 F.2d at 965; *Conn. Gen.*, 838 F.2d at 619; *Goldberg*, 932 F.2d at 280; *Wellington Foods*, 165 B.R. at 726 n.7; *Rocco*, 2014 WL 7404566, at *4.

*C. The class action's claims inextricably intertwine with the bankruptcy estate*

Next, we turn to the contention that the Center was acting *in pari delicto* with the named defendants, and whether such conduct means the automatic stay should not apply. The Chamberlins argue that because they did not sue the Center directly and instead only sued individuals associated with the Center and the alleged fraud, the automatic stay should not block their suit against entities not in bankruptcy. Instead, they urge us to view the Center as a joint tortfeasor whom the Chamberlins chose not to sue but who was acting *in pari delicto* with the individuals the Chamberlins did sue, and accordingly not extend the stay the Center's bankruptcy provides to other parties.

The *in pari delicto* doctrine "provides that a wrongdoer may not profit from his wrongful acts." *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1148–49 (11th Cir. 2006). The concept is an equitable defense to prevent "a plaintiff who has participated in wrongdoing [from] recover[ing] damages resulting from the wrongdoing." *Id.* at 1152. Bankruptcy trustees

for "sham" corporations involved in financial fraud schemes cannot pursue damages based on those schemes. *See O'Halloran*, 350 F.3d at 1202 (noting that the bankruptcy trustee for a charity that existed for the primary purpose of perpetrating a Ponzi scheme could not sue on the charity's behalf for the Ponzi scheme torts because the charity "cannot be said to have suffered injury from the scheme it perpetrated").

We need not decide whether Goldberg could bring the same claims the Chamberlins seek to bring or if *in pari delicto* would bar such a suit. Both *Edwards* and *O'Halloran* involved our review of suits brought involving bankruptcy estates, but neither implicated the automatic stay. That distinction makes all the difference here. The Chamberlin allege the plaintiffs "entrusted the custody and administration of [special needs trust] assets to the Center as [p]laintiffs' and [c]lass [m]embers' trustee and fiduciary" but that the defendants "wrongfully transferred the funds from the [special needs trust] account." Put another way, the funds the Chamberlins seek to recover are the funds the Center administered, no matter who the Chamberlins chose to sue. Even if *in pari delicto* barred Goldberg from bringing the claims on the Center's behalf, the funds that the Chamberlin seek to recover are the same funds that are so commingled as to be inseparable from the bankruptcy estate. And because of the automatic stay, that inseparability means that claims like the Chamberlins' must wait until the bankruptcy process runs its course.

Consequently, we agree with the bankruptcy court's opinion that the Chamberlin class action claims are "so intertwined with the claims that the [b]eneficiaries have against [the Center]" that they "impact the administration of this bankruptcy" and violate the automatic stay.[8]

## III. Conclusion

For all these reasons, we affirm the bankruptcy court's grant of the motion to enforce the automatic stay.

**AFFIRMED.**

[8] This conclusion also defeats the Chamberlins' final argument, that the class action is the appropriate vehicle to litigate these claims. They claim that the bankruptcy case does not represent their interests because Goldberg's "duty is to marshal *the [Center's] assets* to its estate" and not to represent the Chamberlins direct claims "which do not hinge on harm to the [Center] or its estate." But as we agree with the lower courts that the commingled funds at issue in those claims are inseparable from the bankruptcy estate, the claims depend on bankruptcy estate property, and the automatic stay applies. Nor have the Chamberlins argued that their claims, while ordinarily subject to the automatic stay, are entitled to relief from that stay. *See In re Jefferson Cnty., Ala.*, 484 B.R. 427, 465 (Bankr. N.D. Ala. 2012) (observing that relief from the automatic stay is "determined on a case by case basis" and requires evaluating whether the stay's burden on the party filing suit "considerably outweighs" the suit's burden on the bankruptcy estate).

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 27, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 25-10933-FF
Case Style: Clark Chamberlin, et al v. Michael Goldberg
District Court Docket No: 8:24-cv-01962-WFJ
Secondary Case Number: 8:24bk00676RCT

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. The Court has proposed amending 11th Cir. R. 40-1 (Number of Copies) to no longer require paper copies of a petition for panel rehearing or a petition for rehearing en banc. Based on the proposed amendment, other than an original petition filed in paper by a non-electronic filer, **parties are asked not to submit any paper copies** of a petition for panel rehearing or a petition for rehearing en banc.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or

the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion